# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PAR PHARMACEUTICAL, INC. PAR STERILE PRODUCTS, LLC, and ENDO PAR INNOVATION COMPANY, LLC, | ) ) ) ) | C.A. No. 18-2032-CFC |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMPHASTAR PHARMACEUTICALS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

## AVERMENT

Pursuant to the Court's procedures regarding disputes relating to discovery matters and protective orders and D. Del. LR 7.1.1, counsel avers that the parties made a reasonable effort to resolve the subject matter of this dispute, and that such effort included oral communication involving Delaware counsel for the parties.

*Of Counsel*

PHILLIPS GOLDMAN McLAUGHLIN & HALL, P.A.

William R. Zimmerman (*Pro Hac Vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
1717 Pennsylvania Ave. N.W., Ste. 900
Washington D.C. 20006
202-640-6412 - Direct
Tel: (202) 640-6400
Fax: (202) 640-6401
Bill.Zimerman@knobbe.com

By : */s/ John C. Phillips, Jr.*

   John C. Phillips, Jr. (#110)
   Megan C. Haney (#5016)
   1200 North Broom Street
   Wilmington, DE  19806-4204
   Telephone:  (302) 655-4200
   Facsimile:  (302) 655-4210
   jcp@pgmhlaw.com
   mch@pgmhlaw.com

William O. Adams (*Pro Hac Vice*)
Karen M. Cassidy (*Pro Hac Vice*)
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, 14th Floor
Irvine, CA 92614
Tel: (949) 760-0404
Fax: (949) 760-9502
William.Adams@knobbe.com
Karen.Cassidy@knobbe.com

*Attorneys for Defendant Amphastar Pharmaceuticals, Inc.*

Dated:  May 16, 2019

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PAR PHARMACEUTICAL, INC., PAR STERILE PRODUCTS, LLC and ENDO PAR INNOVATION COMPANY, LLC, )<br><br>Plaintiffs, )<br><br>v. )<br><br>AMPHASTAR PHARMACEUTICALS INC., )<br><br>Defendant. ) | C.A. No. 18-2032-CFC |

### [PROPOSED] PROTECTIVE ORDER

WHEREAS the Parties agree that the nature of this case will require them to seek and produce documents and information, and elicit deposition testimony, the disclosure of which poses a substantial risk of harm to the Producing Party's legitimate proprietary interests;

WHEREAS the Parties agree that a protective order is necessary to minimize the harm flowing from the disclosure of sensitive information; and

WHEREAS the Parties agree to the terms of this Order to protect their confidential documents, things and information;

IT IS HEREBY ORDERED THAT the Parties and any non-party subject to discovery in this action are bound by the terms of this Protective Order governing the production of Confidential Information in this action.

1.  **Scope of Protective Order:** This Protective Order applies to all Discovery Materials produced by a Producing Party in connection with this action. In addition, this Protective Order allows for the filing of documents with the Court under seal, subject to any applicable Local Court Rule or CM/ECF procedure, if such documents contain Confidential and/or Highly Confidential Information. This Protective Order shall apply regardless of whether such information was produced prior to or after entry of this Protective Order.

2.  **Definitions:**

    (a)   The term "Confidential Information" means any confidential, proprietary, or commercially sensitive information, which is not generally known and which the Producing Party would not normally reveal to third parties or would cause third parties to maintain in confidence and/or which the Producing Party reasonably and in good faith believes is of the type

protectable under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure or is required to be kept Confidential by law or by agreement with a third party or otherwise. "Confidential Information" shall not include: (i) materials that show on their face that they have been disseminated to the public; (ii) information that the Producing or Designating Party agrees, or the Court rules (a) is already public knowledge, (b) has become public knowledge other than as a result of disclosure by the Receiving Party, its employees or agents in violation of this Protective Order, or (c) has come into the Receiving Party's legitimate knowledge or possession independently of the Producing Party under conditions such that its use and/or public disclosure by the Receiving Party would not violate any obligation to the Producing Party; or (iii) materials that have been designated "Highly Confidential" under this Protective Order. Any summary, compilation, notes, memoranda, analysis or copy containing Confidential Information and any electronic image or database containing Confidential Information shall be considered Confidential Information to the same extent as the material or information from which such summary, compilation, notes, copy, memoranda, analysis, electronic image, or database is derived.

(b)    The term "Highly Confidential – Outside Counsel's Eyes Only Information" shall include and be limited to the following specific categories of particularly competitive and sensitive business information:

(i)    Proprietary information, such as, without limitation, Abbreviated New Drug Applications ("ANDA") (including any supplements or amendments), New Drug Applications ("NDA"), Drug Master Files ("DMF"), research and development information (including, for example, laboratory notebooks), and non-public regulatory filings;

(ii)    The purchase price, purchase date, and quantity for the active ingredient;

(iii)    Highly sensitive business competitive marketing plans, market research and business strategy documents, including research regarding competitors, relating to the vasopressin market;

(iv)    Forecasted and/or actual sales of a party's vasopressin product, the number of products sold, total dollar value of products sold, and any profit or expense data, including profit margins;

(v)    Identity of current or prospective customers and distributors of a party's vasopressin product; and

(vi)    Such other information as may be agreed by the parties, or ordered by the Court on motion by the Producing Party, to be sufficiently commercially sensitive as to warrant such designation.

(vii)    Any summary, compilation, notes, memoranda, analysis or copy containing Highly Confidential - Outside Counsel's Eyes Only Information and any electronic image or database containing Highly Confidential - Outside Counsel's Eyes Only Information shall be considered Highly Confidential - Outside Counsel's Eyes Only Information to the same extent as the material or information from which such summary, compilation, notes, copy, memoranda, analysis, electronic image, or database is derived.

(c)    The term "Discovery Material" means any documents, tangible or intangible information, or things (including, without limitation, any writings, video or audio tapes, computer-generated or recorded information in any form, materials, oral or written testimony, interrogatories, answers to interrogatories, requests for admission, responses to requests for admission, document requests, responses to document requests, deposition notices, deposition testimony, deposition transcripts and exhibits, and other responses to requests for information or any tangible thing) produced or disclosed by a Party or non-party in this action.

(d)    The term "Designated Material" shall mean any Discovery Material designated by a Producing Party as Confidential or Highly Confidential - Outside Counsel's Eyes Only Information.

(e)    The term "Designating Party" means any Party or Person who designates Discovery Material as "Confidential" or "Highly Confidential - Outside Counsel's Eyes Only."

(f)    The term "Producing Party" means any Party or Person who produces or discloses any Discovery Material.

(g)    The term "Receiving Party" means any Person to whom Confidential Information is disclosed in this action.

(h)    The terms "Parties" or "Party" mean the following plaintiffs and/or defendants in this civil action: Par Pharmaceutical, Inc., Par Sterile Products, LLC, Endo Par Innovation Company, LLC, and Amphastar Pharmaceuticals, Inc., and any other parties that may hereafter be named as additional plaintiffs or defendants in this action. In the event of consolidation of this action with any action, the parties added to this action will not be considered "Parties" or a "Party" for purposes of this Protective Order, without agreement by all original Parties to this Protective Order. The Parties to this Protective Order agree to meet and

confer as needed in order to negotiate terms and/or revisions to this Protective Order that may be necessary to accommodate the addition of a consolidated party to the Protective Order.

(i)     The term "Person" means any natural person or any business, legal or governmental entity or association.

(j)     The term "Outside Counsel" means litigation counsel of record for the Parties, including associated personnel necessary to assist outside counsel in this action, such as legal assistants, paralegals, secretarial, stenographic, information technology and clerical employees actually assisting such counsel; outside vendors that scan, code and/or produce documents at such counsel's request; translation services; computer services; and trial consultants, their employees, and independent contractors hired to assist them, other than those persons described in paragraph 2(i)(iii) below.

