

May 17, 2019

**VIA E-FILING**
The Honorable Colm F. Connolly
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE  19801

      Re:    *Par Pharmaceutical, Inc., etc. v. Amphastar Pharmaceuticals, Inc.*,
              <u>C.A. No. 18-cv-2032-CFC</u>

Dear Judge Connolly:

      This firm represents the Plaintiffs (collectively "Par") in the above-captioned litigation. We write in reply to the letter submitted yesterday by Defendant Amphastar Pharmaceuticals, Inc. regarding the parties' dispute as to the terms of the proposed Protective Order to be entered in this case, which raises a single issue—whether all in-house counsel should be precluded from having access to confidential technical documents produced in this case.  For the reasons set forth herein, Amphastar's proposed blanket prohibition against any in-house counsel having access to such documents is inappropriate.

      A party seeking to restrict access to discovery materials must demonstrate "good cause" for the restriction.  Fed. R. Civ. P. 26(c); *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).  "Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order."  *U.S. v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 158 (D. Del. 1999).  Access to discovery materials by in-house counsel cannot be restricted simply based upon their status as in-house counsel.  *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468-69 (Fed. Cir. 1984).  Rather, such restrictions are appropriate only to the extent there exists an unacceptable risk of inadvertent disclosure of the confidential information.  *Id.*  In assessing a proposed restriction, courts must weigh the risk of inadvertent disclosure or use of the information against the harm of imposing on a party's right to have the benefit of counsel of its choice, based on the specific facts presented in each particular case.  *Deutsche Bank*, 605 F.3d at 1379-80; *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 184 (D. Del. 2010).

      Here, the parties have agreed to several restrictions designed to protect against the risk of inadvertent disclosure or use of a party's confidential information, including the imposition of both a patent prosecution bar and an FDA bar.  *See* Amphastar Ex. 2, ¶ 8(b).  Agreed paragraph 9 further provides that confidential information may only be used for purposes of the litigation, and "not for any business, commercial, regulatory, competitive, … or other purpose …, including without limitation … [that they] shall not be used in:  (iv) marketing, financial, pricing, or other business competitive decision-making (not including settlement or other decision-making in litigation)."  *Id.*, ¶ 9(a).  In addition, the parties have agreed to a two-tiered protective order, whereby disclosure of "Confidential" material is limited to only two specified in-house counsel.  *Id.* ¶ 6(b), (d).  But materials designated as "Highly Confidential" are to be treated as "Outside Counsel's Eyes Only."  *Id.*, ¶ 5.  "Highly Confidential" information is to be limited to specific categories of particularly sensitive, competitive business information, including highly sensitive business competitive marking plans.  *Id.*, ¶ 2(b).

Amphastar seeks to further include its ANDA, Drug Master Files, research and development information and non-public regulatory filings as "Highly Confidential," and thereby preclude anyone at Par from having access to those materials. That goes too far.

Par's in-house counsel designee, Lawrence Brown, is an important part of the team responsible for supervising and managing the litigation of Par's claims in this matter.[1] He is involved in decisions concerning case strategies and provides valuable input and advice to outside counsel concerning technical issues in the case. Access to technical research and development documents is therefore an important part of his ability to fulfill that role. Courts have recognized the significant harm of depriving a party of the benefit of the advice of its in-house counsel familiar with the issues in the case. *In re Deutsche Bank*, 605 F.3d at 1380; *Boehringer Ingelheim Pharms., Inc. v. Hercon Lab. Corp.*, 1990 WL 160666, No. 89-484-CMW, *2 (D. Del. Oct. 12, 1990).

Amphastar seeks to minimize that harm by arguing (at p. 3) that [REDACTED]



Par would be harmed by a blanket prohibition barring all of its in-house counsel from accessing confidential technical materials relevant to strategic decisions to be made in this litigation, and this harm outweighs any putative risk that Mr. Brown might somehow inadvertently use Amphastar's technical information for an improper purpose.

The case law emphasizes that the decision whether to bar in-house access to discovery materials is a fact-specific inquiry to be made on a case-by-case basis. This case is different than most patent cases, [REDACTED]

Accordingly, Par submits that the agreed restrictions noted above—including the FDA bar and patent prosecution bar, as well as the express prohibition against the use of Designated Materials for "business competitive decision-making"—are sufficient protection. Amphastar is effectively arguing that Par's in-house counsel cannot be trusted. But, all attorneys are bound not only by the protective order, but by additional professional and ethical obligations not to use

---

[1] Par originally also designated Matthew Maletta, its Chief Legal Officer, but as described below, in an offer of compromise, Par has agreed to remove him as a designee and limit itself to a single in-house designee.

the information for purposes outside the litigation. *See Boehringer Ingelheim*, 1990 WL 160666, *2.

Amphastar says it is concerned that Par's in-house designees may be involved in competitive decision-making, such as issues relating to pricing and product design, which could result in the inadvertent disclosure or use of Amphastar's technical information. Although Par disputes that concern ███████████████████████████████████████████████████████ nevertheless, in the interest of compromise, it has proposed to Amphastar that in addition to the protections noted above, it would further agree to (a) limit itself to a single designee, Mr. Brown, and (b) add a restriction to the Protective Order which would bar those with access to another party's Confidential Information from having involvement in (i) decisionmaking concerning pricing or product design for any vasopressin products; (ii) acquisition of a vasopressin product from a third-party; or (iii) licensing to or from third-party of a vasopressin product or a patent concerning vasopressin (except to the extent such licensing is in the context of the settlement of patent litigation).

Those additional protections should be more than adequate to address Amphastar's stated concerns. Amphastar does not identify any reason why Mr. Brown cannot be trusted with knowledge of Amphastar's technical information, beyond unjustified speculation about competitive decision-making in "his work in patent litigation, client counseling, patent prosecution and strategy" and an unspecified concern that "Plaintiffs often directly compete with Amphastar in the generic market." Amphastar's proposed restriction would effectively be a per se bar against any in-house counsel having access to confidential materials in this case, and its inchoate, non-specific concerns are insufficient to meet its burden to demonstrate a "clearly defined and serious injury" that would be caused by disclosure to Mr. Brown (notwithstanding the numerous protections to be built into the protective order), as is necessary to show the good cause for any such restriction required by *U.S. Steel* and *Deutsche Bank*. Indeed, as Amphastar notes (at p. 3), in Par's related case against Eagle Pharmaceuticals pending in this Court, Eagle had no objection to Mr. Brown having access to its technical information even without the additional protections that Par has offered to include in the protective order in this case. There is no reason he should not have similar access here.

Because Amphastar has not demonstrated that good cause exists to justify this restriction, Par respectfully requests that the Court reject Amphastar's proposed blanket prohibition against in-house counsel access to confidential technical documents.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Mail)