# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PAR PHARMACEUTICAL, INC., PAR
STERILE PRODUCTS, LLC, and ENDO
PAR INNOVATION COMPANY, LLC,

        Plaintiff,

   v.

AMNEAL EU, LIMITED, AMNEAL
PHARMACEUTICALS OF NEW YORK
LLC, AMNEAL BIOSCIENCES LLC, and
AMNEAL PHARMACEUTICAL PVT. LTD,

        Defendants.

C.A. No. 19-712-CFC

REDACTED - PUBLIC VERSION

---

PAR PHARMACEUTICAL, INC., PAR
STERILE PRODUCTS, LLC, and ENDO
PAR INNOVATION COMPANY, LLC,

        Plaintiffs,

   v.

AMPHASTAR PHARMACEUTICALS, INC.,
et al.,

        Defendants.

C.A. No. 18-2032-CFC
(Consolidated)

---

## AMNEAL EU, LIMITED, AMNEAL PHARMACEUTICALS OF NEW YORK LLC, AMNEAL BIOSCIENCES LLC, AND AMNEAL PHARMACEUTICAL PVT. LTD'S AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS

Defendants Amneal EU, Limited, Amneal Pharmaceuticals of New York LLC, Amneal

Biosciences LLC, and Amneal Pharmaceutical PVT. LTD (collectively, "Amneal")[1] hereby

---

[1] Amneal Pharmaceutical Holding LLC was dismissed from the case on June 13, 2019.  C.A. 19-712, D.I. 16.  Amneal EU, Limited was substituted for Amneal Pharmaceuticals Company GmbH on June 30, 2020.  C.A. No. 18-2032, D.I. 134.

amend their answer to the Complaint filed by Plaintiffs Par Pharmaceutical, Inc., Par Sterile

Products, LLC, and Endo Par Innovation Company, LLC (collectively, "Par" or "Plaintiffs") by

denying each and every allegation contained therein, except those that are specifically admitted,

modified, or qualified in this Amended Answer. Amneal bases its responses on its knowledge

as to its own activities, and on information and belief as to the activities of others. The

numbered paragraphs below correspond to the numbered paragraphs in the Complaint.

## THE PARTIES

1.      Amneal lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 1 and therefore denies the same.

2.      Amneal lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 2 and therefore denies the same.

3.      Amneal lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 3 and therefore denies the same.

4.      Amneal admits that Amneal Pharmaceuticals Company GmbH ("Amneal

GmbH") is a limited liability company organized and existing under the laws of Switzerland,

having its principal place of business at Turmstrasse 30 6312, Steinhausen, Switzerland. Amneal

admits that Amneal GmbH develops, manufactures, markets, and distributes pharmaceutical

products for sale in the State of Delaware and throughout the United States. Otherwise denied.

5.      Amneal admits that Amneal Pharmaceuticals of New York ("Amneal New York")

is a limited liability company organized and existing under the laws of Delaware, having its

principal place of business at 50 Horseblock Road, Brookhaven, New York 11719. Amneal

admits that Amneal New York develops, produces, and distributes pharmaceutical products for

sale in the State of Delaware and throughout the United States. Otherwise denied.

2

6.     Amneal admits that Amneal Biosciences LLC ("Amneal Biosciences") is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 400 Crossing Boulevard, Floor 3, Bridgewater, New Jersey 08807.  Amneal admits that Amneal Biosciences distributes pharmaceutical products for sale in the State of Delaware and throughout the United States.  Otherwise denied.

7.     Amneal admits that Amneal Pharmaceuticals Holding Company, LLC ("Amneal Holding") is a limited liability company organized and existing under the laws of Delaware, having a place of business at 400 Crossing Boulevard, 3rd Floor, Bridgewater, New Jersey 08807.  On June 13, 2019, Amneal Holding was dismissed from this action.  D.I. 16.  Otherwise denied.

8.     Amneal admits that Amneal Pharmaceuticals Pvt. Ltd. ("Amneal India") is a limited liability company organized and existing under the laws of India, having a place of business at Plot No. 15, PHARMEZ Special Economic Zone, Sarkhej-Bavia N.H., No. 8A, Vil.: Matoda, Tal.:Sanand, Ahmedabad, Gujarat 382213, India.   Amneal admits that Amneal India manufactures, packages, tests, and ships pharmaceutical products to the United States.  Otherwise denied.

## NATURE OF THE ACTION

9.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Amneal admits that the Complaint purports to state claims arising under the patent laws of the United States, Title 35 §§ 101 *et seq*., and alleges infringement of United States Patent Nos. 9,744,209 and 9,750,785.  Otherwise denied.

## JURISDICTION AND VENUE

10.     This paragraph states a legal conclusion to which no response is required.  To the

3

extent a response is required, for the purposes of this case only, Amneal does not contest subject matter jurisdiction.  Otherwise denied.

11.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, for the purposes of this case only, Amneal New York does not contest personal jurisdiction.  Otherwise denied.

12.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, for the purposes of this case only, Amneal GmbH does not contest personal jurisdiction.  Otherwise denied.

13.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, for the purposes of this case only, Amneal Biosciences does not contest personal jurisdiction.  Otherwise denied.

14.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, paragraph 14 is directed to a separate party and therefore Amneal denies the same.  Otherwise denied.

15.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, for the purposes of this case only, Amneal India does not contest personal jurisdiction.  Otherwise denied.

16.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, for the purposes of this case only, Amneal does not contest venue in this district.  Otherwise denied.

## THE DRUG APPROVAL PROCESS

17.     This paragraph states a legal conclusion to which no response is required. Amneal admits that FDA approval is required to market a new pharmaceutical drug in the United

4

States and the FDA maintains the *Approved Drug Products with Therapeutic Equivalence Evaluations*, which is referred to as the "Orange Book."  Otherwise denied.

18.     This paragraph states a legal conclusion to which no response is required. Amneal admits that a company seeking to market a generic version of a drug may submit to the FDA an Abbreviated New Drug Application ("ANDA") showing the generic version to be bioequivalent to a previously approved drug.  Otherwise denied.

19.     This paragraph states a legal conclusion to which no response is required. Amneal admits that Congress has enacted a statutory scheme that allows parties to resolve patent disputes related to generic drugs and that the statute requires ANDA filers to file certifications with respect to each patent listed in the Orange Book.  Otherwise denied.

20.     This paragraph states a legal conclusion to which no response is required. Amneal admits that an ANDA filer must provide notice to the patent owner and NDA holder of any Paragraph IV Certifications, and the notice must include a detailed statement of the factual and legal bases for applicant's belief that the challenged patents are invalid or not infringed by the proposed generic product.  Otherwise denied.

21.     This paragraph states a legal conclusion to which no response is required. Amneal admits that the statute provides for a 30-month stay of FDA approval in certain circumstances.  Otherwise denied.

**FACTUAL BACKGROUND**
**The Patents-In-Suit**

22.     Amneal admits that according to the face of United States Patent No. 9,744,209 ("the '209 patent"), the '209 patent issued on August 29, 2017, and is titled "Vasopressin Formulations For Use in Treatment of Hypotension."  Amneal further admits that what purports

to be a copy of the '209 patent is attached to the Complaint as Exhibit A. The remaining allegations in paragraph 22 state a legal conclusion to which no response is required. To the extent a response is required, Amneal lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 and therefore denies the same.

23. Amneal admits that according to the face of United States Patent No. 9,750,785 ("the '785 patent"), the '785 patent issued on September 5, 2017, and is titled "Vasopressin Formulations For Use in Treatment of Hypotension." Amneal further admits that what purports to be a copy of the '785 patent is attached to the Complaint as Exhibit B. The remaining allegations in paragraph 23 state a legal conclusion to which no response is required. To the extent a response is required, Amneal lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 and therefore denies the same.

24. Amneal lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and therefore denies the same.

**VASOSTRICT®**

25. Amneal admits that Vasopressin is the active ingredient in VASOSTRICT®. Amneal further admits VASOSTRICT® is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hyposensitive despite fluids and catecholamines. Otherwise denied.

26. Upon information and belief Amneal admits that on April 17, 2014, the FDA approved NDA 204485. Otherwise Amneal lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 and therefore denies the same.

27. Amneal lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 and therefore denies the same.

28.     Upon information and belief admitted.

29.     Upon information and belief admitted.

30.     Amneal lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 and therefore denies the same

31.     Amneal admits that VASOSTRICT® is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines.  Amneal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 31 and therefore denies the same.

**Amneal's Generic Vasopressin Injection Product**

32.     Amneal admits that it submitted ANDA No. 212944 to the FDA pursuant to 35 U.S.C. §355(j), seeking approval to market Vasopressin Injection USP, 20 units/1mL (20 units/mL) product. Otherwise denied.

33.     Amneal admits that Amneal sent Plaintiffs a notice stating that Amneal had submitted ANDA No. 212944. The notice speaks for itself and is the best source for its content. Otherwise denied.

34.     Amneal admits that Amneal sent Plaintiffs a Paragraph IV Notice regarding Amneal's ANDA No. 212944. The notice speaks for itself and is the best source for its content. Otherwise denied.

35.     Amneal admits that it submitted ANDA No. 212945 to the FDA pursuant to 35 U.S.C. §355(j), seeking approval to market Vasopressin Injection USP, 200 units/10mL (20 units/mL) product. Otherwise denied.

36.     Amneal admits that Amneal sent Plaintiffs a notice stating that Amneal had submitted ANDA No. 212945. The notice speaks for itself and is the best source for its content.

7

Otherwise denied.

37.     Amneal admits that Amneal sent Plaintiffs a Paragraph IV Notice regarding Amneal's ANDA No. 212945. The notice speaks for itself and is the best source for its content. Otherwise denied.

38.     Amneal is without knowledge or information sufficient to form a belief as to the allegations in paragraph 38 and therefore denies the same.

39.     This paragraph states a legal conclusion to which no response is required. To the extent a response is required, denied.

**COUNT I:**
**INFRINGEMENT OF THE '785 PATENT (AMNEAL ANDA NO. 212944)**

40.     Amneal incorporates its responses to paragraphs 1-39 as if fully set forth herein.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Amneal admits that it is aware of the existence of the '785 patent. Otherwise denied.

47.     Denied.

**COUNT II:**
**INFRINGEMENT OF THE '209 PATENT (AMNEAL ANDA NO. 212944)**

48.     Amneal incorporates its responses to paragraphs 1-47 as if fully set forth herein.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Amneal admits that it is aware of the existence of the '209 patent. Otherwise denied.

55.     Denied.

## COUNT III:
## INFRINGEMENT OF THE '785 PATENT (AMNEAL ANDA NO. 212945)

56.     Amneal incorporates its responses to paragraphs 1-55 as if fully set forth herein.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

62.     Amneal admits that it is aware of the existence of the '785 patent. Otherwise denied.

63.     Denied.

## COUNT IV:
## INFRINGEMENT OF THE '209 PATENT (AMNEAL ANDA NO. 212945)

64.     Amneal incorporates its responses to paragraphs 1-63 as if fully set forth herein.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69. Denied.

70. Amneal admits that it is aware of the existence of the '209 patent. Otherwise denied.

71. Denied.

## PLAINTIFFS' PRAYER FOR RELIEF

Amneal denies that Plaintiffs are entitled to any of the relief sought in their prayer for relief or any relief whatsoever.

## AFFIRMATIVE DEFENSES

Without prejudice to the denials set forth in this Amended Answer, Amneal further responds to the Complaint with the defenses set forth below. Amneal expressly reserves the right to supplement this Amended Answer, including the right to assert additional defenses as more information is learned through discovery and further factual investigation in this case. Amneal does not intend to hereby assume the burden of proof with respect to those matters as to which, pursuant to law, Plaintiffs bear the burden of proof.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Non-infringement of the '785 patent)

The manufacture, use, offer for sale, sale, or importation of the Amneal ANDA Product, that is the subject of ANDA No. 212944, has not, does not, and will not infringe any valid and enforceable claim of the '785 patent directly, indirectly, by inducement, contributorily, literally, under the doctrine of equivalents or in any manner.

The manufacture, use, offer for sale, sale, or importation of the Amneal ANDA Product,

that is the subject of ANDA No. 212945, has not, does not, and will not infringe any valid and enforceable claim of the '785 patent directly, indirectly, by inducement, contributorily, literally, under the doctrine of equivalents or in any manner.

### THIRD AFFIRMATIVE DEFENSE
**(Invalidity of the '785 patent)**

Each of the claims of the '785 patent are invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112, or 116, and the rules, regulations and laws for pertaining thereto, and/or for obviousness-type double patenting.

### FOURTH AFFIRMATIVE DEFENSE
**(Non-infringement of the '209 patent)**

The manufacture, use, offer for sale, sale, or importation of the Amneal ANDA Product, that is the subject of ANDA No. 212944, has not, does not, and will not infringe any valid and enforceable claim of the '209 patent directly, indirectly, by inducement, contributorily, literally, under the doctrine of equivalents or in any manner.

The manufacture, use, offer for sale, sale, or importation of the Amneal ANDA Product, that is the subject of ANDA No. 212945, has not, does not, and will not infringe any valid and enforceable claim of the '209 patent directly, indirectly, by inducement, contributorily, literally, under the doctrine of equivalents or in any manner.

### FIFTH AFFIRMATIVE DEFENSE
**(Invalidity of the '209 patent)**

Each of the claims of the '209 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112, or 116, and the rules, regulations and laws for pertaining thereto, and/or for obviousness-type double patenting.

### SIXTH AFFIRMATIVE DEFENSE
**(Inequitable Conduct and Unclean Hands)**

Plaintiffs' claims based on the '785 and '209 patents are barred because one or more of the Plaintiffs', the named inventors on those patents, their attorneys, representatives, predecessors in interest, and/or other persons with a duty of candor to the PTO has unclean hands on account of violations of the duty of candor to the PTO and misrepresentation of material facts to the PTO. The factual basis of the allegations in this paragraph is described below in Amneal's counterclaims, which are incorporated herein by reference.

## SEVENTH AFFIRMATIVE DEFENSE
### (No Costs)

Plaintiffs are barred by 35 U.S.C. § 288 from recovering costs associated with this suit.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Injunctive Relief)

Plaintiffs may not seek injunctive relief against Amneal because Plaintiffs alleged damages are not immediate or irreparable, and Plaintiffs therefore have an adequate remedy at law.

## NINTH AFFIRMATIVE DEFENSE
### (Reservation of Rights)

Amneal specifically reserves the right to assert each and every other defense that may become evident in the course of discovery.

WHEREFORE, Amneal prays that this Court enter an order:

A. Dismissing the Complaint, with prejudice, and denying Plaintiffs the relief requested in the Complaint and any relief whatsoever;

B. Denying Plaintiffs any award of damages, costs, or fees;

C. Declaring this case exceptional and awarding Amneal reasonable attorneys' fees;

D. Awarding Amneal its costs; and

E.  Granting such other and further relief as this Court may deem just.

## COUNTERCLAIMS FOR DECLARATORY JUDGMENT

Without admitting any of the allegations of Plaintiffs other than those expressly admitted herein, and without prejudice to the rights of Amneal to plead additional Counterclaims as the facts of the matter warrant, Defendants and Counterclaim-Plaintiffs, Amneal, hereby submit these Counterclaims against Plaintiffs and Counterclaim-Defendants:

## PARTIES

1.      Counterclaim Plaintiff Amneal EU, Limited ("Amneal EU") is a limited liability company organized and existing under the laws of Ireland, having its principal place of business at Cahir Road, Cashel, Co. Tipperary, E25 ZD51, Ireland.

2.      Counterclaim Plaintiff Amneal Pharmaceuticals of New York ("Amneal New York") is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 50 Horseblock Road, Brookhaven, New York 11719.

3.      Counterclaim Plaintiff Amneal Biosciences LLC ("Amneal Biosciences") is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 400 Crossing Boulevard, Floor 3, Bridgewater, New Jersey 08807.

4.      Counterclaim Plaintiff Amneal Pharmaceuticals Pvt. Ltd. ("Amneal India") is a limited liability company organized and existing under the laws of India, having a place of business at Plot No. 15, PHARMEZ Special Economic Zone, Sarkhej-Bavia N.H., No. 8A, Vil.: Matoda, Tal.:Sanand, Ahmedabad, Gujarat 382213, India.

5.      Counterclaim Defendant Par Pharmaceutical, Inc. ("Par Pharmaceutical") has averred that it is a corporation organized and existing under the laws of the State of New York, having a principal place of business at 1 Ram Ridge Road, Chestnut Ridge, New York 10977.

6.      Counterclaim Defendant Par Sterile Products, LLC ("Par Sterile Products") has

averred that it is a limited liability company organized and existing under the laws of Delaware, having its principal places of business at 1 Ram Ridge Road, Chestnut Ridge, New York 10977.

7.      Counterclaim Defendant Endo Par Innovation Company ("EPIC") has averred that it is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 1 Ram Ridge Road, Chestnut Ridge, New York 10977.

## JURISDICTION AND VENUE

8.      This is a declaratory judgment action arising under the patent laws of the United States, Title 35, United States Code.

9.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). The requested relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

10.     Personal jurisdiction over Counterclaim-Defendants Par Pharmaceutical, Inc., Par Sterile Products, LLC, and Endo Par Innovation Company, LLC (collectively, "Counterclaim-Defendants" or "Par") is proper because, *inter alia*, Counterclaim-Defendants subjected themselves to the Court's personal jurisdiction by filing the Complaint in the above action in this Court, and because, on information and belief, either directly or through agents, they transact business in, and derive substantial revenue from, Delaware.

