61 / 62



**FIGURE 61**

PAR-VASO-0013953



**FIGURE 62**

PAR-VASO-0013954

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 30202880 |
| **Application Number:** | 15688341 |
| **International Application Number:** | |
| **Confirmation Number:** | 2743 |
| **Title of Invention:** | PEPTIDE CONGENERS WITH POLYMER EXCIPIENTS |
| **First Named Inventor/Applicant Name:** | Matthew  Kenney |
| **Customer Number:** | 21971 |
| **Filer:** | Trisha Agrawal |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 47956-702.311 |
| **Receipt Date:** | 28-AUG-2017 |
| **Filing Date:** | |
| **Time Stamp:** | 16:59:46 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $2940 |
| RAM confirmation Number | 082917INTEFSW00004554232415 |
| Deposit Account | 232415 |
| Authorized User | Trisha Agrawal |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     37 CFR 1.16 (National application filing, search, and examination fees) | |
|     37 CFR 1.17 (Patent application and reexamination processing fees) | |

PAR-VASO-0013955

37 CFR 1.19 (Document supply fees)

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal of New Application | PAR_47956_702_311_UtilityTransmittal.pdf | 277724<br><br>23fcb1d850b8ae0a5f71e17acc042ba38dd5994f | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Miscellaneous Incoming Letter | PAR_47956_702_311_FeeTransmittal.pdf | 259539<br><br>835d3785e32b2a3153cf9f2c182b7a938a07d0ac | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| 3 | Application Data Sheet | PAR_47956_702_311_ADS.pdf | 1823616<br><br>3cbfcfd4a444599fa4efb2e9b378638b7c0abe0 | no | 10 |
| Warnings: | | | | | |
| Information: | | | | | |
| 4 | CRF Statement Paper and CRF are the same | PAR_47956_702_311_StmtSL.pdf | 6068<br><br>db3035d24eaae445dd1bee56493da597a7d103b15 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 5 | | PAR_47956_702_311_ApplnAsFiled.pdf | 1307245<br><br>876ca80f4dad30f43fe8d81fe89f0cf29f981fa1 | yes | 230 |

| | Multipart Description/PDF files in .zip description | | |
|---|---|---|---|
| | Document Description | Start | End |
| | Specification | 1 | 226 |
| | Claims | 227 | 229 |
| | Abstract | 230 | 230 |

PAR-VASO-0013956

| | | | | | |
|---|---|---|---|---|---|
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 6 | Drawings-only black and white line drawings | PAR_47956_702_311_Drawings.pdf | 9054423<br>facacf0865b2b5341ccd0cdb1b260e19e3d79e56 | no | 62 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 7 | Sequence Listing (Text File) | 47956702311_SL.txt | 5260 | no | - |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 8 | Fee Worksheet (SB06) | fee-info.pdf | 38390<br>8eb20f3049c76c2dfd6eb9f647cbee83f4d72a7f | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | | 12772265 | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

 Chiral Publishing Company

| HOME PAGE | TEXT | TOOLS | WEBASSIGN INFO | STORE | CONTACT |
|---|---|---|---|---|---|

# Weak Acid Equilibrium

When an uncharged weak acid is added to water, a homogeneous equilibrium forms in which aqueous acid molecules, HA(aq), react with liquid water to form aqueous hydronium ions and aqueous anions, $A^-$(aq). The latter are produced when the acid molecules lose $H^+$ ions to water.

$$HA(aq) + H_2O(l) \rightleftharpoons H_3O^+(aq) + A^-(aq)$$

In writing an equilibrium constant expression for this homogeneous equilibrium, we leave out the concentration of the liquid water. The equilibrium constant for this expression is called the acid dissociation constant, $K_a$.

$$K_a = \frac{[H_3O^+][A^-]}{[HA]}$$

= acid dissociation constant

When the equilibrium in question occurs in solution, the chemical formulas enclosed in brackets in the equilibrium constant expression represent the molarities of the substances (moles of solute per liter of solution).

Remember that $H^+$ can be used to represent $H_3O^+$, thus simplifying our depiction of the reaction between a weak acid and water and its acid dissociation constant expression:

$$HA(aq) \rightleftharpoons H^+(aq) + A^-(aq)$$

$$K_a = \frac{[H^+][A^-]}{[HA]}$$

= acid dissociation constant

For example, acetic acid is a weak acid, because when it is added to water, it reacts with the water in a reversible fashion to form hydronium and acetate ions.

$$HC_2H_3O_2(aq) + H_2O(l) \rightleftharpoons H_3O^+(aq) + C_2H_3O_2^-(aq)$$

$$\text{or } HC_2H_3O_2(aq) \rightleftharpoons H^+(aq) + C_2H_3O_2^-(aq)$$

$$K_a = \frac{[H^+][C_2H_3O_2^-]}{[HC_2H_3O_2]}$$

$$= 1.8 \times 10^{-5}$$

**EXAMPLE 1** - Writing an Acid Dissociation Constant: Write the equation for the reaction between the weak acid nitrous acid and water, and write the expression for its acid dissociation constant.

**Solution**:

$$HNO_2(aq) + H_2O(l) \rightleftharpoons H_3O^+(aq) + NO_2^-(aq)$$

$$K_a = \frac{[H_3O^+][NO_2^-]}{[HNO_2]}$$

PAR-VASO-0013958

or $HNO_2(aq) \rightleftharpoons H^+(aq) + NO_2^-(aq)$

$$K_a = \frac{[H^+][NO_2^-]}{[HNO_2]}$$

The table below lists acid dissociation constants for some common weak acids. These $K_a$ values can be used to describe the relative strength of the acids. A stronger acid will generate more hydronium ions in solution. A larger $K_a$ indicates a greater ratio of ions (including hydronium ions) to uncharged acid. Therefore, a larger $K_a$ indicates a stronger acid. For example, the larger $K_a$ for chlorous acid ($1.2 \times 10^{-2}$) compared to acetic acid ($1.8 \times 10^{-5}$) tells us that chlorous acid is stronger than acetic acid.

**Acid Dissociation Constants, $K_a$, for Common Weak Acids**

| Weak Acid | Equation | Ka |
|---|---|---|
| acetic acid | $HC_2H_3O_2 \rightleftharpoons H^+ + C_2H_3O_2^-$ | $1.8 \times 10^{-5}$ |
| benzoic acid | $C_6H_5CO_2H \rightleftharpoons H^+ + C_6H_5CO_2^-$ | $6.4 \times 10^{-5}$ |
| chlorous acid | $HClO_2 \rightleftharpoons H^+ + ClO_2^-$ | $1.2 \times 10^{-2}$ |
| formic acid | $HCHO_2 \rightleftharpoons H^+ + CHO_2^-$ | $1.8 \times 10^{-4}$ |
| hydrocyanic acid | $HCN \rightleftharpoons H^+ + CN^-$ | $6.2 \times 10^{-10}$ |
| hydrofluoric acid | $HF \rightleftharpoons H^+ + F^-$ | $7.2 \times 10^{-4}$ |
| hypobromous acid | $HOBr \rightleftharpoons H^+ + OBr^-$ | $2 \times 10^{-9}$ |
| hypochlorous acid | $HOCl \rightleftharpoons H^+ + OCl^-$ | $3.5 \times 10^{-8}$ |
| hypoiodous acid | $HOI \rightleftharpoons H^+ + OI^-$ | $2 \times 10^{-11}$ |
| lactic acid | $CH_3CH(OH)CO_2H \rightleftharpoons H^+ + CH_3CH(OH)CO_2^-$ | $1.38 \times 10^{-4}$ |
| nitrous acid | $HNO_2 \rightleftharpoons H^+ + NO_2^-$ | $4.0 \times 10^{-4}$ |
| phenol | $HOC_6H_5 \rightleftharpoons H^+ + OC_6H_5^-$ | $1.6 \times 10^{-10}$ |
| propionic acid | $CH_3CH_2CO_2H \rightleftharpoons H^+ + CH_3CH_2CO_2^-$ | $1.3 \times 10^{-5}$ |

The following study sheet describes one procedure for calculating the pH of solutions of weak acids. If you take other chemistry courses, you will find that there are variations on this procedure for some weak acid solutions.

**Study Sheet** – Calculating pH for Weak Acid Solutions

**Tip-off** - You are given the concentration of a weak acid solution and asked to calculate its pH.

**General Steps** -

STEP 1 Write the equation for the ionization of the weak acid in water.

$HA(aq) \rightleftharpoons H^+(aq) + A^-(aq)$

STEP 2 Write the Ka expression for the weak acid.

$$K_a = \frac{[H^+][A^-]}{[HA]}$$

PAR-VASO-0013959

STEP 3 Describe each equilibrium concentration in terms of x.

$x = [H^+]_{equilibrium} = [A^-]_{equilibrium}$

$[HA]_{equilibrium} = [HA]_{initial} - x$

STEP 4 Assume that the initial concentration of weak acid is approximately equal to the equilibrium concentration. (Weak acids are rarely ionized to a large degree. We can most often assume that the initial concentration added, $[HA]_{initial}$ is much larger than x. Thus, the equilibrium concentration is approximately equal to the concentration added. You may learn how to deal with weak acid solutions for which this approximation is not appropriate in other chemistry courses.)

$[HA]_{equilibrium} = [HA]_{initial}$

STEP 5 Plug the concentrations described in terms of x into the Ka expression, and solve for x.

$$K_a = \frac{(x)(x)}{[HA]_{initial}}$$

$$x = (K_a [HA]_{initial})^{1/2}$$

**EXAMPLE 2** - pH Calculations for Weak Acid Solutions: Vinegar is a dilute water solution of acetic acid with small amounts of other components. Calculate the pH of bottled vinegar that is 0.667 M $HC_2H_3O_2$, assuming that none of the other components affect the acidity of the solution.

$$HC_2H_3O_2(aq) \rightleftharpoons H^+(aq) + C_2H_3O_2^-(aq)$$

We get the value for the acid dissociation constant for this reaction from the table above.

$$K_a = \frac{[H^+][C_2H_3O_2^-]}{[HC_2H_3O_2]} = 1.8 \times 10^{-5} = \frac{(x)(x)}{0.667 - x} \cong \frac{(x)(x)}{0.667}$$

$$x^2 = 1.2 \times 10^{-5} \quad x = 3.5 \times 10^{-3}$$

$$[H^+] = 3.5 \times 10^{-3} \text{ M } H^+ \qquad pH = -log(3.5 \times 10^{-3}) = \textbf{2.46}$$

| CHIRAL PUBLISHING COMPANY | TEXT | LINKS | MORE LINKS |
|---|---|---|---|
| Copyright 2013 Mark Bishop | • Atoms-first PDF | Home | Animations |
| | • Chemistry-first PDF | About | Tutorials |
| | • Atoms-first eBook | Contact | Glossary quizzes |
| | • Chemistry-first eBook | Tour | Store |
| | | Strengths | Checklists |
| | | | Chapter maps |
| | | | Audio Book |
| | | | Molecules |
| | | | PowerPoint |

PAR-VASO-0013960



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

21971        7590        07/11/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
| --- |
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 1675 | |

DATE MAILED: 07/11/2017

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 14/717,877 | 05/20/2015 | Matthew Kenney | 47956-702.301 | 1722 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 10/11/2017 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

PAR-VASO-0013961

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** __Mail__   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or __Fax__**   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

21971        7590        07/11/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

|  |
|---|
| (Depositor's name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/717,877 | 05/20/2015 | Matthew Kenney | 47956-702.301 | 1722 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 10/11/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BRADLEY, CHRISTINA | 1675 | 514-010900 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____      Date _____

Typed or printed name _____      Registration No. _____

Page 2 of 3

PAR-VASO-0013962



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/717,877 | 05/20/2015 | Matthew Kenney | 47956-702.301 | 1722 |

| | EXAMINER |
|---|---|
| 21971        7590        07/11/2017 | BRADLEY, CHRISTINA |
| WILSON, SONSINI, GOODRICH & ROSATI | |

| 650 PAGE MILL ROAD | ART UNIT | PAPER NUMBER |
|---|---|---|
| PALO ALTO, CA 94304-1050 | 1675 | |

DATE MAILED: 07/11/2017

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

PAR-VASO-0013963

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Examiner-Initiated Interview Summary* | Application No. | Applicant(s) | | |
|---|---|---|---|---|
| | 14/717,877 | KENNEY ET AL. | | |
| | Examiner | Art Unit | AIA (First Inventor to File) Status | Page |
| | CHRISTINA BRADLEY | 1675 | Yes | 1 of 1 |

All participants (applicant, applicant's representative, PTO personnel):

1.  <u>CHRISTINA BRADLEY (Primary Examiner);</u>
    <u>Telephonic</u>

2.  <u>Trisha Agrawal (Attorney of Record); Telephonic</u>

**Date of Interview:** 27 June 2017

**Claim(s) discussed:** 32

**Amendment Proposed:** The Examiner proposed amending claim 32, which depends from claim 1, to depend from claim 16 because claim 1 is cancelled.

**Brief Description of main topic of discussion:** Applicant's Representative authorized the amendment.

## Issues Discussed:

| /CHRISTINA BRADLEY/<br>Primary Examiner, Art Unit 1675 | |
|---|---|

**Applicant recordation instructions:** It is not necessary for applicant to provide a separate record of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicant's responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided.  See MPEP 713.04**

Please further see:

**MPEP 713.04**
**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)**
**37 CFR § 1.2 Business to be transacted in writing**

PAR-VASO-0013965

| *Notice of Allowability* | **Application No.** 14/717,877 | **Applicant(s)** KENNEY ET AL. | |
|---|---|---|---|
| | **Examiner** CHRISTINA BRADLEY | **Art Unit** 1675 | **AIA (First Inventor to File) Status** Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the amendment filed May 22, 2017*.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *16-28 and 32-37*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All    b) ☐ Some   *c) ☐ None of the:

      1. ☐ Certified copies of the priority documents have been received.

      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☒ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☒ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675

PAR-VASO-0013966

## EXAMINER'S AMENDMENT

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in an interview with Trisha Agrawal on June 27, 2017.

The application has been amended as follows:

In claim 32, line 1, delete "claim 1" and insert --claim 16-- therefor.


The following is an examiner's statement of reasons for allowance:

The closest prior art, Pharmaceutical Partners of Canada, teaches a vasopressin formulation comprising 20 USP vasopressin units, chlorobutanol (anhydrous) 5 mg as preservative, water for injection, and q.s. glacial acetic acid and/or sodium hydroxide for pH adjustment, and having a pH of 2.5-4.5.

The declaration under 37 CFR 1.132 filed May 22, 2017 is sufficient to overcome an obviousness rejection over Pharmaceutical Partners of Canada because it establishes the criticality of the claimed pH range of 3.5 to 4.1.

All previous grounds of rejection are withdrawn.

PAR-VASO-0013967

Application/Control Number: 14/717,877                                     Page 3
Art Unit: 1675

   Any comments considered necessary by applicant must be submitted no later than the

payment of the issue fee and, to avoid processing delays, should preferably accompany the issue

fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for

Allowance."

   Any inquiry concerning this communication or earlier communications from the

examiner should be directed to CHRISTINA BRADLEY whose telephone number is (571)272-

9044.  The examiner can normally be reached on Monday through Friday from 5:30 A.M. to

2:00 P.M.

   Examiner interviews are available via telephone, in-person, and video conferencing using

a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is

encouraged to use the USPTO Automated Interview Request (AIR) at

http://www.uspto.gov/interviewpractice.

   If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

PAR-VASO-0013968

Application/Control Number: 14/717,877                                         Page 4
Art Unit: 1675

     Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675

cmb

| *Examiner-Initiated Interview Summary* | Application No. | Applicant(s) | | |
|---|---|---|---|---|
| | 14/717,877 | KENNEY ET AL. | | |
| | Examiner | Art Unit | AIA (First Inventor to File) Status | Page |
| | CHRISTINA BRADLEY | 1675 | Yes | 1 of 1 |

All participants (applicant, applicant's representative, PTO personnel):

1.  <u>CHRISTINA BRADLEY (Primary Examiner);</u> <u>Telephonic</u>

2.  <u>Trisha Agrawal (Attorney of Record); Telephonic</u>

**Date of Interview:** 27 June 2017

**Claim(s) discussed:** 32

**Amendment Proposed:** The Examiner proposed amending claim 32, which depends from claim 1, to depend from claim 16 because claim 1 is cancelled.

**Brief Description of main topic of discussion:** Applicant's Representative authorized the amendment.

## Issues Discussed:

| /CHRISTINA BRADLEY/ Primary Examiner, Art Unit 1675 | |
|---|---|

**Applicant recordation instructions:** It is not necessary for applicant to provide a separate record of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicant's responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided.  See MPEP 713.04**

Please further see:

**MPEP 713.04**
**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)**
**37 CFR § 1.2 Business to be transacted in writing**

U.S. Patent and Trademark Office
PTOL-413/413b (Rev. 01/01/2015)                    **Interview Summary**                    Paper No. 20170627

PAR-VASO-0013970

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | Application Number | 14717877 |
| | Filing Date | 05-20-2015 |
| | First Named Inventor | KENNEY; Matthew |
| | Art Unit | 1675 |
| | Examiner Name | BRADLEY, CHRISTINA |
| Sheet | 1 | of | 4 | Attorney Docket Number | 47956-702.301 |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 001 | US-20170035853-A1 | 02-09-2017 | KENNEY; Matthew et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document — Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | None | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0013971

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | Application Number | 14717877 |
| | Filing Date | 05-20-2015 |
| | First Named Inventor | KENNEY; Matthew |
| | Art Unit | 1675 |
| | Examiner Name | BRADLEY, CHRISTINA |
| Sheet   2   of   4 | Attorney Docket Number | 47956-702.301 |

| | | **NON-PATENT LITERATURE DOCUMENTS** | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author(in CAPITAL LETTERS),title of the article(when appropriate), title of the item (book,magazine,journal,serial,symposium,catalog,etc.),date,page(s),volume-issue number(s),publisher, city and/or country where published. | T[2] |
| | 001 | CHANG, et al., Practical approaches to protein formulation development, Rational Design of stable protein in formulations, edited by Carpenter and Manning. Kluwer Academic/Plenum Publishers, New York, 2002, pp. 1-25. | ☐ |
| | 002 | Co-pending US patent application No. US15/426,693, filed on 02-07-2017. | ☐ |
| | 003 | Co-pending US patent application No. US15/426,703, filed on 02-07-2017. | ☐ |
| | 004 | Label for Vasotrict (vasopressin injection) for intravenous use, downloaded from www. fda.gov on 3/21/017. | ☐ |
| | 005 | Office Action dated 02/22/2017 for US Application No. 15/289,640. | ☐ |
| | 006 | Office Action dated 03/29/2017 for US Application No. 15/426,693. | ☐ |
| | 007 | Office Action dated 3/29/2017 for US Application No. 15/426,703. | ☐ |
| | 008 | Notice of Allowance dated 05/12/2017 for US Application No. 15/289,640. | ☐ |

| Examiner Signature | /CHRISTINA   BRADLEY/ | Date Considered | 06/27/2017 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0013972

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

## INFORMATION DISCLOSURE STATEMENT BY APPLICANT

(Use as many sheets as necessary)

| Sheet | 3 | of | 4 |
|-------|---|----|----|

| Complete if Known | |
|---|---|
| Application Number | 14717877 |
| Filing Date | 05-20-2015 |
| First Named Inventor | KENNEY; Matthew |
| Art Unit | 1675 |
| Examiner Name | BRADLEY, CHRISTINA |
| Attorney Docket Number | 47956-702.301 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☒ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Trisha Agrawal/ | Date (YYYY-MM-DD) | 2017-05-22 |
|-----------|------------------|-------------------|------------|
| Name/Print | Trisha Agrawal | Registration Number | 73,212 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 21971 | 7590 | 07/11/2017 |

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

DATE MAILED: 07/11/2017

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/426,693 | 02/07/2017 | Matthew Kenney | 47956-702.502 | 1012 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 10/11/2017 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

## HOW TO REPLY TO THIS NOTICE:

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

PAR-VASO-0013975

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to: Mail**    Mail Stop ISSUE FEE
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

21971     7590     07/11/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/426,693 | 02/07/2017 | Matthew Kenney | 47956-702.502 | 1012 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 10/11/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BRADLEY, CHRISTINA | 1675 | 514-010900 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE      (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____     Date _____

Typed or printed name _____     Registration No. _____

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

PAR-VASO-0013976



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/426,693 | 02/07/2017 | Matthew Kenney | 47956-702.502 | 1012 |

21971       7590       07/11/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

DATE MAILED: 07/11/2017

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

PAR-VASO-0013977

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PAR-VASO-0013978

| *Notice of Allowability* | **Application No.** 15/426,693 | **Applicant(s)** KENNEY ET AL. | |
|---|---|---|---|
| | **Examiner** CHRISTINA BRADLEY | **Art Unit** 1675 | **AIA (First Inventor to File) Status** Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the amendment filed June 28, 2017*.

   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *16-23,30-33 and 36*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All    b) ☐ Some    *c) ☐ None of the:

       1. ☐ Certified copies of the priority documents have been received.

       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

       3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675

**Notice of Allowability**

Part of Paper No./Mail Date

**PAR-VASO-0013979**

Application/Control Number: 15/426,693                                    Page 2
Art Unit: 1675

## EXAMINER'S AMENDMENT

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

The following is an examiner's statement of reasons for allowance:

The closest prior art, Pharmaceutical Partners of Canada, teaches a vasopressin formulation comprising 20 USP vasopressin units, chlorobutanol (anhydrous) 5 mg as preservative, water for injection, and q.s. glacial acetic acid and/or sodium hydroxide for pH adjustment, and having a pH of 2.5-4.5.

The response filed June 28, 2017, and the data in the specification referenced therein, is sufficient to overcome the obviousness rejection over Pharmaceutical Partners of Canada because it establishes the criticality of the claimed pH range of 3.7 to 3.9.

The terminal disclaimers filed June 28, 2017 are sufficient to overcome all double patenting rejections.

All previous grounds of rejection are withdrawn.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to CHRISTINA BRADLEY whose telephone number is (571)272-9044.  The examiner can normally be reached on Monday through Friday from 5:30 A.M. to 2:00 P.M.

Application/Control Number: 15/426,693                                    Page 3
Art Unit: 1675

     Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

     Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675

cmb

PAR-VASO-0013981

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | Complete if Known | |
|---|---|---|
| | Application Number | 15426693 |
| | Filing Date | 02-07-2017 |
| | First Named Inventor | KENNEY; Matthew |
| | Art Unit | 1675 |
| | Examiner Name | BRADLEY, CHRISTINA |
| Sheet    1    of    4 | Attorney Docket Number | 47956-702.502 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 001 | US-9687526 | 06-27-2017 | KENNEY; Matthew et al. | |
| | 002 | US-20170157203-A1 | 06-08-2017 | KENNEY; Matthew et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | None | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0013982

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | Complete if Known | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | | | Application Number | 15426693 |
| | | | Filing Date | 02-07-2017 |
| | | | First Named Inventor | KENNEY; Matthew |
| | | | Art Unit | 1675 |
| | | | Examiner Name | BRADLEY, CHRISTINA |
| Sheet | 2 | of | 4 | Attorney Docket Number | 47956-702.502 |

### NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author(in CAPITAL LETTERS),title of the article(when appropriate), title of the item (book,magazine,journal,serial,symposium,catalog,etc.),date,page(s),volume-issue number(s),publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 001 | CHANG, et al., Practical approaches to protein formulation development, Rational Design of stable protein in formulations, edited by Carpenter and Manning. Kluwer Academic/Plenum Publishers, New York, 2002, pp. 1-25. | ☐ |
| | 002 | Co-pending US patent application No. US15/606,442, filed on 05-26-2017. | ☐ |
| | 003 | Co-pending US patent application No. US15/612,649, filed on 06-02-2017. | ☐ |
| | 004 | Label for Vasostrict (vasopressin injection) for intravenous use, downloaded from www.fda.gov on 3/21/2017. | ☐ |
| | 005 | Notice of Allowance dated 05/12/2017 for US Application No. 15/289,640. | ☐ |
| | 006 | Office Action dated 02/22/2017 for US Application No. 15/289,640. | ☐ |
| | 007 | Office Action dated 3/29/2017 for US Application No. 15/426,703. | ☐ |

| Examiner Signature | /CHRISTINA  BRADLEY/ | Date Considered | 07/05/2017 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0013983

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | Application Number | 15426693 |
| | Filing Date | 02-07-2017 |
| | First Named Inventor | KENNEY; Matthew |
| | Art Unit | 1675 |
| | Examiner Name | BRADLEY, CHRISTINA |
| Sheet 3 of 4 | Attorney Docket Number | 47956-702.502 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☒ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Trisha Agrawal/ | Date (YYYY-MM-DD) | 2017-06-28 |
|---|---|---|---|
| Name/Print | Trisha Agrawal | Registration Number | 73,212 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0013984

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | | | EXAMINER |
|---|---|---|---|---|
| 21971 | 7590 | 07/20/2017 | | BRADLEY, CHRISTINA |
| WILSON, SONSINI, GOODRICH & ROSATI | | | | |
| 650 PAGE MILL ROAD | | | ART UNIT | PAPER NUMBER |
| PALO ALTO, CA 94304-1050 | | | 1675 | |

DATE MAILED: 07/20/2017

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/426,703 | 02/07/2017 | Matthew Kenney | 47956-702.503 | 5198 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 10/20/2017 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.   THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.   SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.   <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>   SEE 35 U.S.C. 151.   THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.   IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

PAR-VASO-0013986

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** **Mail**   **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax   (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

21971        7590        07/20/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/426,703 | 02/07/2017 | Matthew Kenney | 47956-702.503 | 5198 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 10/20/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BRADLEY, CHRISTINA | 1675 | 514-010900 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                     (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
☐ Applicant certifying micro entity status. See 37 CFR 1.29
☐ Applicant asserting small entity status. See 37 CFR 1.27
☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

PAR-VASO-0013987



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/426,703 | 02/07/2017 | Matthew Kenney | 47956-702.503 | 5198 |

21971        7590        07/20/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

DATE MAILED: 07/20/2017

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
### (Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

PAR-VASO-0013988

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No.<br>15/426,703 | Applicant(s)<br>KENNEY ET AL. | |
|---|---|---|---|
| | Examiner<br>CHRISTINA BRADLEY | Art Unit<br>1675 | AIA (First Inventor to File)<br>Status<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the amendment filed 6/28/2017* .
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____ .

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *16, 18-25,32 and 33*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
      a) ☐ All    b) ☐ Some  *c) ☐ None of the:
        1. ☐ Certified copies of the priority documents have been received.
        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the
           International Bureau (PCT Rule 17.2(a)).
     * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
      Paper No./Mail Date _____ .
    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date
3. ☐ Examiner's Comment Regarding Requirement for Deposit
    of Biological Material
4. ☐ Interview Summary (PTO-413),
    Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675

**Notice of Allowability**      Part of Paper No./Mail Date

PAR-VASO-0013990

Application/Control Number: 15/426,703                                              Page 2
Art Unit: 1675

## EXAMINER'S AMENDMENT

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

The following is an examiner's statement of reasons for allowance:

The closest prior art, Pharmaceutical Partners of Canada, teaches a vasopressin formulation comprising 20 USP vasopressin units, chlorobutanol (anhydrous) 5 mg as preservative, water for injection, and q.s. glacial acetic acid and/or sodium hydroxide for pH adjustment, and having a pH of 2.5-4.5.

The response filed June 28, 2017, and the data in the specification referenced therein, is sufficient to overcome the obviousness rejection over Pharmaceutical Partners of Canada because it establishes the criticality of the claimed pH range of 3.7 to 3.9.

The terminal disclaimers filed June 28, 2017 are sufficient to overcome all double patenting rejections.

All previous grounds of rejection are withdrawn.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner should be directed to CHRISTINA BRADLEY whose telephone number is (571)272-9044.  The examiner can normally be reached on Monday through Friday from 5:30 A.M. to 2:00 P.M.

