IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PAR PHARMACEUTICAL, INC., PAR STERILE PRODUCTS, LLC, and ENDO PAR INNOVATION COMPANY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> AMNEAL PHARMACEUTICALS OF NEW YORK, LLC, et al., <br><br> Defendants. | C.A. No. 18-2032-CFC-CJB (Consolidated) <br><br> **REDACTED - PUBLIC VERSION** |

### DEFENDANTS' LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM ANNE SHEA GAZA

Dated:  December 28, 2020
Redacted: January 4, 2021

OF COUNSEL:

Huiya Wu
Linnea Cipriano
Tiffany Mahmood
Jacqueline Genovese Bova
Grace Peace Truong
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212.813.8800
hwu@goodwinlaw.com
lcipriano@goodwinlaw.com
tmahmood@goodwinlaw.com
jbova@goodwinlaw.com
gtruong@goodwinlaw.com

John T. Bennett
Shaobo Zhu
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
302-571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendants*

617.570.8712
jbennett@goodwinlaw.com
szhu@goodwinlaw.com

27529267.1

Dear Magistrate Judge Burke:

The Amneal defendants request that the Court strike certain new and untimely opinions from the Supplemental Opening Expert Report of Lee E. Kirsch, served by Plaintiffs Par on December 2, 2020 (Ex. A, the "Supp. Kirsch Report"). As a result of recent developments— ▬▬▬▬▬▬▬▬▬▬▬▬▬—the parties agreed that Dr. Kirsch may serve limited supplemental infringement opinions. The Supp. Kirsch Report, however, goes beyond the agreed-upon scope of supplementation: Dr. Kirsch offered new opinions on claim construction and added a new infringement analysis that differs from his previously-disclosed infringement theories. With expert discovery complete and trial only two weeks away, Dr. Kirsch's new and different opinions should be stricken.

**Background**



Amneal produced the ▬▬▬▬ to Par that same day. *Id.* The parties then agreed to a framework—memorialized in a Stipulation and Order Narrowing the Issues to be Asserted at Trial, filed November 17, 2020 ("Nov. 17 Stipulation")—for maintaining the existing trial date while allowing Par's experts to address ▬▬▬▬▬▬. *Id.* Based on that understanding, Amneal agreed to forego certain defenses to infringement. *Id.*

Specifically, under the Nov. 17 Stipulation, Amneal would "not dispute that the proposed ANDA products that are accused of infringement in this case . . . meet all limitations of [the asserted claims] except for the limitation in each independent claim 'wherein the unit dosage form has a pH of 3.7-3.9.'" *Id.* at ¶ 1. The Nov. 17 Stipulation further allowed "Par to serve supplemental reports *responsive to* Amneal's submission of ▬▬▬▬▬." *Id.* at ¶ 3 (emphasis added). Nothing in the parties' correspondence regarding Amneal's ▬▬▬▬ or the Nov. 17 Stipulation suggested that Par could make other, more general supplements to Dr. Kirsch's infringement report. *See* Ex. B (Nov. 10, 2020 email from R. Rhoad and attachment).

On December 2, 2020, Par served the Supp. Kirsch Report, which contained new claim construction opinions based on intrinsic and extrinsic evidence and new calculations and opinions ▬▬▬▬▬ neither of which were in Kirsch's opening report. Accordingly, Amneal seeks to strike certain portions of the Supp. Kirsch Report as untimely and going beyond what the Nov. 17 Stipulation permitted, *i.e.*, as not responsive to Amneal's ▬▬▬▬.

**Argument**

Dr. Kirsch's new opinions should be stricken because they violate the agreed-upon scope of permissible supplementation and because the *Pennypack* factors weigh in favor of exclusion.

First, in contrast to the conclusory claim construction statements in Dr. Kirsch's opening report, the Supp. Kirsch Report raises, for the first time, opinions discussing a person of ordinary skill in the art's ("POSA") understanding of the pH limitation in the asserted claims in view of

intrinsic and extrinsic evidence. *See* Supp. Kirsch Report at ¶¶ 6-11. These new opinions clearly are not "responsive" to Amneal's ██████████. Indeed, Dr. Kirsch never discussed or cited any documents from Amneal's ██████████ to support these new opinions. For good reason—the claim construction inquiry should assess how a POSA would understand claim terms based on the language in the patent claims, specification, and other intrinsic evidence, and Amneal's ██████████ have no relevance to that analysis. *See Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 677-78 (Fed. Cir. 2015) (reiterating that "[c]laim terms are generally given their plain and ordinary meanings to one of skill in the art when read in the context of the specification and prosecution history" and discounting extrinsic evidence that is not contemporaneous with the patent-in-suit). The agreed-upon supplementation to his report, which was to be narrow and directed solely to ██████████, does not allow a redo of Dr. Kirsch's entire opening report, particularly not for claim construction opinions that should have been included in his opening report, if at all. Par has known since at least December 2019, when the parties exchanged proposed constructions, of the claim construction issues on which Dr. Kirsch now seeks to opine. The parties submitted briefing on this term, and the Court construed the pH limitations to have an ordinary meaning, reserving for trial resolution of what that ordinary meaning is after "hearing from the experts." Ex. C (Apr. 29, 2020 Claim Constr. Tr.) at 8:7-12. Despite the Court's instruction, Dr. Kirsch offered no detailed opinions on the scope of the pH limitations in his opening report. Moreover, construing claim scope is the first step of the well-established two-step infringement analysis, so Par should have known that establishing claim scope was necessary for showing infringement and Dr. Kirsch had all information necessary to offer such an opinion available to him at the time his initial report was submitted. Apparently, realizing the oversight in his opening report, Dr. Kirsch offered in his supplemental report new opinions on the ordinary meaning of the pH term. This supplementation is not responsive to ██████████, however, and should be stricken.

