**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PAR PHARMACEUTICAL, INC.,
PAR STERILE PRODUCTS, LLC, and
ENDO PAR INNOVATION COMPANY, LLC,

        Plaintiffs,
        v.

AMNEAL PHARMACEUTICALS OF NEW
YORK, LLC, et al.

        Defendants.

C.A. No.: 18-cv-2032-CFC-CJB
(Consolidated)

**FILED UNDER SEAL**

**PLAINTIFFS' RESPONSE TO DEFENDANTS' DECEMBER 28, 2020 LETTER**

Dated: December 31, 2020

Of Counsel:

Robert D. Rhoad
DECHERT LLP
102 Carnegie Center, Suite #104
Princeton, NJ 08540
Tel: (609) 955-3200

Johnathan D.J. Loeb, Ph.D.
DECHERT LLP
2400 W. El Camino Real, Suite 700
Mountain View, CA 94040-1499
Tel: (650) 813-4995

Blake B. Greene
DECHERT LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
Tel: (512) 394-3000
blake.greene@dechert.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Martin J. Black
Sharon K. Gagliardi
Brian M. Goldberg
Joseph J. Gribbin (Bar No. 5677)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Tel: (215) 994-4000

*Attorneys for Plaintiffs Par Pharmaceutical,*
*Inc., Par Sterile Products, LLC, and Endo*
*Par Innovation Company, LLC*

Dear Judge Burke:

Amneal's letter fails to mention the most important fact relevant to its motion—that Amneal ████████████ in critical ways that materially altered the infringement analysis six weeks *after* Par had served its expert infringement reports and the day before its own expert reports were due.  *See* Amneal Ex. B (11/3 Email)████████████).
Amneal's motion, which seeks to prevent Par from having its expert fully address Amneal's current ANDA products, has no merit and should be denied.

**Background**

████████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████.  Par served its infringement report on September 11, 2020, addressing the ANDA specifications as they stood at that time.  The day before Amneal's rebuttal reports were due, however, █████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████.  The entire
████████████████████ which would have taken Amneal months to prepare, had been cloaked in privilege and sprung on Par as a last minute pretrial surprise.

The effect of Amneal's █████████████████████ and render Dr. Kirsch's infringement opinions moot.  In Hatch-Waxman cases, "if a product that an ANDA application is asking the FDA to approve for sale falls within the scope of an issued patent, a judgment of infringement must necessarily ensue."  *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1278 (Fed. Cir. 2013).  Accordingly, what the generic "has asked the FDA to approve as a regulatory matter is the subject matter that determines whether infringement will occur." *Id.* at 1279.  When Dr. Kirsch submitted his report,███████████████████████
███████████████████████████████████████████████
Dr. Kirsch opined that Amneal infringed because Amneal's stability data demonstrated that if it manufactured commercial batches at the upper end of its pH specs—██████████████—
then it was likely that products sold would have a pH within the claimed range.████████
████████████████████████████████████████.  Thus, Amneal
is no longer seeking FDA approval to sell the products that Dr. Kirsch had analyzed for infringement, and ██████████████ necessitated extensive additional fact discovery and a re-opening of expert discovery with the trial just 10 weeks away.  To avoid a delay, Par proposed to bifurcate the Amneal infringement case and try validity, as scheduled, in the consolidated January 11 trial with Eagle Pharmaceuticals.  Amneal wanted to move forward and offered to stipulate to infringement of all limitations other than pH to preserve the trial date.  Par reluctantly agreed and moved mountains to take additional fact discovery and re-do its infringement reports to address Amneal's ███████████.  The parties entered into a stipulation authorizing a supplemental report from Dr. Kirsch, and giving Amneal the right to have its experts respond to "any new opinions" in his report at the time of the depositions.  D.I. 234, ¶¶ 3, 4.

**Amneal's Objections to the Report are Unfounded**

Amneal argues that Dr. Kirsch's opinions should be stricken because he included new opinions in his report. That argument fails for at least two reasons.

First, Dr. Kirsch was entitled to include "new" opinions in his report; that is the purpose of a supplemental report, which was necessitated by Amneal's ██████████████. Amneal is no longer seeking approval to sell the products Dr. Kirsch opined would be infringing (those manufactured at the upper end of the pH specification as it existed at the time of his report), and he updated his report to address the ████████ ANDA products as they now stand. Par has every right to respond to the ████████████████████████████████████ as it sees fit, and would have done so at the time of initial reports had Amneal not timed ████████ to post-date the report. Indeed, the parties' stipulation expressly contemplates that any supplemental reports would include new opinions: "Amneal's expert may address during their deposition *any new opinions* set forth" in any supplement infringement report. D.I. 234, ¶ 4. There are no restrictions on the scope of Dr. Kirsch's opinions regarding Amneal's ████████████.