3.      **Designation of Confidential and/or Highly Confidential -** Outside Counsel's Eyes Only **Information:**

(a)     Discovery Material, or any relevant portion of any letter, brief, motion, affidavit, discovery response, discovery request, or other pleading, may be designated by any Producing Party as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only," provided the material meets the definitions thereof provided herein.

(b)     Such designations shall be made or supervised by an attorney and shall be based on a good faith belief that Designated Materials are entitled to protection under the terms of this Protective Order. Any information supplied in documentary or other tangible form may be designated by the Producing Party, or other Person claiming that the information is Confidential or Highly Confidential Information, by placing or affixing on each page of such Document, or on the face of such thing, the legend "CONFIDENTIAL — PURSUANT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY — PURSUANT TO PROTECTIVE ORDER" respectively. Information, documents, articles and things previously produced under protective orders in other cases that bear appropriate confidentiality markings from such other cases, need not be stamped again; such material stamped "Confidential Information" produced in this litigation will be treated as Confidential Information, and such material stamped "Highly Confidential — Attorneys' Eyes Only" produced in this litigation will be treated as Highly Confidential - Outside Counsel's Eyes Only Information, in accordance with the terms of this Protective Order.

(c)     Designated Testimony: Testimony obtained from a deposition or hearing may be designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" when appropriate, either on the

record at the deposition or hearing or by letter or by email to all counsel of record and the reporter within twenty (20) days after receipt of the final (i.e., not "draft" or "rough") transcript.  Subject to any requirements of the Court, the reporter for any deposition or hearing shall affix a mark of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" to pages that contain testimony designated as such.  All such transcripts shall be treated as Highly Confidential - Outside Counsel's Eyes Only until designated otherwise or until the time to so designate has expired as set forth in this provision, whichever is later.

4.     **Publicly Available Material:** Discovery Material that has been produced to or prepared by or for, any government agency that is available to the public, either by the Freedom of Information Act or any other federal or state law, and Discovery Material which is otherwise available to the public from any source, should not be designated as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only."  If a Party receives material designated "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only" that the Party believes falls under this Paragraph, the Party may challenge the designation and request relief from the Court, after conferring in good faith with Outside Counsel for the Producing Party.  If the Party seeks relief from the Court, until the Court rules on the requested relief, the Discovery Material shall be treated as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only," as the case may be.  The Designating Party bears the burden of establishing the confidentiality of the so-designated materials.

5.     **Restriction on Disclosure and Use of Designated Materials:** Except with the prior written consent of the Designating Party, or as provided in this Protective Order, Discovery Material designated as "Confidential" or "Highly Confidential - Outside Counsel's Eyes Only" may not be disclosed to any Party or Person by the Receiving Party.  Any information designated as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only" shall be maintained in confidence by any Receiving Party.

6.     **Access to Confidential Materials:** "Confidential Information" shall be available only to the following persons, subject to the terms of Paragraph 8:

(a)     Outside Counsel;

(b)     up to two (2) in-house counsel of a Party responsible for managing this litigation as reasonably necessary to the litigation of this action, who are specifically identified in Paragraph 8(b) herein or are later identified in accordance with the terms of the Protective Order, and who agree to be bound by the terms of the Protective Order by signing the attached Undertaking, and paralegals or secretaries who support such in-house counsel;

(c)     outside independent experts and consultants of the Parties who are assisting Outside Counsel in this action and any necessary assistants and stenographic and clerical employees under their direct supervision and

employed by them or their employer or organization, provided that any applicable requirements of Paragraph 8(a) below are satisfied;

(d)    any mediators agreed upon by the Parties, including regularly employed support personnel of the mediator (such as administrative assistants, secretaries, clerical and administrative staff) as necessarily incident to the mediation process;

(e)    the Court, its personnel, jurors and alternate jurors, and court reporters, stenographers and videographers transcribing or recording testimony at depositions, hearings or trial in this Action; and

(f)    any other person with prior written consent of the Producing Party.

7.    **Access to Highly Confidential** - Outside Counsel's Eyes Only **Materials:** "Highly Confidential Information" shall be available only to the persons identified in Paragraph 6(a), (c), (d), (e), and (f), subject to the terms of Paragraph 8:

8.    **Disclosure of Confidential Information:**

(a)    Prior to any disclosure of Designated Materials pursuant to Paragraphs 6 and/or 7, the relevant requirements of Paragraph 8 below shall be satisfied, including that each such recipient shall read this Protective Order and sign the Undertaking attached hereto.  The Party that has retained, or disclosed Designated Materials to, a recipient pursuant to Paragraphs 6 and/or 7 shall retain a copy of the executed Undertaking(s) until the final resolution of this action.

(b)    Any person who receives Designated Materials pursuant to Paragraphs 6 and/or 7 shall have no current involvement and shall not have involvement for the duration of this litigation in any of the following activities: (i) the prosecution of any patent or patent application concerning vasopressin, not including post-grant review proceedings, including *inter partes* reviews (IPRs) or post-grant reviews (PGRs); and (ii) the preparation or submission of any FDA documents (including but not limited to Citizen Petitions), or any similar documents in any foreign country, regarding approval requirements relating to vasopressin.

(c)    Independent Experts and Consultants.  The following applies for each independent expert and consultant, including nontestifying experts and consultants, described in Paragraphs 6 and 7 above to whom Designated Material is to be disclosed in any way:

(i)    Such expert or consultant shall first read this Protective Order and sign the Undertaking attached hereto.

     (ii)    At least five (5) business days prior to the Receiving Party disclosing Designated Materials to any expert or consultant, the Receiving Party shall deliver (by electronic mail) to all other Parties a copy of the signed Undertaking, a resume or curriculum vitae and a description setting forth the person's (1) name, (2) residence and office addresses, (3) present employer, job title and job description, (4) any consulting activities (litigation and non-litigation) within the last five years relating to vasopressin or any product or composition containing vasopressin, (5) a list of cases in which the person has testified (including by declaration, report, or at trial or deposition) within the last five years, (6) any past or present relationship with any Party, and (7) a brief job history for the past five years.

     (iii)   If a Party has a good faith basis for believing it would be harmed by the proposed disclosure, the Party shall object to such disclosure within five (5) business days after service of the information called for in Paragraph 8(a)(ii). Objections must be in writing and state with particularity the basis for the objection.

     (iv)   In the event of such an objection, the Parties shall meet and confer within three (3) business days to attempt to resolve the concerns giving rise to the objection. If the parties are unable to reach an agreement regarding such disclosure, the Party objecting to disclosure may, within five (5) business days of the meet and confer, request that the Court issue an order barring such disclosure. The objecting Party shall have the burden of showing why that person should not have access to Designated Materials. Pending resolution of any such motion or application, no disclosure of Designated Materials shall be made to that person. The filing and pendency of such motion shall not limit, delay or defer any disclosures of Designated Materials to persons as to whom no such objection has been made.

 (d)    Designated In-House Counsel. The following applies for each in-house counsel designated under the terms of this Order:

     (i)    Subject to the requirements set forth herein, the in-house counsel described in Paragraph 6 above who may have access to Confidential Information (but who may not have access to Highly Confidential - Outside Counsel's Eyes Only Information) in accord with the provisions of this Protective Order are:

         i.    For Plaintiffs — In House Counsel:

            1.    Lawrence Brown

    2.    Matthew Malleta

  ii.    For Amphastar Pharmaceuticals, Inc.– In House Counsel:

    1.    [To be identified.]

    2.    [To be identified.]

(ii)    Prior to any Confidential Information being provided to any in-house counsel identified above, each such person shall read this Protective Order and sign the Undertaking attached hereto. The Party seeking disclosure of the Information shall deliver (by electronic mail) a copy of the executed Undertaking to each Party.