11.     Venue is proper in this District under 28 U.S.C. §§ 1391, and as a result of Counterclaim-Defendants' choice of forum.

## FACTUAL BACKGROUND

12.     United States Patent No. 9,744,209 ("the '209 patent") is titled "Vasopressin Formulations for Use in Treatment of Hypotension" and states that it was issued on August 29,

2017.

13.     United States Patent No. 9,750,785 ("the '785 patent") is titled "Vasopressin Formulations for Use in Treatment of Hypotension" and states that it was issued on September 5, 2017.

14.     United States Patent No. 9,375,478 ("the '478 patent") is titled "Vasopressin Formulations for Use in Treatment of Hypotension" and states that it was issued on June 28, 2016.  A true and correct copy of the '478 patent is attached as Exhibit 1.

15.     United States Patent No. 9,687,526 ("the '526 patent") is titled "Vasopressin Formulations for Use in Treatment of Hypotension" and states that it was issued on June 27, 2017.  A true and correct copy of the '526 patent is attached as Exhibit 2.

16.     United States Patent No. 9,744,239 ("the '239 patent") is titled "Vasopressin Formulations for Use in Treatment of Hypotension" and states that it was issued on August 29, 2017.  A true and correct copy of the '239 patent is attached as Exhibit 3.

17.     United States Patent No. 9,937,223 ("the '223 patent") is titled "Vasopressin Formulations for Use in Treatment of Hypotension" and states that it was issued on April 10, 2018.  A true and correct copy of the '223 patent is attached as Exhibit 4.

18.     The '209, '785, '478, '526, and '239 patents are listed in Approved Drug Products with Therapeutic Evaluations ("the Orange Book") for New Drug Application ("NDA") Nos. 204485/S-003 and 204485/S-004 for Vasopressin Injection USP, 20 units/mL in 1 mL vials and 200 units/10mL in 10 mL multi-dose vials, respectively, which are marketed in the United States under the trade name VASOSTRICT®.

19.     The '209, '785, '478, '526, '239, and '223 patents are listed in the Orange Book for NDA No. 204485 for Vasopressin Injection USP, 200 units/10 mL in 10 mL multi-dose vials,

which is also marketed in the United States under the trade name VASOSTRICT®.

20.     Counterclaim Defendant Par Pharmaceutical, Inc. has averred that it is the owner of the '785 and '209 patents by virtue of assignment.

21.     On information and belief Defendant Par Pharmaceutical, Inc. is the owner of the '478, '526, '239, and '223 patents by virtue of assignment.

22.     On April 18, 2019, Counterclaim-Defendants filed this lawsuit alleging infringement of the '785 and '209 patents.

23.     Amneal Pharmaceutical Company GmbH ("Amneal GmbH"), which is a limited liability company organized and existing under the laws of Switzerland, having its principal place of business at Turmstrasse 30 6312, Steinhausen, Switzerland, submitted ANDA No. 212944 (the "Amneal Single-Dose ANDA") to the FDA pursuant to 21 U.S.C. § 355(j) seeking approval for the commercial manufacture, use, or sale in the United States of Vasopressin Injection USP, 20 units/1 mL (20 units/mL) product. The Amneal Single-Dose ANDA includes a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) of the Federal, Food, Drug and Cosmetic Act ("FDCA") that the '209, '785, '478, '526, and '239 patents are invalid and/or will not be infringed by the Amneal Single-Dose ANDA Product.  On February 5, 2020, Amneal notified the FDA that the Amneal Single-Dose ANDA was transferred to Amneal EU.

24.     Amneal sent notice of that certification to Counterclaim-Defendants on or about March 5, 2019. Upon information and belief, and as Counterclaim-Defendants allege in their Complaint, Counterclaim-Defendants received that notification.

25.     Amneal GmbH submitted ANDA No. 212945 (the "Amneal Multi-Dose ANDA") to the FDA pursuant to 21 U.S.C. § 355(j) seeking approval for the commercial manufacture, use, or sale in the United States of Vasopressin Injection USP, 200 units/10 mL (20 units/mL)

product. The Amneal Multi-Dose ANDA includes a certification under 21 U.S.C. § 355(j)(2)(A)(vii)(IV) of the Federal, Food, Drug and Cosmetic Act ("FDCA") that the '209, '785, '478, '526, '239, and '223 patents are invalid and/or will not be infringed by the Amneal Multi-Dose ANDA Product. On February 5, 2020, Amneal notified the FDA that the Amneal Multi-Dose ANDA was transferred to Amneal EU.

26. Amneal sent notice of that certification to Counterclaim-Defendants on or about March 5, 2019. Upon information and belief, and as Counterclaim-Defendants allege in their Complaint, Counterclaim-Defendants received that notification.

27. As a consequence of the foregoing, there is an actual and justiciable controversy as to the infringement and validity of the '785, '209, '478, '526, '223, and '239 patents ("Counterclaim Patents-in-Suit"). This controversy is of sufficient immediacy and reality to warrant the issuance of a Declaratory Judgment.

**A.    Vasopressin Products Were On Sale and Publicly Available Prior to the Patents-in-Suit**

28. Vasopressin injections have been on the market for over 100 years. Pitressin®, first manufactured and marketed by Parke-Davis, was on sale at least as early as the 1920s. *See, e.g.*, Ex. 5, PAR-VASO_0058266.

29. Pitressin® was marketed without FDA approval because it predated the institution of the FDA's current drug approval process. *See, e.g.*, ████████████████████ Specifically, under the pre-1938 grandfather clause pursuant to Title 21, Section 321(p)(1), a drug product that was on the market prior to passage of the 1938 Federal Food, Drug, & Cosmetic Act with the same formulation and the same conditions of use in its labeling as it did prior to passage of that Act was not considered a new drug and therefore was exempt from the

requirement of having an approved new drug application.

30. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████

31. ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

32. On or about February 20, 2014, JHP was acquired by Par Pharmaceutical

Holdings, Inc. Ex. 7, Par Pharmaceutical Holdings, Inc., General Form for Registration of

Securities Under the Securities Act of 1933 (Form S-1) F-21 (March 12, 2015),

https://www.sec.gov/Archives/edgar/data/1559149/000119312515089746/d880840ds1.htm. JHP

was renamed to Par Sterile Products, LLC, and is a wholly owned subsidiary of Par

Pharmaceutical. *Id.*

33. ████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

34. ████████████████████████████████████████

████████████████████████████████████████



35.

36.

37. ████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████

38. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████.

39. ████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████
██████████████

40. 

A pH of 2.5 to 4.5 is the range for vasopressin formulations specified by the United States Pharmacopeia Monograph. *See, e.g.*, Ex. 18, 3 U.S. Pharmacopeia, National Formulary 3849-50 (2009).

41.

42.

43.

44.     Upon information and belief, Par, through its acquisition of Par Sterile Products, formerly known as JHP Pharmaceuticals, acquired Pitressin® and NDA No. 204485 for Vasostrict®, as well as employees, know-how and other intellectual property, goodwill, and a

sterile manufacturing facility for these and other products.  Ex. 7, Par Pharmaceutical Holdings, Inc., General Form for Registration of Securities Under the Securities Act of 1933 (Form S-1) 128, F-21 (March 12, 2015), https://www.sec.gov/Archives/edgar/data/1559149/000119312515089746/d880840ds1.htm.

45.     On or about April 17, 2014, NDA No. 204485 was approved under the name Vasostrict®.  Ex. 23, FDA, Drugs@FDA: NDA No. 204485, http://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&varApplNo =204485; ███████████████████

46.     Par Sterile Products is the holder of approved NDA No. 204485.  Ex. 23, FDA, Drugs@FDA: NDA No. 204485, http://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=overview.process&varApplNo =204485; ███████████████████

47.     The package insert for Vasostrict® approved by the FDA in April 2014 ("April 2014 Vasostrict® Label") describes the formulation as "contain[ing] vasopressin 20 units/mL, chlorobutanol, NF 0.5% as a preservative, and Water for Injection, USP adjusted with acetic acid to pH 3.4 — 3.6."  Ex. 25, PAR-VASO_0008354; ████████████████████████ The April 2014 Vasostrict® Label was also published in April 2014.  ██████████████████ ███████████; Ex. 25, PAR-VASO_0008384 ("The Label was published in April of 2014. . . .").

48.     ███████████████████████████████████████ ██████████████████████████████████████ ████████████████████the April 2014 Vasostrict® Label as approved specified that the pH of the product was "adjusted with acetic acid to pH 3.4-3.6," ██████████████

23

[REDACTED]

49. The asserted claims of the Patents-in-Suit generally recite broad concentrations of vasopressin (0.01-0.07 mg/mL)[3] that [REDACTED] and there is no specified requirement for the amount of chlorobutanol, to the extent it is required by the claims. [REDACTED]

50. [REDACTED]

51. [REDACTED]

[2] Citations to "[Name] Dep. Tr. (*Eagle*)" refer to the transcripts of depositions taken in *Par Pharm., Inc. et al. v. Eagle Pharm. Inc.*, 18-cv-00823 (D. Del.) ("*Eagle* Litigation"). The same Patents-in-Suit were at issue in the *Eagle* Litigation.

[3] The independent claims for each of the Patents-in-Suit require 0.01 to 0.07 mg/mL of vasopressin. Ex. 2, PAR-VASO_0000112; Ex. 34, PAR-VASO_0000196; Ex. 3, PARVASO_0000230-31; Ex. 2, PAR-VASO_0000313. Claim 17 of the '526 patent, which depends from claim 1, recites a dilution of this vasopressin composition to give a final concentration of 0.21 to 2.1 μg/mL of vasopressin, or 0.00021 to 0.0021 mg/mL, of vasopressin. Ex. 2, PAR-VASO_0000113.



52. ████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████

53. ████████████████████████████████████████████████

██████████████████████████████████

54. ████ the first publication date of the April 2014 Vasostrict® Label ██████████

████████████████████████████████████████████ predate

the earliest possible effective filing date of the Patents-in-Suit, January 30, 2015. ████████████

████████████████████████████; Ex. 25, PAR-VASO_0008384 ("The Label was

published in April of 2014 . . . ."). Therefore, pursuant to Title 35, Section 102(b)(1)(A), unless

Par could show that the █████████████████████ and all of the subject matter set

forth in the April 2014 Vasostrict® Label, ████████████and the label must qualify as prior art

to the Patents-in-Suit.

55. ████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████, none of the named inventors of the Patents-in-Suit could

have invented Vasostrict® or the subject matter of the April 2014 Vasostrict® Label. However,

as set forth herein, during the prosecution of the '239 patent, one of the named inventors—

Vinayagam Kannan—as well as prosecuting attorney Craig Kenesky and Par employee Michelle Bonomi-Huvala—represented to the Patent Office that Kannan and Matthew Kenney invented "the subject matter" set forth in the April 2014 Vasostrict® Label that the examiner had relied upon to reject the then-pending claims. Ex. 25, PAR-VASO_0008389 at ¶ 7.

56. ██████████████████████████████████████████████████████

██████████████████████████████████

## B. Inequitable Conduct During Prosecution of the Patents-in-Suit

### 1. Vinayagam Kannan, Craig Kenesky, and Michelle Bonomi-Huvala Intentionally Submitted Unmistakably False Declarations During the Prosecution of the '239 Patent

57. The '239 Patent claims priority to U.S. Application No. 14/610,499 (the "'499 Application"), filed January 30, 2015. The application that issued as the '239 Patent was filed at the PTO on May 20, 2015, as U.S. Application No. 14/717,877 (the "'877 Application"). The '877 Application is a continuation of the '499 Application and shares a specification with the '499 Application.

58. Claim 1 of the '239 patent recites a method of increasing blood pressure in a human in need thereof by administering vasopressin:

1. A method of increasing blood pressure in a human in need thereof, the method comprising:

a) providing a pharmaceutical composition for intravenous administration consisting of, in a unit dosage form: i) from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically-acceptable salt thereof; ii) optionally chlorobutanol; iii) acetic acid, acetate, or a combination thereof; iv) 0-2% vasopressin degradation products; and v) water;

b) diluting the unit dosage form in a diluent to provide a concentration from about 0.1 units/mL to about 1 unit/mL of vasopressin or the pharmaceutically- acceptable salt thereof; and

c) administering the diluted unit dosage form to the human by intravenous administration;

wherein:

the unit dosage form has a pH of 3.5 to 4.1;

the administration provides to the human from about 0.01 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute to about 0.1 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute; and the human is hypotensive.

Ex. 3, PAR-VASO-0000230.

59. The named inventors on the face of the '239 patent are Matthew Kenney and Vinayagam Kannan.

60. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

61. Christina Bradley was the examiner of record during prosecution of the '239 patent at the PTO. Ex. 3, PAR-VASO-0000199.

### a. The Examiner Rejected the Pending Claims over the April 2014 Vasostrict® Label

62. On October 21, 2015, Examiner Bradley issued a Final Office Action rejecting all pending claims of the '877 Application as both anticipated and obvious over the April 2014 Vasostrict® Label. Ex. 25, PAR-VASO-0008326; *see also* Ex. 25, PAR-VASO-0008354.

63. At the time of the rejection, pending independent claim 16 recited:

16. A method of increasing blood pressure in a human in need thereof, the method comprising:

a. providing a pharmaceutical composition for intravenous administration comprising, in a unit dosage form: i) from about 0.01 mg/mL to about 0.07

27

mg/mL of vasopressin or a pharmaceutically-acceptable salt thereof; ii) chlorobutanol; iii) acetic acid; and iv) water, wherein the unit dosage form has a pH of 3.4 to 3.6;

b.   storing the unit dosage form at 2-8 °C; and

c.   administering the unit dosage form to the human;

wherein:

the administration provides to the human from about 0.01 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute to about 0.1 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute; and the human is hypotensive.

Ex. 25, PAR-VASO-0007064.

64.     In the October 21, 2015 Office Action, Examiner Bradley cited to and relied on various portions of the April 2014 Vasostrict® Label, including the description of the Vasostrict® formulation, its indication, and its method of administration, as follows:

The [April 2014 Vasostrict® Label] teaches a method to increase blood pressure in adults with vasodilatory shock (e.g. post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (section 1) comprising:

a) providing a pharmaceutical composition containing vasopressin for intravenous administration in a unit dosage form that contains vasopressin at 20 units/mL, chlorobutanol, NF 0.5% as a preservative, and water for Injection, and a pH adjusted with acetic acid to pH 3.4- 3.6 (section 11);

diluting the vasopressin unit dosage form with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration (section 2.1);

b) refrigerating the diluted solution for up to 24 hours (section 2.1); and

c) administering the vasopressin by intravenous route at a dose of 0.03 to 0.1 units/minute for post-cardiotomy shock ... or 0.01 to 0.07 units/minute for septic shock (section 2.2).

Ex. 25, PAR-VASO-0008326.

65.     Examiner Bradley further stated that "the [April 2014 Vasostrict® Label] teaches

all of the limitations of claim 16 except for the amount of vasopressin expressed in mg/ml.  In

contrast, the [April 2014 Vasostrict® Label] reports the amount as 20 units/ml and is silent on

how to convert from units/ml to mg/ml." *Id*.  The Examiner further stated that:

> In the instant case, the Examiner is shifting the burden to Applicant to provide for
> a conversion between the units/ml taught by the [April 2014 Vasostrict® Label]
> and the mg/ml recited in the instant claims. If the 20 units/ml disclosed in the [April
> 2014 Vasostrict® Label] falls within the claimed range, the claim is anticipated by
> the reference. If the 20 units/ml taught by the [April 2014 Vasostrict® Label]
> overlaps with or touches the claimed range, the claim is obvious over the reference.

Ex. 25, PAR-VASO-0008326-27.

66.     Because 20 units/ml of vasopressin falls within the "0.01 mg/mL to about 0.07

mg/mL" range in the then-pending claims of the '877 Application, Examiner Bradley's rejection

was that the [April 2014 Vasostrict® Label] anticipated pending claim 16 of the '877

Application.  Ex. 25, PAR-VASO-0008326-27.

67.     Examiner Bradley also stated in the October 21, 2015 Office Action that the April

2014 Vasostrict® Label disclosed the limitations of pending dependent claims 17-28 and 30 of

the '877 Application as well.  Ex. 25, PAR-VASO-0008327-28.

> **b.  The Applicants Sought to Overcome the Examiner's Rejection by
> Representing That the Named Inventors Invented the Subject
> Matter of the April 2014 Vasostrict® Label**

68.     The applicants sought to overcome Examiner Bradley's October 21, 2015

rejection by invoking the exception of Section 102(b)(1)(A).

69.     At all relevant times, Section 102(b)(1)(A) provided that:

(1) DISCLOSURES MADE 1 YEAR OR LESS BEFORE THE EFFECTIVE
FILING DATE OF THE CLAIMED INVENTION.-A disclosure made 1 year or
less before the effective filing date of a claimed invention shall not be prior art to
the claimed invention under subsection (a)(l) if –

(A) the disclosure was made by the inventor or joint inventor or by another who obtained the subject matter disclosed directly or indirectly from the inventor or a joint inventor.

70.    In support of this effort to overcome Examiner Bradley's rejection, on November 24, 2015, Par's prosecution counsel, Craig Kenesky, participated in an Applicant-Initiated Interview.  Ex. 25, PAR-VASO-0008404.