PAR-VASO-0013991

Application/Control Number: 15/426,703                                    Page 3
Art Unit: 1675

Examiner interviews are available via telephone, in-person, and video conferencing using

a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is

encouraged to use the USPTO Automated Interview Request (AIR) at

http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, James Alstrum-Acevedo can be reached on (571) 272-5548. The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system. Status information for published applications

may be obtained from either Private PAIR or Public PAIR. Status information for unpublished

applications is available through Private PAIR only. For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675

cmb

PAR-VASO-0013992

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15426703 | KENNEY ET AL. |
| | Examiner | Art Unit |
| | CHRISTINA BRADLEY | 1675 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| A61K38/11 | 3/22/2017 | CMB |
| C07K7/16 | 3/22/2017 | CMB |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| East - see transcript | 3/22/2017 | CMB |
| STN - see transcript | 3/22/2017 | CMB |
| Palm and East - inventor search | 3/22/2017, updated 7/5/2017 | CMB |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | East - see transcript | 7/5/2017 | CMB |

| | |
|---|---|
| | |

U.S. Patent and Trademark Office

Part of Paper No. :  20170705

PAR-VASO-0013993

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15426703 | KENNEY ET AL. |
| | Examiner | Art Unit |
| | CHRISTINA BRADLEY | 1675 |

**CPC**

| Symbol | | | Type | Version |
|---|---|---|---|---|
| A61K | 38 | 11 | F | 2013-01-01 |
| A61K | 47 | 12 | I | 2013-01-01 |
| G01N | 30 | 74 | I | 2013-01-01 |
| G01N | 30 | 88 | I | 2013-01-01 |
| G01N | 2030 | 8831 | A | 2013-01-01 |
| G01N | 2030 | 027 | A | 2013-01-01 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**CPC Combination Sets**

| Symbol | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

| NONE | | Total Claims Allowed: |
|---|---|---|
| (Assistant Examiner) | (Date) | 11 |
| /CHRISTINA BRADLEY/ Primary Examiner.Art Unit 1675 | 07/05/2017 | O.G. Print Claim(s) |  O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | none |

U.S. Patent and Trademark Office

Part of Paper No. 20170705

**PAR-VASO-0013994**

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15426703 | KENNEY ET AL. |
| | **Examiner** | **Art Unit** |
| | CHRISTINA BRADLEY | 1675 |

| US ORIGINAL CLASSIFICATION | | INTERNATIONAL CLASSIFICATION | | |
|---|---|---|---|---|
| **CLASS** | **SUBCLASS** | **CLAIMED** | | **NON-CLAIMED** |
| | | | | |

| CROSS REFERENCE(S) | | | |
|---|---|---|---|
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| NONE | | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 11 | |
| /CHRISTINA BRADLEY/ Primary Examiner.Art Unit 1675 | 07/05/2017 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | none |

U.S. Patent and Trademark Office

Part of Paper No. 20170705

**PAR-VASO-0013995**

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15426703 | KENNEY ET AL. |
| | **Examiner** | **Art Unit** |
| | CHRISTINA BRADLEY | 1675 |

☒ Claims renumbered in the same order as presented by applicant    ☐ CPA    ☒ T.D.    ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 11 | |
| /CHRISTINA BRADLEY/<br>Primary Examiner.Art Unit 1675 | 07/05/2017 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | none |

U.S. Patent and Trademark Office

Part of Paper No. 20170705

PAR-VASO-0013996

| | | |
|---|---|---|
| ***Notice of References Cited*** | Application/Control No.<br>15/612,649 | Applicant(s)/Patent Under Reexamination<br>Kenney et al. |
| | Examiner<br>CHRISTINA MARCHETTI BRADLEY | Art Unit<br>1675 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| | A | | | | | |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015) (Year: 2015) |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20170914

PAR-VASO-0013997

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/612,649 | 06/02/2017 | Matthew Kenney | 47956-702.505 | 1030 |

21971        7590        09/19/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 09/19/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@wsgr.com

PTOL-90A (Rev. 04/07)

PAR-VASO-0013998

| *Office Action Summary* | Application No. 15/612,649 | Applicant(s) Kenney et al. | |
|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | AIA Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on 02 June 2017 .
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2a) ☐ This action is **FINAL.**   2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☑ Claim(s) 16-43 is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) 16-43 is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on 30 June 2017 is/are:  a) ☑  accepted or  b) ☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a) ☐ All   b) ☐ Some**   c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____ .

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____ .

4) ☐ Other: _____ .

U.S. Patent and Trademark Office

PAR-VASO-0013999

Application/Control Number:15/612,649                                             Page   2
Art Unit:  1675

## DETAILED CORRESPONDENCE

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.


### *Priority*

Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or under 35

U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with one or more

conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120, 121, 365(c), or 386(c) as

follows:

The later-filed application must be an application for a patent for an invention which is also

disclosed in the prior application (the parent or original nonprovisional application or provisional

application). The disclosure of the invention in the parent application and in the later-filed application

must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA

35 U.S.C. 112, except for the best mode requirement.  See *Transco Products, Inc. v. Performance*

*Contracting, Inc.,* 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application Nos. 15/426,693, 15/289,640,

14/717,877, and 14/610,499 fail to provide adequate support or enablement in the manner provided by

35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.

The disclosure of the instant application, Application No. 15/612,649, describes an intravenous

unit dosage form of vasopressin (¶ [00334]). The disclosure includes the following elements that pertain

to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in

claims 16-43, particularly the steps requiring storing the unit dosage form for at least one month.

PAR-VASO-0014000

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. This description is critical support for the unit dosage form of claims 16, 26, and 36, and for step a) of claims 26 and 36. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month".  The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

In contrast, the disclosures of prior-filed Application Nos. 15/426,693 and 15/289,640 do not include a vasopressin formulation for bottle or intravenous drip-bag. Instead, the prior-filed applications disclose a method wherein a unit dosage form containing vasopressin, chlorobutanol, acetic acid, and water is diluted in 0.9% saline or 5% dextrose prior to intravenous administration (see ¶[00102]-[00138]

of Application No. 15/426,693, and ¶ [00100]-[00135] of Application No. 15/289,640). The unit dosage

form can be stored at 5 °C but not the form diluted in 0.9% saline or 5% dextrose.

Each of prior-filed Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 state

that vasopressin diluted in dextrose must be discarded after a limited period of time (¶ [00270],

[00267], [0042], [0140], respectively): "Vasopressin is diluted in normal saline (0.9% sodium chloride) or

5% dextrose in water (D5W) prior to use to either 0.1 units/mL or 1 unit/mL for intravenous

administration. Unused diluted solution is discarded after 18 hours at room temperature or after 24

hours under refrigeration."

The stability data and handling instructions provided in the instant application and omitted in

the prior-filed applications are critical for establishing support for the claimed methods because even

the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016,

states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal

saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for

intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24

hours under refrigeration" (§ 2.1). It is not implicit in the prior-filed applications to make a vasopressin

formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for

intravenous therapy. It is also not implicit in the prior-filed applications to store the vasopressin

formulation in dextrose for at least about one month prior to administration, counter to the instructions

on the FDA label for Vasostrict® (vasopressin injection), and in the prior-filed disclosures, and in the

absence of any data or instruction suggesting that a longer storage period would be safe and effective.

As a result, the earliest effective filing date for claims 16-43 is the filing date of the instant

application, June 2, 2017.

### *Claim Rejections - 35 USC § 112(a)*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a)  IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 16-43 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement.  The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.

The claims are drawn to a method of increasing blood pressure in a hypotensive human with vasopressin. The method requires the use of a unit dosage form comprising i) from about 0.1 µg/mL to about 2 µg/mL of vasopressin, ii) dextrose, iii) acetic acid, sodium acetate, or a combination thereof, and iv) optionally hydrochloric acid or sodium hydroxide. Claim 27 and its dependent claims require that the unit dosage form is stored for at least about one month at 5 °C prior to administration, and claim 36 and its dependent claims require that the unit dosage form is stored for at least about one month at 25 °C prior to administration.

In contrast to the claimed methods, even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after

18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). Prior to the instant application,

making a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial

vasopressin dilution for intravenous therapy is counter to the instructions on the FDA label for

Vasostrict® (vasopressin injection). The question of whether storing a diluted form of vasopressin

formulation for at least about a month would be safe and effective was unpredictable before the

guidance and data presented in the instant application.

The disclosure of the instant application, Application No. 15/612,649, describes an intravenous

unit dosage form of vasopressin (¶ [00334]). The disclosure includes the following elements that pertain

to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in

claims 16-43, particularly the steps requiring storing the unit dosage form for at least one month.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that
  can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL
  vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus
  either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose
  (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for
  bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an
  estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight
  months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate
  buffer provided a lower rate of degradation and a lower rate of impurities accumulation
  for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a
  combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

PAR-VASO-0014004

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. This description is critical support for the unit dosage form of claims 16, 26, and 36, and for step a) of claims 26 and 36. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month".  The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

Therefore, the specification fully supports the claimed methods as they apply to the specific vasopressin formulation comprising dextrose and 1 mM acetate buffer in Example 16. Table 66 of the instant specification suggests that the pH of the formulations containing dextrose and 1 mM acetate buffer (G and H) was between 3.74 and 3.75.

However, instant claims 16-43 are not limited to formulations between 3.74 and 3.75 but rather encompass any pH that can be buffered by acetate, and with a concentration of 1 or 10 mM acetate buffer. Given the high degree of unpredictability in the art of vasopressin formulation and stability, and the explicit instructions and standard to discard soon after dilution in dextrose, one of ordinary skill in the art would not conclude that Applicant was in possession of a vasopressin formulation at any pH or buffer concentration that can be used in the claim methods.

In order to overcome this rejection, Applicant should amend the claims to limit the pH of the formulation and buffer concentration as set forth in Example 16.

### Claim Rejections - 35 USC § 112(b)

The following is a quotation of 35 U.S.C. 112(b):
(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

PAR-VASO-0014005

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 16-43 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph,

as being indefinite for failing to particularly point out and distinctly claim the subject matter which the

inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The claims recite the term "unit dosage form". There are two plausible constructions for this

term. First, example 16 of the specification suggests that in the instant claim "unit dosage form" means

a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin

dilution for intravenous therapy. Second, a plain reading of the term could also encompass a different

unit dosage form that is subsequently diluted with dextrose to form another "unit dosage form". If a

claim is amenable to two or more plausible constructions, applicant is required to amend the claim to

more precisely define the metes and bounds of the claimed invention or the claim is indefinite under §

112,  ¶ 2.  *Ex parte Miyazaki*, 89 USPQ2d 1207 (BPAI 2008)

### *Claim Rejections - 35 USC § 112(d)*

The following is a quotation of 35 U.S.C. 112(d):

(d) REFERENCE IN DEPENDENT FORMS.—Subject to subsection (e), a claim in dependent form shall
contain a reference to a claim previously set forth and then specify a further limitation of the subject
matter claimed. A claim in dependent form shall be construed to incorporate by reference all the
limitations of the claim to which it refers.

The following is a quotation of pre-AIA 35 U.S.C. 112, fourth paragraph:

Subject to the following paragraph [i.e., the fifth paragraph of pre-AIA 35 U.S.C. 112], a claim in
dependent form shall contain a reference to a claim previously set forth and then specify a further
limitation of the subject matter claimed. A claim in dependent form shall be construed to incorporate
by reference all the limitations of the claim to which it refers.

Claim 17 is rejected under 35 U.S.C. 112(d) or pre-AIA 35 U.S.C. 112, 4th paragraph, as being of

improper dependent form for failing to further limit the subject matter of the claim upon which it

depends, or for failing to include all the limitations of the claim upon which it depends.  Claim 17 states

that the unit dosage form consists essentially of hydrochloric acid, however, the claim from which claim

17 depends, claim 16, requires that the unit dosage form contain additional ingredients.  Applicant may

cancel the claim(s), amend the claim(s) to place the claim(s) in proper dependent form, rewrite the

claim(s) in independent form, or present a sufficient showing that the dependent claim(s) complies with

the statutory requirements.

Claim 18 is rejected under 35 U.S.C. 112(d) or pre-AIA 35 U.S.C. 112, 4th paragraph, as being of

improper dependent form for failing to further limit the subject matter of the claim upon which it

depends, or for failing to include all the limitations of the claim upon which it depends.  Claim 18 states

that the unit dosage form consists essentially of sodium hydroxide, however, the claim from which claim

18 depends, claim 16, requires that the unit dosage form contain additional ingredients.  Applicant may

cancel the claim(s), amend the claim(s) to place the claim(s) in proper dependent form, rewrite the

claim(s) in independent form, or present a sufficient showing that the dependent claim(s) complies with

the statutory requirements.

Claim 25 is rejected under 35 U.S.C. 112(d) or pre-AIA 35 U.S.C. 112, 4th paragraph, as being of

improper dependent form for failing to further limit the subject matter of the claim upon which it

depends, or for failing to include all the limitations of the claim upon which it depends.  Claim 25 states

that the unit dosage form consists essentially of 5% dextrose, however, the claim from which claim 25

depends, claim 16, requires that the unit dosage form contain additional ingredients.  Applicant may

cancel the claim(s), amend the claim(s) to place the claim(s) in proper dependent form, rewrite the

claim(s) in independent form, or present a sufficient showing that the dependent claim(s) complies with

the statutory requirements.

PAR-VASO-0014007

### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

Claims 16, and 19-25 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015).

Claim interpretation note: "unit dosage form" in claim 16 is not limited to forms that are not diluted prior to administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1). The Vasostrict® Label states that 1 mg of vasopressin is equivalent to 530 units (§ 11). Therefore, the unit dosage form taught by the FDA Label for Vasostrict® (vasopressin injection) contains:

0.1 units/mL x 1 mg/530 units = 0.000189 mg/mL = 0.189 µg/mL of vasopressin

1 units/mL x 1 mg/530 units = 0.00189 mg/mL = 1.89 µg/mL of vasopressin

both of which fall within the claimed range of about 0.1 µg/mL to about 2 µg/mL. The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water, and acetic acid

PAR-VASO-0014008

to pH 3.4-3.6 (§ 11). The Vasostrict® Label states that the starting intravenous dose is 0.03 units/minute

for post-cardiotomy shock, and 0.01 units/minute for septic shock. The Vasostrict® Label states that the

dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.1

units/minute for post-cardiotomy shock and 0.07 units/minute for septic shock. (§ 2.2). All infusion rates

taught by the Vasostrict® Label fall within the claimed range of about 0.01 units to about 0.1 units per

minute. Therefore, the Vasostrict® Label meets all of the limitations of instant claim 16.

     With respect to claim 19, the Vasostrict® Label states that mean arterial blood pressure can be

increased in 15 minutes (§ 12.2).

     With respect to claims 20 and 21, the Vasostrict® Label states that vasopressin is indicated for

post-cardiotomy shock (§ 1).

     With respect to claim 22, the Vasostrict® Label states that vasopressin is indicated for post-

cardiotomy shock, and that the starting intravenous dose is 0.03 units/minute, and that the dose can be

titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute (§

2.2).

     With respect to claim 23, the Vasostrict® Label states that vasopressin is indicated for septic

shock (§ 1).

     With respect to claim 24, the Vasostrict® Label states that vasopressin is indicated for septic

shock, and that the starting intravenous dose is 0.01 units/minute, and that the dose can be titrated up

by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.07 units/minute (§ 2.2).

     With respect to claim 25, the Vasostrict® Label states that vasopressin composition comprises

5% dextrose in water (§ 2.1).

*Conclusion*

     No claims are allowed.

PAR-VASO-0014009

Application/Control Number:15/612,649                                         Page   12
Art Unit:  1675

   Any inquiry concerning this communication or earlier communications from the examiner

should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The

examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

   Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

   If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number for the organization

where this application or proceeding is assigned is 571-273-8300.

   Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.


                                        /CHRISTINA BRADLEY/
                                        Primary Examiner, Art Unit 1675



cmb

| ***Notice of References Cited*** | Application/Control No. 15/688,330 | Applicant(s)/Patent Under Reexamination Kenney et al. | |
|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| | A | | | | | |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015) (Year: 2015) |
| | V | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 12/21/2016) (Year: 2016) |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                                    **Notice of References Cited**                    Part of Paper No. 20171010

PAR-VASO-0014011

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/688,330 | 08/28/2017 | Matthew Kenney | 47956-702.307 | 9848 |

21971        7590        10/17/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/17/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@wsgr.com

PTOL-90A (Rev. 04/07)

PAR-VASO-0014012

| *Office Action Summary* | Application No.<br>15/688,330 | Applicant(s)<br>Kenney et al. | |
|---|---|---|---|
| | Examiner<br>CHRISTINA MARCHETTI<br>BRADLEY | Art Unit<br>1675 | AIA Status<br>Yes |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☑ Responsive to communication(s) filed on <u>28 August 2017</u>                    .
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____                    .

2a)☐ This action is **FINAL.**    2b)☑ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☑ Claim(s) <u>16-28</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☑ Claim(s) <u>16-28</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or  b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All   b)☐ Some**   c)☐ None of the:
      1.☐ Certified copies of the priority documents have been received.
      2.☐ Certified copies of the priority documents have been received in Application No. _____ .
      3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☑ Notice of References Cited (PTO-892)

2)☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b)
  Paper No(s)/Mail Date _____ .

3)☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____ .

4)☐ Other: _____ .

Application/Control Number: 15/688,330                                      Page 2

Art Unit: 1675

## DETAILED CORRESPONDENCE

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.

### *Priority*

Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or under 35

U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with one or more

conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120, 121, 365(c), or 386(c) as

follows:

The later-filed application must be an application for a patent for an invention which is also

disclosed in the prior application (the parent or original nonprovisional application or provisional

application). The disclosure of the invention in the parent application and in the later-filed application

must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA

35 U.S.C. 112, except for the best mode requirement.  See *Transco Products, Inc. v. Performance*

*Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application Nos. 15/426,693, 15/289,640,

14/717,877, and 14/610,499 fail to provide adequate support or enablement in the manner provided by

35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.

The disclosure of the instant application, and the parent Application No. 15/612,649, describe

an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following

elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the

manner set forth in claims 16-28.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

In contrast, the disclosures of prior-filed Application Nos. 15/426,693 and 15/289,640 do not include a vasopressin formulation for bottle or intravenous drip-bag. Instead, the prior-filed applications disclose a method wherein a unit dosage form containing vasopressin, chlorobutanol, acetic acid, and water is diluted in 0.9% saline or 5% dextrose prior to intravenous administration (see ¶[00102]-[00138]

PAR-VASO-0014015

of Application No. 15/426,693, and ¶ [00100]-[00135] of Application No. 15/289,640). The unit dosage form can be stored at 5 °C but not the form diluted in 0.9% saline or 5% dextrose.

Each of prior-filed Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 state that vasopressin diluted in dextrose must be discarded after a limited period of time (¶ [00270], [00267], [0042], [0140], respectively): "Vasopressin is diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to either 0.1 units/mL or 1 unit/mL for intravenous administration. Unused diluted solution is discarded after 18 hours at room temperature or after 24 hours under refrigeration."

The stability data and handling instructions provided in the instant application and omitted in the prior-filed applications are critical for establishing support for the claimed methods because even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). It is not implicit in the prior-filed applications to make a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy, counter to the instructions on the FDA label for Vasostrict® (vasopressin injection), and in the prior-filed disclosures, and in the absence of any data or instruction suggesting that a longer storage period would be safe and effective.

As a result, the earliest effective filing date for claims 16-28 is the filing date of parent Application No. 15/612,649, June 2, 2017.

### *Claim Rejections - 35 USC § 112(b)*

The following is a quotation of 35 U.S.C. 112(b):

Application/Control Number: 15/688,330                                          Page 5
Art Unit: 1675

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 16-28 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The claims recite the term "unit dosage form". There are two plausible constructions for this term. First, example 16 of the specification suggests that in the instant claim "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy. Second, a plain reading of the term could also encompass a different unit dosage form that is subsequently diluted with dextrose to form another "unit dosage form". If a claim is amenable to two or more plausible constructions, applicant is required to amend the claim to more precisely define the metes and bounds of the claimed invention or the claim is indefinite under § 112, ¶ 2. *Ex parte Miyazaki*, 89 USPQ2d 1207 (BPAI 2008)

### Claim Rejections - 35 USC § 112(a)

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

(a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person

Application/Control Number: 15/688,330                                    Page 6
Art Unit: 1675

> skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the
> same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 16-28 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy.

The claims are drawn to a method of increasing blood pressure in a hypotensive human with vasopressin. The method requires the use of a unit dosage form comprising i) from about 0.1 units/mL to about 1 unit/mL of vasopressin, ii) acetic acid, sodium acetate, or a combination thereof, iii) 0-2 % vasopressin degradation products, iv) dextrose, and v) water, wherein the pH is no greater than 4.1.

In contrast to the claimed methods, even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). Prior to the instant application, making a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy is counter to the instructions on the FDA label for Vasostrict® (vasopressin injection). The question of whether a diluted form of vasopressin formulation that could be stored as a unit dosage form for later administration would be safe and effective was unpredictable before the guidance and data presented in the instant application.

Application/Control Number: 15/688,330                                                    Page 7
Art Unit: 1675

The disclosure of the instant application describes an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-28.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. This description is critical support for the unit dosage form of claims 16, 26, and 36, and for step a) of claims 26 and 36. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month".  The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

PAR-VASO-0014019

Therefore, the specification fully supports the claimed methods as they apply to the specific vasopressin

formulation comprising dextrose and 1 mM acetate buffer in Example 16. Table 66 of the instant

specification suggests that the pH of the formulations containing dextrose and 1 mM acetate buffer (G

and H) was between 3.74 and 3.75.

However, instant claims 16-28 are not limited to formulations between 3.74 and 3.75 but rather

encompass any pH up to 4.1 that can be buffered by acetate, and with a concentration of 1 or 10 mM

acetate buffer. Given the high degree of unpredictability in the art of vasopressin formulation and

stability, and the explicit instructions and standard to discard soon after dilution in dextrose, one of

ordinary skill in the art would not conclude that Applicant was in possession of a vasopressin

formulation at any pH or buffer concentration that can be used in the claim methods as a diluted unit

dosage form that can be stored prior to use.

In order to overcome this rejection, Applicant should amend the claims to limit the pH of the

formulation and buffer concentration as set forth in Example 16.

### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102

and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory

basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and

the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis

for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale
or otherwise available to the public before the effective filing date of the claimed invention.

Claims 16, 17, 20-25, 27, and 28 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" allows for dilution prior to administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1). The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water, and acetic acid to pH 3.4-3.6 (§ 11).The Vasostrict® Label states that the starting intravenous dose is 0.03 units/minute for post-cardiotomy shock, and 0.01 units/minute for septic shock. The Vasostrict® Label states that the dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute for post-cardiotomy shock and 0.07 units/minute for septic shock. (§ 2.2). All infusion rates taught by the Vasostrict® Label fall within the claimed range of about 0.01 units to about 0.1 units per minute.

With respect to the limitation "0-2% vasopressin degradation products," the reference is silent as to the level of degradation. Because the formulation and method is otherwise identical to the claimed unit dosage form and method there is a reasonable basis to shift the burden to applicant to establish whether this claimed property is met as in *In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See MPEP §§ 2112-2112.02.

With respect to claim 17, the Vasostrict® Label states that the dextrose concentration is 5% (§ 2.1).

Application/Control Number: 15/688,330                                                    Page 10
Art Unit: 1675

With respect to claim 20, the Vasostrict® Label states that mean arterial blood pressure can be increased in 15 minutes (§ 12.2).

With respect to claims 21 and 22, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock (§ 1).

With respect to claim 23, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock, and that the starting intravenous dose is 0.03 units/minute, and that the dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute (§ 2.2).

With respect to claim 24, the Vasostrict® Label states that vasopressin is indicated for septic shock (§ 1).

With respect to claim 25, the Vasostrict® Label states that vasopressin is indicated for septic shock, and that the starting intravenous dose is 0.01 units/minute, and that the dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.07 units/minute (§ 2.2).

With respect to claim 27, the Vasostrict® Label states that vasopressin composition comprises vasopressin, not the salt form (§ 2.1).

With respect to claim 28, the Vasostrict® Label states that vasopressin composition comprises chlorobutanol (§ 2.1).


### Claim Rejections - 35 USC § 103

This application currently names joint inventors. In considering patentability of the claims the examiner presumes that the subject matter of the various claims was commonly owned as of the effective filing date of the claimed invention(s) absent any evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that was not commonly owned as of the effective filing date of the later invention in order for the examiner

PAR-VASO-0014022

Application/Control Number: 15/688,330                                          Page 11
Art Unit: 1675

to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art

against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

Claims 18 and 19 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for

Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to

claims 16, 17, and 20-28 above.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

The Vasostrict® Label does not explicitly state that treatment occurs over about day as in claim

18 or over about one week as in claim 19. However, this difference is obvious over the guidance in the

Label.

The Vasostrict® Label teaches that administration guidance is empirical and left to the

practitioner to follow and optimize (§ 2.2). The guidance suggests a starting dose and maximum dose

and states that if the target blood pressure response is not achieved, the practitioner should titrate up

by 0.005 units/minute at 10- to 15-minute intervals. After target blood pressure has been maintained

for 8 hours without the use of catecholamines, the practitioner should taper Vasostrict® by 0.005

units/minute every hour as tolerated to maintain target blood pressure. The total period of time

required for this treatment varies depending on the patient and condition. Given the suggested titration

schedule, 8 hour maintenance, and taper schedule, the range for total treatment overlaps with the

PAR-VASO-0014023

Application/Control Number: 15/688,330                                          Page 12
Art Unit: 1675

claimed range of over about a day, and over about a week, rendering the instant claims obvious over the

label.


### Double Patenting

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded

in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise

extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple

assignees. A nonstatutory double patenting rejection is appropriate where the conflicting claims are not

identical, but at least one examined application claim is not patentably distinct from the reference

claim(s) because the examined application claim is either anticipated by, or would have been obvious

over, the reference claim(s). See, e.g., *In re Berg*, 140 F.3d 1428, 46 USPQ2d 1226 (Fed. Cir. 1998); *In re*

*Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed.

Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164

USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) or 1.321(d) may be used to

overcome an actual or provisional rejection based on nonstatutory double patenting provided the

reference application or patent either is shown to be commonly owned with the examined application,

or claims an invention made as a result of activities undertaken within the scope of a joint research

agreement. See MPEP § 717.02 for applications subject to examination under the first inventor to file

provisions of the AIA as explained in MPEP § 2159.  See MPEP §§ 706.02(l)(1) - 706.02(l)(3) for

applications not subject to examination under the first inventor to file provisions of the AIA. A terminal

disclaimer must be signed in compliance with 37 CFR 1.321(b).

The USPTO Internet website contains terminal disclaimer forms which may be used. Please visit

www.uspto.gov/patent/patents-forms. The filing date of the application in which the form is filed

PAR-VASO-0014024

Application/Control Number: 15/688,330                                                    Page 13
Art Unit: 1675

determines what form (e.g., PTO/SB/25, PTO/SB/26, PTO/AIA/25, or PTO/AIA/26) should be used. A
web-based eTerminal Disclaimer may be filled out completely online using web-screens. An eTerminal
Disclaimer that meets all requirements is auto-processed and approved immediately upon submission.
For more information about eTerminal Disclaimers, refer to
www.uspto.gov/patents/process/file/efs/guidance/eTD-info-I.jsp.

Claims 16-28 are provisionally rejected on the ground of nonstatutory double patenting as being
unpatentable over claims 16-43 of copending <u>Application No. 15/612,649</u> (reference application) in view
of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published
5/7/2015). Although the claims at issue are not identical, they are not patentably distinct from each
other. This is a provisional nonstatutory double patenting rejection because the patentably indistinct
claims have not in fact been patented.

Claim 16 of the reference application recites a method of increasing blood pressure in a human
in need thereof comprising intravenously administering to a hypotensive human a pharmaceutical
composition that consists essentially of, in a unit dosage form: i) from about 0.1 μg/ml to about 2 μg/ml
of vasopressin or a salt thereof; ii) dextrose; iii) acetic acid, sodium acetate, or a combination thereof;
and iv) optionally hydrochloric acid or sodium hydroxide, wherein the administration provides to the
human from about 0.01 units of vasopressin per minute to about 0.1 units of vasopressin per minute.
The Vasostrict® Label states that 1 mg of vasopressin is equivalent to 530 units (§ 11). Therefore, the
unit dosage form claimed in the reference application contains:

0.0001 mg /mL x 530 units/1 mg = 0.053 units/mL of vasopressin

0.002 mg /mL x 530 units/1 mg = 1.06 units/mL of vasopressin

both of which fall within the claimed range of about 0.1 units/mL to about 1 units/mL.