      Second, in the Supp. Kirsch Report, Dr. Kirsch for the first time performed a statistical analysis purportedly calculating ██████████████████████ ██████████████████████████. *See, e.g.*, Supp. Kirsch Report at ¶¶ 24-25, 27-31, 33-41. However, Dr. Kirsch only opined in his opening report that Amneal's ██████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████. Without ever even mentioning ████████ in his opening report, Dr. Kirsch purportedly arrived at his infringement conclusion by considering the likelihood that █ ████████████████████████████████████████████████. *Id.* The new analysis in the Supp. Kirsch Report adding a calculation ██████████████████ ██████████████████████ should have been disclosed in Dr. Kirsch's opening report, if at all. Ex. E (Kirsch Dep. Tr.) at 163:4-20, 165:3-12. Notably, it is undisputed that Dr. Kirsch used only the stability data he relied on in his opening report to render his newfound opinions █████ ██████████████████████. *See id.* at 178:13-179:23. This stability data was produced to Par months before the parties served opening expert reports. Accordingly, paragraphs 24-25, 27-31 and 33-41 of the Supp. Kirsch Report setting forth Dr. Kirsch's analysis pertaining ██████ should be stricken as untimely and beyond the scope of the agreed-upon supplementation.

      Third, the Supp. Kirsch Report improperly includes other opinions in response to the rebuttal reports of Amneal's experts, which are similarly unrelated to Amneal's ██████████.

*See, e.g.*, Supp. Kirsch Report at ¶¶ 5-18, 20-21, 23-25. These paragraphs constitute pure rebuttal of Amneal's experts, not opinions addressing ▮▮▮▮▮▮▮▮▮▮, and as such are not permitted by the Scheduling Order entered in this case, which permitted only two rounds of expert reports and stated that "no other expert reports will be permitted without either the consent of all parties or leave of the Court." D.I. 47.

The factors in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), all weigh in favor of excluding these opinions. First, Amneal was surprised by Dr. Kirsch's new opinions, which were not in prior expert reports or Par's infringement contentions and are non-responsive to ▮▮▮▮▮▮▮▮▮▮.

Second, the late assertion of the new opinions prejudices Amneal because it cannot fully respond and there is no time to cure the prejudice before trial. Rather than being "responsive to Amneal's submission of ▮▮▮▮▮▮▮▮▮▮" as the parties agreed in the Nov. 17 Stipulation, Dr. Kirsch's new opinions respond to other developments in the case such as non-infringement rebuttals offered by Amneal's experts. This is particularly prejudicial to Amneal because its agreement to the Nov. 17 Stipulation was based in part on its understanding that the scope of any expert report supplementation would be limited. Amneal even agreed to forego certain defenses to infringement based on that understanding. In view of this understanding and expectation, permitting Dr. Kirsch's new opinions to stand would prejudice Amneal by allowing Par a second bite at the apple when Amneal never had the opportunity and time to fully reply to Dr. Kirsch's newly-raised opinions. At best, these new opinions in the Supp. Kirsch Report are an unauthorized reply expert report and thus should be stricken.

Third, the fact that Dr. Kirsch could have offered the same opinions in his original reports suggests a lack of diligence, if not willfulness, by Par. Nothing prevented Dr. Kirsch from raising these opinions in his original report, so the only possible inference is that he chose not to do so. As the Court has held, such an intentional decision, which a party later regrets, is not cause to permit a belated change of heart. *See St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, C.A. No. 04-1436-LPS, 2012 WL 1015993, at *6 (D. Del. Mar. 26, 2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013) ("A strategic mistake does not equate to a showing of good cause under Rule 16.").

Fourth, for the same reasons above, allowing the new opinions would necessarily impact the chances of an orderly and efficient trial. And fifth, the new Kirsch opinions are not important to Par's case—otherwise they would have been included in Dr. Kirsch's original report—and Par can still rely on Dr. Kirsch's original opinions. *Pharmacyclics LLC v. Fresenius Kabi USA, LLC*, C.A. No. 18-192-472-CFC-CJB, D.I. 472 (D. Del. Sept. 4, 2020) (striking expert opinion because it was not included in opening report, was surprising and prejudicial, and left party without the opportunity to investigate with only weeks before trial).

Accordingly, Amneal requests the Court strike the new and untimely opinions contained in paragraphs 5-18, 20-21, 23-25, 27-31, and 33-41 of the Supp. Kirsch Report because they are untimely, beyond the scope of the parties' agreement and the Court's Order on the limited supplementation permitted to address ▮▮▮▮▮▮▮▮▮▮, and fail to satisfy the *Pennypack* factors.

3

                                              Respectfully,

                                              */s/ Anne Shea Gaza*

                                              Anne Shea Gaza (No. 4093)

cc:   All Counsel of Record (via electronic mail & CM/ECF)

# EXHIBITS A – E REDACTED IN THEIR ENTIRETY