Second, Dr. Kirsch's supplemental report presents no new infringement theory, such as doctrine of equivalents, new lab tests, or anything remarkable. He simply refined his original analysis to address ████████████████████████████████████████. Amneal objects that Dr. Kirsch calculated a specific number of vials per commercial batch that would likely infringe, and that he refers to individual "vials" that would infringe. However, neither concept is new, much less a justification to upend the stipulation and strike portions of the report. Dr. Kirsch's original and supplemental reports both include statistical analyses based on the prediction intervals associated with the pH data for Amneal's exhibit batches, and use Excel's "NORMDIST" function to illustrate that a batch produced with a mean pH near the upper limit of Amneal's release pH specification would likely result in a significant number of products within that batch that would fall within the claimed pH range. *Compare* Amneal Ex. D. ¶ 60 (and ¶¶ 49-60) *with* Amneal Ex. A. ¶¶ 38-41 (and ¶¶ 27-41); *see also* Amneal Ex. E, at 241:14-243:11; 244:12-249:8. In the supplemental report, Dr. Kirsch updated that analysis to account for Amneal's ████████ ████████████████████ and expressed that likelihood by way of a specific number of individual finished products (vials) in each batch that would be expected to infringe, rather than as a percentage. That is a distinction without a difference. The same is true for his use of the term "vials"—it is undisputed that the "Products" that Amneal will sell are individual vials, and that it is the use of those individual vials that infringes Par's patents (claims recite administration of a "unit dosage form"). Dr. Kirsch's original report ubiquitously referred to the infringing products as "Amneal's ANDA Products"—i.e., the products/vials that Amneal will sell. Amneal's argument that this is somehow new is misguided.

Nor is Dr. Kirsch's opinion that the ordinary meaning of the claim limitation reciting a pH of "3.7 – 3.9" takes into account ordinary rounding a new opinion. The Court ordered that the limitation be given its ordinary meaning. D.I. 105. Even Amneal's experts agree that in the pharmaceutical industry, statements of ranges include numbers rounded to the number of significant digits set forth in the stated range—indeed, one of those experts described this rounding as "standard practice in the industry" that "ha[s] to be followed," and that "everyone that's ever performed a laboratory analysis knows the rounding rules." Ex. 2 (Gupta Tr.) at 141:14-144:12. *See also* Ex. 3 (Winter Tr.) at 74:25-77:22; Ex. 4 (USP-NF), § 7.20. Thus, the ordinary meaning of a pH of "3.7 – 3.9" indisputably encompasses pH values that would be

reported, with rounding, as 3.7, 3.8 or 3.9.  Accordingly, Dr. Kirsch's infringement opinions were, are, and always have been based on his understanding and opinion that the claims encompass pH values as low as 3.65, which would be reported in accordance with industry standards as 3.7.  *See* Amneal Ex. D (Kirsch Op. Rep.), ¶¶ 56, 60, 65; Amneal Ex. E, at 236:6-241:7.  The paragraphs Amneal seeks to strike are ones in which he responds to arguments that Dr. Winter, one of Amneal's experts, raised in his rebuttal non-infringement report, asserting that the industry-standard ordinary meaning does not apply to the claims.  Amneal's motion to strike those paragraphs is misguided for numerous reasons.  First, Dr. Winter's opinion is inconsistent with the Court's claim construction.  Second, Dr. Winter applied a different construction in his opening validity report, where he opined that pH values for prior art formulations reported as "3.7" were within the scope of the claims, without analyzing whether they were values below 3.70… and rounded up, or above 3.70… and rounded down—a position contrary to the one he takes for purposes of non-infringement.  Third, Dr. Winter only raised the arguments to which Dr. Kirsch replied in the second round of expert reports.  If, as Amneal asserts, Dr. Kirsch somehow waived the right to cite evidence supporting the ordinary meaning of "3.7 – 3.9" by not citing it in the opening round of reports, then so did Dr. Winter by not citing it in his opening report.  If Dr. Winter had raised it in the opening round of reports, Dr. Kirsch would have responded in the second round.  Par should be able to respond to Dr. Winter's late-disclosed claim construction opinions that apply a non-ordinary meaning in violation of the Court's order.

Finally, Amneal faults Dr. Kirsch for including replies to certain points made by Amneal's experts in their non-infringement reports, but that actually benefited Amneal.  Amneal cannot seriously contend that because the Court's schedule did not include a round of reply reports that Dr. Kirsch would have been barred from replying to the points Amneal's experts made.  By including them in his supplemental report, Amneal had advance notice of Dr. Kirsch's opinions in that regard, rather than learning about them for the first time at his deposition.

## 2.   The *Pennypack* Factors Weigh Against Striking Dr. Kirsch's Opinions

There is no basis for applying the *Pennypack* factors here because the Kirsch report was served in compliance with the Court-ordered stipulation, as it is indisputably directed to the new ANDA products created by Amneal's ███████.  But if the Court were to analyze the dispute under *Pennypack*, the relevant factors weight against striking Dr. Kirsch's opinions.  First, Amneal was not prejudiced or surprised by the opinions—indeed, Amneal did not raise any objections until after Par had deposed Amneal's experts about their rebuttals to Dr. Kirsch's report.  It was only after Amneal understood that its last-ditch effort to escape infringement had failed that Amneal decided to complain.  Second, any prejudice was cured by the depositions and opportunity for its experts to respond.  Third, any disruption was caused by Amneal's strategically-timed ███████, and while difficult for Par, the disruption has been addressed, the pretrial order has been filed, and the parties are ready for trial.  Fourth, Amneal's assertion that Par has acted in bad faith is an outrage.  Had Amneal made ███████ before Dr. Kirsh's original report, he would have put his current opinions in the original report.  To use the ███████ as an excuse to accuse Par of bad faith is unconscionable.  Finally, and most importantly, Par's evidence regarding infringement by Amneal's new ANDA products is obviously critical to Par's case, and in view of the ███████ on the eve of trial, striking Dr. Kirsch's opinions would be a gross violation of due process.

For all of these reasons, there is no basis to strike any of Dr. Kirsch's opinions.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (Via E-Mail)