(iii)    In the event that any of the in-house counsel identified above can no longer serve as a designated in-house counsel in this action, the designating Party may select a replacement person to view Confidential Information of the Producing Party. The new in-house counsel shall execute an Undertaking as required herein, and shall otherwise comply with all terms of this Protective Order, and the Party seeking disclosure to such person shall deliver (by electronic mail) a copy of the executed Undertaking to each Party.

(iv)    If a Party has a good faith basis for believing it would be harmed by the proposed disclosure, the Party shall be entitled to object to such disclosure within five (5) business days after service of the Undertaking. Objections must be in writing and state with particularity the basis for the objection.

(v)    In the event of such an objection to disclosure of Confidential Information to a replacement in-house counsel, the Parties shall meet and confer within three (3) business days to attempt to resolve the concerns giving rise to the objection. If the parties are unable to reach an agreement regarding such disclosure, the Party objecting to disclosure may, within five (5) business days of the meet and confer, request that the Court issue an order barring such disclosure. The objecting Party shall have the burden of showing why that person should not have access to Confidential Information. Pending resolution of any such motion or application, no disclosure of Confidential Information shall be made to that person. The filing and pendency of such motion shall not limit, delay, or defer any disclosures of Confidential Information to persons as to whom no such objection has been made.

9.    **Use of Designated Materials:**

(a)    Subject to Paragraph 17 below, Designated Materials shall be used by the Receiving Party solely for the purposes of preparation for trial, pretrial proceedings, and trial of actions and proceedings in this action, and not for any business, commercial, regulatory, competitive, personal, or other purpose or any other action, including without limitation that Designated Materials disclosed in this litigation shall not be used in: (i) any other action, including lawsuits against FDA; (ii) the prosecution of any patent or patent application; (iii) the preparation or submission of any United States FDA documents (including but not limited to Citizen Petitions), or any similar documents in any foreign country; (iv) and marketing, financial, pricing, or other business competitive decision-making (not including settlement or other decision-making in the litigation).

(b)    Designated Materials may be disclosed by a Receiving Party during a deposition, to the extent that its use is reasonably necessary, at the depositions of the following:

(i)    The present directors, officers, employees, agents or Rule 30(b)(6) designees of the Producing Party;

(ii)    An author, addressee, or other person indicated as a lawful recipient of a document containing the information;

(iii)    A person not within subparagraphs 9(b)(i)-(ii) above who is clearly identified in prior discovery or by the deponent in his or her deposition as an author or recipient of the information (without prior disclosure of the Designated Materials);

(iv)    A Persons authorized under Paragraphs 6, 7, and 8 of this Protective Order to receive Designated Materials;

(v)    Any person for whom prior authorization is obtained from the Producing Party or the Court; or

(vi)    Individuals who have been identified through discovery (including document production, written discovery or deposition testimony) as having knowledge of the particular Designated Materials, even if the individual is not identified as an actual author or recipient on the face of the document at issue.

(c)    During depositions of any Party or non-party, a Party or non-party claiming that information that is to be disclosed or upon which questions may be based is Designated Material may exclude from the room for that portion of the deposition any person who is not permitted to access such Designated Materials under the terms of this Protective Order.

10.     **Inadvertent Productions:**

(a)     In the event any document is produced that the Producing Party later claims is protected by the attorney-client privilege, work-product doctrine, or other privilege or immunity, the Receiving Party shall, as soon as possible but not later than within five (5) business days of receipt of a written request by the Producing Party, return the original to the Producing Party (or at the option of the Receiving Party destroy the original with written verification provided to Outside Counsel for the Producing Party), destroy, delete, or sequester all copies thereof, as well as all notes, memoranda or other documents that summarize, discuss or quote the document, and destroy, delete, or sequester any copy of the document, or any portion thereof, from any word processing or database tape or disk it maintains. Upon receiving notice of inadvertent production, the Receiving Party(ies) shall not make any use of such document or thing or disseminate the same in any way. The unintentional or inadvertent production of privileged, work-product-protected or otherwise immune documents in the course of discovery in this action shall not constitute a waiver of any privilege, work-product-protection or immunity, either as to the produced document or as to any other documents or communications embracing the same or similar subject matter provided that the Producing Party notifies the Receiving Party in writing of such unintentional or inadvertent production promptly after the Producing Party discovers such unintentional or inadvertent production. The return, destruction, deletion, or sequestering of a document for which the Producing Party has asserted a claim of privilege, work-product-protection or immunity under this paragraph shall be without prejudice to the Receiving Party's right to seek an order from the Court directing production of the document on the ground that the claimed privilege, work-product-protection or immunity is invalid, inapplicable or waived, provided, however, that any motion or other application for such order shall not rely upon in any manner or assert as a ground the fact or circumstances of the unintentional or inadvertent production, nor shall it disclose the substance of the inadvertently produced material except to the extent that an in camera inspection of the materials is requested.

(b)     Nothing herein shall prevent the Receiving Party from preparing and keeping a record containing the date, author, email address(es), and such other metadata as is reasonably necessary to identify a document or communication a Producing Party later claims is protected by the attorney-client privilege, work-product doctrine, or other privilege or immunity in order to file a motion to compel production of the information. Such a record may not be used for any purpose other than the preparation and filing of a motion to compel. After the return, destruction, deletion, or sequestering such a document or communication, the Receiving Party may challenge the Producing Party's claim(s) of privilege or immunity by making an application to the Court.

(c)     Within five (5) business days of an order by the Court denying the Receiving Party's motion to compel, or if no motion to compel is filed within fourteen (14) days of the receipt of the written request in (a) above, the Receiving Party shall destroy or delete all copies of the withdrawn document, as well as all notes, memoranda or other documents that summarize, discuss or quote the document, and destroy or delete any copy of the document, or any portion thereof, from any word processing or database tape or disk it maintains

(d)     Unintentional or inadvertent failure to designate any information as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only" pursuant to this Protective Order shall not constitute a waiver of any otherwise valid claim for protection, provided that the Producing Party notifies the Receiving Party in writing of such unintentional or inadvertent failure to designate no later than ten (10) business days after the Producing Party discovers such unintentional or inadvertent failure to designate. In the event of an unintentional or inadvertent failure to designate any information, arrangements shall be made for the return to the Producing Party, or the destruction or deletion of, all copies of the unintentionally or inadvertently undesignated information and for the substitution where appropriate, of properly labeled copies.

11.     **Privilege Logs:** Documents or communications created or taking place on or after April 16, 2018, if subject to a claim of attorney-client privilege, work product protection, or any other privilege or immunity, need not be included on a privilege log.

12.     **Redactions:** Documents and things produced or made available for inspection may be subject to redaction, in good faith by the Producing Party, of (i) information that relates to drug products that do not contain vasopressin and is not otherwise relevant to this action or reasonably likely to lead to the discovery of admissible evidence in this litigation, (ii) confidential personally identifiable information (e.g., social security numbers, patient names, dates of birth), or (iii) information that is subject to the attorney-client privilege or to the work-product immunity. Each such redaction, regardless of size, shall be clearly labeled. All documents redacted for reason (iii) shall be listed on a redaction log stating the basis for such redaction. This Paragraph shall not be construed as a waiver of any Party's right to seek disclosure of redacted information.

13.     **Filing:** All documents — including pleadings, motions and other papers — containing Confidential Information shall be filed with the Court under seal in accordance with the Court's Local Rules and CM/ECF procedures.

14.     **Challenges to Confidentiality Designations:** If the Receiving Party disagrees with the confidentiality designation by the Producing Party, then the Receiving Party shall so notify, in writing, Outside Counsel for the Designating Party. Outside Counsel for the Designating Party and the Receiving Party shall first try to resolve such dispute within five (5) business days after receipt of the Receiving Party's notice. If the dispute cannot be resolved, the Receiving Party, upon no fewer than three (3) business days written notice to the Designating

Party, may seek a ruling from the Court that the information is improperly designated. Pending a determination by the Court, such information shall be treated as designated by the Designating Party. All Designated Materials are entitled to confidential treatment pursuant to the terms of this Protective Order until, and unless, the parties formally agree in writing to the contrary or a contrary determination is made by the Court.