71.    Prior to the interview, Mr. Kenesky sent to Examiner Bradley two unexecuted declarations, purportedly prepared pursuant to 37 C.F.R. § l.130(a), from named inventor Vinayagam Kannan and from Michelle Bonomi-Huvala, Senior Vice President of Regulatory Affairs at Par Pharmaceutical.  Mr. Kenesky represented that the unexecuted declarations were designed to "explain how the FDA obtained the subject matter of the [April 2014 Vasostrict® Label] from the inventors."  Ex. 25, PAR-VASO-0008407-412; *see also, e.g.*, Ex. 25, PAR-VASO- 0008406.

72.    The unexecuted draft Kannan declaration stated that Mr. Kannan was employed by Par Sterile Products, LLC "[a]t the time of the invention."  Ex. 25, PAR-VASO-0008408 ¶ 2. Mr. Kannan's draft declaration also stated:

> I am inventor of the '877 Application and I am familiar with the contents and the pending claims.
>
> \*        \*        \*
>
> I have reviewed the Final Office Action of October 21st, 2015 (the "Office Action").  As I understand, the Office Action alleges that the FDA label for Vasostrict® (the "Label") qualifies as prior art against the pending claims under 35 U.S.C. § 102(a)(l).

Ex. 25, PAR-VASO-0008408-09 ¶¶ 3-4.

73.    Mr. Kannan's draft declaration further stated that, as part of his employment, he and Matthew Kenney "jointly invented the subject matter of the currently-pending claims" of the

'239 patent, and that he "forwarded the details of the joint invention to the regulatory team" at Par Sterile Products. Ex. 25, PAR-VASO-0008409 ¶ 6. Mr. Kannan then represented that Par's regulatory department "submitted the details of the joint invention to the FDA in the filings directed toward regulatory approval of the Vasostrict® product manufactured by" Par. Ex. 25, PAR-VASO-0008409 ¶ 6.

74. Mr. Kannan's draft declaration set forth various information from the April 2014 Vasostrict® Label that had been relied upon by Examiner Bradley in her October 21, 2015 Office Action as follows:

> The Label discloses part of the subject matter of the claims, including a method of increasing blood pressure in a hypotensive human. The Label recites that, "[v]asostrict is indicated to increase blood pressure in adults with vasodilatory shock who remain hypotensive . . . ." *Label*, page 1 (parentheticals omitted). The Label further recites a pharmaceutical composition for intravenous administration having 20 units of vasopressin per mL . . . ." *Label*, page 3. The Label further recites that the vasopressin formulation comprises "chlorobutanol [and] Water for Injection, USP adjusted with acetic acid to pH 3.4-3.6." *Label*, page 6. The Label recites the infusion rate of the claim by stating that "[f]or post-cardiotomy shock start with a dose of 0.03 units/minute. For septic shock, start with a dose of 0.01 units/minute." *Label*, page 3.

Ex. 22, PAR-VASO-0008409 ¶ 7. Mr. Kannan represented that "[t]he FDA obtained this information from me and the other joint inventors." *Id.*

75. Mr. Kannan's draft declaration went on to represent that "[t]he FDA obtained the subject matter disclosed in the Label directly from the regulatory team at PAR STERILE, who obtained the subject matter directly from the inventors. Thus, the FDA obtained the subject matter disclosed in the Label from the inventors." Ex. 25, PAR-VASO-0008409 ¶ 7.

76. The unexecuted draft declaration of Michelle Bonomi-Huvala stated:

> In my position at PAR PHARM, I direct and oversee regulatory filings to FDA on behalf of PAR CO. and its subsidiaries, including PAR STERILE. The regulatory

team at PAR STERILE reports to me, and I direct and oversee regulatory filings to the FDA made by that team.

I have reviewed the Final Office Action of October 21st, 2015 (the "Office Action"). As I understand, the Office Action alleges that the FDA label for Vasostrict® (the "Label") qualifies as prior art against the pending claims under 35 U.S.C. § 102(a)(l).

Ex. 25, PAR-VASO-0008411-12 ¶¶ 3-4.

77.     Ms. Bonomi-Huvala's draft declaration further represented that "the subject matter of the currently pending claims" was "jointly invented by Matthew Kenney and Vinayagam Kannan, while the inventors were employed at PAR STERILE."  Ex. 25, PAR-VASO-0008412 ¶ 5.

78.     The draft Bonomi-Huvala declaration also represented that the inventors of the '239 patent—Mr. Kannan and Matthew Kenney—"forwarded the details of the joint invention to the regulatory team at PAR STERILE," (Ex. 25, PAR-VASO-0008412 ¶ 6), who then submitted the information to the FDA for inclusion in the April 2014 Vasostrict® Label:

The FDA obtained the subject matter disclosed in the Label directly from a member of the regulatory team, who obtained the subject matter from the inventors. Thus, the FDA obtained the subject matter recited in the Label from the inventors.

Ex. 25, PAR-VASO-0008412 ¶ 7.

79.     According to an Interview Summary in the prosecution history for the '239 patent, during the November 24, 2015 Interview, Mr. Kenesky and Examiner Bradley discussed the exception under Section 102(b)(l)(A).  *See, e.g.*, Ex. 25, PAR-VASO_0008383 ("November 24, 2015 Interview Summary"); Ex. 25, PAR-VASO-0008406.  Examiner Bradley recommended including "an unequivocal statement" in the Kannan declaration that the inventors invented all of the subject matter relied upon in the rejection:

The Examiner stated that the declaration by Inventor Vinayagam Kannan clearly provides a reasonable explanation of how the subject matter in the reference was transferred by the Inventors to the FDA, thus explaining the presence of the FDA as an author of the reference. The Examiner recommended amending paragraph 7 to include a reference to all of the subject matter from the FDA reference relied upon in the rejection and an unequivocal statement that one or more joint inventors invented all of the subject matter relied upon, if possible.

Ex. 25, PAR-VASO-0008406.

80.    According to the November 24, 2015 Interview Summary, Mr. Kenesky, as the applicants' representative and prosecution counsel, "asserted that the Inventor is responsible for all of the subject matter in the FDA reference and would be able to make this statement." *Id.*

81.    ████████████████████████████████████████████████

████████████████████████████████████████████████

82.    Thereafter, on November 24, 2015, Mr. Kenesky submitted a Response to the October 21, 2015 Office Action along with executed declarations pursuant to 37 C.F.R. § l.130(a) from Mr. Kannan and Ms. Bonomi-Huvala.  These declarations attested that the subject matter of the April 2014 Vasostrict® Label relied upon by Examiner Bradley to reject the claims originated with, and was invented by, the named inventors, Mr. Kannan and Matthew Kenney. Ex. 25, PAR- VASO-0008379-387; *see also, e.g.*, Ex. 25, PAR-VASO-0008388-390 (executed declaration of Vinayagam Kannan, dated November 24, 2015); Ex. 25, PAR-VASO-0008391-392 (executed declaration of Michelle Bonomi-Huvala, dated November 24, 2015).

83.    Upon information and belief, the executed Kannan declaration submitted with the November 24, 2015 Response was amended following the November 24, 2015 Interview based on Examiner Bradley's recommendations "to include a reference to all of the subject matter from the FDA reference relied upon in the rejection and an unequivocal statement that one or more

joint inventors invented all of the subject matter relied upon." *See supra* ¶ 79.

84.     Specifically, the executed Kannan declaration as submitted stated as follows:

> The Label discloses part of the subject matter of the claims, including a method of increasing blood pressure in a hypotensive human. The Label recites that, "[v]asostrict is indicated to increase blood pressure in adults with vasodilatory shock who remain hypotensive . . . ." *Label*, page 1 (parentheticals omitted). The Label further recites "a pharmaceutical composition for intravenous administration having 20 units of vasopressin per mL . . . ." *Label*, page 3. The Label further recites that the vasopressin formulation comprises "Chlorobutanol [and] Water for Injection, USP adjusted with acetic acid to pH 3.4-3.6." *Label*, page 6. The Label recites the infusion rate of the claim by stating that "[f]or post-cardiotomy shock start with a dose of 0.03 units/minute. For septic shock, start with a dose of 0.01 units/minute." *Labe*l, page 3. The Label recites refrigeration of the diluted vasopressin for up to 24 hours. *Label*, page 1.

Ex. 25, PAR-VASO-0008389 ¶ 7.  The declaration further represented that "[t]he FDA obtained this information from me and Matthew Kenney, as we invented this subject matter." *Id.*

85.     Upon information and belief, the executed Bonomi-Huvala declaration submitted with the November 24, 2015 Response was also amended to clarify that the details of the joint invention were forwarded to Ms. Bonomi-Huvala's department. *Compare* Ex. 25, PAR-VASO-0008392 ¶ 6, *with* Ex. 25, PAR-VASO-0008412 ¶ 6.

86.     Both the Kannan declaration and the Bonomi-Huvala declaration included the following statement:

> I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that any willful false statements and the like so made are punishable by fine or imprisonment of not more than five (5) years, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent(s) issuing therefrom.

Ex. 25, PAR-VASO-0008390 ¶ 9; Ex. 25, PAR-VASO-0008392 ¶ 8.

87.     In the accompanying Response, prosecution counsel Kenesky represented that the Kannan and Bonomi-Huvala declarations "describe[] that the disclosure of the [April 2014 Vasostrict® Label] was obtained from the inventors of the present application."  Ex. 25, PAR-VASO-0008383.  Mr. Kenesky further asserted that the April 2014 Vasostrict® Label

> is not prior art under 35 U.S.C. § 102(a)(l) against the present invention based on the exception of 35 U.S.C. § 102(b)(l)(A). The disclosure was made by another (the FDA) less than one year before the effective filing date of the claimed invention. The FDA obtained the subject matter of the Label from the regulatory team at PAR STERILE, who received the subject matter from the inventors of the present application. Thus, the Label satisfies the provisions of 35 U.S.C.§ 102(b)(l)(A). Applicant respectfully requests withdrawal of the rejection because the claims have not been rejected over any eligible prior art.

Ex. 25, PAR-VASO-0008386.

88.     The November 24, 2015 Response relied solely on the Kannan and Bonomi-Huvala declarations to support the necessary elements of the Section 102(b)(l)(A) exception, disqualify the April 2014 Vasostrict® Label as prior art to the pending claims, and thereby overcome Examiner Bradley's final rejection of the pending claims.  Ex. 25, PAR-VASO-0008383-86.

### c. The Examiner Withdrew the Rejection Based on the Representations That the Named Inventors Invented the Subject Matter of the April 2014 Vasostrict® Label

89.     On January 11, 2016, in light of the representations made in the November 24, 2015 Response and accompanying Kannan and Bonomi-Huvala declarations, Examiner Bradley withdrew the final rejection of the pending claims over the April 2014 Vasostrict® Label:

> The declarations under 37 CFR l.130(a) filed November 24, 2015 are sufficient to overcome the rejection of claims 16-29 based upon FDA label for VASOSTRICT™ (NPL U PTO-892, published 4/2014). The declaration by Inventor Vanayagam [sic] Kannan includes an unequivocal statement that he and Matthew Kenney invented the subject matter disclosed in the FDA Label and relied upon in the rejection (¶ 6-7), and a reasonable explanation for the presence of the

FDA as an author of the prior art disclosure (¶ 6, 8). The declaration by Michelle Bonomi-Huvala supports the explanation that the subject matter in the prior art was invented by Vanayagam [*sic*] Kannan and Matthew Kenney and provided to the FDA as part of the regulatory filings (¶ 6-7). Accordingly, the rejection of claims 16-29 under 35 U.S.C. 102(a)(l) as anticipated by or, in the alternative, under 25 U.S.C. 103 as obvious over the FDA label for VASOSTRICT™ is withdrawn.

Ex. 25, PAR-VASO-0008419-20.

90.     Upon information and belief, the representation that the named inventors had invented the subject matter of the April 2014 Vasostrict® Label made in the November 24, 2015 Response and accompanying Kannan and Bonomi-Huvala declarations was the sole reason for Examiner Bradley's withdrawal of these rejections.

### d. The Declarations Submitted, and Representations Made, to Overcome the Examiner's Rejections over the April 2014 Vasostrict® Label Were False

91.     Upon information and belief, named inventors Vinayagam Kannan and Matthew Kenney, declarant Michelle Bonomi-Huvala, and prosecuting attorney Craig Kenesky knew that the executed Kannan and Bonomi-Huvala declarations, and Mr. Kenesky's representations based on them in the November 24, 2015 Response and the Applicant-Initiated Interview, were false.

92.     ███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████

93.     ███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████
███████████████████████████

36

94. ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████.

95. ████████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

██████████████████

████████████████████████████████████████████

███████████████

████████████████████████████████████████

96. ██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████



███████████████████████████████

████████████████████████████████████████

97. ████████████████████████████████████████

███████████████████████████████████████████



98. ███████████████████████████████████████████████

██████████████████████████████████████████████████

██████

█████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████

99.     No limitation on refrigeration storage of diluted vasopressin for up to 24 hours is found in the issued claims of the '239 patent.  Ex. 3, PAR-VASO-0000198 at 230-231.[4]

100.    ██████████████████████████████████████████

███████████████████████████████████████

---

[4] Indeed, no limitation on refrigerated storage of diluted vasopressin for up to 24 hours is found in the issued claims of the '526, '209, and '785 patents.  Ex. 2, PAR-VASO-0000112-13; Ex. 34, PAR-VASO-0000196-97; Ex. 35, PAR-VASO-0000313-14.



101.

102.



103.



*see also, e.g.*, Ex. 1, PAR-VASO_0000001 at 027.

105.

106.



As set forth above, refrigerated storage of diluted vasopressin for up to 24 hours is not a limitation in the issued claims of the '239 patent. *See supra* ¶ 99; *see also id.* ¶ 99 n.3.

107. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

108.     Specifically, contrary to Mr. Kannan's declaration, neither Mr. Kannan nor Mr. Kenney invented or contributed to at least the following subject matter of the April 2014 Vasostrict® Label relied upon in Examiner Bradley's October 21, 2015 rejection and subsequently recited in the Kannan Declaration:

- "[v]asostrict is indicated to increase blood pressure in adults with vasodilatory shock who remain hypotensive . . . ." Ex. 25, PAR-VASO-0008349 (April 2014 Vasostrict® Label at 1);

- "a pharmaceutical composition for intravenous administration having 20 units of vasopressin per mL. . . . ." Ex. 25, PAR-VASO-0008351 (April 2014 Vasostrict® Label at 3);

- "that the vasopressin formulation comprises 'Chlorobutanol [and] Water for Injection, USP adjusted with acetic acid to pH 3.4- 3.6.'" Ex. 25, PAR-VASO-0008354 (April 2014 Vasostrict® Label at 6); and

- "the infusion rate of the claim . . . that '[f]or post-cardiotomy shock start with a dose of 0.03 units/minute.  For septic shock, start with a dose of 0.01 units/ minute.'"  Ex. 25, PAR-VASO-0008351 (April 2014 Vasostrict® Label at 3).

42

Ex. 22, PAR-VASO-0008409 ¶ 7.

109.    Upon information and belief, Mr. Kannan knew that he and Mr. Kenney did not invent the subject matter of the April 2014 Vasostrict® Label relied upon by Examiner Bradley in her October 21, 2015 Office Action and set forth in the Kannan Declaration

110.    Upon information and belief, prosecuting attorney Craig Kenesky also knew that Mr. Kannan and Mr. Kenney did not invent the subject matter of the April 2014 Vasostrict® Label relied upon by Examiner Bradley in her October 21, 2015 Office Action and set forth in the Kannan Declaration.

111.    Upon information and belief, Michelle Bonomi-Huvala also knew that Mr. Kannan and Mr. Kenney did not invent the subject matter of the April 2014 Vasostrict® Label relied upon by Examiner Bradley in her October 21, 2015 Office Action and set forth in the Kannan Declaration

112.    Moreover, upon information and belief, the subject matter of the April 2014 Vasostrict® Label relied upon by Examiner Bradley in the October 21, 2015 Office Action and set forth in the Kannan Declaration was not forwarded to JHP's regulatory department by either Mr. Kannan or Mr. Kenney.

113.    

114.    The Bonomi-Huvala declaration did not identify any documents, communications,

43

or other basis to corroborate or demonstrate that the subject matter of the April 2014 Vasostrict®

Label was invented and forwarded to JHP's regulatory department by Mr. Kannan and/or Mr.

Kenney.

115. ███████████████████████████████████████████

█████████████████████████████████████ Therefore, Mr.

Kannan could not have forwarded the subject matter of the April 2014 Vasostrict® Label relied

upon by Examiner Bradley in her October 21, 2015 Office Action to JHP's regulatory

department for inclusion in the April 2014 Vasostrict® Label.

116. ███████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████████

██████████████

████████████████████████

████████████████████████████████████

████████████████████████

████████████████████████

117. Therefore, Mr. Kenney could not have forwarded the subject matter of the April

2014 Vasostrict® Label relied upon by Examiner Bradley in the October 21, 20-15 Office Action

to JHP's regulatory department for inclusion in the April 2014 Vasostrict® Label. ████████

████████████████████████████████████████████

████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

118.     Therefore, Ms. Bonomi-Huvala's declaration that the named inventors "forwarded the details of the joint invention to the regulatory team at PAR STERILE" was false.  *See* Ex. 25, PAR-VASO-0008412 ¶ 6.

119.     Upon information and belief, Ms. Bonomi-Huvala knew that Mr. Kannan and Mr. Kenney did not forward the subject matter of the April 2014 Vasostrict® Label to JHP's regulatory department.

120.     Upon information and belief, Craig Kenesky also knew that Mr. Kannan and Mr. Kenney did not forward the subject matter of the April 2014 Vasostrict® Label to JHP's regulatory department.