Claim 16 of the reference application does not require that the pH is no greater than 4.1.

PAR-VASO-0014025

The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water, and acetic acid to pH 3.4-3.6 (§ 11).

It would have been obvious to adjust the pH of the unit dosage form claimed in the reference application to pH 3.4-3.6, as taught by the Vasostrict® Label, satisfying all of the limitations of instant claim 16. One of ordinary skill in the art would have been motivated to do so given that the Vasostrict® Label teaches formulation conditions that are suitable for clinical use. There would have been a reasonable expectation of success given that both the reference application claim and the Vasostrict® Label disclose the same buffering agent, acetate.

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant has recognized another advantage which would flow naturally from following the suggestion of the prior art cannot be the basis for patentability when the differences would otherwise be obvious.  See *Ex parte Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of degradation would occur as a result of preparing the vasopressin composition made obvious by the prior art and using it in the same manner.

With respect to claim 17, both the reference application at claim 25, and the Vasostrict® Label teach 5% dextrose (§ 2.1). With respect to claims 18 and 19, it would have been obvious to optimize the total time for treatment in view of the guidance in the Vasostrict® Label (§ 2.2), in the manner presented in the rejection under 35 U.S.C. 103 above. With respect to claim 20, both the reference application at claim 19, and the Vasostrict® Label (§ 12.2) teach that the human's mean arterial blood pressure is increased within 15 minutes of administration. With respect to claim 21, both the reference application at claim 20, and the Vasostrict® Label teach (§ 1) that the hypotension is associated with vasodilatory shock. With respect to claim 22, both the reference application at claim 21, and the Vasostrict® Label teach (§ 2.2) that the vasodilatory shock is post-cardiotomy shock. With respect to claim 23, both the reference application at claim 22, and the Vasostrict® Label teach (§ 2.2) that the administration

provides from about 0.03 units of vasopressin per minute to about 0.1 units of vasopressin per minute. With respect to claim 24, both the reference application at claim 23, and the Vasostrict® Label teach (§ 1) that the vasodilatory shock is septic shock. With respect to claim 25, both the reference application at claim 24, and the Vasostrict® Label teach (§ 2.2) that the administration provides from about 0.01 units of vasopressin per minute to about 0.07 units of vasopressin per minute. With respect to claims 26 and 27, the reference application at claim 16 teaches both vasopressin and the pharmaceutically acceptable salt thereof. It would have been obvious to choose either form. With respect to claim 28, the Vasostrict® Label (§ 2.1) teaches that the composition comprises chlorobutanol.

Claims 16-28 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 16-30 of copending <u>Application No. 15/688,336</u> (reference application) in view of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015). Although the claims at issue are not identical, they are not patentably distinct from each other. This is a provisional nonstatutory double patenting rejection because the patentably indistinct claims have not in fact been patented.

Claim 16 of the reference application recites a method of increasing blood pressure in a human in need thereof comprising intravenously administering to a hypotensive human a pharmaceutical composition that consists essentially of, in a unit dosage form from about 0.1 units/ml to about 1 unit/ml of vasopressin or a salt thereof, wherein the pH is no greater than 4.1, the unit dosage form further comprises impurities that are present in an amount of 0.9% - 1.7%, wherein impurities have from about 85% to about 100% sequence homology to SEQ ID NO: 1, wherein the administration provides to the human from about 0.01 units of vasopressin per minute to about 0.1 units of vasopressin per minute. Claim 27 of the reference application recites that the unit dosage form contains acetate.

PAR-VASO-0014027

Application/Control Number: 15/688,330                                          Page 16
Art Unit: 1675

The reference application does not claim that unit dosage form comprises dextrose.

The Vasostrict® Label states that the composition must be diluted 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1).

It would have been obvious to prepare the unit dosage form claimed in the reference application in dextrose, as taught by the Vasostrict® Label, satisfying all of the limitations of instant claim 16. One of ordinary skill in the art would have been motivated to do so given that the Vasostrict® Label teaches formulation conditions that are suitable for clinical use. There would have been a reasonable expectation of success given that the reference application and the Vasostrict® Label teach the same active agent, vasopressin, the same clinical application, hypertension, and the same administration route, intravenous.

With respect to claim 17, the Vasostrict® Label teaches 5% dextrose (§ 2.1). With respect to claims 18 and 19, it would have been obvious to optimize the total time for treatment in view of the guidance in the Vasostrict® Label (§ 2.2), in the manner presented in the rejection under 35 U.S.C. 103 above. With respect to claim 20, the Vasostrict® Label (§ 12.2) teaches that the human's mean arterial blood pressure is increased within 15 minutes of administration. With respect to claim 21, both the reference application at claim 24, and the Vasostrict® Label teach (§ 1) that the hypotension is associated with vasodilatory shock. With respect to claim 22, the Vasostrict® Label teaches (§ 2.2) that the vasodilatory shock is post-cardiotomy shock. With respect to claim 23, the Vasostrict® Label teaches (§ 2.2) that the administration provides from about 0.03 units of vasopressin per minute to about 0.1 units of vasopressin per minute. With respect to claim 24, the Vasostrict® Label teaches (§ 1) that the vasodilatory shock is septic shock. With respect to claim 25, both the reference application at claim 25, and the Vasostrict® Label teaches (§ 2.2) that the administration provides from about 0.01 units of vasopressin per minute to about 0.07 units of vasopressin per minute. With respect to claims 26 and 27, the reference application at claim 16 teaches both vasopressin and the pharmaceutically acceptable salt

PAR-VASO-0014028

Application/Control Number: 15/688,330                                             Page 17
Art Unit: 1675

thereof. It would have been obvious to choose either form. With respect to claim 28, the Vasostrict®

Label (§ 2.1) teaches that the composition comprises chlorobutanol.


Claims 16-28 are provisionally rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 16-27 of copending <u>Application No. 15/688,334</u> (reference application) in view

of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published

5/7/2015). Although the claims at issue are not identical, they are not patentably distinct from each

other. This is a provisional nonstatutory double patenting rejection because the patentably indistinct

claims have not in fact been patented.

Claim 16 of the reference application recites a method of increasing blood pressure in a human

in need thereof comprising intravenously administering to a hypotensive human a pharmaceutical

composition that consists essentially of, in a unit dosage form from about 0.1 units/ml to about 1

unit/ml of vasopressin or a salt thereof, acetic acid, acetate, or combination thereof, 0-2% vasopressin

degradation products, sodium chloride, and water, wherein the pH is no greater than 4.1, and wherein

the administration provides to the human from about 0.01 units of vasopressin per minute to about 0.1

units of vasopressin per minute.

The reference application does not claim that the composition comprises dextrose.

The Vasostrict® Label states that the composition must be diluted in saline or 5% dextrose in

water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1).

It would have been obvious to substitute the NaCl in the claimed composition for dextrose, as

taught by the Vasostrict® Label, satisfying all of the limitations of instant claim 16. One of ordinary skill

in the art would have been motivated to do so given that the Vasostrict® Label teaches that saline or

dextrose are acceptable diluents for vasopressin. There would have been a reasonable expectation of

success given that the reference application and the Vasostrict® Label teach the same active agent,

PAR-VASO-0014029

vasopressin, the same clinical application, hypertension, and the same administration route,

intravenous.

With respect to claim 17, the Vasostrict® Label teaches 5% dextrose (§ 2.1). With respect to

claim 18, the reference application at claim 17 teaches that administration is over one day. With respect

to claim 19, the reference application at claim 18 teaches that administration is over one week. With

respect to claim 20, both the reference application at claim 19, and the Vasostrict® Label (§ 12.2) teach

that the human's mean arterial blood pressure is increased within 15 minutes of administration. With

respect to claim 21, both the reference application at claim 20, and the Vasostrict® Label teach (§ 1) that

the hypotension is associated with vasodilatory shock. With respect to claim 22, both the reference

application at claim 21, and the Vasostrict® Label teach (§ 2.2) that the vasodilatory shock is post-

cardiotomy shock. With respect to claim 23, both the reference application at claim 22, and the

Vasostrict® Label teach (§ 2.2) that the administration provides from about 0.03 units of vasopressin per

minute to about 0.1 units of vasopressin per minute. With respect to claim 24, both the reference

application at claim 23, and the Vasostrict® Label teach (§ 1) that the vasodilatory shock is septic shock.

With respect to claim 25, both the reference application at claim 24, and the Vasostrict® Label teach (§

2.2) that the administration provides from about 0.01 units of vasopressin per minute to about 0.07

units of vasopressin per minute. With respect to claim 26, the reference application at claim 25 teaches

that the pharmaceutically-acceptable salt is present in the unit dosage form. With respect to claim 27,

the reference application at claim 26 teaches that the pharmaceutically-acceptable salt is not present in

the unit dosage form. With respect to claim 28, both the reference application at claim 27, and the

Vasostrict® Label (§ 2.1) teach that the composition comprises chlorobutanol.


Claims 16-28 are provisionally rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 16-33 of copending Application No. 15/688,326 (reference application) in view

Application/Control Number: 15/688,330                                                    Page 19
Art Unit: 1675

of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published

5/7/2015).  Although the claims at issue are not identical, they are not patentably distinct from each

other. This is a provisional nonstatutory double patenting rejection because the patentably indistinct

claims have not in fact been patented.

Claim 16 of the reference application recites a method of increasing blood pressure in a human

in need thereof comprising intravenously administering to a hypotensive human a pharmaceutical

composition that consists essentially of, in a unit dosage form: i) from about 0.1 µg/ml to about 2 µg/ml

of vasopressin or a salt thereof; ii) dextrose; iii) acetate; and iv) SEQ ID NO: 3, wherein the

administration provides to the human from about 0.01 units of vasopressin per minute to about 0.1

units of vasopressin per minute. The Vasostrict® Label states that 1 mg of vasopressin is equivalent to

530 units (§ 11). Therefore, the unit dosage form claimed in the reference application contains:

0.0001 mg /mL x 530 units/1 mg = 0.053 units/mL of vasopressin

0.002 mg /mL x 530 units/1 mg = 1.06 units/mL of vasopressin

both of which fall within the claimed range of about 0.1 units/mL to about 1 units/mL.

Claim 16 of the reference application does not require that the pH is no greater than 4.1.

The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water,

and acetic acid to pH 3.4-3.6 (§ 11).

It would have been obvious to adjust the pH of the unit dosage form claimed in the reference

application to pH 3.4-3.6, as taught by the Vasostrict® Label, satisfying all of the limitations of instant

claim 16. One of ordinary skill in the art would have been motivated to do so given that the Vasostrict®

Label teaches formulation conditions that are suitable for clinical use. There would have been a

reasonable expectation of success given that both the reference application claim and the Vasostrict®

Label disclose the same buffering agent, acetate.

PAR-VASO-0014031

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant has recognized another advantage which would flow naturally from following the suggestion of the prior art cannot be the basis for patentability when the differences would otherwise be obvious.  See *Ex parte Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of degradation would occur as a result of preparing the vasopressin composition made obvious by the prior art and using it in the same manner.

With respect to claim 17, both the reference application at claim 21, and the Vasostrict® Label teach 5% dextrose (§ 2.1). With respect to claim 18, the reference application at claim 25 teaches that administration is over one day. With respect to claim 19, the reference application at claim 26 teaches that administration is over one week. With respect to claim 20, both the reference application at claim 28, and the Vasostrict® Label (§ 12.2) teach that the human's mean arterial blood pressure is increased within 15 minutes of administration. With respect to claim 21, both the reference application at claim 29, and the Vasostrict® Label teach (§ 1) that the hypotension is associated with vasodilatory shock. With respect to claim 22, both the reference application at claim 30, and the Vasostrict® Label teach (§ 2.2) that the vasodilatory shock is post-cardiotomy shock. With respect to claim 23, both the reference application at claim 31, and the Vasostrict® Label teach (§ 2.2) that the administration provides from about 0.03 units of vasopressin per minute to about 0.1 units of vasopressin per minute. With respect to claim 24, both the reference application at claim 32, and the Vasostrict® Label teach (§ 1) that the vasodilatory shock is septic shock. With respect to claim 25, both the reference application at claim 33, and the Vasostrict® Label teach (§ 2.2) that the administration provides from about 0.01 units of vasopressin per minute to about 0.07 units of vasopressin per minute. With respect to claims 26 and 27, the reference application at claim 16 teaches both vasopressin and the pharmaceutically acceptable salt thereof. It would have been obvious to choose either form. With respect to claim 28, the Vasostrict® Label (§ 2.1) teaches that the composition comprises chlorobutanol.

PAR-VASO-0014032

Claims 16-28 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 16-32 of copending <u>Application No. 15/688,322</u> (reference application) in view of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015). Although the claims at issue are not identical, they are not patentably distinct from each other. This is a provisional nonstatutory double patenting rejection because the patentably indistinct claims have not in fact been patented.

Claim 16 of the reference application recites a method of increasing blood pressure in a human in need thereof comprising intravenously administering to a hypotensive human a pharmaceutical composition that consists essentially of, in a unit dosage form: i) from about 0.1 µg/ml to about 2 µg/ml of vasopressin or a salt thereof; ii) dextrose; and iii) acetate; wherein the administration provides to the human from about 0.01 units of vasopressin per minute to about 0.1 units of vasopressin per minute. The Vasostrict® Label states that 1 mg of vasopressin is equivalent to 530 units (§ 11). Therefore, the unit dosage form claimed in the reference application contains:

0.0001 mg /mL x 530 units/1 mg = 0.053 units/mL of vasopressin

0.002 mg /mL x 530 units/1 mg = 1.06 units/mL of vasopressin

both of which fall within the claimed range of about 0.1 units/mL to about 1 units/mL.

Claim 16 of the reference application does not require that the pH is no greater than 4.1.

The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water, and acetic acid to pH 3.4-3.6 (§ 11).

It would have been obvious to adjust the pH of the unit dosage form claimed in the reference application to pH 3.4-3.6, as taught by the Vasostrict® Label, satisfying all of the limitations of instant claim 16. One of ordinary skill in the art would have been motivated to do so given that the Vasostrict® Label teaches formulation conditions that are suitable for clinical use. There would have been a

PAR-VASO-0014033

reasonable expectation of success given that both the reference application claim and the Vasostrict®

Label disclose the same buffering agent, acetate.

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant

has recognized another advantage which would flow naturally from following the suggestion of the prior

art cannot be the basis for patentability when the differences would otherwise be obvious.  See *Ex parte*

*Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of

degradation would occur as a result of preparing the vasopressin composition made obvious by the prior

art and using it in the same manner.

With respect to claim 17, both the reference application at claim 21, and the Vasostrict® Label

teach 5% dextrose (§ 2.1). With respect to claim 18, the reference application at claim 24 teaches that

administration is over one day. With respect to claim 19, the reference application at claim 25 teaches

that administration is over one week. With respect to claim 20, both the reference application at claim

27, and the Vasostrict® Label (§ 12.2) teach that the human's mean arterial blood pressure is increased

within 15 minutes of administration. With respect to claim 21, both the reference application at claim

28, and the Vasostrict® Label teach (§ 1) that the hypotension is associated with vasodilatory shock.

With respect to claim 22, both the reference application at claim 29, and the Vasostrict® Label teach (§

2.2) that the vasodilatory shock is post-cardiotomy shock. With respect to claim 23, both the reference

application at claim 30, and the Vasostrict® Label teach (§ 2.2) that the administration provides from

about 0.03 units of vasopressin per minute to about 0.1 units of vasopressin per minute. With respect to

claim 24, both the reference application at claim 31, and the Vasostrict® Label teach (§ 1) that the

vasodilatory shock is septic shock. With respect to claim 25, both the reference application at claim 32,

and the Vasostrict® Label teach (§ 2.2) that the administration provides from about 0.01 units of

vasopressin per minute to about 0.07 units of vasopressin per minute. With respect to claims 26 and 27,

the reference application at claim 16 teaches both vasopressin and the pharmaceutically acceptable salt

PAR-VASO-0014034

Application/Control Number: 15/688,330                                     Page 23
Art Unit: 1675

thereof. It would have been obvious to choose either form. With respect to claim 28, the Vasostrict®

Label (§ 2.1) teach that the composition comprises chlorobutanol.


Claims 16-28 are provisionally rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 16-31 of copending Application No. 15/688,314 (reference application) in view

of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published

5/7/2015). Although the claims at issue are not identical, they are not patentably distinct from each

other. This is a provisional nonstatutory double patenting rejection because the patentably indistinct

claims have not in fact been patented.

Claim 16 of the reference application recites a method of increasing blood pressure in a human

in need thereof comprising intravenously administering to a hypotensive human a pharmaceutical

composition that consists essentially of, in a unit dosage form: i) from about 0.1 µg/ml to about 2 µg/ml

of vasopressin or a salt thereof; ii) dextrose; iii) acetate; and iv) a plurality of peptides in amount of

about 1.5% to about 12.9%, wherein the administration provides to the human from about 0.01 units of

vasopressin per minute to about 0.1 units of vasopressin per minute. The Vasostrict® Label states that 1

mg of vasopressin is equivalent to 530 units (§ 11). Therefore, the unit dosage form claimed in the

reference application contains:

0.0001 mg /mL x 530 units/1 mg = 0.053 units/mL of vasopressin

0.002 mg /mL x 530 units/1 mg = 1.06 units/mL of vasopressin

both of which fall within the claimed range of about 0.1 units/mL to about 1 units/mL.

Claim 16 of the reference application does not require that the pH is no greater than 4.1.

The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water,

and acetic acid to pH 3.4-3.6 (§ 11).

PAR-VASO-0014035

It would have been obvious to adjust the pH of the unit dosage form claimed in the reference

application to pH 3.4-3.6, as taught by the Vasostrict® Label, satisfying all of the limitations of instant

claim 16. One of ordinary skill in the art would have been motivated to do so given that the Vasostrict®

Label teaches formulation conditions that are suitable for clinical use. There would have been a

reasonable expectation of success given that both the reference application claim and the Vasostrict®

Label disclose the same buffering agent, acetate.

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant

has recognized another advantage which would flow naturally from following the suggestion of the prior

art cannot be the basis for patentability when the differences would otherwise be obvious.  See *Ex parte*

*Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of

degradation would occur as a result of preparing the vasopressin composition made obvious by the prior

art and using it in the same manner.

With respect to claim 17, both the reference application at claim 22, and the Vasostrict® Label

teach 5% dextrose (§ 2.1). With respect to claim 18, the reference application at claim 24 teaches that

administration is over one day. With respect to claim 19, the reference application at claim 25 teaches

that administration is over one week. With respect to claim 20, both the reference application at claim

26, and the Vasostrict® Label (§ 12.2) teach that the human's mean arterial blood pressure is increased

within 15 minutes of administration. With respect to claim 21, both the reference application at claim

27, and the Vasostrict® Label teach (§ 1) that the hypotension is associated with vasodilatory shock.

With respect to claim 22, both the reference application at claim 28, and the Vasostrict® Label teach (§

2.2) that the vasodilatory shock is post-cardiotomy shock. With respect to claim 23, both the reference

application at claim 29, and the Vasostrict® Label teach (§ 2.2) that the administration provides from

about 0.03 units of vasopressin per minute to about 0.1 units of vasopressin per minute. With respect to

claim 24, both the reference application at claim 30, and the Vasostrict® Label teach (§ 1) that the

PAR-VASO-0014036

Application/Control Number: 15/688,330                                    Page 25
Art Unit: 1675

vasodilatory shock is septic shock. With respect to claim 25, both the reference application at claim 31,

and the Vasostrict® Label teach (§ 2.2) that the administration provides from about 0.01 units of

vasopressin per minute to about 0.07 units of vasopressin per minute. With respect to claims 26 and 27,

the reference application at claim 16 teaches both vasopressin and the pharmaceutically acceptable salt

thereof. It would have been obvious to choose either form. With respect to claim 28, the Vasostrict®

Label (§ 2.1) teach that the composition comprises chlorobutanol.


       Claims 16-28 are provisionally rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 16-33 of copending Application No. 15/688,305 (reference application) in view

of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published

5/7/2015). Although the claims at issue are not identical, they are not patentably distinct from each

other. This is a provisional nonstatutory double patenting rejection because the patentably indistinct

claims have not in fact been patented.

       Claim 16 of the reference application recites a method of increasing blood pressure in a human

in need thereof comprising intravenously administering to a hypotensive human a pharmaceutical

composition that consists essentially of, in a unit dosage form: i) from about 0.1 µg/ml to about 2 µg/ml

of vasopressin or a salt thereof; ii) dextrose; iii) acetate; and iv) SEQ ID NO: 2, wherein the

administration provides to the human from about 0.01 units of vasopressin per minute to about 0.1

units of vasopressin per minute. The Vasostrict® Label states that 1 mg of vasopressin is equivalent to

530 units (§ 11). Therefore, the unit dosage form claimed in the reference application contains:

       0.0001 mg /mL x 530 units/1 mg = 0.053 units/mL of vasopressin

       0.002 mg /mL x 530 units/1 mg = 1.06 units/mL of vasopressin

       both of which fall within the claimed range of about 0.1 units/mL to about 1 units/mL.

       Claim 16 of the reference application does not require that the pH is no greater than 4.1.

PAR-VASO-0014037

Application/Control Number: 15/688,330                                        Page 26
Art Unit: 1675

The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water, and acetic acid to pH 3.4-3.6 (§ 11).

It would have been obvious to adjust the pH of the unit dosage form claimed in the reference application to pH 3.4-3.6, as taught by the Vasostrict® Label, satisfying all of the limitations of instant claim 16. One of ordinary skill in the art would have been motivated to do so given that the Vasostrict® Label teaches formulation conditions that are suitable for clinical use. There would have been a reasonable expectation of success given that both the reference application claim and the Vasostrict® Label disclose the same buffering agent, acetate.

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant has recognized another advantage which would flow naturally from following the suggestion of the prior art cannot be the basis for patentability when the differences would otherwise be obvious.  See *Ex parte Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of degradation would occur as a result of preparing the vasopressin composition made obvious by the prior art and using it in the same manner.

With respect to claim 17, both the reference application at claim 21, and the Vasostrict® Label teach 5% dextrose (§ 2.1). With respect to claim 18, the reference application at claim 25 teaches that administration is over one day. With respect to claim 19, the reference application at claim 26 teaches that administration is over one week. With respect to claim 20, both the reference application at claim 28, and the Vasostrict® Label (§ 12.2) teach that the human's mean arterial blood pressure is increased within 15 minutes of administration. With respect to claim 21, both the reference application at claim 29, and the Vasostrict® Label teach (§ 1) that the hypotension is associated with vasodilatory shock. With respect to claim 22, both the reference application at claim 30, and the Vasostrict® Label teach (§ 2.2) that the vasodilatory shock is post-cardiotomy shock. With respect to claim 23, both the reference application at claim 31, and the Vasostrict® Label teach (§ 2.2) that the administration provides from

PAR-VASO-0014038

about 0.03 units of vasopressin per minute to about 0.1 units of vasopressin per minute. With respect to

claim 24, both the reference application at claim 32, and the Vasostrict® Label teach (§ 1) that the

vasodilatory shock is septic shock. With respect to claim 25, both the reference application at claim 33,

and the Vasostrict® Label teach (§ 2.2) that the administration provides from about 0.01 units of

vasopressin per minute to about 0.07 units of vasopressin per minute. With respect to claims 26 and 27,

the reference application at claim 16 teaches both vasopressin and the pharmaceutically acceptable salt

thereof. It would have been obvious to choose either form. With respect to claim 28, the Vasostrict®

Label (§ 2.1) teach that the composition comprises chlorobutanol.


**Claim interpretation note: the following rejections pertain to the interpretation of the claims**

**wherein "unit dosage form" allows for dilution prior to administration.**


Claims 16, 17, and 20-28 are rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 1-19 of U.S. Patent No. 9,744,239. Although the claims at issue are not

identical, they are not patentably distinct from each other because the patent claims anticipate the

instant claims.

Claim 1 of U.S. Patent No. 9,744,239 recites a method of increasing blood pressure in a human

in need thereof, the method comprising: a) providing a pharmaceutical composition for intravenous

administration consisting of, in a unit dosage form: i) from about 0.01 mg/mL to about 0.07 mg/mL of

vasopressin or a pharmaceutically-acceptable salt thereof; ii) optionally chlorobutanol; iii) acetic acid,

acetate, or a combination thereof; iv) 0-2% vasopressin degradation products; and v) water; b) diluting

the unit dosage form in a diluent to provide a concentration from about 0.1 units/mL to about 1 unit/mL

of vasopressin or the pharmaceutically-acceptable salt thereof; and c) administering the diluted unit

dosage form to the human by intravenous administration; wherein: the unit dosage form has a pH of 3.5

PAR-VASO-0014039

to 4.1; the administration provides to the human from about 0.01 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute to about 0.1 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute; and the human is hypotensive. Claims 15 and 17 state that the diluent is 5% dextrose.

Claims 1, 15, and 17 of U.S. Patent No. 9,744,239 satisfy all of the limitations of instant claims 16, 17, and 28. With respect to claims 20-25 and 28, the same limitations are recited in claims 5-10 of U.S. Patent No. 9,744,239, respectively. With respect to claims 26 and 27, the reference application at claim 16 teaches both vasopressin and the pharmaceutically acceptable salt thereof. Both forms are anticipated.

Claims 16, 17, and 20-28 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-20 of U.S. Patent No. 9,687,526. Although the claims at issue are not identical, they are not patentably distinct from each other because the patent claims anticipate the instant claims.

Claim 1 of U.S. Patent No. 9,687,526 recites a method of increasing blood pressure in a human in need thereof, the method comprising: a) providing a pharmaceutical composition for intravenous administration comprising: i) from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically-acceptable salt thereof; ii) acetic acid; and iii) water, wherein the pharmaceutical composition has a pH of 3.8; b) storing the pharmaceutical composition at 2-8° C for at least 4 weeks; and c) intravenously administering the pharmaceutical composition to the human, wherein the administration provides to the human from about 0.01 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute to about 0.1 units of vasopressin or the pharmaceutically-acceptable salt thereof per minute, wherein the human is hypotensive, wherein the pharmaceutical composition exhibits less than about 5% degradation after storage at 2-8° C for about four weeks. Claim 13 states

that the pharmaceutical composition exhibits less than 1% degradation after storage at 2-8° C for about

four weeks. Claim 17 states that the pharmaceutical composition is diluted to a concentration of from

about 0.21 µg/mL to about 2.1 µg/mL of vasopressin or the pharmaceutically acceptable salt thereof.

Claim 19 states that the diluent is 5% dextrose in water.

      Claims 1, 13, 17, and 19 of U.S. Patent No. 9,687,526 satisfy all of the limitations of instant

claims 16 and 17. With respect to claims 20-25 and 28, the same limitations are recited in claims 5-10

and 20 of U.S. Patent No. 9,687,526, respectively. With respect to claims 26 and 27, the reference

application at claim 16 teaches both vasopressin and the pharmaceutically acceptable salt thereof. Both

forms are anticipated.

      Claims 16-28 are rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 1-11 of U.S. Patent No. 9,375,478 in view of in view of the FDA Label for

Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015). Although the

claims at issue are not identical, they are not patentably distinct from each other.

      Claim 1 of U.S. Patent No. 9,375,478 recites a method of increasing blood pressure in a human

in need thereof, the method comprising administering to the human a unit dosage form, wherein the

unit dosage form consists essentially of: a) from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin

or a pharmaceutically-acceptable salt thereof; b) 10 mM acetate buffer; and c) water, wherein: the unit

dosage form has a pH of 3.8; the administration provides to the human from about 0.01 units of

vasopressin or the pharmaceutically-acceptable salt thereof per minute to about 0.1 units of vasopressin

or the pharmaceutically-acceptable salt thereof per minute; and the human is hypotensive.