15. **Requests to Disclose Designated Materials to Non-Parties:** If the Receiving Party desires to disclose Designated Materials to someone other than persons authorized under Paragraphs 6, 7, and 8 of this Protective Order, the Receiving Party must first request permission, in writing, from the Designating Party's Outside Counsel. The Designating Party shall have seven (7) days after the receipt of such request to respond. If the Designating Party denies the written request the Receiving Party may, upon no fewer than five (5) days written notice to the Designating Party, move to compel disclosure of the Designated Materials. The burden shall be on the Receiving Party to prove that such disclosure should take place and that the interest of the Designating Party in limiting the dissemination of the Designated Materials is outweighed by the need for such disclosure. Pending a determination by the Court, Designated Materials shall be maintained as designated by the Designating Party and shall not be disclosed to any person, except those authorized under Paragraphs 6, 7, and 8 of this Protective Order.

16. **Preservation of the Right to Challenge Confidentiality Designation:** No party shall be obligated to challenge the propriety of a confidentiality designation, and a failure to do so shall not preclude a subsequent challenge to the propriety of such designation. This Protective Order shall be without prejudice to the right of any Party or other subscriber to this Protective Order (a) to bring before the Court at any time the question of whether any particular document or information is Confidential or Highly Confidential - Outside Counsel's Eyes Only Information or whether its use otherwise should be restricted or (b) to present a motion to the Court under Fed. R. Civ. P. 26(c), for a separate protective order as to any such particular document or information, including restrictions differing from those specified herein.

17. **Other Proceedings:**

    (a)    By entering this Protective Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any Person or Party subject to this Protective Order who becomes subject to a motion to disclose another Party's information designated as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only" pursuant to this Protective Order shall promptly notify that Party of the motion so that the Party may have an opportunity to appear and be heard on whether that information should be disclosed.

    (b)    In the event any Receiving Party having possession, custody, or control of any Designated Material receives from a non-party to this action a subpoena or other process or order or discovery request to produce such information in another, unrelated legal proceeding, such party (i) shall notify counsel for the Designating Party of the subpoena or other process or order or discovery request, and (ii) shall not produce or disclose the

information until the Designating party has had reasonable time (at least fourteen (14) calendar days, unless the deadline to respond to the subpoena or other process or order or discovery request is earlier) to object or take other appropriate steps to protect the information.  The Designating Party shall have the burden of defending against such subpoena or other process, order, or discovery demand.

18.    **Client Consultation:** Nothing in this Protective Order shall prevent or otherwise restrict Outside Counsel or designated in-house counsel from rendering advice to their clients and, in the course thereof, relying generally on examination of Designated Materials produced in discovery in this action; *provided*, *however*, that in rendering such advice and otherwise communicating with such clients, Outside Counsel or designated in-house counsel shall not make specific disclosure of any item so designated except as permitted herein.

19.    **Modification Permitted:** Nothing in this Protective Order shall prevent any Party or other Person from seeking modification of this Protective Order, from objecting to discovery that it believes to be otherwise improper, from applying to the Court for relief therefrom, or from applying to the Court for further or additional protective orders, or from agreeing among themselves to modify or vacate this Protective Order, subject to the approval of the Court.  The Court retains jurisdiction even after termination of this action to enforce this Protective Order and to make such amendments, modifications, deletions and additions to this Protective Order as the Court may from time to time deem appropriate.

20.    **Responsibility of Attorneys:** The attorneys of record for each respective party are responsible for employing reasonable measures, consistent with this Protective Order, to control duplication of, access to, and distribution of copies of Designated Materials received by them.

21.    **No Waiver:** Review of Designated Materials as permitted in this Protective Order in connection with this action shall not waive the confidentiality of the information or objections to production.  The inadvertent, unintentional, or *in camera* disclosure of Confidential Information shall not, under any circumstances, be deemed a waiver, in whole or in part, of any Party's claims of confidentiality.

22.    **Purpose Is to Facilitate the Exchange of Information:** This Protective Order is entered solely for the purpose of facilitating the exchange of information between the Parties to this action without involving the Court unnecessarily in this process.  Nothing in this Protective Order, nor the production of any documents or disclosure of any information pursuant to this Protective Order, shall be deemed to have the effect of (a) an admission or waiver, including waiver under the Federal Rules of Evidence or applicable Local Rules, by any Party or other subscriber to this Protective Order; (b) altering the confidentiality of any such information; or (c) altering any existing obligation of any party or other subscriber, or the absence of such obligation.

23.    **Termination of the Litigation:** Within 90 days after the final conclusion of this litigation, including all appeals, all Discovery Materials designated as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only," and all copies of the same, shall be returned to the

Producing Party or, at the option of the Receiving Party, destroyed.  This includes all notes, memoranda or other documents that summarize, discuss or quote materials or information produced and designated as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only," except that, with respect to word processing and database tapes and disks, the Receiving Party shall destroy or erase such tapes or disks to the extent practicable.  Outside Counsel for each Party shall be entitled to retain copies of all filings, their work product, any transcripts of depositions, hearings or trial testimony in this action, written discovery or discovery responses, as well as documents that have been marked as exhibits to a deposition and documents included on trial exhibit lists and that contain or refer to information designated as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only" provided that all such documents shall remain subject to this Protective Order.  Outside Counsel of record shall make certification of compliance herewith and shall deliver the same to Outside Counsel for the Producing Party not more than 120 days after conclusion of this litigation, including all appeals.

24.     **No Limitations on Party's Use of its Own Information:** This Protective Order shall not limit a Producing Party's use of its own Designated Materials.

25.     **Third Parties:** If a third party provides Discovery Materials to any Party, such third party may adopt the terms of this Protective Order with regard to the production of any Confidential or Highly Confidential - Outside Counsel's Eyes Only Information by executing a Notice of Election to Adopt Stipulated Order on Confidentiality Agreement and Protective Order ("Notice of Election") in the form attached hereto.  In the event of such election, the provisions of this Protective Order shall apply to such Discovery Materials as if such Discovery Materials were being provided by a Party to this litigation.  Under such circumstances, the third party shall have the same rights and obligations under this Protective Order as held by the Parties to this litigation.

26.     **Information Not Covered by this Protective Order:** The restrictions set forth in this Protective Order will not apply to Designated Materials that are in the possession of or otherwise known to the Receiving Party or the public before the date of its transmission to the Receiving Party, or which comes into the lawful possession of or becomes known to the Receiving Party or comes into the possession of or otherwise becomes known to the public after the date of its transmission to the Receiving Party, provided that, as shown in written records, such information does not become publicly known by any act or omissions of the Receiving Party which would be in violation of this Protective Order or otherwise violate any confidentiality obligation owed to a Party.

27.     **Survival:** This Protective Order shall survive and remain in full force and effect after termination of this action.  Neither the termination of this lawsuit nor the termination of employment of any person with access to any Designated Materials shall relieve such person from the obligation of maintaining the confidentiality of such information.

28.     **Pending Entry by the Court:** Until such time as this Protective Order has been entered by the Court, the parties agree that upon execution by the parties, it will be treated as though it had been "So Ordered."

The undersigned counsel of record stipulate that the Court should enter the above

Protective Order as an order of the Court, and further stipulate that the Protective Order shall constitute a binding contract among the Parties and their counsel.