121.     ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

122.     Upon information and belief, prosecuting attorney Mr. Kenesky was aware and understood that to disqualify the April 2014 Vasostrict® Label as prior art, it was necessary to show that Mr. Kannan and/or Mr. Kenney had actually invented all the subject matter described in the April 2014 Vasostrict® Label relied upon by Examiner Bradley in the October 21, 2015 Office Action.

123.     Upon information and belief, despite his knowledge that neither Mr. Kannan nor Mr. Kenney invented all of the subject matter described in the April 2014 Vasostrict® Label and relied upon by Examiner Bradley in the October 21, 2015 Office Action, Mr. Kenesky

nevertheless knowingly submitted the unmistakably false Kannan and Bonomi-Huvala declarations to the PTO to overcome Examiner Bradley's anticipation and obviousness rejections over the April 2014 Vasostrict® Label.

> ### e. The False Declarations Submitted, and Representations Made, to Overcome the Examiner's Rejections over the April 2014 Vasostrict® Label Were Material to the Prosecution of the '239 patent

124. Upon information and belief, Craig Kenesky, Vinayagam Kannan, and Michelle Bonomi-Huvala have never advised the PTO about the false representations in the Kannan and Bonomi-Huvala declarations submitted during prosecution of the '239 patent.

███████████████████████████████████

125. Upon information and belief, Craig Kenesky has never advised the PTO about the false representations made in the November 24, 2015 Response submitted during prosecution of the '239 patent.

126. Upon information and belief, Craig Kenesky, Vinayagam Kannan, and Michelle Bonomi-Huvala have never cured their misconduct.

127. Craig Kenesky, Vinayagam Kannan, and Michelle Bonomi-Huvala engaged in affirmatively egregious misconduct by filing unmistakably false declarations, which is necessarily material to the prosecution of the '239 patent. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1292-93 (Fed. Cir. 2011) ("When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material.").

128. Moreover, in rejecting the then-pending claims of the '877 Application, Examiner Bradley found that the April 2014 Vasostrict® Label disclosed each and every limitation of at

46

least claims 16, 17-28, and 30, and therefore anticipated them. *See supra* Part B.1.a.; Ex. 25, PAR- VASO-0008327-28.

129.     Upon information and belief, Examiner Bradley withdrew the rejection of the then-pending claims over the April 2014 Vasostrict® Label pursuant to Section 102(b)(l)(A) based solely on the false Kannan and Bonomi-Huvala declarations

130.     The April 2014 Vasostrict® Label also discloses, either explicitly or inherently, additional limitations that were added to the claims that ultimately issued with the '239 patent after Examiner Bradley had disqualified the Label as prior art.

131.     For example, the April 2014 Vasostrict® Label disclosed "diluting the unit dosage form in a diluent to provide a concentration from about 0.1 units/mL to about 1 unit/mL of vasopressin":

Dilute Vasostrict in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration.

**Table 1 Preparation of diluted solutions**

| Fluid restriction? | Final concentration | Mix | |
|---|---|---|---|
| | | Vasostrict | Diluent |
| No | 0.1 units/mL | 2.5 mL(S0 units) | 500mL |
| Yes | 1 unit/mL | 5 mL (100 units) | I00mL |

\*        \*        \*

For post-cardiotomy shock, start with a dose of 0.03 units/minute. For septic shock, start with a dose of0.01 units/minute. . . . The maximum dose for post-cardiotomy shock is 0.1 units/minute and for septic shock 0.07 units/minute.

Ex. 25, PAR-VASO-0008351.

132.    The April 2014 Vasostrict® Label also disclosed "administering the diluted unit dosage form to the human by intravenous administration":

> Dilute Vasostrict with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration.

Ex. 25, PAR-VASO-0008349.

133.    The April 2014 Vasostrict® Label further disclosed "the unit dosage form has a pH of 3.5 to 4.1":

> The 1 mL solution contains vasopressin 20 units/mL, chlorobutanol, NF 0.5% as a preservative, and Water for Injection, USP adjusted with acetic acid to pH 3.4 - 3.6.

Ex. 25, PAR-VASO-0008354.  Indeed, the pH range taught by the April 2014 Vasostrict® Label anticipates the broader pH range claimed by the '239 patent.  *See, e.g., Titanium Metals Corp. v. Banner,* 778 F.2d 775, 782 (Fed. Cir. 1985) ("It is also an elementary principle of patent law that when, as by a recitation of ranges or otherwise, a claim covers several compositions, the claim is 'anticipated' if one of them is in the prior art.").

134.    Thus, the April 2014 Vasostrict® Label disclosed each and every limitation of claim 1 of the '239 patent as issued, either explicitly or inherently.

135.    As set forth above, the Examiner also rejected pending claims 17-28 over the April 2014 Vasostrict® Label during prosecution.  *See supra* ¶ 67.  Claims 2-13 of the '239 patent are not substantively distinct from claims 17-28, which were rejected by the Examiner during prosecution. *Compare* Ex. 25, PAR-VASO-0008381-382, *with* Ex. 3, PAR-VASO-0000229-30 ('239 patent).

136.    Therefore, the April 2014 Vasostrict® Label disclosed each and every limitation of claims 2-13 of the '239 patent as issued, either explicitly or inherently.

137.    The April 2014 Vasostrict® Label also disclosed limitations of the dependent

48

claims that were added after the Label was disqualified as prior art.

138. For example, the April 2014 Vasostrict® Label disclosed "discarding a vial containing the unit dosage form at least 48 hours after a first puncture of the vial": "[d]iscard vial after 48 hours after first puncture." Ex. 25, PAR-VASO-0008356; *see also* Ex. 3, PAR-VASO-0000230 ('239 patent claim 14).

139. As set forth above, the April 2014 Vasostrict® Label also disclosed diluting the unit dosage form, "wherein the diluent is 0.9% saline" and/or "wherein the diluent is 5% dextrose in water." *See supra* ¶ 132; *see also* Ex. 3, PAR-VASO-0000230 ('239 patent claims 16 and 17).

140. The April 2014 Vasostrict® Label also disclosed that "the unit dosage form is not lyophilized": "Vasostrict is a sterile, aqueous solution of synthetic arginine vasopressin for intravenous administration." Ex. 25, PAR-VASO-0008354; Ex. 3, PAR-VASO-0000230 ('239 patent claim 18)

141. The April 2014 Vasostrict® Label further disclosed that "the unit dosage form is not frozen": "[s]tore between l5°C and 25°C (59°F and 77°F). Do not freeze." Ex. 25, PAR-VASO-0008356; Ex. 3, PAR-VASO-0000230 ('239 patent claim 19).

142. Thus, the April 2014 Vasostrict® Label disclosed each and every limitation of at least dependent claims 14 and 16-19 of the '239 patent as issued, either explicitly or inherently.

143. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

144. ████████████████████████████

145. Under these circumstances, the false Kannan and Bonomi-Huvala declarations, and the false representations in the November 24, 2015 Response, were necessarily material to the patentability of the '239 patent.

   **f. The False Declarations Were Submitted, and Representations Were Made, to Overcome the Examiner's Rejections over the April 2014 Vasostrict® Label with Intent to Deceive the Patent Office**

146. Under the circumstances set forth above, the only reasonable inference is that Craig Kenesky, Vinayagam Kannan, and Michelle Bonomi-Huvala submitted the unmistakably false Kannan and Bonomi-Huvala declarations, and made the unmistakably false representations in the November 24, 2015 Response, with an intent to deceive the PTO.

147. As set forth above, the Kannan and Bonomi-Huvala declarations were false. Each declaration falsely represented that Vinayagam Kannan and Matthew Kenney had invented the cited subject matter of the April 2014 Vasostrict® Label and submitted that joint invention to the regulatory department at Par, who in turn provided it to the FDA, resulting in the April 2014 Vasostrict® Label. Vinayagam Kannan and Matthew Kenney, however, did not invent the subject matter of the cited subject matter of the April 2014 Vasostrict® Label or provide the relevant subject matter to Par's regulatory department.

148. The false Kannan and Bonomi-Huvala declarations and the related statements in the corresponding Office Action Response were highly material to the prosecution of the '239 patent because their representations that Vinayagam Kannan and Matthew Kenney invented the

cited subject matter of the April 2014 Vasostrict® Label were the sole reason the Examiner withdrew the anticipation and obviousness rejections of the pending claims over that reference. Had the April 2014 Vasostrict® Label not been disqualified as prior art, the claims of the '239 patent would not have issued.

149.     Vinayagam Kannan, Craig Kenesky, and Michelle Bonomi-Huvala were each aware of the materiality of these false representations. As set forth above, each of the Kannan and Bonomi-Huvala declarations stated unequivocally that each affiant was aware of the Examiner's final rejection of the pending claims over the April 2014 Vasostrict® Label. Further, Craig Kenesky discussed the final rejection of the pending claims over the April 2014 Vasostrict® Label and how these declarations should be worded in order to defeat that rejection in an interview with the Examiner.

150.     ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ As stated above, none of these individuals has corrected or attempted to correct the material falsehoods submitted during prosecution of the '239 patent.

151.     Examiner Bradley had no ability to independently examine the facts of the Kannan and Bonomi-Huvala declarations because they relied on research and development and communications that were internal and confidential to Par.

### 2. The Submission of the False Kannan and Bonomi-Huvala Declarations and the False Statements Made During Prosecution of the '239 patent Tainted the Prosecution of the '526, '209,'785, and '223 patents

152.     The applications for each of the '526, '209,'785, '223 patents were filed after Examiner Bradley had disqualified the April 2014 Vasostrict® Label during prosecution of the '239 patent.

153.    The '526, '209,'785, and '223 patents, like the '239 patent, each claim priority to the same parent application, the '499 Application. *See, e.g.*, Ex. 2, PAR-VASO-0000035; Ex. 34, PAR-VASO-0000115; Ex. 39, PAR-VASO-0000233.

154.    The '526, '209,'785, and '223 patents are each continuations-in-part of the '239 patent. *See, e.g.*, Ex. 2, PAR-VASO-0000035; Ex. 34, PAR-VASO-0000115; Ex. 35, PAR-VASO-0000233.

155.    Like the '239 patent, both Vinayagam Kannan and Matthew Kenney are named as inventors on each of the '526, '209,'785, and '223 patents.  *See, e.g.,* Ex. 2, PAR-VASO-0000035; Ex. 32 PAR-VASO-0000115; Ex. 35, PAR-VASO-0000233.

156.    ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

157.    As with the '239 patent, Christina Bradley was the examiner of record during prosecution of each of the '526, '209,'785, and '223 patents.  Ex. 3, PAR-VASO-0000199; Ex. 34, PAR-VASO-0000115; Ex. 35, PAR-VASO-0000233.

158.    The '526, '209,'785, and '223 patents each share overlapping claim elements with the '239 patent.  Ex. 2, PAR-VASO-0000112-13; Ex. 34, PAR-VASO-0000196-97; Ex. 35, PAR- VASO-0000313-14.

159.    For example, the '526 patent, like the '239 patent, claims administering a vasopressin formulation comprising: (1) about 0.01 to about 0.07 mg/mL vasopressin; (2) acetic acid; and (3) water.  *See, e.g.,* Ex. 2, PAR-VASO-0000112-13.  The '526 patent recites a pH of 3.8, which falls within the pH range of 3.5 to 4.1 claimed in the '239 patent. *See, e.g.*, *id.*  The '526 patent recites the same rate of administration as the '239 patent: 0.01 to 0.1 units of

52

vasopressin per minute. *See, e.g.*, *id.* The '526 patent, like the '239 patent, requires that the human be hypotensive. *See, e.g.*, *id.*

160. The '209 patent, like the '239 patent, claims administering a vasopressin formulation comprising about 0.01 to about 0.07 mg/mL vasopressin. *See, e.g.*, Ex. 34, PAR-VASO-0000196-97. The '209 patent recites a pH of 3.7-3.9, which falls within the pH range of 3.5 to 4.1 claimed in the '239 patent. *See, e.g.*, *id.* The '209 patent recites the same rate of administration as the '239 patent: 0.01 to 0.1 units of vasopressin per minute. *See, e.g.*, *id.* The '209 patent, like the '239 patent, requires that the human be hypotensive. *See, e.g.*, *id.*

161. The '785 patent, like the '239 patent, claims a vasopressin formulation comprising about 0.01 to about 0.07 mg/mL vasopressin. *See, e.g.*, Ex. 35, PAR-VASO-0000313-14. The '785 patent recites a pH of 3.7-3.9, which falls within the pH range of 3.5 to 4.1 claimed in the '239 patent. *See, e.g.*, *id.*

162. The '223 patent, like the '239 patent, claims a vasopressin formulation comprising about 0.01 to about 0.07 mg/mL vasopressin. *See, e.g.*, Ex. 4, PAR-VASO-0000420. The '223 patent recites a pH of about 3.7 to about 3.9, which falls within the pH range of 3.5 to 4.1 claimed in the '239 patent. *See, e.g.*, *id.* The '223 patent recites the same rate of administration as the '239 patent: 0.01 to 0.1 units of vasopressin per minute. *See, e.g.*, *id.* The '223 patent, like the '239 patent, requires that the human be hypotensive. *See, e.g.*, *id.*

163. The '526, '209,'785, and 223 patents are directly and necessarily related to the '239 patent.

164. The prosecutions of the '526, '209,'785, and '223 patents are directly and necessarily related to the prosecution of the '239 patent.

### a. The Prosecution of the '526 and '478 Patents

165. The application for the '478 patent was filed at the PTO on May 20, 2015, as U.S. Application No. 14/717,882 (the "'882 Application"). The '882 Application is a continuation of the '499 Application. The '478 patent purports to claim priority to the '499 Application.

166. The application for the '526 patent was filed at the PTO on October 10, 2016, as U.S. Application No. 15/289,640 (the "'640 Application"). The '640 Application is a continuation-in-part of the '877 Application (the '239 patent), which is a continuation of the '499 Application. The '526 patent, like the '239 patent, purports to claim priority to the '499 Application.

167. The named inventors on the face of the '526 and '478 patents are Matthew Kenney, Vinayagam Kannan, Sunil Vandse, and Suketu Sanghvi.

168. Claim 1 of the '478 patent recites a method of increasing blood pressure in a human in need thereof by administering vasopressin:

1. A method of increasing blood pressure in a human in need thereof, the method comprising administering to the human a unit dosage form, wherein the unit dosage form consists essentially of:

    a. from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically-acceptable salt thereof;

    b. 10 nM acetate buffer; and

    c. water.

  wherein:
    the unit dosage form has a pH of 3.8;

    the administration provides to the human from about 0.01 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute to about 0.1 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute; and

wherein the human is hypotensive.

Ex. 1, PAR-VASO-0000033.

169. Claim 1 of the '526 patent, like the '239 patent, recites a method of increasing

blood pressure in a human in need thereof by administering vasopressin:

1. A method of increasing blood pressure in a human in need thereof, the method comprising:

a) providing a pharmaceutical composition for intravenous administration comprising: i) from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically-acceptable salt thereof; ii) acetic acid; and iii) water,

wherein the pharmaceutical composition has a pH of 3.8.

b) storing the pharmaceutical composition at 2-8° C. for at least 4 weeks; and

c) intravenously administering the pharmaceutical composition to the human,

wherein the administration provides to the human from about 0.01 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute to about 0.1 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute,

wherein the human is hypotensive,

wherein the pharmaceutical composition exhibits less than about 5% degradation after storage at 2-8° C. for about four weeks.

Ex. 2, PAR-VASO-0000112-13

170. ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

171. Christina Bradley was the examiner of record during prosecution of the '526 and

55

'478 patents at the PTO. Ex. 2, PAR-VASO-0000034 at 035; Ex. 35., PAR-VASO-0000001 at 002. Christina Bradley is the same examiner who prosecuted the '239 patent. Ex. 3, PAR-VASO-0000198 at 199; Ex. 1, PAR-VASO-0000001 at 002.

### i. The Examiner Rejected the Pending Claims over Treschan and Pharmaceutical Partners of Canada

172. During prosecution of the '478 patent, Examiner Bradley rejected the pending claims as obvious over Pharmaceutical Partners of Canada, *Vasopressin Injection*, USP (2009) ("PPC") in view of Treschan & Peters, *The Vasopressin System: Physiology & Clinical Strategies*, 105 Anesthesiology 599-612 (2006) ("Treschan"), among other references.

173. With respect to PPC, Examiner Bradley stated that:

Pharmaceutical Partners of Canada teaches that Vasopressin Injection, USP is a sterile, nonpyrogenic solution of synthetic vasopressin of the posterior pituitary gland. It is substantially free from the oxytocic principle and is standardized to contain 20 pressor units posterior structural formula is identical to instant SEQ ID NO: 1. Each mL contains 20 USP vasopressin units, chlorobutanol (anhydrous) 5 mg as preservative, water for injection q.s. glacial acetic acid and/or sodium hydroxide for pH adjustment (2.5-4.5).

Ex. 40, PAR-VASO-0002250-251.

174. Examiner Bradley further stated that:

Pharmaceutical Partners of Canada teaches a broader range of 2.5-4.5 which encompasses the claimed pH 3.8. MPEP § 2144.05 states that "In the case where the claimed ranges 'overlap or lie inside ranges disclosed by the prior art' a prima facie case of obviousness exists. In re Wertheim, 541 F.2d 257, 191 USPQ 90 (CCPA 1976); In re Woodruff, 919 F.2d 1575, 16 USPQ2d 1934 (Fed. Cir. 1990)." Therefore, the instantly claimed pH of 3.75-3.85 is prima facie obvious in view of the broader prior art range 2.5-4.5.