      The patent claims do not recite a step of diluting the vasopressin formulation into 5% dextrose

to a dose of about 0.1 units/ml to about 1 unit/ml for intravenous administration.

PAR-VASO-0014041

Application/Control Number: 15/688,330                                    Page 30
Art Unit: 1675

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1).

It would have been obvious to dilute the patented vasopressin formulation for intravenous administration in the manner taught by the Vasostrict® Label. One of ordinary skill in the art would be motivated to do so given that dilution and administration are FDA-approved for the treatment of hypertension with vasopressin. There would have been a reasonable expectation of success given that the same agent and indication are taught in the label and recited in the patented claims.

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant has recognized another advantage which would flow naturally from following the suggestion of the prior art cannot be the basis for patentability when the differences would otherwise be obvious. See *Ex parte Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of degradation would occur as a result of preparing the vasopressin composition made obvious by the prior art and using it in the same manner.

Therefore, the resulting method would satisfy all of the limitations of instant claims 16 and 17.

With respect to claims 18 and 19, it would have been obvious to optimize the total time for treatment in view of the guidance in the Vasostrict® Label (§ 2.2), in the manner presented in the rejection under 35 U.S.C. 103 above. With respect to claims 20-25 and 28, the same limitations are recited in claims 3-8 and 2 of U.S. Patent No. 9,375,478, respectively. With respect to claims 26 and 27, the patent at claim 1 recites both vasopressin and the pharmaceutically acceptable salt thereof. It would have been obvious to choose either form.

Application/Control Number: 15/688,330                                       Page 31
Art Unit: 1675

Claims 16-28 are rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 1-13 of U.S. Patent No. 9,744,209 in view of in view of the FDA Label for

Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015). Although the

claims at issue are not identical, they are not patentably distinct from each other.

Claim 1 of U.S. Patent No. 9,744,209 recites a method of increasing blood pressure in a human

in need thereof, the method comprising administering to the human a unit dosage form, wherein the

unit dosage form comprises from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a

pharmaceutically acceptable salt thereof, wherein: the unit dosage form has a pH of 3.7-3.9; the unit

dosage form further comprises impurities that are present in an amount of 0.9% - 1.7%, wherein the

impurities have from about 85% to about 100% sequence homology to SEQ ID NO.: 1; the administration

provides to the human from about 0.01 units of vasopressin or the pharmaceutically-acceptable salt

thereof per minute to about 0.1 units of vasopressin or the pharmaceutically-acceptable salt thereof per

minute; and the human is hypotensive. Claim 12 states that the formulation comprises sodium acetate.

The patent claims do not recite a step of diluting the vasopressin formulation into 5% dextrose

to a dose of about 0.1 units/ml to about 1 unit/ml for intravenous administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to

increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain

hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is

via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium

chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§

2.1).

It would have been obvious to dilute the patented vasopressin formulation for intravenous

administration in the manner taught by the Vasostrict® Label. One of ordinary skill in the art would be

motivated to do so given that dilution and administration are FDA-approved for the treatment of

PAR-VASO-0014043

hypertension with vasopressin. There would have been a reasonable expectation of success given that

the same agent and indication are taught in the label and recited in the patented claims.

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant

has recognized another advantage which would flow naturally from following the suggestion of the prior

art cannot be the basis for patentability when the differences would otherwise be obvious.  See *Ex parte*

*Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of

degradation would occur as a result of preparing the vasopressin composition made obvious by the prior

art and using it in the same manner.

Therefore, the resulting method would satisfy all of the limitations of instant claims 16 and 17.

With respect to claims 18 and 19, it would have been obvious to optimize the total time for

treatment in view of the guidance in the Vasostrict® Label (§ 2.2), in the manner presented in the

rejection under 35 U.S.C. 103 above. With respect to claim 20, the Vasostrict® Label (§ 12.2) teaches

that the human's mean arterial blood pressure is increased within 15 minutes of administration. With

respect to claims 21 and 23, the same limitations are recited in claims 9 and 10 of U.S. Patent No.

9,744,209, respectively. With respect to claim 22, the Vasostrict® Label (§ 2.2) teaches that the

vasodilatory shock is post-cardiotomy shock. With respect to claim 24, the Vasostrict® Label teaches (§

1) that the vasodilatory shock is septic shock. With respect to claim 25, the Vasostrict® Label (§ 2.2)

teaches that the administration provides from about 0.01 units of vasopressin per minute to about 0.07

units of vasopressin per minute. With respect to claims 26 and 27, the patent at claim 1 recites both

vasopressin and the pharmaceutically acceptable salt thereof. It would have been obvious to choose

either form. With respect to claim 28, the Vasostrict® Label (§ 2.1) teaches that the composition

comprises chlorobutanol.

PAR-VASO-0014044

Claims 16-28 are rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-11 of U.S. Patent No. 9,750,785 in view of in view of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015). Although the claims at issue are not identical, they are not patentably distinct from each other.

Claim 1 of U.S. Patent No. 9,750,785 recites a pharmaceutical composition comprising, in a unit dosage form, from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically-acceptable salt thereof, wherein the unit dosage form further comprises impurities that are present in an amount of 0.9% to 1.7%, wherein the impurities have from about 85% to about 100% sequence homology to SEQ ID NO.: 1, and wherein the unit dosage form has a pH of 3.7-3.9. Claim 10 states that the composition comprises sodium acetate.

The patent claims do not recite a method of administering the composition by an intravenous route to treat hypertension or a step of diluting the vasopressin formulation into 5% dextrose to a dose of about 0.1 units/ml to about 1 unit/ml for intravenous administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1).

It would have been obvious to dilute the patented vasopressin formulation for intravenous administration in the manner taught by the Vasostrict® Label. One of ordinary skill in the art would be motivated to do so given that dilution and administration are FDA-approved for the treatment of hypertension with vasopressin. There would have been a reasonable expectation of success given that the same agent and indication are taught in the label and recited in the patented disclosure.

Application/Control Number: 15/688,330                                              Page 34
Art Unit: 1675

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant

has recognized another advantage which would flow naturally from following the suggestion of the prior

art cannot be the basis for patentability when the differences would otherwise be obvious.  See *Ex parte*

*Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of

degradation would occur as a result of preparing the vasopressin composition made obvious by the prior

art and using it in the same manner.

Therefore, the resulting method would satisfy all of the limitations of instant claims 16 and 17.

With respect to claims 18 and 19, it would have been obvious to optimize the total time for

treatment in view of the guidance in the Vasostrict® Label (§ 2.2), in the manner presented in the

rejection under 35 U.S.C. 103 above. With respect to claim 20, the Vasostrict® Label (§ 12.2) teaches

that the human's mean arterial blood pressure is increased within 15 minutes of administration. With

respect to claims 21 and 22, the Vasostrict® Label (§ 2.2) teaches that the vasodilatory shock is post-

cardiotomy shock. With respect to claim 23, the Vasostrict® Label (§ 2.2) teaches that the administration

provides from about 0.03 units of vasopressin per minute to about 0.1 units of vasopressin per minute.

With respect to claim 24, the Vasostrict® Label teaches (§ 1) that the vasodilatory shock is septic shock.

With respect to claim 25, the Vasostrict® Label (§ 2.2) teaches that the administration provides from

about 0.01 units of vasopressin per minute to about 0.07 units of vasopressin per minute. With respect

to claims 26 and 27, the patent at claim 1 recites both vasopressin and the pharmaceutically acceptable

salt thereof. It would have been obvious to choose either form. With respect to claim 28, the Vasostrict®

Label (§ 2.1) teaches that the composition comprises chlorobutanol.


Claims 16-28 are provisionally rejected on the ground of nonstatutory double patenting as being

unpatentable over claims 16-37 of copending  Application No. 15/688,338 (reference application) in

view of in view of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov,

PAR-VASO-0014046

published 5/7/2015). Although the claims at issue are not identical, they are not patentably distinct from each other. This is a provisional nonstatutory double patenting rejection because the patentably indistinct claims have not in fact been patented.

Claim 16 of the reference application recites a pharmaceutical composition comprising, in a unit dosage form, from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically-acceptable salt thereof, wherein the unit dosage form further comprises impurities that are present in an amount of 0.9% to 1.7%, wherein the impurities have from about 85% to about 100% sequence homology to SEQ ID NO.: 1, and wherein the unit dosage form has a pH of no greater than 4.1.

The reference applications claims do not recite a method of administering the composition by an intravenous route to treat hypertension or a step of diluting the vasopressin formulation into 5% dextrose to a dose of about 0.1 units/ml to about 1 unit/ml for intravenous administration, or that the formulation comprises acetate.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1). The Vasostrict® Label states that the formulation comprises acetate (§ 2.1).

It would have been obvious to dilute the claimed vasopressin formulation for intravenous administration in the manner taught by the Vasostrict® Label. One of ordinary skill in the art would be motivated to do so given that dilution and administration are FDA-approved for the treatment of hypertension with vasopressin. There would have been a reasonable expectation of success given that the same agent and indication are taught in the label and recited in the patented disclosure.

PAR-VASO-0014047

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant has recognized another advantage which would flow naturally from following the suggestion of the prior art cannot be the basis for patentability when the differences would otherwise be obvious.  See *Ex parte Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of degradation would occur as a result of preparing the vasopressin composition made obvious by the prior art and using it in the same manner.

Therefore, the resulting method would satisfy all of the limitations of instant claims 16 and 17.

With respect to claims 18 and 19, it would have been obvious to optimize the total time for treatment in view of the guidance in the Vasostrict® Label (§ 2.2), in the manner presented in the rejection under 35 U.S.C. 103 above. With respect to claim 20, the Vasostrict® Label (§ 12.2) teaches that the human's mean arterial blood pressure is increased within 15 minutes of administration. With respect to claims 21 and 22, the Vasostrict® Label (§ 2.2) teaches that the vasodilatory shock is post-cardiotomy shock. With respect to claim 23, the Vasostrict® Label (§ 2.2) teaches that the administration provides from about 0.03 units of vasopressin per minute to about 0.1 units of vasopressin per minute. With respect to claim 24, the Vasostrict® Label teaches (§ 1) that the vasodilatory shock is septic shock. With respect to claim 25, the Vasostrict® Label (§ 2.2) teaches that the administration provides from about 0.01 units of vasopressin per minute to about 0.07 units of vasopressin per minute. With respect to claims 26 and 27, the patent at claim 1 recites both vasopressin and the pharmaceutically acceptable salt thereof. It would have been obvious to choose either form. With respect to claim 28, the Vasostrict® Label (§ 2.1) teaches that the composition comprises chlorobutanol.

Claims 16-28 are provisionally rejected on the ground of nonstatutory double patenting as being unpatentable over claims 1-15 of copending  Application No. 15/688,341 (reference application) in view of in view of the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov,

PAR-VASO-0014048

published 5/7/2015). Although the claims at issue are not identical, they are not patentably distinct from each other. This is a provisional nonstatutory double patenting rejection because the patentably indistinct claims have not in fact been patented.

Claim 1 of the reference application recites a pharmaceutical composition comprising, in a unit dosage form, from about 0.01 mg/mL to about 0.07 mg/mL of vasopressin or a pharmaceutically-acceptable salt thereof, and a polymeric excipient.

The reference applications claims do not recite a method of administering the composition by an intravenous route to treat hypertension or a step of diluting the vasopressin formulation into 5% dextrose to a dose of about 0.1 units/ml to about 1 unit/ml for intravenous administration, or that the formulation comprises acetate.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1). The Vasostrict® Label states that the formulation comprises acetate (§ 2.1).

It would have been obvious to dilute the claimed vasopressin formulation for intravenous administration in the manner taught by the Vasostrict® Label. One of ordinary skill in the art would be motivated to do so given that dilution and administration are FDA-approved for the treatment of hypertension with vasopressin. There would have been a reasonable expectation of success given that the same agent and indication are taught in the label and recited in the patented disclosure.

With respect to the limitation "0-2% vasopressin degradation products," the fact that applicant has recognized another advantage which would flow naturally from following the suggestion of the prior art cannot be the basis for patentability when the differences would otherwise be obvious.  See *Ex parte*

Application/Control Number: 15/688,330                                      Page 38
Art Unit: 1675

*Obiaya*, 227 USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). In the instant case, the claimed level of

degradation would occur as a result of preparing the vasopressin composition made obvious by the prior

art and using it in the same manner.

     Therefore, the resulting method would satisfy all of the limitations of instant claims 16 and 17.

     With respect to claims 18 and 19, it would have been obvious to optimize the total time for

treatment in view of the guidance in the Vasostrict® Label (§ 2.2), in the manner presented in the

rejection under 35 U.S.C. 103 above. With respect to claim 20, the Vasostrict® Label (§ 12.2) teaches

that the human's mean arterial blood pressure is increased within 15 minutes of administration. With

respect to claims 21 and 22, the Vasostrict® Label (§ 2.2) teaches that the vasodilatory shock is post-

cardiotomy shock. With respect to claim 23, the Vasostrict® Label (§ 2.2) teaches that the administration

provides from about 0.03 units of vasopressin per minute to about 0.1 units of vasopressin per minute.

With respect to claim 24, the Vasostrict® Label teaches (§ 1) that the vasodilatory shock is septic shock.

With respect to claim 25, the Vasostrict® Label (§ 2.2) teaches that the administration provides from

about 0.01 units of vasopressin per minute to about 0.07 units of vasopressin per minute. With respect

to claims 26 and 27, the patent at claim 1 recites both vasopressin and the pharmaceutically acceptable

salt thereof. It would have been obvious to choose either form. With respect to claim 28, the Vasostrict®

Label (§ 2.1) teaches that the composition comprises chlorobutanol.


### Conclusion

     No claims are allowed.

     Any inquiry concerning this communication or earlier communications from the examiner

should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The

examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

PAR-VASO-0014050

Application/Control Number: 15/688,330                                       Page 39
Art Unit: 1675

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, James Alstrum-Acevedo can be reached on (571) 272-5548. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675


cmb

PAR-VASO-0014051

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/688,305 | 08/28/2017 | Matthew Kenney | 47956-702.303 | 1005 |

21971          7590          10/27/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/27/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@wsgr.com

PTOL-90A (Rev. 04/07)

PAR-VASO-0014052

| *Office Action Summary* | Application No. 15/688,305 | Applicant(s) Kenney et al. | | |
|---|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | AIA Status Yes | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☑ Responsive to communication(s) filed on 28 August 2017 .
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2a) ☐ This action is **FINAL**.    2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) 16-33 is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) 15-33 is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov**.

## Application Papers

10) ☐ The specification is objected to by the Examiner.

11) ☑ The drawing(s) filed on 22 September 2017 is/are:  a) ☑ accepted or  b) ☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a) ☐ All   b) ☐ Some**   c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

### Attachment(s)

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____ .

3) ☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date _____ .

4) ☐ Other: _____ .

PAR-VASO-0014053

Application/Control Number: 15/688,305                                                                 Page 2
Art Unit: 1675

## DETAILED CORRESPONDENCE

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.

### *Priority*

Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or under 35

U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with one or more

conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120, 121, 365(c), or 386(c) as

follows:

The later-filed application must be an application for a patent for an invention which is also

disclosed in the prior application (the parent or original nonprovisional application or provisional

application). The disclosure of the invention in the parent application and in the later-filed application

must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA

35 U.S.C. 112, except for the best mode requirement.  See *Transco Products, Inc. v. Performance*

*Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application Nos. 15/426,693, 15/289,640,

14/717,877, and 14/610,499 fail to provide adequate support or enablement in the manner provided by

35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.

The disclosure of the instant application, and the parent Application No. 15/612,649, describe

an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following

elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the

manner set forth in claims 16-33.

PAR-VASO-0014054

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

In contrast, the disclosures of prior-filed Application Nos. 15/426,693 and 15/289,640 do not include a vasopressin formulation for bottle or intravenous drip-bag. Instead, the prior-filed applications disclose a method wherein a unit dosage form containing vasopressin, chlorobutanol, acetic acid, and water is diluted in 0.9% saline or 5% dextrose prior to intravenous administration (see ¶[00102]-[00138]

of Application No. 15/426,693, and ¶ [00100]-[00135] of Application No. 15/289,640). The unit dosage

form can be stored at 5 °C but not the form diluted in 0.9% saline or 5% dextrose.

Each of prior-filed Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 state

that vasopressin diluted in dextrose must be discarded after a limited period of time (¶ [00270],

[00267], [0042], [0140], respectively): "Vasopressin is diluted in normal saline (0.9% sodium chloride) or

5% dextrose in water (D5W) prior to use to either 0.1 units/mL or 1 unit/mL for intravenous

administration. Unused diluted solution is discarded after 18 hours at room temperature or after 24

hours under refrigeration."

The stability data and handling instructions provided in the instant application and omitted in

the prior-filed applications are critical for establishing support for the claimed methods because even

the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016,

states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal

saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for

intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24

hours under refrigeration" (§ 2.1). It is not implicit in the prior-filed applications to make a vasopressin

formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for

intravenous therapy, counter to the instructions on the FDA label for Vasostrict® (vasopressin injection),

and in the prior-filed disclosures, and in the absence of any data or instruction suggesting that a longer

storage period would be safe and effective.

As a result, the earliest effective filing date for claims 16-33 is the filing date of parent

Application No. 15/612,649, June 2, 2017.

### *Claim Rejections - 35 USC § 112(b)*

The following is a quotation of 35 U.S.C. 112(b):

Application/Control Number: 15/688,305                                        Page  5
Art Unit: 1675

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 16-33 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The claims recite the term "unit dosage form". There are two plausible constructions for this term. First, example 16 of the specification suggests that in the instant claim "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy. Second, a plain reading of the term could also encompass a different unit dosage form that is subsequently diluted with dextrose to form another "unit dosage form". If a claim is amenable to two or more plausible constructions, applicant is required to amend the claim to more precisely define the metes and bounds of the claimed invention or the claim is indefinite under § 112,  ¶ 2.  *Ex parte Miyazaki*, 89 USPQ2d 1207 (BPAI 2008)


### *Claim Rejections - 35 USC § 112(a)*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

(a)  IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 16-33 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement.  The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy.

The claims are drawn to a method of increasing blood pressure in a hypotensive human with vasopressin. The method requires the use of a unit dosage form comprising i) from about 0.1 µg/mL to about 2 µg/mL of vasopressin, ii) dextrose, iii) acetate, and iv) SEQ ID NO: 2.

In contrast to the claimed methods, even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). Prior to the instant application, making a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy is counter to the instructions on the FDA label for Vasostrict® (vasopressin injection). The question of whether a diluted form of vasopressin formulation that could be stored as a unit dosage form for later administration would be safe and effective was unpredictable before the guidance and data presented in the instant application.

The disclosure of the instant application describes an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-33.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. This description is critical support for the unit dosage form of claims 16, 26, and 36, and for step a) of claims 26 and 36. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month".  The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

Therefore, the specification fully supports the claimed methods as they apply to the specific vasopressin formulation comprising dextrose and 1 mM acetate buffer in Example 16. Table 66 of the instant specification suggests that the pH of the formulations containing dextrose and 1 mM acetate buffer (G and H) was between 3.74 and 3.75.

PAR-VASO-0014059

However, instant claims 16-33 are not limited to formulations having a pH between 3.74 and

3.75 but rather encompass any pH that can be buffered by acetate. Given the high degree of

unpredictability in the art of vasopressin formulation and stability, and the explicit instructions and

standard to discard soon after dilution in dextrose, one of ordinary skill in the art would not conclude

that Applicant was in possession of a vasopressin formulation at any pH or buffer concentration that can

be used in the claim methods as a diluted unit dosage form that can be stored prior to use.

In order to overcome this rejection, Applicant should amend the claims to limit the pH of the

formulation and buffer concentration as set forth in Example 16.

### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102

and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory

basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and

the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis

for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale
or otherwise available to the public before the effective filing date of the claimed invention.

Claims 16, 17, 20-24, and 27-33 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by

the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published

5/7/2015).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

PAR-VASO-0014060

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is via the intravenous route, and that the composition must be diluted in 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1). The Vasostrict® Label states that 1 mg of vasopressin is equivalent to 530 units (§ 11). Therefore, the unit dosage form disclosed in the reference contains:

0. 1 units /mL x 1 mg / 530 units x 1000 µg/ mg = 0.19 µg/mL of vasopressin

1 units /mL x 1 mg / 530 units x 1000 µg/ mg = 1.9 µg/mL of vasopressin

both of which fall within the claimed range of about 0.1 µg/mL to about 2 µg/mL.

The Vasostrict® Label states that vasopressin formulation also contains acetic acid to pH 3.4-3.6 (§ 11). As evidenced by preparatorychemistry.com, acetic acid dissociates in water to acetate (preparatorychemistry.com/Bishop_weak_acid_Equilibrium.htm). Therefore, the formulation comprises acetate.

With respect to the limitation "wherein the vasopressin or the pharmaceutically-acceptable salt thereof and SEQ ID NO: 2 are present in the unit dosage form at a ratio of about 1000: about 1 to about 30: about 1," and the related limitations in claims 22-24, the reference is silent as to the level of degradation. Because the formulation and method is otherwise identical to the claimed unit dosage form and method there is a reasonable basis to shift the burden to applicant to establish whether this claimed property is met as in *In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See MPEP §§ 2112-2112.02.

With respect to claim 17, the Vasostrict® Label states that the formulation contains a pH adjusting agent (§ 11).

PAR-VASO-0014061

With respect to claim 20, the Vasostrict® Label states that the formulation contains acetic acid (§ 11).

With respect to claim 21, the Vasostrict® Label states that the dextrose concentration is 5% (§ 2.1).

With respect to claims 22-24, the reference is silent as to the level of degradation. Because the formulation and method is otherwise identical to the claimed unit dosage form and method there is a reasonable basis to shift the burden to applicant to establish whether this claimed property is met as in *In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See MPEP §§ 2112-2112.02.

With respect to claim 27, the Vasostrict® Label states that administration is via the intravenous route (§ 2.1).

With respect to claim 28, the Vasostrict® Label states that mean arterial blood pressure can be increased in 15 minutes (§ 12.2).

With respect to claims 29 and 30, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock (§ 1).

With respect to claim 31, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock, and that the starting intravenous dose is 0.03 units/minute, and that the dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute (§ 2.2).

With respect to claim 32, the Vasostrict® Label states that vasopressin is indicated for septic shock (§ 1).

With respect to claim 33, the Vasostrict® Label states that vasopressin is indicated for septic shock, and that the starting intravenous dose is 0.01 units/minute, and that the dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.07 units/minute (§ 2.2).

Application/Control Number: 15/688,305                                                    Page   11
Art Unit: 1675

### *Claim Rejections - 35 USC § 103*

This application currently names joint inventors. In considering patentability of the claims the

examiner presumes that the subject matter of the various claims was commonly owned as of the

effective filing date of the claimed invention(s) absent any evidence to the contrary.  Applicant is advised

of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that

was not commonly owned as of the effective filing date of the later invention in order for the examiner

to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art

against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

Claims 18 and 19 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for

Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to

claims 16, 17, 20-24, and 27-33 above, in further view of Tidmarsh (US 2014/0329747) and Moberg et al.

(US 2014/0171369).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

The Vasostrict® Label does not state that the formulation comprises HCl or NaOH as a pH

adjusting agent. Instead, acetic acid is used to adjust the pH (§ 11).

It would have been obvious to use hydrochloric acid and sodium hydroxide to adjust the pH of

the vasopressin formulation taught by the Vasostrict® Label. The prior art recognizes that acetic acid,

PAR-VASO-0014063

hydrochloric acid, and sodium hydroxide are all pH adjusters that can be used in pharmaceutical

compositions, as evidenced by Tidmarsh (¶ [0029]) and Moberg et al. (¶ [0019]).


        Claims 25 and 26 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for

Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to

claims 16, 17, 20-24, and 27-33 above.

        Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

        The Vasostrict® Label does not explicitly state that treatment occurs over about day as in claim

25 or over about one week as in claim 26. However, this difference is obvious over the guidance in the

Label.

        The Vasostrict® Label teaches that administration guidance is empirical and left to the

practitioner to follow and optimize (§ 2.2). The guidance suggests a starting dose and maximum dose

and states that if the target blood pressure response is not achieved, the practitioner should titrate up

by 0.005 units/minute at 10- to 15-minute intervals. After target blood pressure has been maintained

for 8 hours without the use of catecholamines, the practitioner should taper Vasostrict® by 0.005

units/minute every hour as tolerated to maintain target blood pressure. The total period of time

required for this treatment varies depending on the patient and condition. Given the suggested titration

schedule, 8 hour maintenance, and taper schedule, the range for total treatment overlaps with the

claimed range of over about a day, and over about a week, rendering the instant claims obvious over the

label.

PAR-VASO-0014064

Application/Control Number: 15/688,305                                            Page   13
Art Unit:  1675

### Double Patenting

The terminal disclaimers over U.S. Patent Nos. 9,744,239, 9,735,478, 9,687,526, 9,744,209, and

9,750,785, and copending Application Nos. 15/688,314, 15/688,322, 15/688,326, 15/688,330,

15/688,334, 15/688,336, 15/688,338, 15/688,341, 15/606,442, and 15/612,649 filed October 24, 2017,

are approved.


### Conclusion

No claims are allowed.

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The

examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number for the organization

where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer

PAR-VASO-0014065

Application/Control Number: 15/688,305                                       Page   14
Art Unit:  1675

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.


                                                         /CHRISTINA BRADLEY/
                                                         Primary Examiner, Art Unit 1675



cmb

PAR-VASO-0014066

| | Notice of References Cited | Application/Control No. 15/688,305 | | Applicant(s)/Patent Under Reexamination Kenney et al. | |
|---|---|---|---|---|---|
| | | Examiner CHRISTINA MARCHETTI BRADLEY | | Art Unit 1675 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20140329747-A1 | 11-2014 | Tidmarsh; George | A61K38/085 | 514/9.7 |
| * | B | US-20140171369-A1 | 06-2014 | Moberg; Kerstin Uvnas | A61K38/11 | 514/11.6 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015) (Year: 2015) |
| | V | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 12/21/2016) (Year: 2016) |
| | W | Entry on acetic acid, preparatorychemistry.com/Bishop_weak_acid_Equilibrium.htm, downloaded 10/16/2017 (Year: 2017) |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    Notice of References Cited                    Part of Paper No. 20171016

PAR-VASO-0014067

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/688,314 | 08/28/2017 | Matthew Kenney | 47956-702.304 | 1812 |

21971        7590        10/27/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/27/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@wsgr.com

PTOL-90A (Rev. 04/07)

PAR-VASO-0014068

| *Office Action Summary* | Application No. | Applicant(s) |
| | 15/688,314 | Kenney et al. |
| | Examiner | Art Unit | AIA Status |
| | CHRISTINA MARCHETTI BRADLEY | 1675 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☑ Responsive to communication(s) filed on <u>28 August 2017</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL**.    2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>16-31</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>16-31</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov**.

## Application Papers

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are:  a) ☐ accepted or  b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
      a) ☐ All    b) ☐ Some**    c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
    Paper No(s)/Mail Date _____.

4) ☐ Other: _____.

PAR-VASO-0014069

Application/Control Number: 15/688,314                                                    Page 2
Art Unit: 1675

## DETAILED CORRESPONDENCE

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Priority*

Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or under 35 U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with one or more conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120, 121, 365(c), or 386(c) as follows:

The later-filed application must be an application for a patent for an invention which is also disclosed in the prior application (the parent or original nonprovisional application or provisional application). The disclosure of the invention in the parent application and in the later-filed application must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA 35 U.S.C. 112, except for the best mode requirement.  See *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 fail to provide adequate support or enablement in the manner provided by 35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.

The disclosure of the instant application, and the parent Application No. 15/612,649, describe an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-31.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

In contrast, the disclosures of prior-filed Application Nos. 15/426,693 and 15/289,640 do not include a vasopressin formulation for bottle or intravenous drip-bag. Instead, the prior-filed applications disclose a method wherein a unit dosage form containing vasopressin, chlorobutanol, acetic acid, and water is diluted in 0.9% saline or 5% dextrose prior to intravenous administration (see ¶[00102]-[00138]

PAR-VASO-0014071

of Application No. 15/426,693, and ¶ [00100]-[00135] of Application No. 15/289,640). The unit dosage form can be stored at 5 °C but not the form diluted in 0.9% saline or 5% dextrose.