**AGREED AND STIPULATED TO:**

Dated: _____, 2019

Respectfully submitted,                          Respectfully submitted,


By: /s/ _____        By: /s/ _____


*Attorneys for Plaintiffs Par*                   *Attorneys for Defendant Amphastar*
*Pharmaceutical, Inc., Par Sterile*              *Pharmaceuticals, Inc.*
*Products, LLC, and Endo Par Innovation*
*Company, LLC*

**SO ORDERED,** this __ day of January, 2019.

_____

The Honorable Colm F.  Connolly
United States District Court Judge

## UNDERTAKING AND ACKNOWLEDGEMENT OF
## <u>PROTECTIVE ORDER AND CONFIDENTIALITY STIPULATION</u>

I, _____, hereby attest as follows:

1.      I understand that CONFIDENTIAL and/or HIGHLY CONFIDENTIAL-

OUTSIDE COUNSEL'S EYES ONLY material may be disclosed to me under the terms of the

Protective Order attached to this Undertaking and Acknowledgement.  I have a copy of and have

read the Order, and I agree to comply with and be bound by its terms.  I also agree to be subject

to the jurisdiction of this Court for the purpose of enforcing this Order and this agreement.

2.      I agree that I will not disclose to anyone else the CONFIDENTIAL and/or

HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY material disclosed to me,

nor discuss or describe the substance or content of such material, except as provided in the

Order, and that I will use such material only for the purposes of this litigation.

3.      I agree that I will not keep any CONFIDENTIAL and/or HIGHLY

CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY material or copies of any such

material (including notes or other memoranda or writings containing or relating to such material)

except to the extent permitted by the Order, and, upon request, will destroy or return such

material to the attorneys who disclosed such material to me.


Dated: _____        _____
                                                        Signature

## NOTICE OF ELECTION TO ADOPT STIPULATED ORDER
## <u>ON CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER</u>

      1.      _____, a non-party to the above-captioned litigation, has been requested and/or subpoenaed by a party to produce discovery containing Confidential Information and/or Highly Confidential - Outside Counsel's Eyes Only Information in connection with the above-captioned litigation.

      2.      _____ hereby elects to adopt the terms of the Stipulated Confidentiality Agreement and Protective Order (herein, the "Protective Order") with regard to its terms regarding production of Confidential Information and/or Highly Confidential - Outside Counsel's Eyes Only Information.

      3.      The provisions of the Protective Order shall apply to all documents, things and other information produced by _____ as if such discovery were being provided by a party. _____ shall have the same rights and obligations under the Protective Order as held by the parties.

Dated: _____           _____
                                                Name

                                              _____
                                              Company

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| PAR PHARMACEUTICAL, INC., PAR STERILE PRODUCTS, LLC and ENDO PAR INNOVATION COMPANY, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 18-2032-CFC |
| v. | ) ) | |
| AMPHASTAR PHARMACEUTICALS INC., | ) ) | |
| Defendant. | ) ) | |

## [PROPOSED] PROTECTIVE ORDER

WHEREAS the Parties agree that the nature of this case will require them to seek and produce documents and information, and elicit deposition testimony, the disclosure of which poses a substantial risk of harm to the Producing Party's legitimate proprietary interests;

WHEREAS the Parties agree that a protective order is necessary to minimize the harm flowing from the disclosure of sensitive information; and

WHEREAS the Parties agree to the terms of this Order to protect their confidential documents, things and information;

IT IS HEREBY ORDERED THAT the Parties and any non-party subject to discovery in this action are bound by the terms of this Protective Order governing the production of Confidential Information in this action.

1.     **Scope of Protective Order:** This Protective Order applies to all Discovery Materials produced by a Producing Party in connection with this action.  In addition, this Protective Order allows for the filing of documents with the Court under seal, subject to any applicable Local Court Rule or CM/ECF procedure, if such documents contain Confidential and/or Highly Confidential Information.  This Protective Order shall apply regardless of whether such information was produced prior to or after entry of this Protective Order.

2.     **Definitions:**

    (a)     The term "Confidential Information" means any confidential, proprietary, or commercially sensitive information, ~~including confidential, proprietary or sensitive design, development, technical, or manufacturing information, as well as any information,~~ which is not generally known and which the Producing Party would not normally reveal to third parties or would cause

third parties to maintain in confidence and/or which the Producing Party reasonably and in good faith believes is of the type protectable under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure or is required to be kept Confidential by law or by agreement with a third party or otherwise. "Confidential Information" shall not include: (i) materials that show on their face that they have been disseminated to the public; (ii) information that the Producing or Designating Party agrees, or the Court rules (a) is already public knowledge, (b) has become public knowledge other than as a result of disclosure by the Receiving Party, its employees or agents in violation of this Protective Order, or (c) has come into the Receiving Party's legitimate knowledge or possession independently of the Producing Party under conditions such that its use and/or public disclosure by the Receiving Party would not violate any obligation to the Producing Party; or (iii) materials that have been designated "Highly Confidential" under this Protective Order.  Any summary, compilation, notes, memoranda, analysis or copy containing Confidential Information and any electronic image or database containing Confidential Information shall be considered Confidential Information to the same extent as the material or information from which such summary, compilation, notes, copy, memoranda, analysis, electronic image, or database is derived.

(b)     The term "Highly Confidential – Outside Counsel's Eyes Only Information" shall include and be limited to the following specific categories of particularly competitive and sensitive business information:

(i)     Proprietary information, such as, without limitation, Abbreviated New Drug Applications ("ANDA") (including any supplements or amendments), New Drug Applications ("NDA"), Drug Master Files ("DMF"), research and development information (including, for example, laboratory notebooks), and non-public regulatory filings;

(i)(ii)   The purchase price, purchase date, and quantity for the active ingredient;

(ii)(iii) Highly sensitive business competitive marketing plans, market research and business strategy documents, including research regarding competitors, relating to the vasopressin market;

(iii)(iv) Forecasted and/or actual sales of a party's vasopressin product, the number of products sold, total dollar value of products sold, and any profit or expense data, including profit margins;

(iv)(v)  Identity of current or prospective customers and distributors of a party's vasopressin product; and

(v)(vi)  Such other information as may be agreed by the parties, or ordered by the Court on motion by the Producing Party, to be sufficiently commercially sensitive as to warrant such designation.

(vi)(vii)        Any summary, compilation, notes, memoranda, analysis or copy containing Highly Confidential - Outside Counsel's Eyes Only Information and any electronic image or database containing Highly Confidential - Outside Counsel's Eyes Only Information shall be considered Highly Confidential - Outside Counsel's Eyes Only Information to the same extent as the material or information from which such summary, compilation, notes, copy, memoranda, analysis, electronic image, or database is derived.

(c)    The term "Discovery Material" means any documents, tangible or intangible information, or things (including, without limitation, any writings, video or audio tapes, computer-generated or recorded information in any form, materials, oral or written testimony, interrogatories, answers to interrogatories, requests for admission, responses to requests for admission, document requests, responses to document requests, deposition notices, deposition testimony, deposition transcripts and exhibits, and other responses to requests for information or any tangible thing) produced or disclosed by a Party or non-party in this action.

(d)    The term "Designated Material" shall mean any Discovery Material designated by a Producing Party as Confidential or Highly Confidential - Outside Counsel's Eyes Only Information.

(e)    The term "Designating Party" means any Party or Person who designates Discovery Material as "Confidential" or "Highly Confidential - Outside Counsel's Eyes Only."

(f)    The term "Producing Party" means any Party or Person who produces or discloses any Discovery Material.

(g)    The term "Receiving Party" means any Person to whom Confidential Information is disclosed in this action.

(h)    The terms "Parties" or "Party" mean the following plaintiffs and/or defendants in this civil action: Par Pharmaceutical, Inc., Par Sterile Products, LLC, Endo Par Innovation Company, LLC, and Amphastar Pharmaceuticals, Inc., and any other parties that may hereafter be named as additional plaintiffs or defendants in this action.  In the event of consolidation of this action with any action, the parties added to this action will not be considered "Parties" or a "Party" for purposes of this Protective Order, without agreement by all original Parties to this Protective Order.  The Parties to this Protective Order agree to meet and

confer as needed in order to negotiate terms and/or revisions to this Protective Order that may be necessary to accommodate the addition of a consolidated party to the Protective Order.