Ex. 40, PAR-VASO-0002251.

175. Upon information and belief, PPC—which discloses a pH range of 2.5 to 4.5 for a vasopressin composition—is the only prior art reference cited by the Examiner that discloses the

pH of a vasopressin composition.

176. In the only Office Action entered during the prosecution of the '526 patent, on February 22, 2017, Examiner Bradley rejected the pending claims as obvious under Section 103 in view of Treschan & Peters, *The Vasopressin System: Physiology & Clinical Strategies*, 105 Anesthesiology 599-612 (2006) ("Treschan"), and Pharmaceutical Partners of Canada, *Vasopressin Injection*, USP (2009) ("PPC"), among other references. Ex. 41, PAR-VASO-0004767-70.

177. Examiner Bradley stated that Treschan and PPC taught all of the elements of pending claim 16 except the claimed refrigerated storage conditions, which she found obvious in view of other art of record. Ex. 41, PAR-VASO-0004767-770.

178. With respect to PPC, Examiner Bradley stated that:

Pharmaceutical Partners of Canada teaches that Vasopressin Injection, USP is a sterile, nonpyrogenic solution of synthetic vasopressin of the posterior pituitary gland. It is substantially free from the oxytocic principle and is standardized to contain 20 pressor units posterior structural formula is identical to instant SEQ ID NO: 1. Each mL contains 20 USP vasopressin units, chlorobutanol (anhydrous) 5 mg as preservative, water for injection q.s. glacial acetic acid and/or sodium hydroxide for pH adjustment (2.5-4.5).

Ex. 41, PAR-VASO-0004767-68.

179. Upon information and belief, PPC—which discloses a pH range of 2.5 to 4.5 for a vasopressin composition—is the only prior art reference cited by the Examiner that discloses the pH of a vasopressin composition.

180. Regarding refrigerated storage of vasopressin, Examiner Christina Bradley found:

It would have been obvious to add the refrigeration step included in the instant claims in order to provide long-term storage stability, as taught by Scott (a minimum target shelf life of two years, p. 47, col 3), and as exemplified for liraglutide (up to 30 months, p. 20) and triptorelin acetate (up to 3 years, p. 4). There is a reasonable expectation of success given that the prior art discloses assays for

measuring the stability of vasopressin formulations, and that it is within the ordinary skill of the art to optimize storage temperature to improve stability of peptide pharmaceuticals, as evidenced by Scott, and Chang et al. The rationale to support a conclusion that the claim would have been obvious is that "a method of enhancing a particular class of devices (methods, or products) has been made part of the ordinary capabilities of one skilled in the art based upon the teaching of such improvement in other situations. One of ordinary skill in the art would have been capable of applying this known method of enhancement to a "base" device (method, or product) in the prior art and the results would have been predictable to one of ordinary skill in the art."

Ex. 41, PAR-VASO-0004769-70 (citation omitted).

181.    Relatedly, with respect to percent degradation during refrigerated storage,

Examiner Bradley found:

Finally, the clause "wherein the unit dosage form exhibits less than about 5% degradation after storage at 2-8° C for about four weeks", does not change the scope of the claims because it does not require an additional active step. Rather, this new clause recites a property of the product utilized in the claimed method that is obvious over the prior art for the reasons presented above. The fact that applicant has recognized another advantage which would flow naturally from following the suggestion of the prior art cannot be the basis for patentability when the differences would otherwise be obvious.

Ex. 41, PAR-VASO-0004771.

### ii.    The Applicants Sought to Overcome the Examiner's Rejection by Asserting Criticality of pH 3.8

182.    In response to the obviousness rejections during prosecution of the '478 patent, the applicants submitted two declarations from named inventor Sunil Vandse purportedly demonstrating the stability of vasopressin formulations across a range of pH from 2.5 to 4.5.  Ex. 40, PAR-VASO_0001039-46; Ex. 40, PAR-VASO_0002304-17.  The applicants argued in a January 22, 2016 Response to Office Action that "[t]he results obtained at pH 3.8 provided the greatest stability to a vasopressin formulation and demonstrate the criticality of this pH for the stability of vasopressin."  Ex. 40, PAR-VASO-0002288-90.  In a February 2, 2016 Office

Action, Examiner Bradley considered the Vandse declarations, but maintained her obviousness rejection finding that they were insufficient to establish the surprising criticality of pH 3.8 asserted by the applicants. Ex. 40, PAR-VASO-0002250-253.

183. On March 31, 2016, in support of their response to Examiner Bradley's rejection over PPC, the applicants submitted a declaration from named inventor Vinayagam Kannan purporting to establish the criticality of a pH of 3.8 ("Kannan Criticality Declaration"). The Kannan Criticality Declaration relied on the data set forth in the two previously-submitted declarations from Sunil Vandse. Ex. 41, PAR-VASO_0004878-910; Ex. 40, PAR-VASO-0002580-590; *see also, e.g.,* Ex. 40, PAR-VASO_0001039-46; Ex. 40, PAR-VASO_0002304-17.

184. With respect to the '526 patent, on April 3, 2017, Par's prosecution counsel, Craig Kenesky and Trisha Agrawal, and Examiner Bradley participated in an Applicant-Initiated Interview. Ex. 41, PAR-VASO-0004851. The Interview Summary states that the "Applicant proposed adding a limitation ... requiring the pH of the composition to be 3.8." Ex. 41, PAR-VASO-0004851. Thereafter, the applicants amended pending claim 16 to recite "wherein the pharmaceutical composition has a pH of 3.8." Ex. 41, PAR-VASO-0004863. No other claims or limitations were added. *See id*.

185. In response to the Examiner's rejections under Section 103, the applicants argued that the pH limitation of 3.8 was not taught, or suggested, by the art of record:

> The criticality of pH 3.8 in stabilizing vasopressin, while providing the lowest amount of impurities, is not evident from the disclosures of PPC, Treschan, Scott, Chang, the Liraglutide Label, or the Triptorelin Label because Treschan, Scott, Chang, the Liraglutide Label, and the Triptorelin Label do not disclose a pH for vasopressin storage, and PPC provides no guidance for the selection of a specific pH from the disclosed range of 2.5-4.5.

59

Ex. 41, PAR-VASO-0004869.

186. In support of their response to Examiner Bradley's rejection over Treschan and PPC, the applicants again submitted the Kannan Criticality Declaration. Ex. 41, PAR-VASO_0004878-910

187. The Kannan Criticality Declaration stated:

I am named as an inventor of the '882 Application, and I am familiar with the contents and the pending claims. I have reviewed the Non-Final Office Action of February 2, 2016 (the "Office Action"), and I understand the nature of the rejections therein. As I understand, the pending claims are rejected as allegedly being obvious over Pharmaceutical Partners of Canada Inc. (Vasopressin Injection, USP. June 2009; "PPC") in view of Treschan (Anethesiology *[sic]* Volume 105, No. 3. September 2006, pages 599-612; "Treschan"), Amorij et al (US 201 1/0237508; "Amorij"), Hong et al. (US 2013/01 1 523 1; "Hong"), Harris et al (US 5,482,931, "Harris"), and Puri et al. (US 2006/0293243; "Puri").

Ex. 41, PAR-VASO-0004878 ¶ 2.

188. The Kannan Criticality Declaration reported assay values—a measure of the amount of vasopressin in the formulation—and total impurity levels for each of these formulations at an initial time point and after storage for four weeks at either 25°C or 40°C. Ex. 41, PAR VASO-0004880 ¶ 7.

189. The Kannan Criticality Declaration stated that "[a]t 25 °C, pH 3.7 provided the highest stability for vasopressin" and that "[a]t 40 °C, pH 3.6 and 3.8 provided similar stability for vasopressin." Ex. 41, PAR-VASO-0004880 ¶¶ 10-11.

190. The Kannan Criticality Declaration concluded that a vasopressin composition at pH 3.8 provided lower levels of impurities after storage for four weeks 25°C and 40°C than other pH values. Ex. 41, PAR-VASO-0004881 ¶ 12.

191. The Kannan Criticality Declaration informed the Examiner that "normalization is a standard technique used by analytical chemists that allows direct comparison between two data

sets by removing systematic differences due to, for example, the starting amount of a sample." Ex. 41, PAR-VASO-0004882 ¶ 15. The Kannan Criticality Declaration averred that normalization of assay data permits a "direct comparison in the difference in vasopressin assay over time was possible without regard to the starting assay amount." *Id.*

192. The Kannan Criticality Declaration represented that "pH was the only variable not normalized." Ex. 41, PAR-VASO-0004882-83 ¶ 16. On that basis, the Kannan Criticality Declaration "conclude[d] that the differences in the assay (% label claim; vasopressin remaining) and % total impurities results for each formulation were attributable to changes in pH." *Id.*

193. On May 12, 2017, Examiner Bradley allowed the claims on the basis that the applicants had established "criticality of pH 3.8" over the pH range 2.5 to 4.5 disclosed in the PPC reference. Ex. 41, PAR-VASO-0005382. In the Notice of Allowance, Examiner Bradley stated that:

> The claims are allowable over the prior art of record in view of the amendment to claim 16 filed May 2, 2017, that requires that the pharmaceutical composition has a pH of 3.8. The criticality of pH 3.8 is established in declarations filed under 37 CFR 1.132 by Sunil Vandse on August 14, 2015, and January 22, 2016, and by Vinayagam Kannan on March 31, 2016, in Application No. 14/717,882. A copy of each declaration was filed in the instant case on May 2, 2017. In addition, the declaration filed under 37 CFR 1.132 by Vinayagam Kannan on May 2, 2017, establishes that the results presented in the previous Vandse and Kannan declarations are applicable to the refrigeration conditions required by the instant claims.

*Id.* Examiner Bradley did not cite any additional arguments made by the applicants in allowing the claims that issued as the '526 patent. *See id.*

194. The alleged criticality of pH 3.8 for a vasopressin composition in view of a pH range of 2.5 to 4.5 is therefore the sole cited reason the claims of the '526 patent issued. *See, e.g.,* Ex. 41, PAR-VASO-0005382.

## b. The Prosecution of the '209 and '785 Patents

195. The application for the '209 patent was filed at the PTO on February 7, 2017, as U.S. Application No. 15/426,693 (the "'693 Application"). The '693 Application is a continuation-in-part of the '640 Application (the '526 patent), which is a continuation-in-part of the '877 Application (the '239 patent), which is a continuation of the '499 Application. The '209 patent, like the '239 patent, purports to claim priority to the '499 Application.

196. The application for the '785 patent was also filed at the PTO on February 7, 2017, as U.S. Application No. 15/426,703 (the "'703 Application"). The '703 Application is a continuation-in-part of the '640 Application (the '526 patent), which is a continuation-in-part of the '877 Application (the '239 patent), which is a continuation of the '499 Application. The '785 patent, like the '239 patent, purports to claim priority to the '499 Application.

197. The named inventors on the face of the '209 and '785 patents are Matthew Kenney, Vinayagam Kannan, Sunil Vandse, and Suketu Sanghvi.

198. Claim 1 of the '209 patent, like the '239 patent, recites a method of increasing blood pressure in a human in need thereof by administering vasopressin:

1. A method of increasing blood pressure in a human in need thereof, the method comprising administering to the human a unit dosage form, wherein the unit dosage form comprises from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically acceptable salt thereof, wherein:

    the unit dosage form has a pH of 3.7-3.9;

    the unit dosage form further comprises impurities that are present in an amount of 0.9% - 1.7%, wherein the impurities have from about 85% to about 100% sequence homology to SEQ ID NO.: I;

    the administration provides to the human from about 0.01 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute to about 0.1 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute; and

the human is hypotensive.

Ex. 37, PAR-VASO-0000196.

199. Claim 1 of the '785 patent claims a vasopressin pharmaceutical composition:

1. A pharmaceutical composition comprising, in a unit dosage form, from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically-acceptable salt thereof, wherein the unit dosage form further comprises impurities that are present in an amount of 0.9% to 1.7%, wherein the impurities have from about 85% to about 100% sequence homology to SEQ ID NO.: 1, and wherein the unit dosage form has a pH of 3.7-3.9.

Ex. 35, PAR-VASO-0000313.

200. ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

201. Christina Bradley was the examiner of record during prosecution of the '209 and '785 patents at the PTO. Ex. 34, PAR-VASO-0000115 ('209 patent); Ex. 35, PAR-VASO-0000233 ('785 patent). Christina Bradley is the same examiner who prosecuted the '239 patent. Ex. 1. PAR-VASO-0000199.

202. On February 27, 2017, the applicants submitted a preliminary amendment to the '209 patent application to present new claims 16-35. Ex. 42, PAR-VASO-0005405-09. The applicants also submitted a preliminary amendment to the '785 patent application to present new claims 16-32. Ex. 43, PAR-VASO-0009344-347 (February 27, 2017 Preliminary Amendment). Claim 16 of both the '209 and '785 patent applications recited, *inter alia*, a unit dosage form with a pH of 3.75 to 3.85. Ex. 42, PAR-VASO-0005405 ('209 patent); Ex. 43, PAR-VASO-0009344 ('785 patent).

203. In the only Office Action entered during the prosecution of the '209 and '785 patents, on March 29, 2017, Examiner Bradley rejected the pending claims under Section 103 in view of PPC and Treschan, among other references, as evidenced by the April 2014 Vasostrict® Label. Ex. 42, PAR-VASO-0005732-735 ('209 patent); Ex. 43, PAR-VASO-0009649-651 ('785 patent).

204. Examiner Bradley relied on the April 2014 Vasostrict® Label as "evidence that 1 mg is equivalent to 530 units of vasopressin. Therefore, the composition taught by [PPC] contains 0.038 mg/ml vasopressin, which falls within the claimed range (this is an evidentiary reference and does not need to be prior art)." Ex. 42, PAR-VASO-0005734 ('209 patent); Ex. 43, PAR- VASO-0009650 ('785 patent). Upon information and belief, this indicates that Examiner Bradley believed, based on the declarations submitted during prosecution of the '239 patent, that she could not rely on the April 2014 Vasostrict® Label as prior art against all of the Patents-in-Suit.

205. Examiner Bradley then stated that the pH of 3.75 to 3.85 was *prima facie* obvious in view of the pH range of 2.5 to 4.5 disclosed in the PPC reference. Ex. 42, PAR-VASO-0005734-735 ('209 patent); Ex. 43, PAR-VASO-0009650 ('785 patent).

206. On June 21, 2017, Par's prosecution counsel, Trisha Agrawal and Craig Kenesky, and Examiner Bradley participated in an Applicant-Initiated Interview. Ex. 42, PAR-VASO-0006429 ('209 patent); Ex. 43, PAR-VASO-0010342 ('785 patent).

207. The Interview Summary states that the "Applicant proposed amending claim 16 by deleting the pH limitation, and requiring that the unit dosage form 'further comprises impurities that are present in an amount of 0.5%-6%, wherein the impurities have from about 85% to about 100% sequence homology to SEQ ID NO: l.'" Ex. 42, PAR-VASO-0006429 ('209

patent); Ex. 43, PAR-VASO-0010342 ('785 patent). The Interview Summary also states that the

"Applicant argued that none of the cited references require that the formulation comprise

impurities of the claimed structure at the claimed amount." Ex. 42, PAR-VASO-0006429 ('209

patent); Ex. 43 PAR-VASO-0010342 ('785 patent).

208.    The Interview Summary then states that Examiner Bradley "disagreed" with the

applicants, arguing that:

> [T]he composition in Pharmaceutical Partners of Canada meets all of the structural
> requirements of the amended claim except for the property that the formulation
> comprise a particular degradation product at a particular concentration. The
> Examiner argued that this degradation product would form through the normal
> storage and handling of the prior art composition. The Examiner stated that a
> rejection under 35 U.S.C. 103 would be made, shifting the burden to Applicant to
> establish with evidence that the claimed composition is unobvious over the prior
> art.

Ex. 42, PAR-VASO-0006429 ('209 patent); Ex. 43, PAR-VASO-0010342 ('785 patent)

209.    The Interview Summary states that the "[a]pplicant suggested adding a limitation

requiring pH 3.7 to 3.9, the pH range tested in the specification in the experiments evaluating the

presence of the impurities." Ex. 42, PAR-VASO-0006429 ('209 patent); Ex. 43, PAR-VASO-

0010342 ('785 patent). In response, "[t]he Examiner stated that more time and evidence would

be required to establish whether this pH range is critical given that it overlaps with the pH range

taught by Pharmaceutical Partners of Canada." Ex. 42, PAR-VASO-0006429 ('209 patent); Ex.

43, PAR-VASO-0010342 ('785 patent).

210.    Thereafter, the applicants amended pending claim 16 to recite "wherein: the unit

dosage form has a pH of 3.7-3.9." Ex. 42, PAR-VASO-0005810 ('209 patent); *see also* Ex. 43,

PAR-VASO-0009716 ('785 patent ("wherein the unit dosage form has a pH of 3.7-3.9")).

211.    In response to Examiner Bradley's rejections under Section 103, the applicants

argued that the pH limitation of 3.7-3.9 was not taught, or suggested, by the art of record:

> PPC and Amorij both teach broad pH ranges, but do not provide guidance to a person of ordinary skill in the art to use pH 3.7 to 3.9 for a vasopressin formulation. For example, PPC teaches a range of pH 2.5-4.5 *(PPC,* page 1), and Amorij teaches a preferred range of pH 3.8-4.8 *(Amorij,* paragraph [0021]). In fact the examples of Amorij only use a pH of 4.5 or 6.4. *Amorij,* paragraphs [0048]-[0063]. Thus, a person of ordinary skill in the art would [not] be motivated to use a pH of 4.5 or 6.4 in a formulation disclosed therein, and would [not] be guided to obtain the amount of impurities at pH 3.7 to 3.9 as provided in the claims as amended

Ex. 42, PAR-VASO-0005815 ('209 patent); Ex. 43, PAR-VASO-0009720 ('785 patent).