Each of prior-filed Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 state that vasopressin diluted in dextrose must be discarded after a limited period of time (¶ [00270], [00267], [0042], [0140], respectively): "Vasopressin is diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to either 0.1 units/mL or 1 unit/mL for intravenous administration. Unused diluted solution is discarded after 18 hours at room temperature or after 24 hours under refrigeration."

The stability data and handling instructions provided in the instant application and omitted in the prior-filed applications are critical for establishing support for the claimed methods because even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). It is not implicit in the prior-filed applications to make a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy, counter to the instructions on the FDA label for Vasostrict® (vasopressin injection), and in the prior-filed disclosures, and in the absence of any data or instruction suggesting that a longer storage period would be safe and effective.

As a result, the earliest effective filing date for claims 16-31 is the filing date of parent Application No. 15/612,649, June 2, 2017.

### Claim Rejections - 35 USC § 112(b)

The following is a quotation of 35 U.S.C. 112(b):

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 16-31 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The claims recite the term "unit dosage form". There are two plausible constructions for this term. First, example 16 of the specification suggests that in the instant claim "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy. Second, a plain reading of the term could also encompass a different unit dosage form that is subsequently diluted with dextrose to form another "unit dosage form". If a claim is amenable to two or more plausible constructions, applicant is required to amend the claim to more precisely define the metes and bounds of the claimed invention or the claim is indefinite under § 112, ¶ 2. *Ex parte Miyazaki*, 89 USPQ2d 1207 (BPAI 2008).

### Claim Rejections - 35 USC § 112(a)

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

(a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person

Application/Control Number: 15/688,314                                                                    Page 6
Art Unit: 1675

skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 16-31 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy.

The claims are drawn to a method of increasing blood pressure in a hypotensive human with vasopressin. The method requires the use of a unit dosage form comprising i) from about 0.1 μg/mL to about 2 μg/mL of vasopressin, ii) dextrose, iii) acetate, and iv) a plurality of peptides in an amount of about 1.5% to about 12.9%.

In contrast to the claimed methods, even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). Prior to the instant application, making a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy is counter to the instructions on the FDA label for Vasostrict® (vasopressin injection). The question of whether a diluted form of vasopressin formulation that could be stored as a unit dosage form for later administration would be safe and effective was unpredictable before the guidance and data presented in the instant application.

PAR-VASO-0014074

The disclosure of the instant application describes an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-31.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. This description is critical support for the unit dosage form of claims 16, 26, and 36, and for step a) of claims 26 and 36. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

PAR-VASO-0014075

Therefore, the specification fully supports the claimed methods as they apply to the specific vasopressin formulation comprising dextrose and 1 mM acetate buffer in Example 16. Table 66 of the instant specification suggests that the pH of the formulations containing dextrose and 1 mM acetate buffer (G and H) was between 3.74 and 3.75.

However, instant claims 16-31 are not limited to formulations having a pH between 3.74 and 3.75 but rather encompass any pH that can be buffered by acetate. Given the high degree of unpredictability in the art of vasopressin formulation and stability, and the explicit instructions and standard to discard soon after dilution in dextrose, one of ordinary skill in the art would not conclude that Applicant was in possession of a vasopressin formulation at any pH or buffer concentration that can be used in the claim methods as a diluted unit dosage form that can be stored prior to use.

In order to overcome this rejection, Applicant should amend the claims to limit the pH of the formulation and buffer concentration as set forth in Example 16.

### Claim Rejections - 35 USC § 102

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

Claims 16-18, 21, 22, and 25-31 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" allows for dilution prior to administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is via the intravenous route, and that the composition must be diluted in 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1). The Vasostrict® Label states that 1 mg of vasopressin is equivalent to 530 units (§ 11). Therefore, the unit dosage form disclosed in the reference contains:

0. 1 units /mL x 1 mg / 530 units x 1000 μg/ mg = 0.19 μg/mL of vasopressin

1 units /mL x 1 mg / 530 units x 1000 μg/ mg = 1.9 μg/mL of vasopressin

both of which fall within the claimed range of about 0.1 μg/mL to about 2 μg/mL.

The Vasostrict® Label states that vasopressin formulation also contains acetic acid to pH 3.4-3.6 (§ 11). As evidenced by preparatorychemistry.com, acetic acid dissociates in water to acetate(preparatorychemistry.com/Bishop_weak_acid_Equilibrium.htm). Therefore, the formulation comprises acetate.

With respect to the limitation "a plurality of peptides in an amount of about 1.5% to about 12.9%," the reference is silent as to the level of degradation. Because the formulation and method is otherwise identical to the claimed unit dosage form and method there is a reasonable basis to shift the burden to applicant to establish whether this claimed property is met as in *In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See MPEP §§ 2112-2112.02.

PAR-VASO-0014077

Application/Control Number: 15/688,314                                      Page 10
Art Unit: 1675

With respect to claim 17, the reference is silent as to the level of degradation. Because the formulation and method is otherwise identical to the claimed unit dosage form and method there is a reasonable basis to shift the burden to applicant to establish whether this claimed property is met as in *In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See MPEP §§ 2112-2112.02.

With respect to claim 18, the Vasostrict® Label states that the formulation contains a pH adjusting agent (§ 11).

With respect to claim 21, the Vasostrict® Label states that the formulation contains acetic acid (§ 11).

With respect to claim 22, the Vasostrict® Label states that the dextrose concentration is 5% (§ 2.1).

With respect to claim 25, the Vasostrict® Label states that administration is via the intravenous route (§ 2.1).

With respect to claim 26, the Vasostrict® Label states that mean arterial blood pressure can be increased in 15 minutes (§ 12.2).

With respect to claims 27 and 28, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock (§ 1).

With respect to claim 29, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock, and that the starting intravenous dose is 0.03 units/minute, and that the dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute (§ 2.2).

With respect to claim 30, the Vasostrict® Label states that vasopressin is indicated for septic shock (§ 1).

PAR-VASO-0014078

Application/Control Number: 15/688,314                                                                         Page 11
Art Unit: 1675

With respect to claim 31, the Vasostrict® Label states that vasopressin is indicated for septic

shock, and that the starting intravenous dose is 0.01 units/minute, and that the dose can be titrated up

by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.07 units/minute (§ 2.2).


### Claim Rejections - 35 USC § 103

This application currently names joint inventors. In considering patentability of the claims the

examiner presumes that the subject matter of the various claims was commonly owned as of the

effective filing date of the claimed invention(s) absent any evidence to the contrary. Applicant is advised

of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that

was not commonly owned as of the effective filing date of the later invention in order for the examiner

to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art

against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

Claims 19 and 20 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for

Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to

claims 16-18, 21, 22, and 25-31 above, in further view of Tidmarsh (US 2014/0329747) and Moberg et al.

(US 2014/0171369).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

PAR-VASO-0014079

The Vasostrict® Label does not state that the formulation comprises HCl or NaOH as a pH adjusting agent. Instead, acetic acid is used to adjust the pH (§ 11).

It would have been obvious to use hydrochloric acid and sodium hydroxide to adjust the pH of the vasopressin formulation taught by the Vasostrict® Label. The prior art recognizes that acetic acid, hydrochloric acid, and sodium hydroxide are all pH adjusters that can be used in pharmaceutical compositions, as evidenced by Tidmarsh (¶ [0029]) and Moberg et al. (¶ [0019]).

Claims 23 and 24 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to claims 16-18, 21, 22, and 25-31 above.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" allows for dilution prior to administration.

The Vasostrict® Label does not explicitly state that treatment occurs over about day as in claim 23 or over about one week as in claim 24. However, this difference is obvious over the guidance in the Label.

The Vasostrict® Label teaches that administration guidance is empirical and left to the practitioner to follow and optimize (§ 2.2). The guidance suggests a starting dose and maximum dose and states that if the target blood pressure response is not achieved, the practitioner should titrate up by 0.005 units/minute at 10- to 15-minute intervals. After target blood pressure has been maintained for 8 hours without the use of catecholamines, the practitioner should taper Vasostrict® by 0.005 units/minute every hour as tolerated to maintain target blood pressure. The total period of time required for this treatment varies depending on the patient and condition. Given the suggested titration schedule, 8 hour maintenance, and taper schedule, the range for total treatment overlaps with the

PAR-VASO-0014080

Application/Control Number: 15/688,314                                          Page 13
Art Unit: 1675

claimed range of over about a day, and over about a week, rendering the instant claims obvious over the

label.


### Double Patenting

The terminal disclaimers over U.S. Patent Nos. 9,744,239, 9,735,478, 9,687,526, 9,744,209, and

9,750,785, and copending Application Nos. 15/688,305, 15/688,322, 15/688,326, 15/688,330,

15/688,334, 15/688,336, 15/688,338, 15/688,341, 15/606,442, and 15/612,649 filed October 24, 2017,

are approved.


### Conclusion

No claims are allowed.

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The

examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number for the organization

where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

Application/Control Number: 15/688,314                                                    Page 14
Art Unit: 1675

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).If you would like assistance from a USPTO Customer

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.

/CHRISTINA BRADLEY/
**Primary Examiner, Art Unit 1675**

cmb

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Notice of References Cited*** | 15/688,314 | Kenney et al. |
| | Examiner<br>CHRISTINA MARCHETTI BRADLEY | Art Unit<br>1675 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20140329747-A1 | 11-2014 | Tidmarsh; George | A61K38/085 | 514/9.7 |
| * | B | US-20140171369-A1 | 06-2014 | Moberg; Kerstin Uvnas | A61K38/11 | 514/11.6 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015) (Year: 2015) |
| | V | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 12/21/2016) (Year: 2016) |
| | W | Entry on acetic acid, preparatorychemistry.com/Bishop_weak_acid_Equilibrium.htm, downloaded 10/16/2017 (Year: 2017) |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)          **Notice of References Cited**          Part of Paper No. 20171020

PAR-VASO-0014083

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/688,322 | 08/28/2017 | Matthew Kenney | 47956-702.305 | 2604 |

21971          7590          10/27/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/27/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@wsgr.com

PTOL-90A (Rev. 04/07)

PAR-VASO-0014084

| ***Office Action Summary*** | Application No. | Applicant(s) |
| | 15/688,322 | Kenney et al. |
| | Examiner | Art Unit | AIA Status |
| | CHRISTINA MARCHETTI BRADLEY | 1675 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☑ Responsive to communication(s) filed on <u>28 August 2017</u> .
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2a) ☐ This action is **FINAL.**    2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>16-32</u> is/are pending in the application.
5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>16-32</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
a) ☐ All  b) ☐ Some**  c) ☐ None of the:
1. ☐ Certified copies of the priority documents have been received.
2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____ .

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____ .

4) ☐ Other: _____ .

PAR-VASO-0014085

Application/Control Number: 15/688,322                                     Page 2
Art Unit: 1675

## DETAILED CORRESPONDENCE

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Priority*

Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or under 35 U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with one or more conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120, 121, 365(c), or 386(c) as follows:

The later-filed application must be an application for a patent for an invention which is also disclosed in the prior application (the parent or original nonprovisional application or provisional application). The disclosure of the invention in the parent application and in the later-filed application must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA 35 U.S.C. 112, except for the best mode requirement.  See *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 fail to provide adequate support or enablement in the manner provided by 35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.

The disclosure of the instant application, and the parent Application No. 15/612,649, describe an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-32.

PAR-VASO-0014086

Application/Control Number: 15/688,322                                                    Page 3
Art Unit: 1675

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

In contrast, the disclosures of prior-filed Application Nos. 15/426,693 and 15/289,640 do not include a vasopressin formulation for bottle or intravenous drip-bag. Instead, the prior-filed applications disclose a method wherein a unit dosage form containing vasopressin, chlorobutanol, acetic acid, and water is diluted in 0.9% saline or 5% dextrose prior to intravenous administration (see ¶[00102]-[00138]

PAR-VASO-0014087

of Application No. 15/426,693, and ¶ [00100]-[00135] of Application No. 15/289,640). The unit dosage form can be stored at 5 °C but not the form diluted in 0.9% saline or 5% dextrose.

Each of prior-filed Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 state that vasopressin diluted in dextrose must be discarded after a limited period of time (¶ [00270], [00267], [0042], [0140], respectively): "Vasopressin is diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to either 0.1 units/mL or 1 unit/mL for intravenous administration. Unused diluted solution is discarded after 18 hours at room temperature or after 24 hours under refrigeration."

The stability data and handling instructions provided in the instant application and omitted in the prior-filed applications are critical for establishing support for the claimed methods because even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). It is not implicit in the prior-filed applications to make a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy, counter to the instructions on the FDA label for Vasostrict® (vasopressin injection), and in the prior-filed disclosures, and in the absence of any data or instruction suggesting that a longer storage period would be safe and effective.

As a result, the earliest effective filing date for claims 16-32 is the filing date of parent Application No. 15/612,649, June 2, 2017.

### *Claim Rejections - 35 USC § 112(b)*

The following is a quotation of 35 U.S.C. 112(b):

Application/Control Number: 15/688,322                                                   Page 5

Art Unit: 1675

> (b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 16-32 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The claims recite the term "unit dosage form". There are two plausible constructions for this term. First, example 16 of the specification suggests that in the instant claim "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy. Second, a plain reading of the term could also encompass a different unit dosage form that is subsequently diluted with dextrose to form another "unit dosage form". If a claim is amenable to two or more plausible constructions, applicant is required to amend the claim to more precisely define the metes and bounds of the claimed invention or the claim is indefinite under § 112, ¶ 2. *Ex parte Miyazaki*, 89 USPQ2d 1207 (BPAI 2008)


### Claim Rejections - 35 USC § 112(a)

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person

PAR-VASO-0014089

Application/Control Number: 15/688,322                                        Page 6
Art Unit: 1675

> skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 16-32 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement.  The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy.

The claims are drawn to a method of increasing blood pressure in a hypotensive human with vasopressin. The method requires the use of a unit dosage form comprising i) from about 0.1 µg/mL to about 2 µg/mL of vasopressin, ii) dextrose, and iii) acetate. The method requires storing the unit dosage form at 2-8° C for at least about 24 hours, and after storing administering the unit dosage form to the human.

In contrast to the claimed methods, even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration.  Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). Prior to the instant application, making a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy is counter to the instructions on the FDA label for Vasostrict® (vasopressin injection). The question of whether a diluted form of vasopressin formulation

PAR-VASO-0014090

that could be stored as a unit dosage form for later administration would be safe and effective was unpredictable before the guidance and data presented in the instant application.

The disclosure of the instant application describes an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-32.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. This description is critical support for the unit dosage form of claims 16, 26, and 36, and for step a) of claims 26 and 36. The disclosure states (¶

PAR-VASO-0014091

[0007]): "storing at 5 °C for at least about one month".  The disclosure states (¶ [0008]):

"storing at 25 °C for at least about one month".

Therefore, the specification fully supports the claimed methods as they apply to the specific vasopressin

formulation comprising dextrose and 1 mM acetate buffer in Example 16. Table 66 of the instant

specification suggests that the pH of the formulations containing dextrose and 1 mM acetate buffer (G

and H) was between 3.74 and 3.75.

However, instant claims 16-32 are not limited to formulations having a pH between 3.74 and

3.75 but rather encompass any pH that can be buffered by acetate. Given the high degree of

unpredictability in the art of vasopressin formulation and stability, and the explicit instructions and

standard to discard soon after dilution in dextrose, one of ordinary skill in the art would not conclude

that Applicant was in possession of a vasopressin formulation at any pH or buffer concentration that can

be used in the claim methods as a diluted unit dosage form that can be stored prior to use.

In order to overcome this rejection, Applicant should amend the claims to limit the pH of the

formulation and buffer concentration as set forth in Example 16.


### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102

and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory

basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and

the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis

for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

PAR-VASO-0014092

Application/Control Number: 15/688,322                                                    Page 9
Art Unit: 1675

> (a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale
> or otherwise available to the public before the effective filing date of the claimed invention.

Claims 16, 17, 20-22, and 26-32 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by

the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published

5/7/2015).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to

increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain

hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is

via the intravenous route, and that the composition must be diluted in 5% dextrose in water (D5W) prior

to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1). The Vasostrict® Label states that 1 mg of

vasopressin is equivalent to 530 units (§ 11). Therefore, the unit dosage form disclosed in the reference

contains:

0. 1 units /mL x 1 mg / 530 units x 1000 μg/ mg = 0.19 μg/mL of vasopressin

1 units /mL x 1 mg / 530 units x 1000 μg/ mg = 1.9 μg/mL of vasopressin

both of which fall within the claimed range of about 0.1 μg/mL to about 2 μg/mL.

The Vasostrict® Label states that vasopressin formulation also contains acetic acid to pH 3.4-3.6

(§ 11). As evidenced by preparatorychemistry.com, acetic acid dissociates in water to

acetate(preparatorychemistry.com/Bishop_weak_acid_Equilibrium.htm). Therefore, the formulation

comprises acetate.

With respect to the limitation "storing the unit dosage form at 2-8° C for at least about 24

hours," the Vasostrict® Label states dilute in 5% dextrose in water prior to use and discard unused

diluted solution after 24 hours under refrigeration (§ 2.1). The storage time taught by the label, 24

PAR-VASO-0014093

hours, falls within the claimed range of at least about 24 hours because the claim term "about" allows for some time below 24 hours in the claimed range.

With respect to claim 17, the Vasostrict® Label states that the formulation contains a pH adjusting agent (§ 11).

With respect to claim 20, the Vasostrict® Label states that the formulation contains acetic acid (§ 11).

With respect to claim 21, the Vasostrict® Label states that the dextrose concentration is 5% (§ 2.1).

With respect to claim 22, the storage time taught by the label, 24 hours, falls within the claimed range of at least about 24 hours because the claim term "about" allows for some time below 24 hours in the claimed range. Refrigeration is between 2°C and 8°C and includes the claimed 5° C with sufficient specificity because the value of 5° is not critical within the range of refrigeration temperatures.

With respect to claim 26, the Vasostrict® Label states that administration is via the intravenous route (§ 2.1).

With respect to claim 27, the Vasostrict® Label states that mean arterial blood pressure can be increased in 15 minutes (§ 12.2).

With respect to claims 28 and 29, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock (§ 1).

With respect to claim 30, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock, and that the starting intravenous dose is 0.03 units/minute, and that the dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute (§ 2.2).

With respect to claim 31, the Vasostrict® Label states that vasopressin is indicated for septic shock (§ 1).

PAR-VASO-0014094

Application/Control Number: 15/688,322                                              Page 11
Art Unit: 1675

With respect to claim 32, the Vasostrict® Label states that vasopressin is indicated for septic

shock, and that the starting intravenous dose is 0.01 units/minute, and that the dose can be titrated up

by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.07 units/minute (§ 2.2).


### Claim Rejections - 35 USC § 103

This application currently names joint inventors. In considering patentability of the claims the

examiner presumes that the subject matter of the various claims was commonly owned as of the

effective filing date of the claimed invention(s) absent any evidence to the contrary. Applicant is advised

of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that

was not commonly owned as of the effective filing date of the later invention in order for the examiner

to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art

against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

Claims 18 and 19 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for

Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to

claims 16, 17, 20-22, and 26-32 above, in further view of Tidmarsh (US 2014/0329747) and Moberg et al.

(US 2014/0171369).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

PAR-VASO-0014095

Application/Control Number: 15/688,322                                             Page 12
Art Unit: 1675

The Vasostrict® Label does not state that the formulation comprises HCl or NaOH as a pH adjusting agent. Instead, acetic acid is used to adjust the pH (§ 11).

It would have been obvious to use hydrochloric acid and sodium hydroxide to adjust the pH of the vasopressin formulation taught by the Vasostrict® Label. The prior art recognizes that acetic acid, hydrochloric acid, and sodium hydroxide are all pH adjusters that can be used in pharmaceutical compositions, as evidenced by Tidmarsh (¶ [0029]) and Moberg et al. (¶ [0019]).


Claims 24 and 25 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to claims 16, 17, 20-22, and 26-32 above.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" allows for dilution prior to administration.

The Vasostrict® Label does not explicitly state that treatment occurs over about day as in claim 25 or over about one week as in claim 26. However, this difference is obvious over the guidance in the Label.

The Vasostrict® Label teaches that administration guidance is empirical and left to the practitioner to follow and optimize (§ 2.2). The guidance suggests a starting dose and maximum dose and states that if the target blood pressure response is not achieved, the practitioner should titrate up by 0.005 units/minute at 10- to 15-minute intervals. After target blood pressure has been maintained for 8 hours without the use of catecholamines, the practitioner should taper Vasostrict® by 0.005 units/minute every hour as tolerated to maintain target blood pressure. The total period of time required for this treatment varies depending on the patient and condition. Given the suggested titration schedule, 8 hour maintenance, and taper schedule, the range for total treatment overlaps with the

PAR-VASO-0014096

Application/Control Number: 15/688,322                                              Page 13
Art Unit: 1675

claimed range of over about a day, and over about a week, rendering the instant claims obvious over the label.

### Double Patenting

The terminal disclaimers over U.S. Patent Nos. 9,744,239, 9,735,478, 9,687,526, 9,744,209, and 9,750,785, and copending Application Nos. 15/688,305, 15/688,314, 15/688,326, 15/688,330, 15/688,334, 15/688,336, 15/688,338, 15/688,341, 15/606,442, and 15/612,649 filed October 24, 2017, are approved.

### Conclusion

No claims are allowed.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-

PAR-VASO-0014097

Application/Control Number: 15/688,322                                          Page 14
Art Unit: 1675

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).If you would like assistance from a USPTO Customer

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.

/CHRISTINA BRADLEY/
**Primary Examiner, Art Unit 1675**

cmb

| *Notice of References Cited* | Application/Control No. 15/688,322 | Applicant(s)/Patent Under Reexamination Kenney et al. | |
|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20140329747-A1 | 11-2014 | Tidmarsh; George | A61K38/085 | 514/9.7 |
| * | B | US-20140171369-A1 | 06-2014 | Moberg; Kerstin Uvnas | A61K38/11 | 514/11.6 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015) (Year: 2015) |
| | V | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 12/21/2016) (Year: 2016) |
| | W | Entry on acetic acid, preparatorychemistry.com/Bishop_weak_acid_Equilibrium.htm, downloaded 10/16/2017 (Year: 2017) |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**           Part of Paper No. 20171020

PAR-VASO-0014099

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/688,326 | 08/28/2017 | Matthew Kenney | 47956-702.306 | 1012 |

21971        7590        10/27/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/27/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@wsgr.com

PTOL-90A (Rev. 04/07)

PAR-VASO-0014100

| *Office Action Summary* | Application No. 15/688,326 | Applicant(s) Kenney et al. | | |
|---|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | AIA Status Yes | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☑ Responsive to communication(s) filed on <u>28 August 2017</u> .
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2a) ☐ This action is **FINAL.**       2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims\***

5) ☑ Claim(s) <u>16-33</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>16-33</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

\* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are:  a) ☐ accepted or  b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All  b) ☐ Some\*\*  c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

\*\* See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____ .

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____ .

4) ☐ Other: _____ .

PAR-VASO-0014101

Application/Control Number: 15/688,326                                    Page 2
Art Unit: 1675

## DETAILED CORRESPONDENCE

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### *Priority*

Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or under 35 U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with one or more conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120, 121, 365(c), or 386(c) as follows:

The later-filed application must be an application for a patent for an invention which is also disclosed in the prior application (the parent or original nonprovisional application or provisional application). The disclosure of the invention in the parent application and in the later-filed application must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA 35 U.S.C. 112, except for the best mode requirement. See *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 fail to provide adequate support or enablement in the manner provided by 35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.

The disclosure of the instant application, and the parent Application No. 15/612,649, describe an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-33.

PAR-VASO-0014102

Application/Control Number: 15/688,326                                                    Page 3
Art Unit: 1675

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

In contrast, the disclosures of prior-filed Application Nos. 15/426,693 and 15/289,640 do not include a vasopressin formulation for bottle or intravenous drip-bag. Instead, the prior-filed applications disclose a method wherein a unit dosage form containing vasopressin, chlorobutanol, acetic acid, and water is diluted in 0.9% saline or 5% dextrose prior to intravenous administration (see ¶[00102]-[00138]

PAR-VASO-0014103

of Application No. 15/426,693, and ¶ [00100]-[00135] of Application No. 15/289,640). The unit dosage form can be stored at 5 °C but not the form diluted in 0.9% saline or 5% dextrose.

Each of prior-filed Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 state that vasopressin diluted in dextrose must be discarded after a limited period of time (¶ [00270], [00267], [0042], [0140], respectively): "Vasopressin is diluted in normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) prior to use to either 0.1 units/mL or 1 unit/mL for intravenous administration. Unused diluted solution is discarded after 18 hours at room temperature or after 24 hours under refrigeration."

The stability data and handling instructions provided in the instant application and omitted in the prior-filed applications are critical for establishing support for the claimed methods because even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). It is not implicit in the prior-filed applications to make a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy, counter to the instructions on the FDA label for Vasostrict® (vasopressin injection), and in the prior-filed disclosures, and in the absence of any data or instruction suggesting that a longer storage period would be safe and effective.

As a result, the earliest effective filing date for claims 16-33 is the filing date of parent Application No. 15/612,649, June 2, 2017.

### *Claim Rejections - 35 USC § 112(b)*

The following is a quotation of 35 U.S.C. 112(b):

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 16-33 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The claims recite the term "unit dosage form". There are two plausible constructions for this term. First, example 16 of the specification suggests that in the instant claim "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy. Second, a plain reading of the term could also encompass a different unit dosage form that is subsequently diluted with dextrose to form another "unit dosage form". If a claim is amenable to two or more plausible constructions, applicant is required to amend the claim to more precisely define the metes and bounds of the claimed invention or the claim is indefinite under § 112, ¶ 2. *Ex parte Miyazaki*, 89 USPQ2d 1207 (BPAI 2008)

### *Claim Rejections - 35 USC § 112(a)*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

(a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person

Application/Control Number: 15/688,326                                    Page 6
Art Unit: 1675

> skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the
> same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 16-33 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy.

The claims are drawn to a method of increasing blood pressure in a hypotensive human with vasopressin. The method requires the use of a unit dosage form comprising i) from about 0.1 µg/mL to about 2 µg/mL of vasopressin, ii) dextrose, iii) acetate, and iv) SEQ ID NO: 3.

In contrast to the claimed methods, even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). Prior to the instant application, making a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy is counter to the instructions on the FDA label for Vasostrict® (vasopressin injection). The question of whether a diluted form of vasopressin formulation that could be stored as a unit dosage form for later administration would be safe and effective was unpredictable before the guidance and data presented in the instant application.

PAR-VASO-0014106

The disclosure of the instant application describes an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-33.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. This description is critical support for the unit dosage form of claims 16, 26, and 36, and for step a) of claims 26 and 36. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month".  The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

PAR-VASO-0014107

Therefore, the specification fully supports the claimed methods as they apply to the specific vasopressin formulation comprising dextrose and 1 mM acetate buffer in Example 16. Table 66 of the instant specification suggests that the pH of the formulations containing dextrose and 1 mM acetate buffer (G and H) was between 3.74 and 3.75.

However, instant claims 16-33 are not limited to formulations having a pH between 3.74 and 3.75 but rather encompass any pH that can be buffered by acetate. Given the high degree of unpredictability in the art of vasopressin formulation and stability, and the explicit instructions and standard to discard soon after dilution in dextrose, one of ordinary skill in the art would not conclude that Applicant was in possession of a vasopressin formulation at any pH or buffer concentration that can be used in the claim methods as a diluted unit dosage form that can be stored prior to use.

In order to overcome this rejection, Applicant should amend the claims to limit the pH of the formulation and buffer concentration as set forth in Example 16.

### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

Application/Control Number: 15/688,326                                                     Page 9
Art Unit: 1675

Claims 16, 17, 20-24, and 27-33 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" allows for dilution prior to administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is via the intravenous route, and that the composition must be diluted in 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§ 2.1). The Vasostrict® Label states that 1 mg of vasopressin is equivalent to 530 units (§ 11). Therefore, the unit dosage form disclosed in the reference contains:

0. 1 units /mL x 1 mg / 530 units x 1000 μg/ mg = 0.19 μg/mL of vasopressin

1 units /mL x 1 mg / 530 units x 1000 μg/ mg = 1.9 μg/mL of vasopressin

both of which fall within the claimed range of about 0.1 μg/mL to about 2 μg/mL.

The Vasostrict® Label states that vasopressin formulation also contains acetic acid to pH 3.4-3.6 (§ 11). As evidenced by preparatorychemistry.com, acetic acid dissociates in water to acetate (preparatorychemistry.com/Bishop_weak_acid_Equilibrium.htm). Therefore, the formulation comprises acetate.

With respect to the limitation "wherein the vasopressin or the pharmaceutically-acceptable salt thereof and SEQ ID NO: 3 are present in the unit dosage form at a ratio of about 1000: about 1 to about 30: about 1," and the related limitations in claims 22-24, the reference is silent as to the level of degradation. Because the formulation and method is otherwise identical to the claimed unit dosage form and method there is a reasonable basis to shift the burden to applicant to establish whether this

PAR-VASO-0014109

claimed property is met as in *In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See MPEP §§

2112-2112.02.

With respect to claim 17, the Vasostrict® Label states that the formulation contains a pH

adjusting agent (§ 11).

With respect to claim 20, the Vasostrict® Label states that the formulation contains acetic acid

(§ 11).

With respect to claim 21, the Vasostrict® Label states that the dextrose concentration is 5% (§

2.1).

With respect to claims 22-24, the reference is silent as to the level of degradation. Because the

formulation and method is otherwise identical to the claimed unit dosage form and method there is a

reasonable basis to shift the burden to applicant to establish whether this claimed property is met as in

*In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See MPEP §§ 2112-2112.02.

With respect to claim 27, the Vasostrict® Label states that administration is via the intravenous

route (§ 2.1).

With respect to claim 28, the Vasostrict® Label states that mean arterial blood pressure can be

increased in 15 minutes (§ 12.2).

With respect to claims 29 and 30, the Vasostrict® Label states that vasopressin is indicated for

post-cardiotomy shock (§ 1).

With respect to claim 31, the Vasostrict® Label states that vasopressin is indicated for post-

cardiotomy shock, and that the starting intravenous dose is 0.03 units/minute, and that the dose can be

titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute (§

2.2).

With respect to claim 32, the Vasostrict® Label states that vasopressin is indicated for septic

shock (§ 1).

Application/Control Number: 15/688,326                                                         Page 11
Art Unit: 1675

With respect to claim 33, the Vasostrict® Label states that vasopressin is indicated for septic

shock, and that the starting intravenous dose is 0.01 units/minute, and that the dose can be titrated up

by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.07 units/minute (§ 2.2).


### *Claim Rejections - 35 USC § 103*

This application currently names joint inventors. In considering patentability of the claims the

examiner presumes that the subject matter of the various claims was commonly owned as of the

effective filing date of the claimed invention(s) absent any evidence to the contrary. Applicant is advised

of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that

was not commonly owned as of the effective filing date of the later invention in order for the examiner

to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art

against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

Claims 18 and 19 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for

Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to

claims 16, 17, 20-24, and 27-33 above, in further view of Tidmarsh (US 2014/0329747) and Moberg et al.

(US 2014/0171369).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

The Vasostrict® Label does not state that the formulation comprises HCl or NaOH as a pH adjusting agent. Instead, acetic acid is used to adjust the pH (§ 11).

It would have been obvious to use hydrochloric acid and sodium hydroxide to adjust the pH of the vasopressin formulation taught by the Vasostrict® Label. The prior art recognizes that acetic acid, hydrochloric acid, and sodium hydroxide are all pH adjusters that can be used in pharmaceutical compositions, as evidenced by Tidmarsh (¶ [0029]) and Moberg et al. (¶ [0019]).

Claims 25 and 26 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to claims 16, 17, 20-24, and 27-33 above.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" allows for dilution prior to administration.

The Vasostrict® Label does not explicitly state that treatment occurs over about one day as in claim 25 or over about one week as in claim 26. However, this difference is obvious over the guidance in the Label.

The Vasostrict® Label teaches that administration guidance is empirical and left to the practitioner to follow and optimize (§ 2.2). The guidance suggests a starting dose and maximum dose and states that if the target blood pressure response is not achieved, the practitioner should titrate up by 0.005 units/minute at 10- to 15-minute intervals. After target blood pressure has been maintained for 8 hours without the use of catecholamines, the practitioner should taper Vasostrict® by 0.005 units/minute every hour as tolerated to maintain target blood pressure. The total period of time required for this treatment varies depending on the patient and condition. Given the suggested titration schedule, 8 hour maintenance, and taper schedule, the range for total treatment overlaps with the

PAR-VASO-0014112

Application/Control Number: 15/688,326                                         Page 13
Art Unit: 1675

claimed range of over about a day, and over about a week, rendering the instant claims obvious over the
label.


### Double Patenting

The terminal disclaimers over U.S. Patent Nos. 9,744,239, 9,735,478, 9,687,526, 9,744,209, and

9,750,785, and copending Application Nos. 15/688,305, 15/688,314, 15/688,322, 15/688,330,

15/688,334, 15/688,336, 15/688,338, 15/688,341, 15/606,442, and 15/612,649 filed October 24, 2017,

are approved.


### Conclusion

No claims are allowed.

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The

examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number for the organization

where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

PAR-VASO-0014113

Application/Control Number: 15/688,326                                       Page 14
Art Unit: 1675

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).If you would like assistance from a USPTO Customer

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.

/CHRISTINA BRADLEY/
**Primary Examiner, Art Unit 1675**

cmb

PAR-VASO-0014114

| | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ***Notice of References Cited*** | 15/688,326 | Kenney et al. |
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-20140329747-A1 | 11-2014 | Tidmarsh; George | A61K38/085 | 514/9.7 |
| * | B | US-20140171369-A1 | 06-2014 | Moberg; Kerstin Uvnas | A61K38/11 | 514/11.6 |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015) (Year: 2015) |
| | V | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 12/21/2016) (Year: 2016) |
| | W | Entry on acetic acid, preparatorychemistry.com/Bishop_weak_acid_Equilibrium.htm, downloaded 10/16/2017 (Year: 2017) |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**            Part of Paper No. 20171020

PAR-VASO-0014115

## United States Patent and Trademark Office

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/688,336 | 08/28/2017 | Matthew Kenney | 47956-702.309 | 8906 |

21971          7590          10/27/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/27/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@wsgr.com

PTOL-90A (Rev. 04/07)

PAR-VASO-0014116

| *Office Action Summary* | Application No. 15/688,336 | Applicant(s) Kenney et al. | |
|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | AIA Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☑ Responsive to communication(s) filed on <u>28 August 2017</u>                    .
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____              .
2a) ☐ This action is **FINAL**.        2b) ☑ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>16-30</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☑ Claim(s) <u>16-30</u> is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov**.

## Application Papers

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are:   a) ☐ accepted or   b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
       a) ☐ All   b) ☐ Some**   c) ☐ None of the:
       1. ☐ Certified copies of the priority documents have been received.
       2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
       3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1) ☑ Notice of References Cited (PTO-892)
2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____ .
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____ .
4) ☐ Other: _____ .

PAR-VASO-0014117

Application/Control Number: 15/688,336                                                     Page 2
Art Unit: 1675

## DETAILED CORRESPONDENCE

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.

### *Priority*

Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or under 35

U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with one or more

conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120, 121, 365(c), or 386(c) as

follows:

The later-filed application must be an application for a patent for an invention which is also

disclosed in the prior application (the parent or original nonprovisional application or provisional

application). The disclosure of the invention in the parent application and in the later-filed application

must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA

35 U.S.C. 112, except for the best mode requirement.  See *Transco Products, Inc. v. Performance*

*Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application Nos. 15/426,693, 15/289,640,

14/717,877, and 14/610,499 fail to provide adequate support or enablement in the manner provided by

35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.

The disclosure of the instant application, and the parent Application No. 15/612,649, describe

an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following

elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the

manner set forth in claims 16-30.

PAR-VASO-0014118

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

In contrast, the disclosures of prior-filed Application Nos. 15/426,693 and 15/289,640 do not include a vasopressin formulation for bottle or intravenous drip-bag. Instead, the prior-filed applications disclose a method wherein a unit dosage form containing vasopressin, chlorobutanol, acetic acid, and water is diluted in 0.9% saline or 5% dextrose prior to intravenous administration (see ¶[00102]-[00138]

PAR-VASO-0014119

of Application No. 15/426,693, and ¶ [00100]-[00135] of Application No. 15/289,640). The unit dosage

form can be stored at 5° C but not the form diluted in 0.9% saline or 5% dextrose.

Each of prior-filed Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 state

that vasopressin diluted in dextrose must be discarded after a limited period of time (¶ [00270],

[00267], [0042], [0140], respectively): "Vasopressin is diluted in normal saline (0.9% sodium chloride) or

5% dextrose in water (D5W) prior to use to either 0.1 units/mL or 1 unit/mL for intravenous

administration. Unused diluted solution is discarded after 18 hours at room temperature or after 24

hours under refrigeration."

The stability data and handling instructions provided in the instant application and omitted in

the prior-filed applications are critical for establishing support for the claimed methods because even

the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016,

states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal

saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for

intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24

hours under refrigeration" (§ 2.1). It is not implicit in the prior-filed applications to make a vasopressin

formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for

intravenous therapy, counter to the instructions on the FDA label for Vasostrict® (vasopressin injection),

and in the prior-filed disclosures, and in the absence of any data or instruction suggesting that a longer

storage period would be safe and effective.

As a result, the earliest effective filing date for claims 16-30 is the filing date of parent

Application No. 15/612,649, June 2, 2017.

### *Claim Rejections - 35 USC § 112(b)*

The following is a quotation of 35 U.S.C. 112(b):

Application/Control Number: 15/688,336                                            Page 5
Art Unit: 1675

> (b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out
> and distinctly claiming the subject matter which the inventor or a joint inventor regards as the
> invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
> The specification shall conclude with one or more claims particularly pointing out and distinctly
> claiming the subject matter which the applicant regards as his invention.

Claims 16-30 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph,

as being indefinite for failing to particularly point out and distinctly claim the subject matter which the

inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The claims recite the term "unit dosage form". There are two plausible constructions for this

term. First, example 16 of the specification suggests that in the instant claim "unit dosage form" means

a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin

dilution for intravenous therapy. Second, a plain reading of the term could also encompass a different

unit dosage form that is subsequently diluted with dextrose to form another "unit dosage form". If a

claim is amenable to two or more plausible constructions, applicant is required to amend the claim to

more precisely define the metes and bounds of the claimed invention or the claim is indefinite under §

112,  ¶ 2.  *Ex parte Miyazaki*, 89 USPQ2d 1207 (BPAI 2008)


### *Claim Rejections - 35 USC § 112(a)*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a) IN GENERAL.—The specification shall contain a written description of the invention, and
> of the manner and process of making and using it, in such full, clear, concise, and exact terms as to
> enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to
> make and use the same, and shall set forth the best mode contemplated by the inventor or joint
> inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and
> process of making and using it, in such full, clear, concise, and exact terms as to enable any person

Application/Control Number: 15/688,336                                                  Page 6
Art Unit: 1675

> skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the
> same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 16-30 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement. The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy.

The claims are drawn to a method of increasing blood pressure in a hypotensive human with vasopressin. The method requires the use of a unit dosage form comprising from about 0.1 units/mL to about 1unit/mL of vasopressin, wherein the pH is no greater than 4.1.

In contrast to the claimed methods, even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). Prior to the instant application, making a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy is counter to the instructions on the FDA label for Vasostrict® (vasopressin injection). The question of whether a diluted form of vasopressin formulation that could be stored as a unit dosage form for later administration would be safe and effective was unpredictable before the guidance and data presented in the instant application.

PAR-VASO-0014122

The disclosure of the instant application describes an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-30.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. This description is critical support for the unit dosage form of claims 16, 26, and 36, and for step a) of claims 26 and 36. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month".  The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

PAR-VASO-0014123

Application/Control Number: 15/688,336                                                        Page 8
Art Unit: 1675

Therefore, the specification fully supports the claimed methods as they apply to the specific vasopressin

formulation comprising dextrose and 1 mM acetate buffer in Example 16. Table 66 of the instant

specification suggests that the pH of the formulations containing dextrose and 1 mM acetate buffer (G

and H) was between 3.74 and 3.75.

However, instant claims 16-30 are not limited to formulations between 3.74 and 3.75 but rather

encompass any pH up to 4.1. Given the high degree of unpredictability in the art of vasopressin

formulation and stability, and the explicit instructions and standard to discard soon after dilution in

dextrose, one of ordinary skill in the art would not conclude that Applicant was in possession of a

vasopressin formulation at any pH or buffer concentration that can be used in the claim methods as a

diluted unit dosage form that can be stored prior to use.

In order to overcome this rejection, Applicant should amend the claims to limit the pH of the

formulation and buffer concentration as set forth in Example 16.


### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102

and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory

basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and

the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis

for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale
or otherwise available to the public before the effective filing date of the claimed invention.

PAR-VASO-0014124

Application/Control Number: 15/688,336                                                    Page 9
Art Unit: 1675

Claims 16-26, 28, and 30 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by the FDA

Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to

increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain

hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is

via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium

chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§

2.1).The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water, and

acetic acid to pH 3.4-3.6 (§ 11), which is in the range no greater than 4.1. The Vasostrict® Label states

that the starting intravenous dose is 0.03 units/minute for post-cardiotomy shock, and 0.01

units/minute for septic shock. The Vasostrict® Label states that the dose can be titrated up by 0.005

units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute for post-cardiotomy shock

and 0.07 units/minute for septic shock. (§ 2.2). All infusion rates taught by the Vasostrict® Label fall

within the claimed range of about 0.01 units to about 0.1 units per minute.

With respect to the limitation "impurities that are present in an amount of 0.9% - 1.7%, wherein

the impurities have from about 85% to about 100% sequence homology to SEQ ID NO: 1" in claim 16

and the related limitations in claims 17-23 and 26, the reference is silent as to the level of degradation.

Because the formulation and method is otherwise identical to the claimed unit dosage form and method

there is a reasonable basis to shift the burden to applicant to establish whether this claimed property is

met as in *In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See MPEP §§ 2112-2112.02.

With respect to claim 24, the Vasostrict® Label states that vasopressin is indicated for

vasodilatory shock (§ 1).

PAR-VASO-0014125

Application/Control Number: 15/688,336                                                    Page 10
Art Unit: 1675

With respect to claim 25, the Vasostrict® Label states that vasopressin is indicated for septic

shock, and that the starting intravenous dose is 0.01 units/minute, and that the dose can be titrated up

by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.07 units/minute (§ 2.2).

With respect to claim 28, the Vasostrict® Label states that vasopressin composition comprises

acetic acid, a pH adjuster (§ 11).

With respect to claim 30, the Vasostrict® Label states that vasopressin composition comprises

vasopressin, not the salt form (§ 2.1).


***Claim Rejections - 35 USC § 103***

This application currently names joint inventors. In considering patentability of the claims the

examiner presumes that the subject matter of the various claims was commonly owned as of the

effective filing date of the claimed invention(s) absent any evidence to the contrary.  Applicant is advised

of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that

was not commonly owned as of the effective filing date of the later invention in order for the examiner

to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art

against the later invention.

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the
> claimed invention pertains. Patentability shall not be negated by the manner in which the invention
> was made.

Claim 27 is rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for

Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015, as applied to

PAR-VASO-0014126

Application/Control Number: 15/688,336                                    Page 11
Art Unit: 1675

claims 16-26, 28, and 30 above, in further view of Buffers (downloaded from

www.med.unc.edu/pharm/sondeklab/files/resource-files/protein-purification-

handbooks/buffers_calbiochem.pdf, published 2006).

   Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

   The Vasostrict® Label does not state that the formulation contains sodium acetate. However,

this difference is obvious over the ordinary level of knowledge and skill in the art on buffers.

   The Vasostrict® Label teaches that the vasopressin formulation comprises acetic acid and has a

pH 3.4-3.6 (§ 11). It is well known in the prior art that acetate buffer comprising acetic acid and sodium

acetate is an appropriate choice for maintaining pH in the range taught by the Vasostrict® Label, as

evidenced by the Buffers guide published by Calibochem (p. 19).  Therefore, it would have been obvious

to one of ordinary skill in the art to add sodium acetate to the vasopressin formulation in order to create

a buffer system for maintaining the pH at 3.4-3.6. There would have been a reasonable expectation of

success given that the Vasostrict® Label teaches that the formulation already comprises acetic acid,

which is the acid component of the acetate buffer system.


### Double Patenting

   The terminal disclaimers over U.S. Patent Nos. 9,744,239, 9,735,478, 9,687,526, 9,744,209, and

9,750,785, and copending Application Nos. 15/688,305, 15/688,314, 15/688,322, 15/688,326,

15/688,330, 15/688,334, 15/688,338, 15/688,341, 15/606,442, and 15/612,649 filed October 24, 2017,

are approved.


### Conclusion

   No claims are allowed.

PAR-VASO-0014127

Application/Control Number: 15/688,336                                      Page 12
Art Unit: 1675

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The

examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number for the organization

where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.

/CHRISTINA BRADLEY/
**Primary Examiner, Art Unit 1675**

cmb

| *Notice of References Cited* | Application/Control No. 15/688,336 | | Applicant(s)/Patent Under Reexamination Kenney et al. | |
|---|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | | Art Unit 1675 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| | A | | | | | |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015) (Year: 2015) |
| | V | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 12/21/2016) (Year: 2016) |
| | W | Buffers (downloaded from www.med.unc.edu/pharm/sondeklab/files/resource-files/protein-purification-handbooks/buffers_calbiochem.pdf, published 2006) |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                    **Notice of References Cited**                    Part of Paper No. 20171018

PAR-VASO-0014129

U̲NITED S̲TATES P̲ATENT AND T̲RADEMARK O̲FFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/688,334 | 08/28/2017 | Matthew Kenney | 47956-702.308 | 1022 |

21971          7590          10/30/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 10/30/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@wsgr.com

PTOL-90A (Rev. 04/07)

PAR-VASO-0014130

| ***Office Action Summary*** | Application No. 15/688,334 | Applicant(s) Kenney et al. | | |
|---|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | AIA Status Yes | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☑ Responsive to communication(s) filed on <u>28 August 2017</u> .
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2a)☐ This action is **FINAL**.    2b)☑ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5)☑ Claim(s) <u>16-27</u> is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☑ Claim(s) <u>16-27</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov.**

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
    a)☐ All    b)☐ Some**    c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____ .
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

## Attachment(s)

1)☑ Notice of References Cited (PTO-892)

2)☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____ .

3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____ .

4)☐ Other: _____ .

PAR-VASO-0014131

Application/Control Number: 15/688,334                                        Page 2
Art Unit: 1675

## DETAILED CORRESPONDENCE

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.


### *Priority*

Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or under 35 U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with one or more conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120, 121, 365(c), or 386(c) as follows:

The later-filed application must be an application for a patent for an invention which is also disclosed in the prior application (the parent or original nonprovisional application or provisional application). The disclosure of the invention in the parent application and in the later-filed application must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA 35 U.S.C. 112, except for the best mode requirement. See *Transco Products, Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 fail to provide adequate support or enablement in the manner provided by 35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph for one or more claims of this application.

The disclosure of the instant application, and the parent Application No. 15/612,649, describe an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-27.

PAR-VASO-0014132

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

In contrast, the disclosures of prior-filed Application Nos. 15/426,693 and 15/289,640 do not include a vasopressin formulation for bottle or intravenous drip-bag. Instead, the prior-filed applications disclose a method wherein a unit dosage form containing vasopressin, chlorobutanol, acetic acid, and water is diluted in 0.9% saline or 5% dextrose prior to intravenous administration (see ¶[00102]-[00138]

PAR-VASO-0014133

of Application No. 15/426,693, and ¶ [00100]-[00135] of Application No. 15/289,640). The unit dosage

form can be stored at 5 °C but not the form diluted in 0.9% saline or 5% dextrose.

Each of prior-filed Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 state

that vasopressin diluted in dextrose must be discarded after a limited period of time (¶ [00270],

[00267], [0042], [0140], respectively): "Vasopressin is diluted in normal saline (0.9% sodium chloride) or

5% dextrose in water (D5W) prior to use to either 0.1 units/mL or 1 unit/mL for intravenous

administration. Unused diluted solution is discarded after 18 hours at room temperature or after 24

hours under refrigeration."

The stability data and handling instructions provided in the instant application and omitted in

the prior-filed applications are critical for establishing support for the claimed methods because even

the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016,

states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal

saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for

intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24

hours under refrigeration" (§ 2.1). It is not implicit in the prior-filed applications to make a vasopressin

formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for

intravenous therapy, counter to the instructions on the FDA label for Vasostrict® (vasopressin injection),

and in the prior-filed disclosures, and in the absence of any data or instruction suggesting that a longer

storage period would be safe and effective.

As a result, the earliest effective filing date for claims 16-27 is the filing date of parent

Application No. 15/612,649, June 2, 2017.

### *Claim Rejections - 35 USC § 112(b)*

The following is a quotation of 35 U.S.C. 112(b):

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 16-27 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The claims recite the term "unit dosage form". There are two plausible constructions for this term. First, example 16 of the specification suggests that in the instant claim "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy. Second, a plain reading of the term could also encompass a different unit dosage form that is subsequently diluted with dextrose to form another "unit dosage form". If a claim is amenable to two or more plausible constructions, applicant is required to amend the claim to more precisely define the metes and bounds of the claimed invention or the claim is indefinite under § 112, ¶ 2. *Ex parte Miyazaki*, 89 USPQ2d 1207 (BPAI 2008)

### Claim Rejections - 35 USC § 112(a)

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

(a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 16-27 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement.  The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy.

The claims are drawn to a method of increasing blood pressure in a hypotensive human with vasopressin. The method requires the use of a unit dosage form comprising i) from about 0.1 units/mL to about 1 unit/mL of vasopressin, ii) acetic acid, sodium acetate, or a combination thereof, iii) 0-2 % vasopressin degradation products,  iv) sodium chloride, and v) water, wherein the pH is no greater than 4.1.

In contrast to the claimed methods, even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration.  Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). Prior to the instant application, making a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy is counter to the instructions on the FDA label for Vasostrict® (vasopressin injection). The question of whether a diluted form of vasopressin formulation that could be stored as a unit dosage form for later administration would be safe and effective was unpredictable before the guidance and data presented in the instant application.

PAR-VASO-0014136

The disclosure of the instant application describes an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the manner set forth in claims 16-27.

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. This description is critical support for the unit dosage form of claims 16, 26, and 36, and for step a) of claims 26 and 36. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

PAR-VASO-0014137

Therefore, the specification fully supports the claimed methods as they apply to the specific vasopressin formulation comprising dextrose and 1 mM acetate buffer in Example 16. Table 66 of the instant specification suggests that the pH of the formulations containing dextrose and 1 mM acetate buffer (G and H) was between 3.74 and 3.75.

However, instant claims 16-27 are not limited to formulations between 3.74 and 3.75 but rather encompass any pH up to 4.1 that can be buffered by acetate, and with a concentration of 1 or 10 mM acetate buffer. Given the high degree of unpredictability in the art of vasopressin formulation and stability, and the explicit instructions and standard to discard soon after dilution in dextrose, one of ordinary skill in the art would not conclude that Applicant was in possession of a vasopressin formulation at any pH or buffer concentration that can be used in the claim methods as a diluted unit dosage form that can be stored prior to use.

In order to overcome this rejection, Applicant should amend the claims to limit the pH of the formulation and buffer concentration as set forth in Example 16.

### Claim Rejections - 35 USC § 102

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102 and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

Application/Control Number:15/688,334                                                    Page9
Art Unit:1675

Claims 16 and 19-27 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by the FDA Label

for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to

increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain

hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is

via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium

chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§

2.1). The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water, and

acetic acid to pH 3.4-3.6 (§ 11), which is within the claimed range of no greater than 4.1.The Vasostrict®

Label states that the starting intravenous dose is 0.03 units/minute for post-cardiotomy shock, and 0.01

units/minute for septic shock. The Vasostrict® Label states that the dose can be titrated up by 0.005

units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute for post-cardiotomy shock

and 0.07 units/minute for septic shock. (§ 2.2). All infusion rates taught by the Vasostrict® Label fall

within the claimed range of about 0.01 units to about 0.1 units per minute.

With respect to the limitation "0-2% vasopressin degradation products," the reference is silent

as to the level of degradation. Because the formulation and method is otherwise identical to the claimed

unit dosage form and method there is a reasonable basis to shift the burden to applicant to establish

whether this claimed property is met as in *In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See

MPEP §§ 2112-2112.02.

With respect to claim 19, the Vasostrict® Label states that mean arterial blood pressure can be

increased in 15 minutes (§ 12.2).

PAR-VASO-0014139

With respect to claims 20 and 21, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock (§ 1).

With respect to claim 22, the Vasostrict® Label states that vasopressin is indicated for post-cardiotomy shock, and that the starting intravenous dose is 0.03 units/minute, and that the dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.1 units/minute (§ 2.2).

With respect to claim 23, the Vasostrict® Label states that vasopressin is indicated for septic shock (§ 1).

With respect to claim 24, the Vasostrict® Label states that vasopressin is indicated for septic shock, and that the starting intravenous dose is 0.01 units/minute, and that the dose can be titrated up by 0.005 units/minute at 10- to 15-minute intervals to a maximum of 0.07 units/minute (§ 2.2).

With respect to claim 26, the Vasostrict® Label states that vasopressin composition comprises vasopressin, not the salt form (§ 2.1).

With respect to claim 27, the Vasostrict® Label states that vasopressin composition comprises chlorobutanol (§ 2.1).


### *Claim Rejections - 35 USC § 103*

This application currently names joint inventors. In considering patentability of the claims the examiner presumes that the subject matter of the various claims was commonly owned as of the effective filing date of the claimed invention(s) absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and effective filing dates of each claim that was not commonly owned as of the effective filing date of the later invention in order for the examiner to consider the applicability of 35 U.S.C. 102(b)(2)(C) for any potential 35 U.S.C. 102(a)(2) prior art against the later invention.

PAR-VASO-0014140

Application/Control Number: 15/688,334                                          Page 11
Art Unit: 1675

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

Claims 17 and 18 are rejected under 35 U.S.C. 103 as being unpatentable over the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015), as applied to claims 16 and 19-27 above.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" allows for dilution prior to administration.

The Vasostrict® Label does not explicitly state that treatment occurs over about day as in claim 17 or over about one week as in claim 18. However, this difference is obvious over the guidance in the Label.

The Vasostrict® Label teaches that administration guidance is empirical and left to the practitioner to follow and optimize (§ 2.2). The guidance suggests a starting dose and maximum dose and states that if the target blood pressure response is not achieved, the practitioner should titrate up by 0.005 units/minute at 10- to 15-minute intervals. After target blood pressure has been maintained for 8 hours without the use of catecholamines, the practitioner should taper Vasostrict® by 0.005 units/minute every hour as tolerated to maintain target blood pressure. The total period of time required for this treatment varies depending on the patient and condition. Given the suggested titration schedule, 8 hour maintenance, and taper schedule, the range for total treatment overlaps with the claimed range of over about a day, and over about a week, rendering the instant claims obvious over the label.

Application/Control Number: 15/688,334                                                    Page 12
Art Unit: 1675

### *Double Patenting*

The terminal disclaimers over U.S. Patent Nos. 9,744,239, 9,735,478, 9,687,526, 9,744,209, and

9,750,785, and copending Application Nos. 15/688,305, 15/688,314, 15/688,322, 15/688,326,

15/688,330, 15/688,336, 15/688,338, 15/688,341, 15/606,442, and 15/612,649 filed October 24, 2017,

are approved.

### *Conclusion*

No claims are allowed.