    (i)    The term "Person" means any natural person or any business, legal or governmental entity or association.

    ~~(i)~~(j)    The term "Outside Counsel" means litigation counsel of record for the Parties, including associated personnel necessary to assist outside counsel in this action, such as legal assistants, paralegals, secretarial, stenographic, information technology and clerical employees actually assisting such counsel; outside vendors that scan, code and/or produce documents at such counsel's request; translation services; computer services; and trial consultants, their employees, and independent contractors hired to assist them, other than those persons described in paragraph 2(i)(iii) below.

3.    **Designation of Confidential and/or Highly Confidential** - Outside Counsel's Eyes Only **Information:**

    (a)    Discovery Material, or any relevant portion of any letter, brief, motion, affidavit, discovery response, discovery request, or other pleading, may be designated by any Producing Party as "Confidential" or "Highly Confidential-Outside Counsel's Eyes Only," provided the material meets the definitions thereof provided herein.

    (b)    Such designations shall be made or supervised by an attorney and shall be based on a good faith belief that Designated Materials are entitled to protection under the terms of this Protective Order. Any information supplied in documentary or other tangible form may be designated by the Producing Party, or other Person claiming that the information is Confidential or Highly Confidential Information, by placing or affixing on each page of such Document, or on the face of such thing, the legend "CONFIDENTIAL — PURSUANT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY — PURSUANT TO PROTECTIVE ORDER" respectively. Information, documents, articles and things previously produced under protective orders in other cases that bear appropriate confidentiality markings from such other cases, need not be stamped again; such material stamped "Confidential Information" produced in this litigation will be treated as Confidential Information, and such material stamped "Highly Confidential — Attorneys' Eyes Only" produced in this litigation will be treated as Highly Confidential - Outside Counsel's Eyes Only Information, in accordance with the terms of this Protective Order.

    (c)    Designated Testimony: Testimony obtained from a deposition or hearing may be designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL'S EYES ONLY" when appropriate, either on the

EXHIBIT 4

5/15/2019                                                                 Endo | Management Team



Careers     Contact

Our Companies     Investors/Media     About Us     Our Responsibility



*Home / About Us / Company Leadership / Management Team*

# Executive Officers

**Overview**

**A Message from the President and CEO**

**History**

**Locations**

**Company Leadership**

   *Management Team*

   Board of Directors

## Paul V. Campanelli



Paul V. Campanelli was appointed President, Chief Executive Officer and a Director effective September 23, 2016. Mr. Campanelli joined Endo in 2015 as the President of Par Pharmaceutical, leading Endo's fully integrated U.S. Generics business following Endo's acquisition of Par Pharmaceutical. Prior to joining Endo, he had served as Chief Executive Officer of Par Pharmaceutical Companies, Inc. following the company's September 2012 acquisition by TPG. Prior to the TPG acquisition, Mr. Campanelli served as Chief Operating Officer and President of Par Pharmaceutical, Inc. from 2011 to 2012. At Par Pharmaceutical, Inc. Mr. Campanelli had also served as Senior or Vice President, Business Development & licensing, Executive Vice President and President of Par Pharmaceutical, Inc. and was named a Corporate Officer by its board of directors. He also served on the board of directors of Sky Growth Holdings Corporation from 2012 until 2015. Mr. Campanelli joined Par Pharmaceutical Companies, Inc. in 2001. Prior to joining Par Pharmaceutical Companies, Inc. Mr. Campanelli served as Vice President, Business Development at Dr. Reddy's Laboratories, Ltd. where he was employed from 1992 to 2001. Mr. Campanelli earned his Bachelor of Science degree from Springfield College.

## Patrick Barry



Patrick Barry was appointed Executive Vice President and Chief Commercial Officer effective February 26, 2018. In this role, he has responsibility for all commercial activities for U.S. Branded Pharmaceutical including strategy, new product planning, marketing, sales as well as managed care and patient access responsibilities. Mr. Barry joined Endo in December 2016 as Senior or Vice President, U.S. Branded Pharmaceutical. Prior to joining Endo, Mr. Barry worked at Sanofi S.A. from April 1992 until December 2016 holding roles of increasing responsibility in areas such as Sales, Leadership, Commercial Operations, Marketing, Launch Planning and Training and Leadership Development. Most recently, he served at Sanofi S.A. as its General Manager and Head of North America General Medicines starting in September 2015 and as Vice President and Head of U.S. Specialty from April 2014 until August 2015. During this time, Mr. Barry oversaw three complex and diverse businesses with responsibility for leading sales and marketing activities for branded and generic products across the U.S. and Canada. He has a diverse therapeutic experience including aesthetics and dermatology, oncology, urology, orthopedics and medical device and surgical experience. He has an M.B.A. from Cornell University, Johnson School of Management and a B.A. in Public Relations and Marketing from McKendree University.

## Blaise Coleman

Blaise Coleman was appointed Executive Vice President and Chief Financial Officer effective December 19, 2016. Mr. Coleman has been serving as Endo's interim Chief Financial Officer since November 22, 2016. He joined Endo in January 2015 as Vice President of Corporate Finance, Planning & Analysis and was then promoted to Senior or Vice President, Global Finance Operations in November 2015. Prior to joining Endo, Mr.

5/15/2019

Endo | Management Team



Co eman he d a number of finance eadersh p ro es w th AstraZeneca a g oba b opharmaceut ca company most recent y as the Ch ef F nanc a Officer of the AstraZeneca/Br sto -Myers Squ bb US D abetes A ance Pr or to that he was the Head of F nance for the AstraZeneca G oba Med c nes Deve opment organ zat on based n Mö nda Sweden Mr Co eman o ned AstraZeneca n 2007 as Sen or D rector Commerc a F nance for the US Card ovascu ar Bus ness He o ned AstraZeneca from Centocor a who y owned subs d ary of Johnson & Johnson where he he d pos t ons n both the censes & Acqu s t ons and Commerc a F nance organ zat ons Mr Co eman s move to Centocor n ear y 2003 fo owed 7 years exper ence w th the g oba pub c account ng firm Pr cewaterhouseCoopers P Mr Co eman s a Cert fied Pub c Accountant he ho ds a Bache or of Sc ence degree n account ng from W dener Un vers ty and an M B A from the Fuqua Schoo of Bus ness at Duke Un vers ty

## Terrance J. Coughlin



Terrance J Cough n was appo nted Execut ve V ce Pres dent and Ch ef Operat ng Officer effect ve November 1 2016 n th s ro e Mr Cough n has respons b ty for Manufactur ng and Techn ca Operat ons and R&D across the enterpr se Most recent y Mr Cough n served as V ce Pres dent Operat ons of Par Pharmaceut ca Compan es nc a subs d ary of Endo Pr or to Endo s acqu s t on of Par n September 2015 Mr Cough n was the Ch ef Operat ng Officer of Par Pharmaceut ca Compan es nc Pr or to o n ng Par Mr Cough n he d a number of eadersh p ro es w th G enmark Gener cs nc USA/G enmark Gener cs m ted atter y as the Pres dent and Ch ef Execut ve Officer of G enmark Gener cs nc USA/G enmark Gener cs m ted Pr or to th s Mr Cough n had the overa respons b ty for G enmark s North Amer can Western European and Eastern European gener cs bus nesses as we as ts g oba act ve pharmaceut ca ngred ent bus ness and gener cs operat ons n nd a Pr or to o n ng Genmark Mr Cough n served as Sen or V ce Pres dent at Dr Reddy s aborator es nc Mr Cough n began h s career n 1988 w th Wyckoff Chem ca Company nc Mr Cough n earned a B S n chem stry from Centra M ch gan Un vers ty