212.    In support of their response to Examiner Bradley's rejection over Treschan, PPC, and Amorij, the applicants relied on the data and subject matter included in Example 10 and Figures 15-18 of the specification of the '209 and '785 patents purporting to establish the criticality of a pH of 3.7-3.9.  Ex. 42, PAR-VASO-0005816-517 ('209 patent); Ex. 43, PAR-VASO-0009721-722 ('785 patent).

213.    Upon information and belief, the data included in Example 10 and Figures 15-18 of the '209 and '785 patents were the same data that had previously been submitted with the Kannan Criticality Declaration and prior Vandse declarations.  Example 10 reaches the same conclusion regarding impurity levels at pH 3.8 as in the Kannan Criticality Declaration.

214.    The applicants also amended the independent claims to require between 0.9 and 1.7% of impurities having between 85% to 100% sequence homology to SEQ ID NO. 1. Ex. 42, PAR-VASO-0005810 ('209 patent); Ex. 43, PAR-VASO-0009716 ('785 patent).  The applicants did not rebut Examiner Bradley's finding that such a limitation would be obvious over PPC as expressed during the June 21, 2017 Interview.

215.    On July 11, 2017, Examiner Christina Bradley allowed the claims on the basis that the applicants had established "the criticality of the claimed pH range of 3.7 to 3.9"

over the pH range 2.5 to 4.5 disclosed in the PPC reference. Ex. 42, PAR-VASO-0006436 ('209 patent); Ex. 43, PAR-VASO-0010349 ('785 patent).

216.     The false Kannan and Bonomi-Huvala declarations, and false statements made in the November 24, 2015 Response, during prosecution of the '239 patent have an immediate and necessary relation to the '526, '209, and '785 patents.

### c.  The Prosecution of the '223 Patent

217.     The application for the '223 patent was also filed at the PTO on May 26, 2017, as U.S. Application No. 15/606,442 (the "'442 Application"). The '442 Application is a continuation-in-part of the '693 patent ('209), which is a continuation-in-part of the '640 Application (the '526 patent), which is a continuation-in-part of the '877 Application (the '239 patent), which is a continuation of the '499 Application. The '223 patent, like the '239 patent, purports to claim priority to the '499 Application.

218.     The named inventors on the face of the '223 patent is Matthew Kenney, Vinayagam Kannan, Sunil Vandse, and Suketu Sanghvi.

219.     Claim 1 of the '223 patent, like the '239 patent, recites a method of increasing blood pressure in a human in need thereof by administering vasopressin.

> 1. A method of increasing blood pressure in a human in need thereof, the method comprising:
>
> a) providing a pharmaceutical composition for intravenous administration comprising: i) from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically acceptable salt thereof; ii) acetate buffer; and iii) water, wherein the pharmaceutical composition has a pH from about 3.7 to about 3.8,
>
> wherein the pharmaceutical composition is provided in a container;
>
> b) puncturing a dispensing region of the container a first time and drawing from the container a portion of the pharmaceutical composition;

67

c) intravenously administering the portion of the pharmaceutical composition to the human,

wherein the administration provides to the human from about 0.01 units of vasopressin or the pharmaceutically acceptable salt thereof per minute to about 0.1 units of vasopressin or the pharmaceutically acceptable salt thereof per minute,

wherein the human is hypotensive;

d) puncturing the dispensing region of the container a second time and drawing from the container a second portion of the pharmaceutical composition,

wherein the second time that the dispensing region of the container is punctured occurs at least 48 hours after the first time that the dispensing region of the container is punctured;

e) intravenously administering the second portion of the pharmaceutical composition to the human,

wherein the administration of the second portion of the pharmaceutical composition provides to the human from about 0.01 units of vasopressin or the pharmaceutically acceptable salt thereof per minute to about 0.1 units of vasopressin or the pharmaceutically acceptable salt thereof per minute. Ex. 4, PAR-VASO-0000420.

220. ████████████████████████████████████████████████████

████████████████████████████████████████████████

221. Christina Bradley was the examiner of record during prosecution of the '223 and '785 patents at the PTO. Ex. 39, PAR-VASO-0000316. Christina Bradley is the same examiner who prosecuted the '239 patent. Ex. 1. PAR-VASO-0000199.

222. On information and belief, because the '223 patent contained claims to a pH "from about 3.7 to about 3.8" the Examiner concluded the claims were allowable in part because of the false statements and material omissions of applicants described in detail above.

223. Because patents related to the '223 patent were obtained after the inventors and/or

their attorneys committed clear inequitable conduct, the Court should also find the '223 patent is unenforceable.

### d. The April 2014 Vasostrict® Label Would Have Invalidated the Claims of the '526, '209,'785, and '223 patents If Relied on During Prosecution

224. Having disqualified the April 2014 Vasostrict® Label as prior art under Section 102(b)(l)(A) based on the representation that named inventors Kannan and Kenney invented its subject matter during prosecution of the '239 patent, Examiner Bradley never cited the April 2014 Vasostrict® Label as prior art during the prosecution of the '526, '209,'785, and '223 patents.

225. Upon information and belief, having disqualified the April 2014 Vasostrict® Label as prior art based on the representation that named inventors Kannan and Kenney had invented its subject matter during prosecution of the '239 patent, Examiner Bradley believed she could not cite the April 2014 Vasostrict® Label as prior art during the prosecution of the '526, '209,'785, and '223 patents, on which Kannan and Kenney were also named inventors.

226. Thus, during prosecution of the '526, '209,'785, and '223 patents, Examiner Bradley cited only prior art that was not as close to the pending claims of those patents as the April 2014 Vasostrict® Label. *See supra* ¶¶ 172-79, 203-05.

227. For example, during prosecution of each of the '526, '209, and '785 patents, Examiner Bradley rejected the pending claims as obvious under Section 103 in view of PPC, which discloses a pH of 2.5 to 4.5. *See supra* ¶¶ 172-79, 203-05. Examiner Bradley withdrew the rejections based on the data submitted in the Kannan Criticality Declaration and supporting Vandse declarations. *See supra* ¶¶ 185-92.

228. The April 2014 Vasostrict® Label is closer prior art to the issued claims of the

'526, '209, and '785 patents than the combination of Treschan and. Unlike Treschan and PPC, the April 2014 Vasostrict® Label discloses the formulation, including the pH of 3.4 to 3.6, as well as the indications and method of administration steps of the claims in a single reference.

229.     Rather than disclosing a broader pH range of 2.5 to 4.5, the April 2014 Vasostrict® Label discloses a narrower pH range of 3.4-3.6, close to the claimed pH value of 3.8, or range of 3.7-3.9 or about 3.7 to about 3.8, in the issued claims of the '526, '209,'785, and '223 patents.

230.     The Federal Circuit has held that "a prima facie case of obviousness exists when the claimed range and the prior art range do not overlap but are close enough such that one skilled in the art would have expected them to have the same properties." *E.g.*, *In re Peterson,* 315 F.3d 1325, 1339 (Fed. Cir. 2003). In addition, "[w]here a claimed range abuts a prior art range, the claimed range is also prima facie obvious." *Tris Pharma, Inc. v, Actavis Labs. FL, Inc.,* 276 F. Supp. 3d 226,254 (D. Del. 2017), *vacated on other grounds,* 755 F. App'x 983 (Fed. Cir. 2019).

231.     Because pH 3.4 to 3.6 is close to and/or abutting the claimed pH value of 3.8, or range of 3.7-3.9 or about 3.7 to about 3.9, in the issued claims of the '526, '209,'785, and '223 patents, the pH limitations in the '526, '209,'785, and '223 patents are *prima facie* obvious over the pH range in the April 2014 Vasostrict® Label.

232.     Had Examiner Bradley cited the April 2014 Vasostrict® Label as prior art against the claims of the '526, '209,'785, and '223 patents, therefore, the applicants would have needed to show the criticality of the claimed pH value of 3.8, or range of 3.7-3.9, in the issued claims of the '526, '209,'785, and '223 patents, over the pH range 3.4-3.6 in the April 2014 Vasostrict® Label.

233.    Upon information and belief, the applicants would have been unable to show criticality of the claimed pH value of 3.8, or range of 3.7-3.9, in the issued claims of the '526, '209,'785, and '223 patents, over the pH range 3.4-3.6 in the April 2014 Vasostrict® Label.

234.    The specifications of the '526, '209,'785, and '223 patents teach that pH ranges of 3.4 to 3.6 are suitable for "Clinical Use":

Example 6

Illustrative Vasopressin Formulation for Clinical Use

A formulation for vasopressin that can be used in the clinic is detailed in TABLE 5 below:

| Ingredient | |
|---|---|
| Vasopressin, USP | |
| Chlorobutanol, Hydrous Acetic Acid, NF | |
| Water for injection, US | |

Example 7

Illustrative Regimen for Therapeutic Use of a Vasopressin Formulation

***

The 1 mL solution contains vasopressin 20 units/mL, chlorobutanol, NF 0.5% as a preservative, and water for injection, USP adjusted with acetic acid to pH 60 3.4-3.6.

Ex. 2, PAR-VASO-0000087-88; Ex. 34, PAR-VASO-0000168-69; Ex. 35, PAR-VASO 0000286; Ex. 4, PAR-VASO-0000380.

235.    Furthermore, the '526, '209,'785, and '223 patents demonstrate stability during

refrigerated storage using vasopressin formulations with a pH of 3.6. Ex. 2, PAR-VASO-0000088-105; Ex. 34, PAR-VASO-0000170-87; Ex. 35, PAR-VASO-0000287-304; Ex. 4, PAR-VASO-0000384-401.

236. The '526, '209,'785, and '223 patents also teach that "[a]t 25° C., pH 3.7 provided the highest stability for vasopressin (Fig. 11)," while "[a]t 40° C., pH 3.6 provided the highest stability for vasopressin." Ex. 2, PAR-VASO-0000106; Ex. 34, PAR-VASO-0000187; Ex. 35, PAR-VASO-0000304-05; Ex. 4, PAR-VASO-0000401. The '526, '209, and '785 patents therefore teach that a pH of 3.6 or 3.7 provides maximum stability for vasopressin compositions.

237. Because the '526, '209,'785, and '223 patents teach that pHs in the range of 3.4-3.6 are suitable and effective for use in the claimed vasopressin compositions, pH 3.8 cannot be critical. *See, e.g.*, *Tris Pharma,* 276 F. Supp. 3d at 254 ("The patents-in-suit make clear that 'the product is most stable at pH between 3.5 and 5.0.' Mr. Mehta and Dr. Jacobs both admitted that the claimed formulation is stable across the full pH range of 3.5 to 5. Thus, there is nothing critical about the narrower range of 4 to 4.5."); *Warner Chilcott Co. v. Teva Pharm. USA, Inc.,* 89 F. Supp. 3d 641, 655-56 (D.N.J. 2015) ("Similarly, the '460 patent asserts that EDTA between 75 mg and 250 mg will produce 'pharmaceutically effective absorption.'. . . In sum, the evidence showed that the claimed amount of 100 mg was not critical compared to the prior art's disclosure of between 20 and 175 mg EDTA."); *Warner Chilcott Co. v. Teva Pharm. USA, Inc.,* 642 F. App'x 996, 1002 (Fed. Cir. 2016) ("Moreover, in view of the broad disclosures in the specification providing embodiments with varying amounts of EDTA, and nothing in the asserted claims teaching one of skill in the art that or how only the specific 100 mg amount produces pharmaceutically effective

absorption, Warner Chilcott failed to show the criticality of the claimed amount.").

238.    The data submitted in the Kannan Criticality Declaration and prior Vandse declarations also does not demonstrate criticality of the claimed pH value of 3.8, or range of 3.7-3.9 or about 3.7 to about 3.9, in the issued claims of the '526, '209, '785, '223 patents, over the pH range 3.4-3.6 in the April 2014 Vasostrict® Label.

239.    After four weeks of storage at 25°C, the formulation at pH 3.6 had an impurity level of 1.15% while the formulation at pH 3.8 had an impurity level of 1.02%.  Ex. 41, PAR-VASO-0004901; ███████████████████████████████████████

███████████████.  Therefore, any purported difference in in impurity levels in the data reported by the Kannan Criticality Declaration between pH 3.8 and pH 3.6 is no more that 0.13% after storage at 25°C.  Ex. 41, PAR- VASO-0004901; ████████████████████████████

██████████████████.

240.    The difference in impurity levels between pH 3.6 and pH 3.8 of 0.15% is one of degree, not kind.

241.    █████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████

       ████████████████████████████████████████████████████

       ██████████████████████████████

       ██████████████████████████████████

       ████████████████████████████████████████████████████

       ████████████████████████████

██████████████████████████████████████████████████████████

242.     █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████

██████████████████████████████████████████████████████████

243.     ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████

244.     Additionally, a person of ordinary skill in the art would not find a difference of 0.13% in impurity levels between pH 3.6 and pH 3.8 unexpected or surprising. A difference of 0.13% in impurity levels between pH 3.6 and pH 3.8 does not establish criticality.

245.     ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████



74



246. ████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████

247. ████████████████████████████████████████ the data submitted to
establish criticality of the claimed pH value and range before the PTO cannot reliably establish
any difference between the pHs of the claims and that of the April 2014 Vasostrict® Label.

248. ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████

249. ███████████████████████████████████████████████████



251.



253.    The Kannan Criticality Declaration does not identify any benefit to the purported

levels of vasopressin formulations at pH 3.8, or pH 3.7-3.9.

254.

255.



256.

257.

258.

259. ██████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████



██████████████████████████████████████████

260. ██████████████████████████████████████████
████████████████████████████████████████████████



261.

262.

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████ '

263.    ███████████████████████████████████

████████████████████████████████████████

██████████████████████████████████



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████

264.    ███████████████████████████████████

████████████████████████████████████████

██████████████████████████████

265.    The false Kannan and Bonomi-Huvala declarations, and false statements made in the November 24, 2015 Response, during prosecution of the '239 patent have an immediate and necessary relation to the '526, '209,'785, and '223 patents

266.   Under these circumstances, the false Kannan and Bonomi-Huvala declarations, and false statements made in the November 24, 2015 Response, during prosecution of the '239 patent were material to, and tainted, the prosecution of the '526, '209,'785, and '223 patents as well.

### 3. The Named Inventors Made False Statements, and Omitted Material Information, in Asserting That the Claimed pH Values Were Critical

#### a. The Named Inventors Withheld from the PTO ██████████████ That Was Material to the Patents-in-Suit

267.   ████████████████████████████████████████

████████████████████████████████████████

████████████████████████

268.   ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

269.   ████████████████████████████████

████████████████████████████████████████

████████████████████

270.   As Counterclaim-Defendants have alleged and upon information and belief, on February 20, 2014, Par Pharmaceutical Companies, Inc. acquired JHP Pharmaceuticals, LLC.

271.   ████████████████████████████████

████████████████████████████████████████



272.

273.

274.



275. ████████████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

███████████████████████████

████████████████████████████████████

276. ████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

████████████ *See supra* ¶¶ 33, 39, 47-49.

277.    The following table provides a summary of the comparisons between the

formulations:

| Property (per vial) | Pitressin® | Vasostrict® |
|---|---|---|
| Vasopressin (mg/mL) | ███████████ | ███████████ |
| Chlorobutanol (mg) | | |
| Acetic Acid | | |
| Water for Injection (mL) | | |
| pH | | |

█████████████████████████████████████████████ Ex. 25, PAR-VASO-0008354.

278.     Upon information and belief, Mr. Kannan, Mr. Kenney, and Dr. Sanghvi withheld information about the prior art Pitressin® product, ██████████████████ from the PTO during prosecution of the Patents-in-Suit.

279.     Although the Pitressin® Label was submitted to the PTO during prosecution of each of the Patents-in-Suit the ████████████████████████████████████████████ ████████████████. *See, e.g.,* Ex. 25, PAR-VASO-0008354.

280.     Because the Examiner was not provided with Pitressin's full composition,

█████████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████

281.     ██████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ the Examiner accepted the false declaration by the

inventors that they invented the subject matter set forth in the April 2014 Vasostrict® Label,

including the Vasostrict® formulation.

282.    Additionally, because the April 2014 Vasostrict® Label was disqualified as prior

art during prosecution of the Patents-in-Suit, and the ████████████████████████

██████████████████████████, the applicants were not required to establish the

criticality of the claimed pH value of 3.8, or range of 3.7-3.9, as claimed in the issued claims of

the '478, '526, '209,'785, and '223 patents, over the pH range 3.4-3.6.  Instead, the inventors

were only required to establish the criticality of the claimed pH value of 3.8, or range of 3.7-3.9,

over the broader pH range of 2.5-4.5.

283.    As discussed above, the data submitted by the applicants in the Kannan Criticality

Declaration does not show the show the criticality of the claimed pH value of 3.8, or range of

3.7-3.9, as claimed in the issued claims of the '478, '526, '209,'785, and '223 patents, ████

██████████████████████ *See supra* ¶¶ 238-53.

284.    As discussed above, upon information and belief, the applicants would have been

unable to show the criticality of the claimed pH value of 3.8, or range of 3.7-3.9, as claimed in

the issued claims of the '478, '526, '209, '785, and '223 patents, ██████████████████

██████████ *See supra* ¶¶ 238-53.