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The

examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,

James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number for the organization

where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application

Information Retrieval (PAIR) system.  Status information for published applications may be obtained

from either Private PAIR or Public PAIR.  Status information for unpublished applications is available

through Private PAIR only.  For more information about the PAIR system, see http://pair-

direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer

PAR-VASO-0014142

Application/Control Number:15/688,334                                              Page13
Art Unit:1675

Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR

CANADA) or 571-272-1000.

/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675

cmb

PAR-VASO-0014143

| *Notice of References Cited* | Application/Control No. 15/688,334 | Applicant(s)/Patent Under Reexamination Kenney et al. | |
|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| | A | | | | | |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | FDA Label for Vasostrict® (vasopressin injection) downloaded from www.fda.gov, published 5/7/2015 |
| | V | FDA label for Vasostrict® (vasopressin injection) downloaded from www.fda.gov, published on December 21, 2016 |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)          **Notice of References Cited**          Part of Paper No. 20171023

PAR-VASO-0014144

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/688,338 | 08/28/2017 | Matthew Kenney | 47956-702.310 | 8013 |

21971          7590          11/01/2017
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 11/01/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

patentdocket@wsgr.com

PTOL-90A (Rev. 04/07)

PAR-VASO-0014145

| *Office Action Summary* | Application No. 15/688,338 | Applicant(s) Kenney et al. | | |
|---|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | AIA Status Yes | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☑ Responsive to communication(s) filed on <u>28 August 2017</u>         .
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____         .

2a) ☐ This action is **FINAL.**        2b) ☑ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☑ Claim(s) <u>16-37</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☑ Claim(s) <u>16-37</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined **allowable**, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to **PPHfeedback@uspto.gov**.

## Application Papers

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All   b) ☐ Some**   c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☑ Notice of References Cited (PTO-892)

2) ☑ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____ .

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date _____ .

4) ☐ Other: _____ .

Application/Control Number:15/688,338                                                           Page2
Art Unit:1675

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.

### *Priority*

Applicant's claim for the benefit of a prior-filed application under 35 U.S.C. 119(e) or under 35

U.S.C. 120, 121, 365(c), or 386(c) is acknowledged. Applicant has not complied with one or more

conditions for receiving the benefit of an earlier filing date under 35 U.S.C. 120, 121, 365(c), or 386(c) as

follows:

The later-filed application must be an application for a patent for an invention which is also

disclosed in the prior application (the parent or original nonprovisional application or provisional

application). The disclosure of the invention in the parent application and in the later-filed application

must be sufficient to comply with the requirements of 35 U.S.C. 112(a) or the first paragraph of pre-AIA

35 U.S.C. 112, except for the best mode requirement.  See *Transco Products, Inc. v. Performance*

*Contracting, Inc.*, 38 F.3d 551, 32 USPQ2d 1077 (Fed. Cir. 1994)

The disclosure of the prior-filed application, Application Nos. 15/426,693, 15/289,640,

14/717,877, and 14/610,499 fail to provide adequate support or enablement in the manner provided by

35 U.S.C. 112(a) or pre-AIA 35 U.S.C. 112, first paragraph for claims 27-37 of this application.

The disclosure of the instant application, and the parent Application No. 15/612,649, describe

an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following

elements that pertain to an intravenous unit dosage form of vasopressin, and a method of using it in the

manner set forth in claims 16-30.

PAR-VASO-0014147

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month". The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

In contrast, the disclosures of prior-filed Application Nos. 15/426,693 and 15/289,640 do not include a vasopressin formulation for bottle or intravenous drip-bag. Instead, the prior-filed applications disclose a method wherein a unit dosage form containing vasopressin, chlorobutanol, acetic acid, and water is diluted in 0.9% saline or 5% dextrose prior to intravenous administration (see ¶[00102]-[00138]

PAR-VASO-0014148

of Application No. 15/426,693, and ¶ [00100]-[00135] of Application No. 15/289,640). The unit dosage

form can be stored at 5° C but not the form diluted in 0.9% saline or 5% dextrose.

Each of prior-filed Application Nos. 15/426,693, 15/289,640, 14/717,877, and 14/610,499 state

that vasopressin diluted in dextrose must be discarded after a limited period of time (¶ [00270],

[00267], [0042], [0140], respectively): "Vasopressin is diluted in normal saline (0.9% sodium chloride) or

5% dextrose in water (D5W) prior to use to either 0.1 units/mL or 1 unit/mL for intravenous

administration. Unused diluted solution is discarded after 18 hours at room temperature or after 24

hours under refrigeration."

The stability data and handling instructions provided in the instant application and omitted in

the prior-filed applications are critical for establishing support for the claimed methods because even

the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016,

states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal

saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for

intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24

hours under refrigeration" (§ 2.1). It is not implicit in the prior-filed applications to make a vasopressin

formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for

intravenous therapy, counter to the instructions on the FDA label for Vasostrict® (vasopressin injection),

and in the prior-filed disclosures, and in the absence of any data or instruction suggesting that a longer

storage period would be safe and effective.

As a result, the earliest effective filing date for claims 27-37 is the filing date of parent

Application No. 15/612,649, June 2, 2017.


### Claim Rejections - 35 USC § 112(b)

The following is a quotation of 35 U.S.C. 112(b):

(b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Claims 27-37 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The claims recite the term "unit dosage form". There are two plausible constructions for this term. First, example 16 of the specification suggests that in the instant claim "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy. Second, a plain reading of the term could also encompass a different unit dosage form that is subsequently diluted with dextrose to form another "unit dosage form". If a claim is amenable to two or more plausible constructions, applicant is required to amend the claim to more precisely define the metes and bounds of the claimed invention or the claim is indefinite under § 112, ¶ 2. *Ex parte Miyazaki*, 89 USPQ2d 1207 (BPAI 2008)

### *Claim Rejections - 35 USC § 112(a)*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

(a) IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 27-37 are rejected under 35 U.S.C. 112(a) or 35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description requirement.  The claim(s) contains subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of the claimed invention.

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein "unit dosage form" means a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy.

The claims are drawn to a pharmaceutical composition for intravenous administration comprising in a unit dosage form from about 0.1 µg/mL to about 2 µg/mL of vasopressin, wherein the pH is no greater than 4.1.

In contrast to the claimed compositions, even the most recent FDA label for Vasostrict® (vasopressin injection) published on December 21, 2016, states that diluted vasopressin must be discarded after a short time: "Dilute Vasostrict® with normal saline (0.9% sodium chloride) or 5% dextrose in water (D5W) to either 0.1 units/mL or 1 unit/mL for intravenous administration. Discard unused diluted solution after 18 hours at room temperature or 24 hours under refrigeration" (§ 2.1). Prior to the instant application, making a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy is counter to the instructions on the FDA label for Vasostrict® (vasopressin injection). The question of whether a diluted form of vasopressin formulation that could be stored as a unit dosage form for later administration would be safe and effective was unpredictable before the guidance and data presented in the instant application.

The disclosure of the instant application describes an intravenous unit dosage form of vasopressin (¶ [00397]). The disclosure includes the following elements that pertain to an intravenous unit dosage form of vasopressin set forth in claims 27-37.

PAR-VASO-0014151

- Example 16 describes a vasopressin formulation for bottle or intravenous drip-bag that can be used without initial vasopressin dilution for intravenous therapy (¶ [00397]).

- Formulations A-H and 9 in Tables 55-63, respectively, each contain 40 or 60 IU/100 mL vasopressin, 1 or 10 mM acetate buffer, water, and HCl and NaOH as pH adjustors, plus either sodium chloride (A, B, E, F), dextrose (C, D, G, H), or sodium chloride and dextrose (9).

- Example 17 describes the impurity measurement for the vasopressin formulation for bottle or intravenous drip-bag. As stated in ¶ [00433] "The results above provided an estimated shelf life at 5 °C of about 16.1 months (FIGURE 27) and at 25 °C of about eight months (FIGURE 28). The results indicated that the dextrose vehicle with 1 mM acetate buffer provided a lower rate of degradation and a lower rate of impurities accumulation for the vasopressin formulation at 5 °C, 25 °C, and 40 °C compared to NaCl or a combination of dextrose and NaCl in either 1 mM or 10 mM acetate buffer."

- The disclosure at ¶ [0007]-[0008] describes the clinical use of vasopressin formulation to increase blood pressure in hypotensive adults.

- The disclosure at ¶ [0007]-[0008] also describes the storage and handling of the vasopressin formulation. The disclosure states (¶ [0007]): "storing at 5 °C for at least about one month".  The disclosure states (¶ [0008]): "storing at 25 °C for at least about one month".

Therefore, the specification fully supports the claimed methods as they apply to the specific vasopressin formulation comprising dextrose and 1 mM acetate buffer in Example 16. Table 66 of the instant specification suggests that the pH of the formulations containing dextrose and 1 mM acetate buffer (G and H) was between 3.74 and 3.75.

However, instant claims 27-37 are not limited to formulations between 3.74 and 3.75 but rather

encompass any pH up to 4.1. Given the high degree of unpredictability in the art of vasopressin

formulation and stability, and the explicit instructions and standard to discard soon after dilution in

dextrose, one of ordinary skill in the art would not conclude that Applicant was in possession of a

vasopressin formulation at any pH or buffer concentration that can be used in the claim methods as a

diluted unit dosage form that can be stored prior to use.

In order to overcome this rejection, Applicant should amend the claims to limit the pH of the

formulation and buffer concentration as set forth in Example 16.

### *Claim Rejections - 35 USC § 102*

In the event the determination of the status of the application as subject to AIA 35 U.S.C. 102

and 103 (or as subject to pre-AIA 35 U.S.C. 102 and 103) is incorrect, any correction of the statutory

basis for the rejection will not be considered a new ground of rejection if the prior art relied upon, and

the rationale supporting the rejection, would be the same under either status.

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis

for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale
or otherwise available to the public before the effective filing date of the claimed invention.

Claims 27-35 and 37 are rejected under 35 U.S.C. 102(a)(1) as being anticipated by the FDA Label

for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015).

Claim interpretation note: this rejection pertains to the interpretation of the claims wherein

"unit dosage form" allows for dilution prior to administration.

The FDA Label for Vasostrict® (vasopressin injection) states that vasopressin is indicated to

increase blood pressure in adults with vasodilatory shock (e.g., post-cardiotomy or sepsis) who remain

PAR-VASO-0014153

hypotensive despite fluids and catecholamines (§ 1). The Vasostrict® Label states that administration is

via the intravenous route, and that the composition must be diluted in normal saline (0.9% sodium

chloride) or 5% dextrose in water (D5W) prior to use to a concentration of 0.1 units/mL or 1 unit/mL (§

2.1).The Vasostrict® Label states that vasopressin formulation also contains chlorobutanol, water, and

acetic acid to pH 3.4-3.6 (§ 11), which is in the range no greater than 4.1. The Vasostrict® Label states

that 1 mg of vasopressin is equivalent to 530 units (§ 11). Therefore, the unit dosage form disclosed in

the reference contains:

0. 1 units /mL x 1 mg / 530 units x 1000 µg/ mg = 0.19 µg/mL of vasopressin

1 units /mL x 1 mg / 530 units x 1000 µg/ mg = 1.9 µg/mL of vasopressin

both of which fall within the claimed range of about 0.1 µg/mL to about 2 µg/mL.

With respect to the limitation "impurities that are present in an amount of 0.9% - 1.7%, wherein

the impurities have from about 85% to about 100% sequence homology to SEQ ID NO: 1" in claim 27

and the related limitations in claims 28-35, the reference is silent as to the level of degradation. Because

the formulation and method is otherwise identical to the claimed unit dosage form and method there is

a reasonable basis to shift the burden to applicant to establish whether this claimed property is met as

in *In re Fitzgerald*, 619 F.2d 67, 205 USPQ 594 (CCPA 1980). See MPEP §§ 2112-2112.02.

With respect to claim 37, the Vasostrict® Label states that vasopressin composition comprises

vasopressin, not the salt form (§ 2.1).


### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103 which forms the basis for all obviousness rejections

set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is
> not identically disclosed as set forth in section 102, if the differences between the claimed invention
> and the prior art are such that the claimed invention as a whole would have been obvious before the
> effective filing date of the claimed invention to a person having ordinary skill in the art to which the

PAR-VASO-0014154

claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

Claims 16-26 are rejected under 35 U.S.C. 103 as being unpatentable over Pharmaceutical Partners of Canada Inc. (NPL 136, IDS 9/1/2017) in view of Treschan (NPL 170, IDS 9/1/2017), as evidenced by the FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015).

Treschan teaches that vasopressin is a hormone that is essential for osmoregulation, cardiovascular control, and homeostasis. Vasopressin is used clinically in anesthesia and intensive care therapy, specifically for the treatment of cardiopulmonary resuscitation (CPR), septic shock, intraoperative hypotension, vasodilatory shock, and hemodynamic instability (p. 599, col 1-2, Table 2). The structure of the therapeutic agent arginine vasopressin (AVP) is identical to instant SEQ ID NO: 1 (Fig. 1).

Pharmaceutical Partners of Canada teaches that Vasopressin Injection, USP is a sterile, nonpyrogenic solution of synthetic vasopressin of the posterior pituitary gland. It is substantially free from the oxytocic principle and is standardized to contain 20 pressor units. Vasopressin is identical to instant SEQ ID NO: 1. Each mL contains 20 USP vasopressin units, chlorobutanol (anhydrous) 5 mg as preservative, water for injection q.s. glacial acetic acid and/or sodium hydroxide for pH adjustment (2.5-4.5).

Note that the FDA Label for Vasostrict® provides evidence that 1 mg is equivalent to 530 units of vasopressin. Therefore, the composition taught by Pharmaceutical Partners of Canada contains 0.038 mg/ml vasopressin, which falls within the claimed range (this is an evidentiary reference and does not need to be prior art).

With respect to the pH, Pharmaceutical Partners of Canada teaches a range of 2.5-4.5 which overlaps with the claimed range of no greater than 4.1.  MPEP § 2144.05 states that "In the case where the claimed ranges 'overlap or lie inside ranges disclosed by the prior art' a *prima facie* case of

Application/Control Number:15/688,338                                                    Page11
Art Unit:1675

obviousness exists. *In re Wertheim*, 541 F.2d 257, 191 USPQ 90 (CCPA 1976); *In re Woodruff*, 919 F.2d

1575, 16 USPQ2d 1934 (Fed. Cir. 1990)." Therefore, the instantly claimed pH of no greater than 4.1 is

*prima facie* obvious in view of the prior art range 2.5-4.5.

With respect to the stability limitations in claims 16-24, the fact that applicant has recognized

another advantage which would flow naturally from following the suggestion of the prior art cannot be

the basis for patentability when the differences would otherwise be obvious.  See *Ex parte Obiaya*, 227

USPQ 58, 60 (Bd. Pat. App. & Inter. 1985). The composition that is obvious over the cited art would be

chemically and structurally identical to that recited in the instant claims. As a result, it would possess the

same stability properties as recited in the instant claims.


*Evaluation of Evidence in the Specification*

The data in Examples 9-12 of the specification have been fully considered but are not sufficient

to overcome the *prima facie* case and to establish that the claimed pH range is critical, and exhibits

unexpected results.

MPEP 716.02(c) states: "'Expected beneficial results are evidence of obviousness of a claimed

invention, just as unexpected results are evidence of unobviousness thereof.' *In re Gershon,* 372 F.2d

535, 538, 152 USPQ 602, 604 (CCPA 1967)" In the instant case, the prior art of Pharmaceutical Partners

of Canada teach that pH 2.5-4.5 is suitable for a vasopressin formulation intended for clinical use. As a

result, one of ordinary skill in the art would expect that even if there are differences across this pH

range, all pH values would yield a formulation that is stable enough for clinical use. Applicant has not

provided evidence that the claimed range of no greater than pH 4.1 exhibits a stability that is significant

enough to result in a practical benefit to the user. Applicant has not established "that the differences in

results are in fact unexpected and unobvious and of both statistical and practical significance." (*Ex parte*

*Gelles,* 22 USPQ2d 1318, 1319 (Bd. Pat. App. & Inter. 1992) because it is not clear from the specification

whether the observed differences in stability would have a practical effect on clinical use.

Applicant has alleged that the compositions recited in the instant claims have unexpected

stability. MPEP 716.01(b) states: "To be given substantial weight in the determination of obviousness or

nonobviousness, evidence of secondary considerations must be relevant to the subject matter as

claimed, and therefore the examiner must determine whether there is a nexus between the merits of

the claimed invention and the evidence of secondary considerations. *Ashland Oil, Inc. v. Delta Resins &

Refractories, Inc.,* 776 F.2d 281, 305 n.42, 227 USPQ 657, 673-674 n. 42 (Fed. Cir. 1985)." In the instant

case, the nexus between the alleged increase in stability and the claims is unclear. Although stability is

important for a pharmaceutical composition, there is no evidence on record that the closest prior art

composition which can have a pH of 2.5-4.5 is too unstable to be used clinically; on the contrary, the

prior art composition is FDA approved for the instantly claimed method of treatment. Applicant has not

established whether the alleged increase in stability achieved by the modifications to the prior art

composition recited in the instant claims is significant enough to have a benefit in the claimed

composition.

In addition, MPEP 716.02(e) states: " An affidavit or declaration under 37 CFR 1.132 must

compare the claimed subject matter with the closest prior art to be effective to rebut a *prima facie*

of obviousness. *In re Burckel,* 592 F.2d 1175, 201 USPQ 67 (CCPA 1979)... Where the comparison is not

identical with the reference disclosure, deviations therefrom should be explained, *In re Finley,* 174 F.2d

130, 81 USPQ 383 (CCPA 1949), and if not explained should be noted and evaluated, and if significant,

explanation should be required. *In re Armstrong*, 280 F.2d 132, 126 USPQ 281 (CCPA 1960)." In the

instant case, the closest prior art is the formulation taught by Pharmaceutical Partners of Canada. Each

mL of Vasopressin Injection, USP contains 20 USP vasopressin units, chlorobutanol (anhydrous) 5 mg as

PAR-VASO-0014157

preservative, water for injection q.s. glacial acetic acid and/or sodium hydroxide for pH adjustment (2.5-4.5). In contrast, the declaration presents stability data for vasopressin without chlorobutanol.

Finally, MPEP 716.02(d) states: "Whether the unexpected results are the result of unexpectedly improved results or a property not taught by the prior art, the "objective evidence of nonobviousness must be commensurate in scope with the claims which the evidence is offered to support." In other words, the showing of unexpected results must be reviewed to see if the results occur over the entire claimed range. *In re Clemens,* 622 F.2d 1029, 1036, 206 USPQ 289, 296 (CCPA 1980)" In claims 16-26, the buffer is not specified, and the claims encompass all buffers suitable for maintaining a pH of  no greater than 4.1 as well as compositions without buffer. In contrast, the data in the specification pertains to compositions containing acetate buffer, with the exception of a comparative example with citrate buffer (Example 12). The specification suggests that acetate buffer is superior to citrate buffer. In addition, in claims 16-26 the pH range is no greater than 4.1. The data in the specification are insufficient to establish that the range no greater than 4.1 is critical and exhibits unexpected stability compared to the prior art range. Finally, the data in the specification pertain to compositions that comprise dextrose, whereas the claims do not require this additive. Therefore, the results, are not commensurate in scope with the claims.

For these reasons, the rejection is maintained.


### Double Patenting

The terminal disclaimers over U.S. Patent Nos. 9,744,239, 9,735,478, 9,687,526, 9,744,209, and 9,750,785, and copending Application Nos. 15/688,305, 15/688,314, 15/688,322, 15/688,326, 15/688,330, 15/688,334, 15/688,338, 15/688,341, 15/606,442, and 15/612,649 filed October 24, 2017, are approved.

Application/Control Number:15/688,338                                      Page14
Art Unit:1675

*Conclusion*

No claims are allowed.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, James Alstrum-Acevedo can be reached on (571) 272-5548.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CHRISTINA BRADLEY/
**Primary Examiner, Art Unit 1675**

cmb

| | | Application/Control No.<br>15/688,338 | | Applicant(s)/Patent Under<br>Reexamination<br>Kenney et al. | |
|---|---|---|---|---|---|
| ***Notice of References Cited*** | | Examiner<br>CHRISTINA MARCHETTI<br>BRADLEY | | Art Unit<br>1675 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| | A | | | | | |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 5/7/2015) (Year: 2015) |
| | V | FDA Label for Vasostrict® (vasopressin injection) (downloaded from www.fda.gov, published 12/21/2016) (Year: 2016) |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)                     **Notice of References Cited**          Part of Paper No. 20171025

PAR-VASO-0014160

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 15606442 |
| **Filing Date:** | 26-May-2017 |
| **Title of Invention:** | VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION |
| **First Named Inventor/Applicant Name:** | Matthew Kenney |
| **Filer:** | Trisha Agrawal/Daniel Buehler (TA6) |
| **Attorney Docket Number:** | 47956-702.504 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

PAR-VASO-0014161

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| Submission- Information Disclosure Stmt | 1806 | 1 | 180 | 180 |
| **Total in USD ($)** | | | | **180** |

PAR-VASO-0014162

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 31053715 |
| **Application Number:** | 15606442 |
| **International Application Number:** | |
| **Confirmation Number:** | 5729 |
| **Title of Invention:** | VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION |
| **First Named Inventor/Applicant Name:** | Matthew Kenney |
| **Customer Number:** | 21971 |
| **Filer:** | Trisha Agrawal/Daniel Buehler (TA6) |
| **Filer Authorized By:** | Trisha Agrawal |
| **Attorney Docket Number:** | 47956-702.504 |
| **Receipt Date:** | 27-NOV-2017 |
| **Filing Date:** | 26-MAY-2017 |
| **Time Stamp:** | 19:43:57 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $180 |
| RAM confirmation Number | 112817INTEFSW00011050232415 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

PAR-VASO-0014163

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | IDS47956-702-504-11-27-2017. pdf | 294287 <br><br> 7001baaff7e08585c9fd68f16ef70c5819890 4f5 | yes | 9 |

| | | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|---|
| | | Document Description | Start | End | |
| | | Information Disclosure Statement (IDS) Form (SB08) | 5 | 9 | |
| | | Transmittal Letter | 1 | 4 | |

**Warnings:**

**Information:**

| 2 | Non Patent Literature | BUFFERS-DOWNLOADED-2006. PDF | 829372 <br><br> f1accea15d25abbe6fd7f666d984a58ac20d0 ade6 | no | 38 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 3 | Non Patent Literature | US15688305.PDF | 11200079 <br><br> aa5c43a3034fb6f2abbbc38d4ed1c2fff9a1e 030d | no | 296 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 4 | Non Patent Literature | US15688314.PDF | 11200131 <br><br> caede4722b537cadb78362a62e50ab418f2 fe462 | no | 296 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 5 | Non Patent Literature | US15688322.PDF | 11200132 <br><br> 9391fcda767ab92907f4d62092e2e65e677 2a660 | no | 296 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

PAR-VASO-0014164

| 6 | Non Patent Literature | US15688326.PDF | 11200172 | no | 296 |
| | | | 6acb1a3cc6763785e77d29941dbee4125ebfddc3d | | |

**Warnings:**

**Information:**

| 7 | Non Patent Literature | US15688330.PDF | 11200085 | no | 296 |
| | | | 1a1870d2373a53da1f81cea30fe48c8058c0fa31 | | |

**Warnings:**

**Information:**

| 8 | Non Patent Literature | US15688334.PDF | 11200201 | no | 296 |
| | | | e1b2741015b123cf2be41cb7a808adcd3c376948 | | |

**Warnings:**

**Information:**

| 9 | Non Patent Literature | US15688336.PDF | 11200245 | no | 296 |
| | | | 66310e363220f00201d12b1168ed3418ad1ae678 | | |

**Warnings:**

**Information:**

| 10 | Non Patent Literature | US15688338.PDF | 11199983 | no | 296 |
| | | | 084924cc11a4ddc8fa864fea6a408c79f78af1aa | | |

**Warnings:**

**Information:**

| 11 | Non Patent Literature | US15688341.PDF | 11189593 | no | 295 |
| | | | 706ed2d46b71da20042540af1f50f9e33f8a24b9 | | |

**Warnings:**

**Information:**

| 12 | Non Patent Literature | WEAK-ACID-2017.PDF | 64113 | no | 3 |
| | | | 3cb97afeeae699bbd51a369d654c91d43e861914 | | |

**Warnings:**

**Information:**

| 13 | Non Patent Literature | Z-NOA-07-11-2017-US14717877.PDF | 808380 | no | 14 |
| | | | c6c7997c5162b57a96d858061 1dabae9366 943cf | | |

| Warnings: |
| Information: |

| 14 | Non Patent Literature | Z-NOA-07-11-2017-US15426693.PDF | 732940 | no | 11 |
| | | | fecf84720fae299b3a93ebb1700cd09e0b59 419d | | |

| Warnings: |
| Information: |

| 15 | Non Patent Literature | Z-NOA-07-20-2017-US15426703.PDF | 495282 | no | 11 |
| | | | 49b54d0dbcd82669fd3587d89fff12fbe290 fd0c | | |

| Warnings: |
| Information: |

| 16 | Non Patent Literature | Z-OA-09-19-2017-US15612649.PDF | 366898 | no | 14 |
| | | | 9ca7945ddda65fc034bf3cdfb493af0b640b c7b0 | | |

| Warnings: |
| Information: |

| 17 | Non Patent Literature | Z-OA-10-17-2017-US15688330.PDF | 1133245 | no | 41 |
| | | | 354db16bc1abdd2215cd79f1036efab6491 637f7 | | |

| Warnings: |
| Information: |

| 18 | Non Patent Literature | OA-10-27-17-US15688305.PDF | 397400 | no | 16 |
| | | | 9269975a3c529e4c049fb2b4a90d0700162 67989 | | |

| Warnings: |
| Information: |

| 19 | Non Patent Literature | OA-10-27-2017-US15-688314.PDF | 388913 | no | 16 |
| | | | f8157986b926a4bc866de9278786 4b23a0b ed98a | | |

| Warnings: |
| Information: |

| 20 | Non Patent Literature | OA-10-27-2017-US15-688322.PDF | 390115<br>9985903 1e56df38890a7ad26c3e2c8a72fcd1f82 | no | 16 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 21 | Non Patent Literature | OA-10-27-2017-US15-688326.PDF | 390464<br>efe9628e74aa7382a3ff7f7fb6632ee1520e7c34 | no | 16 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 22 | Non Patent Literature | OA-10-27-2017-US15-688336.PDF | 365792<br>947b8712e91206fa002ebc5611cd1778cb7b8aa5 | no | 14 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 23 | Non Patent Literature | OA-10-30-2017-US15-688334.PDF | 366197<br>29912f3a82515307c36301799ea6e95f2f52102 | no | 15 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 24 | Non Patent Literature | OA-11-01-17-US-15688338.PDF | 425699<br>213ed2e0db066c1dcfa1bd7906669665290468ee | no | 16 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| 25 | Fee Worksheet (SB06) | fee-info.pdf | 30752<br>2f91e3b38644e351ba0bf2a1a25590e1f9eac169 | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| **Total Files Size (in bytes):** | 108270470 |
|---|---|

PAR-VASO-0014167

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>15/606,442 | Filing Date<br>05/26/2017 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☒ LARGE ☐ SMALL ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | | RATE ($) | FEE ($) |
|---|---|---|---|---|---|
| FOR | | | | | |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee is due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1)<br>CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | | (Column 2)<br>HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **11/27/2017** | | | | | | |
| | Total (37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | x $80 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | x $420 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1)<br>CLAIMS<br>REMAINING<br>AFTER<br>AMENDMENT | | (Column 2)<br>HIGHEST<br>NUMBER<br>PREVIOUSLY<br>PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | | | | | | |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

SLIE
TONYA MCBRIDE

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PAR-VASO-0014169

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/606,442 | Kenney et al. |
| | Examiner | Art Unit |
| | CHRISTINA MARCHETTI BRADLEY | 1675 |

| CPC - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| A61K38/11 with keyword search, see transcript | 09/11/2017 | CMB |
| C07K7/16 with keyword search, see transcript | 09/11/2017 | CMB |

| CPC Combination Sets - Searched* | | |
|---|---|---|
| Symbol | Date | Examiner |
| | | |

| US Classification - Searched* | | | |
|---|---|---|---|
| Class | Subclass | Date | Examiner |
| | | | |