## Matthew J. Maletta



Matthew J Ma etta has served as Endo s Execut ve V ce Pres dent and Ch ef ega Officer s nce May 2015 where he has g oba respons b ty for a ega matters affect ng the Company Pr or to o n ng Endo Mr Ma etta served as V ce Pres dent Assoc ate Genera Counse and Corporate Secretary of A ergan n th s pos t on he served as an adv sor to the Ch ef Execut ve Officer and Board of D rectors and superv sed severa arge transact ons nc ud ng the $70 b on acqu s t on of A ergan by Actav s n 2015 Mr Ma etta a so p ayed a key ro e defend ng A ergan from an unso c ted takeover b d by Va eant Pharmaceut ca s and Persh ng Square Cap ta Management n 2014 Mr Ma etta o ned A ergan n 2002 and dur ng h s tenure he d ro es of ncreased respons b ty nc ud ng serv ng as the ead commerc a attorney for A ergan s aesthet cs bus nesses for severa years and as Head of Human Resources n 2010 Pr or to o n ng A ergan Mr Ma etta was n pr vate pract ce focus ng on genera corporate matters finance governance secur t es and transact ons He ho ds a B A degree n po t ca sc ence from the Un vers ty of M nnesota summa cum aude and Ph Beta Kappa and a J D degree cum aude from the Un vers ty of M nnesota aw Schoo

## Tony Pera



Tony Pera was named Pres dent Par Pharmaceut ca effect ve November 1 2016 n th s ro e Mr Pera eads Endo s U S Gener cs bus ness nc ud ng respons b ty and overs ght of Par Gener c and Par Ster e sa es teams as we as Par s market ng & bus ness ana yt cs group Most recent y Mr Pera served as Ch ef Commerc a Officer of Par Pharmaceut ca He o ned Par n February 2014 as part of Par s acqu s t on of JHP Pharmaceut ca where he he d a s m ar pos t on As Ch ef Commerc a Officer Mr Pera was respons b e for a sa es market ng pr c ng and customer operat ons funct ons for Par Pr or to JHP and Par Mr Pera was Sen or V ce Pres dent of Supp y Cha n Management for Amer sourceBergen (ABC) a ma or U S pharmaceut ca who esa er for approx mate y five years Pr or to ABC he he d numerous sen or eadersh p pos t ons w th gener c drug compan es nc ud ng APP (now Fresen us Kab ) Bedford aborator es

5/15/2019                                                    Endo | Management Team

and  yphoMed  Mr Pera started h s career as a sa es representat ve for the parentera products d v s on of
Baxter  He current y serves as the Secretary-Treasurer of the Board of D rectors for the Gener c
Pharmaceut ca  Assoc at on (GPhA)  Mr Pera ho ds a B S  n Bus ness Adm n strat on from the Un vers ty of
  no s  n Champa gn and an M B A  from DePau  Un vers ty

## *Senior Management*

### *Joseph A. Barbarite*



Joseph A  Barbar te  s Execut ve V ce Pres dent  G oba  Qua ty and Comp  ance effect ve
November 2016  He  o ned Endo  n 2015 as the Sen or V ce Pres dent  G oba  Qua ty and
Comp  ance for Par Pharmaceut ca  fo  ow ng Endo s acqu s t on of Par  Mr  Barbar te
br ngs over 35 years of pharmaceut ca  qua ty and comp  ance exper ence cover ng both
gener c and branded organ zat ons  Pr or to  o n ng Par  n 2004  he he d  eadersh p ro es
 n Commerc a  and Pre-Commerc a  Qua ty at Forest Research  nst tute and Forest
 aborator es  nc  Pr or to Forest  aborator es  he he d management pos t ons at Nycomed  nc  and at Ster ng
W nthrop  nc  Ear er  n h s career  Mr  Barbar te he d QA aud t ng pos t ons at Organon  nc  and A tana  nc  He
started h s career at N ce-Pak Products  nc  as the Qua ty Assurance Superv sor  Mr  Barbar te ho ds a
Bache or of Sc ence  n B o ogy from Fordham Un vers ty as we  as a Qua ty Eng neer cert f cat on from the
Amer can Soc ety for Qua ty

### *Mark Bradley*



Mark Brad ey current y serves as SVP  Corporate Deve opment & Treasurer  Mr  Brad ey
 o ned Endo  n January 2007 as a F nance D rector and has he d var ous pos t ons of
 ncreas ng respons b  ty s nce  o n ng the company  Pr or to  o n ng Endo  he spent near y
7 years as a management consu tant  most recent y w th De o tte Consu t ng  prov d ng a
broad range of strateg c and operat ona  adv ce and serv ces to sen or execut ves across
a number of  ndustr es  n add t on  Mr  Brad ey served as a F nance D rector for an
 ndustr a  products company for approx mate y 2 years  He spent the f rst 5 years of h s career  n pub  c
account ng at Ernst & Young    P and rece ved h s CPA  n October 1993  Mr  Brad ey ho ds a Bache or of
Sc ence degree  n Account ng from Sa nt Joseph s Un vers ty and a Master of Bus ness Adm n strat on from
The Un vers ty of Texas at Aust n

### *Larry Cunningham*



 arry Cunn ngham  Execut ve V ce Pres dent  Human Resources   o ned Endo  n May
2008  n th s ro e he  eads a  aspects of human resources  n enab  ng the deve opment
and growth of Endo  Pr or to  o n ng Endo  Mr  Cunn ngham  ed Johnson & Johnson s
g oba  recru t ng and ta ent acqu s t on organ zat on  Mr  Cunn ngham a so has extens ve
bus ness-based human resources  eadersh p exper ence  He was V ce Pres dent  Human
Resources  for DePuy  nc  a who y owned subs d ary of Johnson & Johnson  wh ch he
 o ned fo  ow ng the acqu s t on of Centocor  where he was V ce Pres dent  Human Resources  Pr or to  o n ng
Centocor  Mr  Cunn ngham ga ned extens ve domest c and  nternat ona  exper ence  n human resources
management and organ zat on deve opment at Rhone-Pou enc Rorer (now Sanof -Avent s) and Corn ng
C n ca   aborator es (now Quest D agnost cs)  Mr  Cunn ngham ho ds a B A  n  abor Stud es from the
Pennsy van a State Un vers ty and a Master of Sc ence  n Bus ness Adm n strat on from Temp e Un vers ty

### *Rahul Garella*



Rahu  Gare a was appo nted Sen or V ce Pres dent  Head of  nternat ona
Pharmaceut ca s  n November 2016 and has respons b  ty for Endo s  nternat ona
bus nesses  nc ud ng Pa ad n  abs  Par   aborator es Europe   td  Grupo Farmaceut co
SOMAR and   tha Hea thcare  Mr  Gare a has 20 years  exper ence  n the pharmaceut ca
 ndustry across AP s and f n shed dosages w th broad  nternat ona  exper ence across

5/15/2019                                   Endo | Management Team

the European  As an and   at n Amer ca markets  He o ned Par n November 2014 and was tasked w th
estab sh ng Par  aborator es Europe   m ted n the Un ted K ngdom w th respons b ty for bu d ng up the
commerc a  and regu atory nfrastructure  operat ng team and product p pe ne across gener c and branded
products Pr or to o n ng Par  Mr  Gare  a served as Sen or V ce Pres dent for G enmark Pharmaceut ca s
Europe   m ted for the Western European gener cs bus ness from 2008 unt  2014 and European and  at n
Amer can AP  bus ness from 2005 unt  2008  Prev ous y  he worked w th Ranbaxy n the r As a-Pac fic d v s on
and Orch d Chem ca s & Pharmaceut ca s  He ho ds a Master of Bus ness Adm n strat on (PGDBM) from the
nst tute of Management Techno ogy  nd a as we  as a Bache or degree n E ectr ca  Eng neer ng from the
Facu ty of Eng neer ng  Jam a M  a  New De h  nd a