285.    Upon information and belief, the applicants were aware that they could not show

the criticality of the claimed pH value of 3.8, or range of 3.7-3.9, as claimed in the issued claims

of the '478, '526, '209,'785, and '223 patents, ██████████████████████

██████████████████████ *See supra* ¶¶ 250-53.  Accordingly, the inventors

submitted a false declaration to claim that the April 2014 Vasostrict® Label, which teaches the pH range of 3.4-3.6 is not prior art, and at the same time withheld the pH of Pitressin®, ████████ ████████

286.    ████████████████████████████████████████████████████ ████████████████████████████████████████ cited by the Examiner, anticipates the claims of the '239 patent.

287.    Had the Examiner known of the pH of Pitressin®, the claims of the '239 patent would have been rejected as anticipated. Upon information and belief, had Examiner Bradley known of the pH of Pitressin®, the claims of the '478, '526, '209, '785, and '223 patents would also have been rejected over Pitressin®.

288.    Plaintiffs' omission was material because Plaintiffs argued throughout prosecution of the Counterclaim Patents-in-Suit that the pH of the claimed formulation was critical to patentability over the prior art. For example, Plaintiffs sought their first set of claims directed to a pH range of 3.5-4.1, a range that overlapped with the prior art pH of 3.6. Plaintiffs and their attorneys made statements regarding the criticality of the claimed pH range compared to the prior art range of pH 2.5-4.5 without calling to the attention of the Examiner that Pitressin® ████████████████████████████████. Therefore, Plaintiffs misled the Examiner into allowing the claims.

289.    Rather than alerting the Examiner to the prior art, named inventors Kannan and Kenney submitted declarations that focused on the stability of the formulations in pH ranges and/or acknowledged the criticality of these ranges. Kannan stated in his declaration at ¶¶ 2, 18: "As I understand, the pending claims are rejected as allegedly being obvious over ... Pharmaceutical Partners of Canada Inc. . . . As I understand, the claims submitted herewith cover

87

a vasopressin formulation at a pH of 3.5 to 4.1. The claimed pH range of 3.5 to 4.1 reflects the good stability of vasopressin provided at pH 3.5 to 4.1 at both temperatures tested, as shown in Figures 5-6." Ex. 25, PAR-VASO-0008804, PAR-VASO-0008813. Moreover, in his declaration at ¶ 15, Vandse stated: "The criticality of pH 3.8 in stabilizing vasopressin, while providing the lowest amount of impurities, is not evident from the disclosures from [the prior art] or Treschan because Treschan does not disclose a pH for vasopressin storage, and [the prior art] provides no guidance for the selection of a specific pH from the disclosed range of pH 2.5-4.5." Ex. 40, PAR-VASO_0002307.

290.    The Examiner relied on Plaintiffs' inventor declarations when granting the Patents-in-Suit, stating, for example, "The declaration [by Kannan]. . . is sufficient to overcome an obviousness rejection over Pharmaceutical Partners of Canada because it establishes the criticality of the claimed pH range of 3.5 to 4.1." *See* '239 File History, Notice of Allowance at 2, Ex. 25, PAR-VASO-0009299; *see also* '526 File History, Notice of Allowance at 2, Ex. 41, PAR-VASO-0005382. Therefore, Plaintiffs' omission was material because the Examiner would not have allowed claims at or near those disclosed in the prior art.

291.    The materiality of Plaintiffs' omission of the pH of Pitressin® and the FDA's Biopharmaceutics Review during prosecution of the asserted patents was again demonstrated in a related, but later-filed patent application. In that related application, Plaintiffs disclosed FDA's Biopharmaceutics Review after the issuance of the Patents-in-Suit, only after Eagle Pharmaceuticals, Inc. cited the reference in a Paragraph IV Certification letter. *See* U.S. Appl. No. 15/864597 Pros. Hist., 6/6/2018 IDS at 2; U.S. Appl. No. 15/864593 Pros. Hist., 6/26/2018 IDS at 2. Based on that disclosure, the Examiner cited the FDA's Biopharmaceutics Review as

the basis for obviousness rejections in twelve pending applications related to the Patents-in-Suit.[5]

292.    The Examiner stated that "the Biopharmaceutics Review [of the Pitressin®
product] establishes that the formulation [which was] publicly available prior to September 26,
2012 contains 20 U/mL vasopressin, chlorobutanol, acetic acid, and water, and has a pH of about
3.6." *E.g.*, U.S. Appl. No. 16/044,056 Pros. Hist., September 18, 2018 Non-Final Rejection at
22-23.

293.    Plaintiffs did not contest the rejections in the twelve pending applications and
abandoned the twelve pending applications in view of the Examiner's Non-Final Rejections.

294.    Based on the Plaintiffs' conduct, one may infer that Plaintiffs withheld this
material with the intent to mislead the PTO. ████████████████████████████████
████████████████████████████████████████████████████    *See supra* ¶¶ 268.

295.    Moreover, upon information and belief, at least two inventors Vinayagam Kannan
and Matthew Kenney were aware that, ████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

[5] *See* U.S. Appl. No. 16/044,056 Pros. Hist., 9/18/18 Non-Final Rejection at 22-23; U.S.
Appl. No. 16/044,062, 9/18/18 Non-Final Rejection at 19-21; U.S. Appl. No. 16/044,075 Pros.
Hist., Non-Final Rejection at 19-21; U.S. Appl. No. 16/044,078 Pros. Hist., 9/18/18 Non-Final
Rejection at 19-21; U.S. Appl. No. 16/044,082 Pros. Hist., 9/21/18 Non-Final Rejection at 24-25;
U.S. Appl. No. 16/044,090 Pros. Hist., 9/21/18 Non-Final Rejection at 23-25; U.S. Appl. No.
16/044,093 Pros. Hist., 9/21/18 Non-Final Rejection at 23-25; U.S. Appl. No. 16/044,1 05 Pros.
Hist., 9/21 /18 Non-Final Rejection at 23-25; U.S. Appl. No. 16/044,1 05 Pros. Hist., 9/19/18
Non-Final Rejection at 31-32; U.S. Appl. No. 16/044,113 Pros. Hist., 9/19/18 Non-Final
Rejection at 27-28; U.S. Appl. No. 16/044,117 Pros. Hist., 9/19/18 at 27-29; U.S. Appl. No.
16/044,125 Pros. Hist., 9/19/18 Non-Final Rejection at 28-29.



296.

297.

298.

Yet, neither Kannan nor Kenney disclosed that information to the PTO during prosecution of the '526, '209, and '785 patents.

299.     As set forth above, the applicants would not have been able to establish criticality of the claimed pH value of 3.8, or range of 3.7-3.9,  over Pitressin®

*See supra* ¶¶ 239-61.  The applicants also would not have been able to establish

300.

301.     The omission of  information regarding the prior art Pitressin® compositions,

████████████████████████████████████████ is material to the patentability of the

'526, '239, '209, and '785 patents.

302.　Upon information and belief, Mr. Kannan, Mr. Kenney, and Dr. Sanghvi were aware that this information would have been material to the patentability of the Patents-in-Suit.  Indeed, as set forth above, Mr. Kannan submitted a declaration during prosecution of the '239 patent averring that he and Matthew Kenney invented, *inter alia*, the Vasostrict® formulation disclosed in the April 2014 Vasostrict® Label to disqualify this reference—which discloses a pH of 3.4 to 3.6—as prior art to the pending claims.  *See supra* ¶¶ 68-123.

303.　Pitressin® and the prior art use thereof met the other limitations set forth in the '526, '209 and '785 patents.  As set forth above, ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████.  *See supra*

¶¶ 68-123.

304.　Examiner Bradley found that the method of treatment steps recited by the claims of the '526 and '209 patents were otherwise taught explicitly in the prior art.  *See supra* ¶¶ 177, 203.  Ex. 41, PAR-VASO-0004767-70; Ex. 42, PAR-VASO-0005732-35.

305.　Furthermore, Pitressin® met the other formulation limitations in the '239, '526, '209, and '785 patents.  ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████ Ex. 2, PAR-VASO-0000112-13; Ex. 34, PAR-VASO-0000196-97; Ex. 3, PAR-VASO-0000230-31, PAR-VASO-0000313-14; *see also*

*Titanium Metals*, 778 F.2d at 782 ("It is also an elementary principle of patent law that when, as by a recitation of ranges or otherwise, a claim covers several compositions, the claim is 'anticipated' if one of them is in the prior art.").

306.     Additionally, as set forth above, Pitressin® was formulated with acetic acid, as required by claim 1 of the '526 patent. *See supra* ¶¶ 169; *see also* Ex. 2, PAR-VASO-0000112-13.

307.     As set forth above, Examiner Bradley found in each case that the degradation products or impurities limitations of the '239, '526, '209, and '785 patent claims were inherent in, or obvious over, prior art formulations. *See supra* ¶¶ 181, 207-08, 214.

308.     In addition, ██████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

309.     The only reasonable inference is that Vinayagam Kannan, Matthew Kenney, and Suketu Sanghvi withheld the material Pitressin® formulation, ████████████████████████
████████████████████████████████████████████████████████████████
from the PTO with a specific intent to deceive the PTO with a specific intent to deceive the PTO.

310.     The inventors also withheld material information regarding the original Vasostrict® formulation.

311.     As set forth above, the original Vasostrict® formulation was described by, *inter alia*, the April 2014 Vasostrict® Label. *See supra* ¶¶ 47.

312.     Because the inventors did not invent the original Vasostrict® formulation, *see supra* ¶¶ 91-123, it is prior art to the '526, '209, '239, and '785 patents.

313.     As set forth above, the named inventors—particularly Matthew Kenney and

Vinayagam Kannan—were aware that they did not invent the original Vasostrict® formulation and that it is prior art to the '526, '209, '239, and '785 patents. *See supra* ¶¶ 95, 100.

314. ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████

315. ██████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

316. ███████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████

317. ███████████████████████████████████████

██████████████████████████████████████████████

████████

318. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████-



319. ███████████████████████████████████████████

███████████████████████████████████████

████████ ████████████████████████████████

320. ███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████

321. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████

322.    Upon information and belief, had Examiner Bradley known ████████

██████████████████████████████████████████████, the claims of the '526,

'209, '239, and '785 patents would have been rejected over the original Vasostrict® product.

323.    Upon information and belief, had Examiner Bradley been aware ████████

██████████████████████████████████████ the claims of the '239 patent

would have been rejected over the original Vasostrict® product.

324.    Thus, ███████████████████████████████████was

necessarily material to the patentability of the claims of the '526, '209, '239, and '785 patents.

325.    The only reasonable inference that can be drawn from the selective

withholding of ███████████████████████████████████is that the

94

inventors concealed material information concerning the prior art with an intent to deceive the PTO.

### b.  The Named Inventors Withheld from the PTO ████████ ████████ That was Material to the Prosecution of the '239, '526, '209, '478, and '785 patents

326.    As discussed above, during the prosecution of the Patents-in-Suit, Examiner Bradley recited a prior art vasopressin formulation, PPC, as a basis for rejecting the claims of the Patents-in-Suit.  *See supra* ¶¶ 176-179.  Upon information and belief, PPC—which discloses a pH range of 2.5 to 4.5 for a vasopressin composition—is the only prior art reference cited by the Examiner that discloses the pH of a vasopressin composition.

327.    Facing the Examiner's rejections under Section 103, the applicants argued that the pH limitations recited in the pending claims of the Patents-in-Suit were not taught, or suggested, by the art of record.  Specifically, during the prosecution of the '239 patent, the applicants argued that the claimed pH range of 3.5-4.1 was not taught by the prior art.  *See, e.g.,* Ex. 25, PAR-VASO-0008791-792.  During the prosecution of the '526 and '478 patents, the applicants argued that the claimed pH of 3.8 was not taught by the prior art.  *See, e.g.,* Ex. 41, PAR-VASO-0004869.  During the prosecution of the '209 and '785 patents, the applicants argued that the claimed pH range of 3.7-3.9 was not taught by the prior art.  *See, e.g.,* Ex. 42, PAR-VASO-0005816-17 ('209 patent); Ex. 43, PAR-VASO-0009721-22 ('785 patent).

328.    Upon information and belief, the inventors were aware that they needed to show that the claimed pH and ranges were not obvious over PPC's pH of 2.5 to 4.5.  Each declaration submitted to support the criticality of the claimed pH value expressly referenced pending rejections over *inter alia* PPC and stated that the inventors were familiar with the

95

pending rejections. *See, e.g.,* Ex. 41, PAR-VASO-0004878 ¶ 2; Ex. 41, PAR-VASO-0004889 ¶ 2; Ex. 41, PAR-VASO-000490 ¶ 2.

329. Upon information and belief, the inventors were also aware that they needed to demonstrate that the claimed pH and ranges are more stable than PPC's pH of 2.5 to 4.5. Indeed, during the prosecution of the Patents-in-Suit, in support of their arguments that the claimed pH ranges and pH are nonobvious over PPC, the inventors submitted declarations (or relied on identical data added to the patent specifications) to demonstrate the criticality of the claimed pH ranges of 3.5-4.1 (for the '239 patent) and 3.7-3.9 (for the '209 and '785 patents), and claimed pH of 3.8 (for the '526 and '478 patents), in each case over PPC's teaching of pH 2.5 to 4.5. *See, e.g.,* Ex. 41, PAR-VASO-0004876-910; Ex. 42, PAR-VASO-0005816-17 ('209 patent); Ex. 43, PAR- VASO-0009721-22 ('785 patent).

330. Each declaration submitted to support patentability over PPC also expressly references the "criticality" of the claimed pH value based on stability and impurity levels. *See, e.g.,* Ex. 41, PAR-VASO-0004887 ¶ 30 ("Thus, the ***criticality of pH 3.8*** in in stabilizing a vasopressin formulation would be desirable to the FDA and ICH, and therefore would result in a practical benefit to a user of a vasopressin." (emphasis added)); Ex. 41, PAR-VASO-0004892 ¶ 15 ("The ***criticality of pH 3.8*** in stabilizing vasopressin, while providing the lowest amount of impurities, is not evidence from the disclosures of PPC or Treschan . . . ." (emphasis added)).

331. ██████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████████████████████
████████████████████████████████████████████.

96



332.     In order to show that the claimed pH and ranges are more stable than PPC's pH of 2.5 to 4.5, the inventors submitted vasopressin assay data and impurities data at both 25°C and 40°C to the Patent Office. *See, e.g.,* Ex. 41, PAR-VASO-0004878 ¶ 2; Ex. 41, PAR-VASO- 0004889 ¶ 2; Ex. 41, PAR-VASO-0004903 ¶ 2.

333.     The Kannan Criticality Declaration informed the Examiner that "[n]ormalization is a standard technique used by analytical chemists that allows direct comparison between two data sets by removing systematic differences due to, for example, the starting amount of a sample." Ex. 41, PAR-VASO-0004882 ¶ 15.   The Kannan Criticality Declaration averred that normalization of assay data permits a "direct comparison in the difference in vasopressin assay over time was possible without regard to the starting assay amount." *Id.*

334.     The Kannan Criticality Declaration's statement that "pH was the only variable not normalized" was false.   As evidenced by the data included with the Kannan Criticality

97

Declaration, each test composition also had different impurity levels at the beginning of the study.  *See, e.g.,* Ex. 41, PAR-VASO-0004882 ¶ 16.  However, impurity levels were not normalized.

335.

336.

337.

338.

█████████████████████████████████████████████████████████████, which

supported their allegation during prosecution that pH 3.8 is critical:

- "At 25 °C, ... pH 3.7 also provided higher levels of impurities as compared to the formulation at pH 3.8";

- "At 40 °C, ... pH 3.6 also provided higher levels of impurities as compared to the formulations at pH 3.7 and pH 3.8"; and

- "The formulation at pH 3.8 provided ... lower levels of impurities than did the formulations at pH 3.6 or pH 3.7 at 40 °C."

Ex. 41, PAR-VASO-0004881 ¶¶ 10-12.  Based on the ████████████████, Mr.

Kannan concluded that "pH 3.8 provided the best overall results," based in part on the lower

level of impurities.  *Id.* ¶ 2.

339.  ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

340.  ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████



341.



█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████

342.    ██████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████ *See, e.g.,* Ex. 41, PAR-
VASO-0004881-81 ¶¶ 10-13; Ex. 41, PAR-VASO-0004891-92 ¶¶ 11-15; Ex. 41, PAR-VASO-
0004910 ¶¶ 8-10.

343. ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████, the rate of change in

assay values at 25°C was lowest at pH 3.7 and 3.8, which supported the applicants' argument

that pH 3.8 and pH 3.7 to 3.9 are critical. *See, e.g.,* Ex. 41, PAR-VASO-0004881-81¶¶ 10-13;

*See, e.g.,* Ex. 41, PAR- VASO-0004881-81 ¶¶ 10-13; Ex. 41, PAR-VASO-0004891-92 ¶¶ 11-15;

Ex. 41, PAR-VASO-0004910 ¶¶ 8-10. ██████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████

344. The only reasonable inference that can be drawn from this ████████████

███████████████████████████████████████████████████████

████████████████████████

345. Because ████████████████████that was withheld from the Patent Office

contradicts the applicants' arguments that the claimed pH ranges are critical based on the

lower levels of impurities at the desired value, upon information and belief, Examiner Bradley

would not have found the claimed values critical if ████████████████████had been

disclosed during prosecution of the '526, '209, and '785 patents.

346. Under these circumstances, the ████████████████████was

necessarily material to the patentability of the '239 patent.