* See search history printout included with this form or the SEARCH NOTES box below to determine the scope of the search.

| Search Notes | | |
|---|---|---|
| Search Notes | Date | Examiner |
| East - see transcript | 09/11/2017 | CMB |
| Palm and East inventor name search | 09/11/2017, 1/11/2018 | CMB |
| Google - vasopressin, storage, handling, stability, formulation, acetate, pH | 09/11/2017 | CMB |

| Interference Search | | | |
|---|---|---|---|
| US Class/CPC Symbol | US Subclass/CPC Group | Date | Examiner |
| | A61K38/11 with keyword search, see transcript | 01/11/2018 | CMB |
| | C07K7/16 with keyword search, see transcript | 01/11/2018 | CMB |

| | |
|---|---|
| | |

PAR-VASO-0014170

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| L1 | 0 | (("KENNEY") near3 ("Matthew")).INV. | EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:57 |
| L2 | 21 | (("KENNEY") near3 ("Matthew")).INV. | US-PGPUB; USPAT; USOCR | ADJ | ON | 2018/01/11 08:57 |
| L3 | 0 | (("KANNAN") near3 ("Vinayagam")).INV. | EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:57 |
| L4 | 24 | (("KANNAN") near3 ("Vinayagam")).INV. | US-PGPUB; USPAT; USOCR | ADJ | ON | 2018/01/11 08:57 |
| L5 | 2 | (("VANDSE") near3 ("Sunil")).INV. | EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:57 |
| L6 | 19 | (("VANDSE") near3 ("Sunil")).INV. | US-PGPUB; USPAT; USOCR | ADJ | ON | 2018/01/11 08:57 |
| L7 | 10 | (("SANGHVI") near3 ("Suketu")).INV. | EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:57 |
| L8 | 38 | (("SANGHVI") near3 ("Suketu")).INV. | US-PGPUB; USPAT; USOCR | ADJ | ON | 2018/01/11 08:57 |
| L9 | 59 | L1 or L2 or L3 or L4 or L5 or L6 or L7 or L8 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | ADJ | | 2018/01/11 08:57 |
| L10 | 687 | a61k38/11.cpc. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | ADJ | | 2018/01/11 08:58 |
| L11 | 362 | c07k7/16.cpc. | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:58 |
| L12 | 1024 | L10 or L11 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:58 |
| L13 | 21878 | vasopressin | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:58 |
| L14 | 609 | L12 and L13 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:58 |
| L15 | 19 | l9 and l14 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:58 |
| L16 | 641041 | (reuse or second or multiple) with (punctur$3 or withdraw$3 or draw$3) | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:58 |
| L17 | 18 | l14 and l16 | US-PGPUB; USPAT; USOCR; EPO; JPO; DERWENT | ADJ | ON | 2018/01/11 08:59 |

**1/11/2018 9:09:12 AM**
**C:\Users\cbradley\Documents\EAST\Workspaces\15 606442.wsp**

PAR-VASO-0014172

Uᴺɪᴛᴇᴅ Sᴛᴀᴛᴇs Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

21971      7590      01/17/2018
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CALIFORNIA 94304-1050

| EXAMINER |
| --- |
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| 1675 | |

DATE MAILED: 01/17/2018

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
| --- | --- | --- | --- | --- |
| 15/606,442 | 05/26/2017 | Matthew Kenney | 47956-702.504 | 5729 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
| --- | --- | --- | --- | --- | --- | --- |
| REGULAR | UNDISCOUNTED | $960 | $0.00 | $0.00 | $960 | 04/17/2018 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

PAR-VASO-0014173

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:**  **Mail**  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax** (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

```
21971          7590          01/17/2018
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CALIFORNIA 94304-1050
```

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

|  |
|---|
| (Depositor's name) |
| (Signature) |
| (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/606,442 | 05/26/2017 | Matthew Kenney | 47956-702.504 | 5729 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| REGULAR | UNDISCOUNTED | $960 | $0.00 | $0.00 | $960 | 04/17/2018 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BRADLEY, CHRISTINA | 1675 | 514-010900 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and State OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

| 4a. The following fee(s) are submitted: | 4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)** |
|---|---|
| ☐ Issue Fee | ☐ A check is enclosed. |
| ☐ Publication Fee (No small entity discount permitted) | ☐ Payment by credit card. Form PTO-2038 is attached. |
| ☐ Advance Order - # of Copies _____ | ☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form). |

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____     Date _____

Typed or printed name _____    Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

PAR-VASO-0014174

Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇꜱ Pᴀᴛᴇɴᴛ ᴀɴᴅ Tʀᴀᴅᴇᴍᴀʀᴋ Oꜰꜰɪᴄᴇ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/606,442 | 05/26/2017 | Matthew Kenney | 47956-702.504 | 5729 |

21971          7590          01/17/2018

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CALIFORNIA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

DATE MAILED: 01/17/2018

Page 3 of 3

PAR-VASO-0014175

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 15/606,442 | Applicant(s) Kenney et al. | |
|---|---|---|---|
| | Examiner CHRISTINA MARCHETTI BRADLEY | Art Unit 1675 | AIA Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to <u>the amendment filed November 27, 2017</u> .
   - ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____ .

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____ ; the restriction requirement and election have been incorporated into this action.

3. ☑ The allowed claim(s) is/are <u>16-33</u> . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov**.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All    b) ☐ Some    *c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file areply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
   **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   - ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☐ Notice of References Cited (PTO-892)
2. ☑ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☐ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675

PAR-VASO-0014177

Application/Control Number:15/606,442                                                      Page2
Art Unit:1675

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first

inventor to file provisions of the AIA.


### *Reasons for Allowance*

The following is an examiner's statement of reasons for allowance:

The declaration under 37 CFR 1.130(a) filed November 27, 2017 is sufficient to overcome the

rejection of claims 16-33 based upon the FDA Label for Vasostrict®.

The rejection under 35 U.S.C. 112 is withdrawn in view of the amendment filed November 27,

2017.

The terminal disclaimers filed November 27, 2017 are sufficient to overcome all non-statutory

double patenting rejections relevant to this application.

The objection to the specification is withdrawn in view of the amendment filed November 27,

2017.


Any comments considered necessary by applicant must be submitted no later than the payment

of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such

submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to CHRISTINA MARCHETTI BRADLEY whose telephone number is (571)272-9044.  The

examiner can normally be reached on Monday - Friday, 5:30 am - 2 pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a

USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use

the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

PAR-VASO-0014178

Application/Control Number: 15/606,442                                    Page 3
Art Unit: 1675

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, James Alstrum-Acevedo can be reached on (571) 272-5548. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CHRISTINA BRADLEY/
Primary Examiner, Art Unit 1675

PAR-VASO-0014179

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | Application Number | 15606442 |
| | Filing Date | 05-26-2017 |
| | First Named Inventor | KENNEY; Matthew |
| | Art Unit | 1675 |
| | Examiner Name | BRADLEY, CHRISTINA |
| Sheet \| 1 \| of \| 5 | Attorney Docket Number | 47956-702.504 |

### U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 001 | US-9744209 | 08-29-2017 | KENNEY; Matthew et al. | |
| | 002 | US-9744239 | 08-29-2017 | KENNEY; Matthew et al. | |
| | 003 | US-9750785 | 09-05-2017 | KENNEY; Matthew et al. | |
| | 004 | US-20140171369 | 06-19-2014 | MOBERG; Kerstin Uvnäs et al. | |
| | 005 | US-20140329747 | 11-06-2014 | TIDMARSH; George et al. | |
| | 006 | US-20170290881-A1 | 10-12-2017 | KENNEY; Matthew et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3]Number[4]Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | None | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0014180

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | | | Complete if Known | |
|---|---|---|---|---|
| | | | Application Number | 15606442 |
| | | | Filing Date | 05-26-2017 |
| | | | First Named Inventor | KENNEY; Matthew |
| | | | Art Unit | 1675 |
| Sheet | 2 | of | 5 | Examiner Name | BRADLEY, CHRISTINA |
| | | | | Attorney Docket Number | 47956-702.504 |

### NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author(in CAPITAL LETTERS),title of the article(when appropriate), title of the item (book,magazine,journal,serial,symposium,catalog,etc.),date,page(s),volume-issue number(s),publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 001 | Buffers (downloaded from www.med.unc.edu/pharm/sondeklab/files/resource-files/protein-purification-handbooks/buffers_calbiochem.pdf, published 2006). | ☐ |
| | 002 | Co-pending US patent application No. US15/688,305, filed on 08-28-2017. | ☐ |
| | 003 | Co-pending US patent application No. US15/688,314, filed on 08-28-2017. | ☐ |
| | 004 | Co-pending US patent application No. US15/688,322, filed on 08-28-2017. | ☐ |
| | 005 | Co-pending US patent application No. US15/688,326, filed on 08-28-2017. | ☐ |
| | 006 | Co-pending US patent application No. US15/688,330, filed on 08-28-2017. | ☐ |
| | 007 | Co-pending US patent application No. US15/688,334, filed on 08-28-2017. | ☐ |
| | 008 | Co-pending US patent application No. US15/688,336, filed on 08-28-2017. | ☐ |
| | 009 | Co-pending US patent application No. US15/688,338, filed on 08-28-2017. | ☐ |
| | 010 | Co-pending US patent application No. US15/688,341, filed on 08-28-2017. | ☐ |
| | 011 | "Entry on acetic acid, preparatorychemistry.com/Bishop_weak_acid_Equilibrium.htm, downloaded 10/16/2017  (Year 2017)". | ☐ |
| | 012 | Notice of Allowance dated 07/11/2017 for US Application No. 14/717,877. | ☐ |
| | 013 | Notice of Allowance dated 07/11/2017 for US Application No. 15/426,693. | ☐ |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*if you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.*

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0014181

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | Application Number | 15606442 |
| | Filing Date | 05-26-2017 |
| | First Named Inventor | KENNEY; Matthew |
| | Art Unit | 1675 |
| | Examiner Name | BRADLEY, CHRISTINA |
| Sheet  3  of  5 | Attorney Docket Number | 47956-702.504 |

## NON-PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author(in CAPITAL LETTERS),title of the article(when appropriate), title of the item (book,magazine,journal,serial,symposium,catalog,etc.),date,page(s),volume-issue number(s),publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | 014 | Notice of Allowance dated 07/20/2017 for US Application No. 15/426,703. | ☐ |
| | 015 | Office Action dated 09/19/2017 for US Application No. 15/612,649. | ☐ |
| | 016 | Office Action dated 10/17/2017 for US Application No. 15/688,330. | ☐ |
| | 017 | "Office Action dated 10/27/2017 for U.S. Patent Application No. 15/688,305". | ☐ |
| | 018 | Office Action dated 10/27/2017 for U.S. Patent Application No. 15/688,314. | ☐ |
| | 019 | Office Action dated 10/27/2017 for U.S. Patent Application No. 15/688,322. | ☐ |
| | 020 | Office Action dated 10/27/2017 for U.S. Patent Application No. 15/688,326. | ☐ |
| | 021 | Office Action dated 10/27/2017 for U.S. Patent Application No. 15/688,336. | ☐ |
| | 022 | Office Action dated 10/30/2017 for U.S. Patent Application No. 15/688,334. | ☐ |
| | 023 | "Office Action dated 11/01/2017 for U.S. Patent Application No. 15/688,338". | ☐ |

| Examiner Signature | /CHRISTINA  BRADLEY/ | Date Considered | 01/11/2018 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. 1 Applicant's unique citation designation number (optional). 2 Applicant is to place a check mark here if English language Translation is attached. This collection of information is required by 37 CFR 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 (1-800-786-9199) and select option 2.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0014182

Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** (Use as many sheets as necessary) | | Application Number | 15606442 |
| | | Filing Date | 05-26-2017 |
| | | First Named Inventor | KENNEY; Matthew |
| | | Art Unit | 1675 |
| | | Examiner Name | BRADLEY, CHRISTINA |
| Sheet | 4 of 5 | Attorney Docket Number | 47956-702.504 |

## CERTIFICATION STATEMENT

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☒ Fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

## SIGNATURE

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Trisha Agrawal/ | Date (YYYY-MM-DD) | 2017-11-27 |
|---|---|---|---|
| Name/Print | Trisha Agrawal | Registration Number | 73,212 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0014183

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.B/

PAR-VASO-0014184

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/606,442 | Kenney et al. |
| | **Examiner** | **Art Unit** |
| | CHRISTINA MARCHETTI BRADLEY | 1675 |

**CPC**

| Symbol | | | | | Type | Version |
|---|---|---|---|---|---|---|
| A61K | / | 38 | / | 11 | F | 2013-01-01 |
| A61K | / | 31 | / | 045 | I | 2013-01-01 |
| A61K | / | 9 | / | 0019 | I | 2013-01-01 |
| A61K | / | 47 | / | 02 | I | 2013-01-01 |
| A61K | / | 47 | / | 26 | I | 2013-01-01 |
| A61K | / | 47 | / | 10 | I | 2013-01-01 |
| A61K | / | 47 | / | 12 | I | 2013-01-01 |
| A61K | / | 9 | / | 08 | I | 2013-01-01 |
| G01N | / | 30 | / | 74 | I | 2013-01-01 |
| G01N | / | 2030 | / | 8831 | A | 2013-01-01 |

**CPC Combination Sets**

| Symbol | | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|---|
| | / | | / | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 18 | |
| /CHRISTINA BRADLEY/<br>Primary Examiner, Art Unit 1675 | 11 January 2018 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | none |

U.S. Patent and Trademark Office

Part of Paper No.: 20180111

Page 1 of 3

PAR-VASO-0014185

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/606,442 | Kenney et al. |
| | **Examiner** | **Art Unit** |
| | CHRISTINA MARCHETTI BRADLEY | 1675 |

| INTERNATIONAL CLASSIFICATION | | | | | | |
|---|---|---|---|---|---|---|
| **CLAIMED** | | | | | | |
| A61K | | / | 38 | / | 11 | |

| NON-CLAIMED | | | | |
|---|---|---|---|---|
| | / | | / | |

| US ORIGINAL CLASSIFICATION | |
|---|---|
| **CLASS** | **SUBCLASS** |
| | |

| CROSS REFERENCES(S) | | | | | |
|---|---|---|---|---|---|
| **CLASS** | **SUBCLASS (ONE SUBCLASS PER BLOCK)** | | | | |
| | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 18 | |
| /CHRISTINA BRADLEY/ Primary Examiner, Art Unit 1675 | 11 January 2018 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | none |

U.S. Patent and Trademark Office

Part of Paper No.: 20180111

PAR-VASO-0014186

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 15/606,442 | Kenney et al. |
| | **Examiner** | **Art Unit** |
| | CHRISTINA MARCHETTI BRADLEY | 1675 |

| ☑ Claims renumbered in the same order as presented by applicant | ☐ CPA | ☑ T.D. | ☐ R.1.47 |
|---|---|---|---|

**CLAIMS**

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |

| NONE | | Total Claims Allowed: | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | **18** | |
| /CHRISTINA BRADLEY/ Primary Examiner, Art Unit 1675 | 11 January 2018 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | none |

U.S. Patent and Trademark Office

Part of Paper No.: 20180111

PAR-VASO-0014187

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# CORRECTED
# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 21971 | 7590 | 02/13/2018 |

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CALIFORNIA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

DATE MAILED: 02/13/2018

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/606,442 | 05/26/2017 | Matthew Kenney | 47956-702.504 | 5729 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| REGULAR | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 05/14/2018 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING
DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD
CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT
FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN
THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST
TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that
entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled
"Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity
fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office
(USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b"
of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a
request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing
the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail
Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance
fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

PAR-VASO-0014188

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** _Mail_  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or _Fax_ (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

21971        7590        02/13/2018
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CALIFORNIA 94304-1050

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/606,442 | 05/26/2017 | Matthew Kenney | 47956-702.504 | 5729 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| REGULAR | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 05/14/2018 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BRADLEY, CHRISTINA | 1675 | 514-010900 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)**

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                  (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☐ Corporation or other private group entity ☐ Government

**4a. The following fee(s) are submitted:**

☐ Issue Fee

☐ Publication Fee (No small entity discount permitted)

☐ Advance Order - # of Copies _____

**4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)**

☐ A check is enclosed.

☐ Payment by credit card. Form PTO-2038 is attached.

☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status (from status indicated above)**

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____        Date _____

Typed or printed name _____        Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.        OMB 0651-0033        U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

PAR-VASO-0014189

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/606,442 | 05/26/2017 | Matthew Kenney | 47956-702.504 | 5729 |

21971          7590          02/13/2018

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CALIFORNIA 94304-1050

| EXAMINER |
|---|
| BRADLEY, CHRISTINA |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1675 | |

DATE MAILED: 02/13/2018

PTOL-85 (Rev. 02/11)

PAR-VASO-0014190

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b) (2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PAR-VASO-0014191

## Corrected Notice of Allowance - Correction of Issue Fee Amount

Due to a technical problem, the Notice of Allowance and Fee(s) Due mailed in this application displayed an incorrect fee amount (the pre-January 16, 2018 amount).  A Corrected Notice of Allowance is attached which contains the correct fee due amount.  The time period for payment of the Issue Fee set forth in the previous Notice of Allowance and Fee(s) Due is being restarted to run THREE MONTHS from the "DATE MAILED" of the attached Corrected Notice of Allowance.  Failure to timely comply will result in ABANDONMENT of this application.  THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.

Corrected Notices of Allowance are being mailed only to those applicants who have not replied to the previous Notice of Allowance.  For those situations in which applicant's reply was not processed before the Corrected Notice of Allowance was mailed (e.g., the reply crossed in the mail with the Corrected Notice), applicant's reply will be processed as a response to the previous Notice of Allowance.  However, since the Corrected Notice of Allowance sets forth a time period for reply, applicant will still need to file a response to the Corrected Notice of Allowance.  Preferably, such a response would include a completed PTOL-85 Part B to assist the Office's processing of the information that will be printed on the patent.  Applicant may also include an explanatory cover letter.

For questions regarding Issue Fee amount calculation, please contact the Application Assistance Unit at 888-786-0101 or HelpAAU@uspto.gov .

For assistance with PAIR or EFS-Web, please contact the Patent EBC at 1-866-217-9197 or ebc@uspto.gov .

PAR-VASO-0014192

PTO/SB/25

**Doc Code: DIST.E.FILE**
**Document Description: Electronic Terminal Disclaimer - Filed**

U.S. Patent and Trademark Office
Department of Commerce

| Electronic Petition Request | **TERMINAL DISCLAIMER TO OBVIATE A PROVISIONAL DOUBLE PATENTING REJECTION OVER A PENDING "REFERENCE" APPLICATION** |
|---|---|
| Application Number | 15606442 |
| Filing Date | 26-May-2017 |
| First Named Inventor | Matthew Kenney |
| Attorney Docket Number | 47956-702.504 |
| Title of Invention | VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION |

☒ Filing of terminal disclaimer does not obviate requirement for response under 37 CFR 1.111 to outstanding Office Action

☒ This electronic Terminal Disclaimer is not being used for a Joint Research Agreement.

| Owner | Percent Interest |
|---|---|
| Par Pharmaceutical, Inc. | 100% |

The owner(s) of percent interest listed above in the instant application hereby disclaims, except as provided below, the terminal part of the statutory term of any patent granted on the instant application which would extend beyond the expiration date of the full statutory term of any patent granted on pending reference Application Number(s)

15864593    filed on  01/08/2018

15864597    filed on  01/08/2018

as the term of any patent granted on said reference application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference application. The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and any patent granted on the reference application are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns.

In making the above disclaimer, the owner does not disclaim the terminal part of any patent granted on the instant application that would extend to the expiration date of the full statutory term of any patent granted on said reference application, "as the term of any patent granted on said reference application may be shortened by any terminal disclaimer filed prior to the grant of any patent on the pending reference application," in the event that any such patent granted on the pending reference application: expires for failure to pay a maintenance fee, is held unenforceable, is found invalid by a court of competent jurisdiction, is statutorily disclaimed in whole or terminally disclaimed under 37 CFR 1.321, has all claims canceled by a reexamination certificate, is reissued, or is in any manner terminated prior to the expiration of its full statutory term as shortened by any terminal disclaimer filed prior to its grant.

◉ Terminal disclaimer fee under 37 CFR 1.20(d) is included with Electronic Terminal Disclaimer request.

PAR-VASO-0014193

○    I certify, in accordance with 37 CFR 1.4(d)(4), that the terminal disclaimer fee under 37 CFR 1.20(d) required for this terminal disclaimer has already been paid in the above-identified application.

Applicant claims the following fee status:

○    Small Entity

○    Micro Entity

◉    Regular Undiscounted

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

THIS PORTION MUST BE COMPLETED BY THE SIGNATORY OR SIGNATORIES

I certify, in accordance with 37 CFR 1.4(d)(4) that I am:

◉    An attorney or agent registered to practice before the Patent and Trademark Office who is of record in this application

     Registration Number   73212

○    A sole inventor

○    A joint inventor; I certify that I am authorized to sign this submission on behalf of all of the inventors as evidenced by the power of attorney in the application

○    A joint inventor; all of whom are signing this request

| Signature | /Trisha Agrawal/ |
|-----------|------------------|
| Name | Trisha Agrawal |

*Statement under 37 CFR 3.73(b) is required if terminal disclaimer is signed by the assignee (owner).
Form PTO/SB/96 may be used for making this certification. See MPEP § 324.

PAR-VASO-0014194

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 15606442 |
| **Filing Date:** | 26-May-2017 |
| **Title of Invention:** | VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION |
| **First Named Inventor/Applicant Name:** | Matthew Kenney |
| **Filer:** | Trisha Agrawal |
| **Attorney Docket Number:** | 47956-702.504 |

Filed as Large Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| STATUTORY OR TERMINAL DISCLAIMER | 1814 | 1 | 160 | 160 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |

PAR-VASO-0014195

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **160** |

Doc Code: DISQ.E.FILE
Document Description: Electronic Terminal Disclaimer – Approved

Application No.:  15606442

Filing Date:       26-May-2017

Applicant/Patent under Reexamination:       Kenney

Electronic Terminal Disclaimer filed on      February 21, 2018

☒       APPROVED

          **This patent is subject to a terminal disclaimer**

☐       DISAPPROVED

Approved/Disapproved by:  Electronic Terminal Disclaimer automatically approved by EFS-Web

U.S. Patent and Trademark Office

PAR-VASO-0014197

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 31848514 |
| **Application Number:** | 15606442 |
| **International Application Number:** | |
| **Confirmation Number:** | 5729 |
| **Title of Invention:** | VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION |
| **First Named Inventor/Applicant Name:** | Matthew  Kenney |
| **Customer Number:** | 21971 |
| **Filer:** | Trisha Agrawal |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 47956-702.504 |
| **Receipt Date:** | 21-FEB-2018 |
| **Filing Date:** | 26-MAY-2017 |
| **Time Stamp:** | 15:23:05 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $160 |
| RAM confirmation Number | 022218INTEFSW00001953232415 |
| Deposit Account | 232415 |
| Authorized User | Trisha Agrawal |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     37 CFR 1.16 (National application filing, search, and examination fees) | |
|     37 CFR 1.17 (Patent application and reexamination processing fees) | |

PAR-VASO-0014198

37 CFR 1.19 (Document supply fees)

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Terminal Disclaimer-Filed (Electronic) | eTerminal-Disclaimer.pdf | 36589<br>761947acb6535553c8981aadebda8bb1c9f faa26 | no | 2 |

| Warnings: |
|---|

| Information: |
|---|

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30069<br>a754db7d924b44396f590037f97792f2ef6 cf39 | no | 2 |

| Warnings: |
|---|

| Information: |
|---|

| | Total Files Size (in bytes): | 66658 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PAR-VASO-0014199

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to: _Mail_**  Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or _Fax_ (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| | | |
|---|---|---|
| 21971 | 7590 | 02/13/2018 |

WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CALIFORNIA 94304-1050

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/606,442 | 05/26/2017 | Matthew Kenney | 47956-702.504 | 5729 |

TITLE OF INVENTION: VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| REGULAR | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 05/14/2018 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| BRADLEY, CHRISTINA | 1675 | 514-010900 |

| 1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363). | 2. For printing on the patent front page, list | 1 _Wilson Sonsini Goodrich & Rosati_ |
|---|---|---|
| ☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached. | (1) The names of up to 3 registered patent attorneys or agents OR, alternatively, | 2 _____ |
| ☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.** | (2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed. | 3 _____ |

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY AND STATE OR COUNTRY)

PAR PHARMACEUTICAL, INC.           CHESTNUT RIDGE, NEW YORK

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

| 4a. The following fee(s) are submitted: | 4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)** |
|---|---|
| ☒ Issue Fee | ☐ A check is enclosed. |
| ☐ Publication Fee (No small entity discount permitted) | ☐ Payment by credit card. Form PTO-2038 is attached. |
| ☐ Advance Order - # of Copies _____ | ☒ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _232415_ (enclose an extra copy of this form). |

5. **Change in Entity Status** (from status indicated above)
☐ Applicant certifying micro entity status. See 37 CFR 1.29
☐ Applicant asserting small entity status. See 37 CFR 1.27
☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

| Authorized Signature | _/Trisha Agrawal/_ | Date | _02-21-2018_ |
|---|---|---|---|
| Typed or printed name | Trisha Agrawal | Registration No. | 73,212 |

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.     OMB 0651-0033     U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

PAR-VASO-0014200

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 15606442 |
| **Filing Date:** | 26-May-2017 |
| **Title of Invention:** | VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION |
| **First Named Inventor/Applicant Name:** | Matthew Kenney |
| **Filer:** | Trisha Agrawal/Roseann Gallo |
| **Attorney Docket Number:** | 47956-702.504 |

Filed as Large Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 1501 | 1 | 1000 | 1000 |

PAR-VASO-0014201

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| **Total in USD ($)** | | | | **1000** |

PAR-VASO-0014202

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 31850374 |
| **Application Number:** | 15606442 |
| **International Application Number:** | |
| **Confirmation Number:** | 5729 |
| **Title of Invention:** | VASOPRESSIN FORMULATIONS FOR USE IN TREATMENT OF HYPOTENSION |
| **First Named Inventor/Applicant Name:** | Matthew Kenney |
| **Customer Number:** | 21971 |
| **Filer:** | Trisha Agrawal |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 47956-702.504 |
| **Receipt Date:** | 21-FEB-2018 |
| **Filing Date:** | 26-MAY-2017 |
| **Time Stamp:** | 16:27:18 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $1000 |
| RAM confirmation Number | 022218INTEFSW00003412232415 |
| Deposit Account | 232415 |
| Authorized User | Trisha Agrawal |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| 37 CFR 1.16 (National application filing, search, and examination fees) | |
| 37 CFR 1.17 (Patent application and reexamination processing fees) | |

PAR-VASO-0014203

37 CFR 1.19 (Document supply fees)

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Issue Fee Payment (PTO-85B) | PAR_47956_702_504_IFTransmittal.pdf | 197078<br><br>ae1a1876f33fc590cb0d1cadeb7058c11f479908 | no | 1 |

Warnings:

Information:

| 2 | Fee Worksheet (SB06) | fee-info.pdf | 29846<br><br>5bc0cbf9d33fafaf33ba6aa49db9d76fd528f10b | no | 2 |

Warnings:

Information:

| Total Files Size (in bytes): | 226924 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.
**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.
**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PAR-VASO-0014204

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 15/606,442 | 04/10/2018 | 9937223 | 47956-702.504 | 5729 |

21971        7590        03/21/2018
WILSON, SONSINI, GOODRICH & ROSATI
650 PAGE MILL ROAD
PALO ALTO, CA 94304-1050

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

### Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Matthew Kenney, New Haven, MI;
Par Pharmaceutical, Inc., Chestnut Ridge, NY;
Vinayagam Kannan, Rochester, MI;
Sunil Vandse, Basking Ridge, NJ;
Suketu Sanghvi, Kendall Park, NJ;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

PAR-VASO-0014205