## Carrie A. Nichol



Carr e A  N cho  was appo nted V ce Pres dent  Contro er and Ch ef Account ng Officer
effect ve Apr  2  2018 Ms  N cho  o ned the Company n March 2015 as D rector of
Conso dat ons and F nanc a  Systems and  n September 2015 was promoted to
Ass stant Contro er  Pr or to  o n ng the Company  Ms  N cho  was SVP & Contro er of
Haas Group nternat ona  (now Wesco A rcraft Ho d ngs  nc ) where she ed the g oba
account ng and finance teams from June 2011 unt  March 2015  Ms  N cho  a so p ayed a
cr t ca  ro e n Haas Group nternat ona  s sa e to Wesco A rcraft Ho d ngs  nc  n 2014  Pr or to her
emp oyment w th Haas Group nternat ona  Ms  N cho  was w th  KON Office So ut ons (now R coh Company
td ) for a tota  of five years from June 2008 unt  June 2011 and from June 2003 unt  Ju y 2005  hav ng
served most recent y as the D rector of F nanc a  Report ng and Corporate Account ng where she was
respons b e for a  pub c f  ngs and techn ca  and corporate account ng  From December 2005 unt  June
2008  Ms  N cho  was w th Advanced Meta urg ca  Group NV serv ng as Ass stant Contro er  Ms  N cho  began
her career n pub c account ng at KPMG    P  She s a  censed cert fied pub c accountant n the
Commonwea th of Pennsy van a and ho ds a Bache or of Sc ence degree n Bus ness Management  w th a
m nor n Account ng  from W dener Un vers ty as we  as an M B A n F nance from V  anova Un vers ty  Ms
N cho  serves as a Sect on 16(b) Officer

## Laure Park



aure Park was appo nted Sen or V ce Pres dent  nvestor Re at ons and Corporate
Affa rs effect ve August 2  2018  n th s ro e  Ms  Park s respons b e for  ead ng Endo s
nvestor Re at ons and Corporate Affa rs teams  nc ud ng  nterna  commun cat ons and
engagement  as we  as corporate commun cat ons and pub c re at ons  Pr or to  o n ng
Endo  Ms  Park spent 23 years at Quest D agnost cs where she he d key  eadersh p ro es
n d fferent funct ona  areas  nc ud ng finance  nvestor re at ons and commun cat ons
Most recent y  she served as Quest D agnost cs  V ce Pres dent  Customer Exper ence  where she was
respons b e for bu d ng a customer-focused cu ture and represent ng the customer n the des gn and de very
of the customer exper ence  Pr or to that  Ms  Park was V ce Pres dent of Commun cat ons &  nvestor
Re at ons  respons b e for  ead ng  nvestor re at ons and  ntegrat ng  t w th the  nterna  and externa
commun cat ons funct ons  She a so served as the V ce Pres dent & Genera  Manager of the r Prescr pt on
Drug Mon tor ng bus ness  Ms  Park began her career n pub c account ng w th De o tte & Touche  n 1987  She
s a member of the Hea thcare Bus nesswomen s Assoc at on (HBA)  and ho ds bache ors  degrees  n
Account ng and Commun cat ons from the Un vers ty of North Dakota

## Brandon Rockwell



Brandon Rockwe  was appo nted Sen or V ce Pres dent of Bus ness Deve opment and
Strategy effect ve March 2018  n h s ro e  he has respons b ty for the company-w de
Bus ness Deve opment  Pro ect Management  and Portfo o Management groups and
p ays an  ntegra  ro e n sett ng the strateg c d rect on for the Company  Most recent y
Mr  Rockwe  served as V ce Pres dent of Bus ness Deve opment at Par Pharmaceut ca
  Brandon had  o ned Par Pharmaceut ca  n 2007 and he d key ro es  n sett ng the
strateg c d rect on of the company through the Par s acqu s t ons and the  ntegrat on of Qua test and Par  n
h s tenure Mr  Rockwe  has he d a number of progress ve  eadersh p pro es  n bus ness deve opment  pro ect

5/15/2019                                Endo | Management Team

management and nformat on systems Mr Rockwe  has a Bache or of Sc ence from Grove C ty Co  ege and a
Master of Bus ness Adm n strat on from New Jersey  nst tute of Techno ogy

## Susan Williamson



Susan W  amson was appo nted Sen or V ce Pres dent and Ch ef Comp  ance Officer
effect ve Apr  1  2018  n th s ro e  she  s respons b e for the strateg c d rect on and
operat ons of Endo s G oba  Corporate Comp  ance program  Ms W  amson  o ned Endo
n 2012 and has been a va ued member of Endo s Corporate Comp  ance  eadersh p
team  prev ous y serv ng as Endo s V ce Pres dent and U S  and Canad an Comp  ance
Officer where she was respons b e for overs ght of Endo s Corporate Comp  ance
program  nc ud ng management of Endo s Corporate  ntegr ty Agreement (C A)  enterpr se w de corporate
comp  ance tra n ng and mon tor ng and Aggregate Spend report ng  Pr or to  o n ng Endo  Ms W  amson
worked at Pfizer  n Operat ona  R sk Management support ng Pfizer s C A from 2009 to 2012  Pr or to her
emp oyment w th Pfizer  Ms  W  amson spent over five years at Wyeth Pharmaceut ca s and he d key ro es  n
bu  d ng  deve op ng and  mp ement ng a G oba  Corporate Comp  ance program  Ms W   amson began her
career  n pub  c account ng at Ernst & Young  n the Assurance and Adv sory Pract ce  Ms W  amson  s a
Cert fied Pub  c Accountant and ho ds a Bache or of Sc ence degree  n Account ng from Sa nt Joseph s
Un vers ty as we   as an M B A  from the Er van K  Haub Schoo  of Bus ness at St  Joseph s Un vers ty

---

**Our Companies**

Overview

Endo Pharmaceuticals

Par Pharmaceutical

Paladin Labs

**Investors/Media**

Overview

Newsroom

Events &
Presentations

Financial Information

Corporate
Governance

**About Us**

Overview

A Message from the
President and CEO

History

Locations

Company Leadership

**Our Responsibility**

Overview

Corporate Compliance

Our Commitment to
Patients and
Communities

Environmental
Sustainability

Advocacy and
Lobbying

UK Tax Strategy

Supplier Registration

**Contact Us**

Phone: (800) 462-ENDO (3636)

Email Us

Follow Us:

Sign Up for News Alerts

---

© 2019 Endo Pharmaceuticals Inc. All rights reserved.   US Privacy/Legal  |  EU Privacy  |  Code of Conduct  |  Corporate Compliance  |  Site Map

# EXHIBIT 5

## Contact

www.linkedin.com/in/lawrence-brown-3aa6329 (LinkedIn)

## Top Skills
Patent Prosecution
Intellectual Property
Licensing

# Lawrence Brown

Vice President/Assistant General Counsel at Par Pharmaceutical
Greater New York City Area

## Summary

Experienced Assistant General Counsel with a demonstrated history of working in the pharmaceuticals industry. Strong professional skilled in Patent Litigation, Client Counseling, Life Sciences, Patent Prosecution, and Strategy.

---

## Experience

**Par Pharmaceutical**
Vice President and Assistant General Counsel, IP - Generics
May 2007 - Present
Chestnut Ridge, NY USA

**K&L Gates**
Associate
September 2006 - May 2007 (9 months)

**Frommer Lawrence & Haug**
Associate
April 2005 - August 2006 (1 year 5 months)

**Ropes & Gray/Fish & Neave**
Patent Agent
February 2002 - March 2005 (3 years 2 months)

---

## Education

**Fordham University School of Law**
J.D., Law · (2002 - 2005)

**Princeton University**
Ph.D., Molecular Biology · (1996 - 2001)

**Harvard University**

A.B., Biochemical Sciences · (1992 - 1996)

EXHIBIT 6









# EXHIBIT 7



EXHIBIT 8