### c. The Named Inventors Withheld from the PTO Other Information Relevant to Criticality That Was Material to Prosecution of the '239, '526, '209, '478, and '785 patents

347. As discussed above, during the prosecution of the Patents-in-Suit, Examiner

Bradley recited a prior art vasopressin formulation, PPC, which had a pH of 2.5 to 4.5, as a basis for rejecting the claims of the Patents-in-Suit. *See supra* ¶¶ 72-75, 203-05. Also as discussed above, to overcome the Examiner's rejection, the applicants submitted supporting declarations and argued that the claimed pH ranges and pH are critical for stability of vasopressin formulations.

348. Upon information and belief, in addition to the normalized impurity data discussed in the preceding section, the inventors omitted and withheld from the Patent Office other information material to their allegation that the claimed pH ranges and pH are critical for stability

349. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

350. As set forth above, the purported difference in impurity levels in the data reported by the Kannan Criticality Declaration between pH 3.8 and pH 3.6 is no more than 0.13% after storage at 25°C. Ex. 41, PAR-VASO-0004901; ████████████████
████████████████████████████.

351. ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████

352. ████████████████████████████████████████
████████████████████████████████████████

103

███████████████.

353.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

354.    ████████████████████████████████████████████

█████████████████████████████████████ Examiner Bradley

would not have accepted the applicants' representation that the claimed  pH ranges and pH

are critical over the prior art pH range of 3.4-3.6.   Indeed, the purported difference in

impurity levels of pH 3.8 and pH 3.6, which is no more than 0.13% based on the data

provided in the Kannan Criticality Declaration, ███████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

355.    Upon information and belief, although the inventors were aware of ██████

████████, they did not inform the Examiner of the same because such information would

directly undermine the applicants' arguments that pH 3.5 to 4.1, pH 3.8, and pH 3.7 to 3.9 are

each critical over the pH range of PPC.

356.    Upon information and belief, the inventors withheld information  regarding ████

████████████████████████████████ the Kannan Criticality Declaration with

the specific intent to deceive the Patent Office.

357.    In addition, as set forth above, the pH optimization study recited in the Kannan

Criticality Declaration ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

358. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

359. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████

360. ████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

███████████

361. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████



362. ████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████

363. The Kannan Criticality Declaration does not ████████████████

████████████████████████████████████████████
██.

364. Upon information and belief, had Examiner Bradley ████████████

████████████████████████████, Examiner Bradley would not have accepted the inventors' representation to the Patent Office that the claimed pH ranges and pH are critical. Under these circumstances ████████████████████ was necessarily material to the patentability of the Patents-in-Suit.

365. Upon information and belief, although the inventors were aware of ████

████████████████████, they did not inform Examiner Bradley of the same because such information would directly undermine the applicants' arguments that pH 3.5 to 4.1, pH 3.8 and pH 3.7 to 3.9 are critical.

## COUNTERCLAIM I
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '785 PATENT
## (AMNEAL'S ANDA NO. 212944)

366. Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

367. Amneal has not infringed any asserted claim of the '785 patent, either literally or

under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '785 patent, either literally or under the doctrine of equivalents because Amneal's Single-Dose ANDA Product does not meet all the limitations of any claim of the '785 patent.

368.     Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '785 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '785 patent, either literally or under the doctrine of equivalents.

369.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM II
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '785 PATENT
## (AMNEAL'S ANDA NO. 212945)

370.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

371.     Amneal has not infringed any asserted claim of the '785 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '785 patent, either literally or under the doctrine of equivalents because

Amneal's Multi-Dose ANDA Product does not meet all the limitations of any claim of the '785 patent.

372.     Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '785 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '785 patent, either literally or under the doctrine of equivalents.

373.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

**COUNTERCLAIM III**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '785 PATENT**

374.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

375.     Each of the claims of the '785 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.  For example, each claim of the '785 patent is invalid under 35 U.S.C. § 112 because it does not adequately describe the claim limitation wherein "the unit dosage form further comprises impurities that are present in an amount of 0.9% - 1.7%, wherein the impurities have from about 85% to about 100% sequence homology" to vasopressin.

376.     Amneal is entitled to a judicial declaration that each of the claims of the '785 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102,

103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.

377.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

**COUNTERCLAIM IV**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '209 PATENT**
**(AMNEAL'S ANDA NO. 212944)**

378.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

379.     Amneal has not infringed any asserted claim of the '209 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '209 patent, either literally or under the doctrine of equivalents because Amneal's Single-Dose ANDA Product does not meet all the limitations of any claim of the '209 patent.

380.     Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '209 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '209 patent, either literally or under the doctrine of equivalents.

381.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM V
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '209 PATENT
## (AMNEAL'S ANDA NO. 212945)

382. Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

383. Amneal has not infringed any asserted claim of the '209 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '209 patent, either literally or under the doctrine of equivalents because Amneal's Multi-Dose ANDA Product does not meet all the limitations of any claim of the '209 patent.

384. Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '209 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '209 patent, either literally or under the doctrine of equivalents.

385. Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM VI
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '209 PATENT

386. Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

387. Each of the claims of the '209 patent is invalid for failure to comply with one or

more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting. For example, the '209 patent is invalid under 35 U.S.C. § 112 because it does not adequately describe the claim limitation wherein "the unit dosage form further comprises impurities that are present in an amount of 0.9% - 1.7%, wherein the impurities have from about 85% to about 100% sequence homology" to vasopressin.

388. Amneal is entitled to a judicial declaration that each of the claims of the '209 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.

389. Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM VII
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '478 PATENT
## (AMNEAL'S ANDA NO. 212944)

390. Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

391. Amneal has not infringed any asserted claim of the '478 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '478 patent, either literally or under the doctrine of equivalents because Amneal's Single-Dose ANDA Product does not meet all the limitations of any claim of the '478 patent.

392.    Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '478 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '478 patent, either literally or under the doctrine of equivalents.

393.    Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

### COUNTERCLAIM VIII
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '478 PATENT
### (AMNEAL'S ANDA NO. 212945)

394.    Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

395.    Amneal has not infringed any asserted claim of the '478 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '478 patent, either literally or under the doctrine of equivalents because Amneal's Multi-Dose ANDA Product does not meet all the limitations of any claim of the '478 patent.

396.    Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '478 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '478 patent, either literally or under the doctrine of equivalents.

397.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM IX
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '478 PATENT

398.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

399.     Each of the claims of the '478 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.

400.     Amneal is entitled to a judicial declaration that each of the claims of the '478 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.

401.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM X
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '526 PATENT
## (AMNEAL'S ANDA NO. 212944)

402.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

403.     Amneal has not infringed any asserted claim of the '526 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or

importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '526 patent, either literally or under the doctrine of equivalents because Amneal's Single-Dose ANDA Product does not meet all the limitations of any claim of the '526 patent.

404.    Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '526 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '526 patent, either literally or under the doctrine of equivalents.

405.    Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM XI
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '526 PATENT (AMNEAL'S ANDA NO. 212945)

406.    Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

407.    Amneal has not infringed any asserted claim of the '526 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '526 patent, either literally or under the doctrine of equivalents because Amneal's Multi-Dose ANDA Product does not meet all the limitations of any claim of the '526 patent..

408.    Amneal is entitled to a judgment declaring that Amneal has not infringed any

114

asserted claim of the '526 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '526 patent, either literally or under the doctrine of equivalents.

409.    Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

**COUNTERCLAIM XII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '526 PATENT**

410.    Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

411.    Each of the claims of the '526 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.

412.    Amneal is entitled to a judicial declaration that each of the claims of the '526 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.

413.    Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM XIII
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '239 PATENT
## (AMNEAL'S ANDA NO. 212944)

414.    Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

415.    Amneal has not infringed any asserted claim of the '239 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '239 patent, either literally or under the doctrine of equivalents because Amneal's Single-Dose ANDA Product does not meet all the limitations of any claim of the '239 patent..

416.    Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '239 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '239 patent, either literally or under the doctrine of equivalents.

417.    Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM XIV
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '239 PATENT
## (AMNEAL'S ANDA NO. 212945)

418.    Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

419.    Amneal has not infringed any asserted claim of the '239 patent, either literally or

under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '239 patent, either literally or under the doctrine of equivalents because Amneal's Multi-Dose ANDA Product does not meet all the limitations of any claim of the '239 patent.

420.    Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '239 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '239 patent, either literally or under the doctrine of equivalents.

421.    Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM XV
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '239 PATENT

422.    Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

423.    Each of the claims of the '239 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.

424.    Amneal is entitled to a judicial declaration that each of the claims of the '239 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-

type double patenting.

425.    Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

**COUNTERCLAIM XVI**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '223 PATENT**
**(AMNEAL'S ANDA NO. 212944)**

426.    Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

427.    Amneal has not directly infringed any asserted claim of the '223 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '223 patent, either literally or under the doctrine of equivalents because Amneal's Single-Dose ANDA Product does not meet all the limitations of any claim of the '223 patent.

428.    Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '223 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Single-Dose ANDA Product by Amneal would not directly infringe any claim of the '223 patent, either literally or under the doctrine of equivalents.

429.    Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

**COUNTERCLAIM XVII**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '223 PATENT**
**(AMNEAL'S ANDA NO. 212945)**

430.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

431.     Amneal has not infringed any asserted claim of the '223 patent, either literally or under the doctrine of equivalents, and the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '223 patent, either literally or under the doctrine of equivalents because Amneal's Multi-Dose ANDA Product does not meet all the limitations of any claim of the '223 patent.

432.     Amneal is entitled to a judgment declaring that Amneal has not infringed any asserted claim of the '223 patent, either literally or under the doctrine of equivalents, and that the commercial manufacture, use, offer for sale, sale or importation of the Amneal Multi-Dose ANDA Product by Amneal would not directly infringe any claim of the '223 patent, either literally or under the doctrine of equivalents.

433.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

**COUNTERCLAIM XVIII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '223 PATENT**

434.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

435.     Each of the claims of the '223 patent is invalid for failure to comply with one or

more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.

436.     Amneal is entitled to a judicial declaration that each of the claims of the '223 patent is invalid for failure to comply with one or more requirements of 35 U.S.C. §§ 101, 102, 103, 112 or 116, and the rules, regulations, and laws pertaining thereto, and/or for obviousness-type double patenting.

437.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM XIX
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '785 PATENT, BASED ON INEQUITABLE CONDUCT AND UNCLEAN HANDS

438.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

439.     An actual and justiciable controversy exists between Amneal and Counterclaim-Defendants concerning the unenforceability of the '785 patent.

440.     As a result of Counterclaim-Defendants' conduct described in ¶¶ 57-164 and 195-365 , the '785 patent is unenforceable for inequitable conduct or unclean hands.

441.     Amneal is entitled to a judicial declaration that each of the claims of the '785 patent is unenforceable due to the conduct of Counterclaim-Defendants, the named inventors of the Patents-in-Suit, and/or the prosecuting attorneys of the Patents-in-Suit for inequitable conduct or unclean hands.

442.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions

of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM XX
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '209 PATENT, BASED ON INEQUITABLE CONDUCT AND UNCLEAN HANDS

443. Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

444. An actual and justiciable controversy exists between Amneal and Counterclaim-Defendants concerning the unenforceability of the '209 patent.

445. As a result of Counterclaim-Defendants' conduct described in ¶¶ 57-164 and 195-365, the '209 patent is unenforceable for inequitable conduct or unclean hands.

446. Amneal is entitled to a judicial declaration that each of the claims of the '209 patent is unenforceable due to the conduct of Counterclaim-Defendants, the named inventors of the Patents-in-Suit, and/or the prosecuting attorneys of the Patents-in-Suit for inequitable conduct or unclean hands.

447. Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM XXI
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '478 PATENT, BASED ON INEQUITABLE CONDUCT AND UNCLEAN HANDS

448. Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

449. An actual and justiciable controversy exists between Amneal and Counterclaim-Defendants concerning the unenforceability of the '478 patent.

450. As a result of Counterclaim-Defendants' conduct described in ¶¶ 172-83 and 267-

365, the '478 patent is unenforceable for inequitable conduct or unclean hands.

451. Amneal is entitled to a judicial declaration that each of the claims of the '478 patent are unenforceable due to the conduct of Counterclaim-Defendants, the named inventors of the Patents-in-Suit, and/or the prosecuting attorneys of the Patents-in-Suit for inequitable conduct or unclean hands.

452. Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## COUNTERCLAIM XXII
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '526 PATENT, BASED ON INEQUITABLE CONDUCT AND UNCLEAN HANDS

453. Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

454. An actual and justiciable controversy exists between Amneal and Counterclaim-Defendants concerning the unenforceability of the '526 patent.

455. As a result of Counterclaim-Defendants' conduct described in ¶¶ 57-194 and 267-365, the '526 patent is unenforceable for inequitable conduct or unclean hands.

456. Amneal is entitled to a judicial declaration that each of the claims of the '526 patent is unenforceable due to the conduct of Counterclaim-Defendants, the named inventors of the Patents-in-Suit and/or the prosecuting attorneys of the Patents-in-Suit for inequitable conduct or unclean hands.

457. Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance.

## COUNTERCLAIM XXIII
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '239 PATENT, BASED ON INEQUITABLE CONDUCT AND UNCLEAN HANDS

458.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

459.     An actual and justiciable controversy exists between Amneal and Counterclaim-Defendants concerning the unenforceability of the '239 patent.

460.     As a result of Counterclaim-Defendants' conduct described in ¶¶ 57-151 and 267-365, the '239 patent is unenforceable for inequitable conduct or unclean hands.

461.     Amneal is entitled to a judicial declaration that each of the claims of the '239 patent is unenforceable due to the conduct of Counterclaim-Defendants, the named inventors of the Patents-in-Suit and/or the prosecuting attorneys of the Patents-in-Suit for inequitable conduct or unclean hands.

462.     Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance.

## COUNTERCLAIM XXIV
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '223 PATENT, BASED ON INEQUITABLE CONDUCT AND UNCLEAN HANDS

463.     Amneal adopts by reference, repeats, and realleges its specific allegations and averments in the preceding paragraphs as if fully set forth herein.

464.     An actual and justiciable controversy exists between Amneal and Counterclaim-Defendants concerning the unenforceability of the '223 patent.

465.     As a result of Counterclaim-Defendants' conduct described in ¶¶ 57-151 and 217-325, the '223 patent is unenforceable for inequitable conduct or unclean hands.

466.     Amneal is entitled to a judicial declaration that each of the claims of the '223

patent is unenforceable due to the conduct of Counterclaim-Defendants, the named inventors of the Patents-in-Suit, and/or the prosecuting attorneys of the Patents-in-Suit for inequitable conduct or unclean hands.

467. Amneal is entitled to an award of costs and expenses, including reasonable attorney fees, to be assessed against Counterclaim-Defendants in accordance with the provisions of 35 U.S.C. § 285 or such other authorities as the Court deems applicable.

## **PRAYER FOR RELIEF**

WHEREFORE, Amneal respectfully requests that this Court grant the following relief against Counterclaim-Defendants:

A. Dismissing with prejudice the entirety of Counterclaim-Defendants' Complaint;

B. Denying all remedies and relief sought by Counterclaim-Defendants in the Complaint;

C. Declaring that Amneal has not infringed, and is not infringing, literally or under the doctrine of equivalents, any valid claim of the '785 patent;

D. Declaring that each and every asserted claim of the '785 patent is invalid and unenforceable;

E. Declaring that Amneal has not infringed, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '209 patent;

F. Declaring that each and every asserted claim of the '209 patent is invalid and unenforceable;

G. Declaring that Amneal has not infringed, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '478 patent;

H. Declaring that each and every asserted claim of the '478 patent is invalid and unenforceable;

I. Declaring that Amneal has not infringed, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '526 patent;

J. Declaring that each and every asserted claim of the '526 patent is invalid and

unenforceable,

K.     Declaring that Amneal has not infringed, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '239 patent;

L.     Declaring that each and every asserted claim of the '239 patent is invalid and unenforceable;

M.     Declaring that Amneal has not infringed, and is not infringing, directly or indirectly, literally or under the doctrine of equivalents, any valid claim of the '223 patent;

N.     Declaring that each and every asserted claim of the '223 patent is invalid and unenforceable;

O.     Finding this to be an exceptional case and awarding Amneal reasonable attorney fees and costs under 35 U.S.C. § 285; and all other applicable statutes and rules in common law that would be appropriate, with pre- and post-judgment interest thereon; and

P.     Granting such other and further relief as this Court may deem just and proper.

Dated:  July 2, 2020
Redacted Version: July 9, 2020

OF COUNSEL:

Huiya Wu
Linnea Cipriano
Tiffany Mahmood
Jacqueline Genovese Bova
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
hwu@goodwinlaw.com
lcipriano@goodwinlaw.com
tmahmood@goodwinlaw.com
jbova@goodwinlaw.com
Tel: (212) 813-8800

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
302-571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendants and Counterclaim Plaintiffs Amneal EU, Limited,  et al.*

## CERTIFICATE OF SERVICE

I, Anne Shea Gaza, Esquire, hereby certify that on July 9, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to all registered participants.

I further certify that on July 9, 2020, I caused the foregoing document to be served by e-mail on the following counsel of record:

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Brian M. Goldberg
Sharon K. Gagliardi
Joseph J. Gribbin
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
brian.goldberg@dechert.com
sharon.gagliardi@dechert.com
joe.gribbin@dechert.com

Robert D. Rhoad
DECHERT LLP
100 Overlook Center, 2nd Floor
Princeton, NJ 08540-7814
robert.rhoad@dechert.com

Blake B. Greene
DECHERT LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
blake.greene@dechert.com

*Attorneys for Plaintiffs*

Dated: July 9, 2020

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

 */s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendants*

24438869.1