# EXHIBIT A

# Kwon, Sam

| | |
|---|---|
| **From:** | Parrado, Alvaro |
| **Sent:** | Sunday, June 20, 2021 5:54 PM |
| **To:** | 'Goldberg, Brian'; 'ALL NA Endo Vasopressin'; 'Hildreth, Nancy'; 'EXT Michael Farnan'; 'EXT Brian Farnan' |
| **Cc:** | *bpalapura@potteranderson.com; *dmoore@Potteranderson.com1; #EagleVasopressinLitigation |
| **Subject:** | Par Sterile Products, LLC, et al. v. Eagle Pharmaceuticals, Inc., C.A. No. 18-823-CFC (D. Del.) |
| **Attachments:** | 2021.06.20 - Eagle's Updated Trial Exhibit List.XLSX; 2021.06.20 Revised - Eagle Deposition Designations.XLSX; 2021.06.20 Revised - Ex. 3 Eagle's Statement of Issues of Fact.pdf; 2021.06.20 Revised - Ex. 3 Eagle's Statement of Issues of Fact (Redline).pdf; 2021.06.20 Revised - Par v Eagle PTO Shell.DOCX; 2021.06.20 Revised - Par v Eagle PTO Shell (Redline).DOCX; DTX-993.pdf |

Counsel,

Attached are Eagle's revised Statement of Facts, exhibit list and deposition designations, and proposed edits to the PTO body, to reflect developments since the trial was postponed in January. Also attached is a revised summary exhibit of pH measurements to account for additional data since DTX-746. Please let us know if Par agrees with the proposed changes to the PTO body, and provide any proposed amended PTO sections that Par intends to include in the revised PTO.

Regards,

**Alvaro R. Parrado**
Senior Legal Assistant

**KIRKLAND & ELLIS LLP**

alvaro.parrado@kirkland.com

EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAR PHARMACEUTICAL, INC., PAR STERILE PRODUCTS, LLC, and ENDO PAR INNOVATION COMPANY, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> EAGLE PHARMACEUTICALS INC., <br><br> Defendant. | C.A. No. 18-823-CFC <br><br> **CONFIDENTIAL** |

## DEFENDANT'S STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED

199. At least one commercial batch of Original Vasostrict® was found to have a pH of 3.7 at release. This result was within specification for Original Vasostrict®. At that time, this lot of Original Vasostrict® met or bettered each impurity limitation of the asserted claims of the Patents-in-Suit.

200. Sales records belatedly produced by Par demonstrate that numerous commercial batches of Original Vasostrict® were on sale and in public use with a pH of 3.6 and impurities that met or bettered the limitations of the asserted claims of the Patents-in-Suit within shelf life, including at least lots 788442, 788432, 788433, 788435, and 802171. To the extent any such commercial batch of Original Vasostrict® drifted to pH 3.7 within shelf life, that prior art product would have satisfied the elements of the asserted claims of the Patents-in-Suit.

~~246.~~201. Applying Par's recently disclosed variability theory for infringement, any batch of Original Vasostrict® at pH 3.6 necessarily included vials at pH 3.7.

~~247.~~ ███████████████████████████████████████
████████████████████████

~~248.~~202. The ~~degradation requirement of the '526 patent, and the~~ impurity requirements of the '209 and '785 patents, are merely inherent results of the claimed formulations.

~~249.~~ 203.     Original Vasostrict®, according to its prescribing information, including at least the September 2014 Vasostrict® Label and March 2015 Vasostrict® Label, was sold and used to treat hypotension at a dose of between 0.01 and 0.07 units/minute.

~~250.~~ 204.     Therefore, to the extent that Eagle's ANDA product will infringe any asserted claim of the Patents-in-Suit, that claim is invalid as anticipated by Original Vasostrict®.

**B.    All Asserted Claims Are Obvious Over Original Vasostrict® With Its Prescribing Information**

~~251.~~ 205.     To the extent that any asserted claim of the Patents-in-Suit is not anticipated by Original Vasostrict®, it would have been obvious over Original Vasostrict®.

206.     The pH limitations were at the very least obvious because pH optimization was a standard part of any formulation development process, and Par's own expert has admitted that pH optimization was routine as of the effective filing dates of the Patents-in-Suit.

207.     Furthermore, sales records belatedly produced by Par demonstrate that commercial lots of Original Vasostrict® were on sale and in public use at pH 3.6 with impurities that satisfied or bettered the limitations of the asserted claims of the Patents-in-Suit, including at least lots 788442, 788432, 788433, 788435, and 802171. This pH value abuts the range of the asserted claims of the Patents-in-Suit.

252.208. The asserted claims of the Patents-in-Suit are therefore presumptively obvious in light of the commercial sale and/or public use of Original Vasostrict® because lots of that product had an abutting pH and satisfied all other elements of the asserted claims of the Patents-in-Suit.

253.209. To the extent tThe degradation limitation of the '526 patent, and impurities limitations of the '209 and '785 patents were not met by any lots of Original Vasostrict®, they, are merely the inherent results of optimizing the pH limitations, or at the very least would have been readily achieved through standard formulation development procedures, including choice of pure vasopressin API and appropriate storage conditions, and a POSA would have had a reasonable expectation of success in achieving the claimed degradation and impurity limits. Par's expert has admitted that it would have been obvious to select pure vasopressin API for a pharmaceutical formulation.

254.210. The evidence submitted by Par is insufficient to show that a pH within the claimed range is critical to stability of a vasopressin formulation, particularly as interpreted by Par for infringement to include achieving the pH at any point in the shelf-life for no more than five minutes. In particular, the data in the Criticality Declarations suffer from myriad flaws and are unreliable. The underlying experiments were conducted with different starting materials and variables such as impurities levels were not controlled, precluding any meaningful comparison. Such

~~273.~~ 231.   To the extent the formulation described by the April 2014 Vasostrict® Label does not have the same pH as the formulations of the Asserted Claims, any such difference is the obvious result of routine optimization, a standard process that Par's expert admits was routine in the field as of the earliest effective filing dates.

~~274.~~ 232.   The Asserted Claims of the '209 and '785 patent are presumptively obvious over the abutting pH range taught by the April 2014 Vasostrict® Label.

233.   To the extent ~~T~~the ~~degradation limitations of the '526 patent and the~~ impurities limitations of the '209 and '785 patents were not met by any lots of Original Vasostrict®, they are merely inherent results of the claimed formulations and the vasopressin composition taught by the April 2014 Vasostrict® Label would achieve them.  Indeed, Examiner Bradley found that the April 2014 Vasostrict® Label inherently taught the levels of the impurities specified in the '209 and '785 patent in connection with the prosecution of the '239 patent.

~~275.~~ 234.   Sales records belatedly produced by Par demonstrate that commercial lots of Original Vasostrict® were on sale and in public use that satisfied or bettered the impurities limitations of the asserted claims of the Patents-in-Suit, including at least lots 788442, 788432, 788433, 788435, and 802171.

# EXHIBIT B

| | |
|---|---|
| **From:** | Hildreth, Nancy |
| **To:** | #EagleVasopressinLitigation; *dmoore@Potteranderson.com1; *sobyrne@potteranderson.com; *bpalapura@potteranderson.com |
| **Cc:** | EXT Brian Farnan; EXT Michael Farnan; ALL NA Endo Vasopressin |
| **Subject:** | Par v. Eagle - Document Production |
| **Date:** | Tuesday, January 19, 2021 11:07:40 AM |



Thank you.

**Nancy Hildreth**
Senior Paralegal

**Dechert LLP**

---

This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

| | |
|---|---|
| **From:** | Hildreth, Nancy |
| **To:** | #EagleVasopressinLitigation; *dmoore@Potteranderson.com1; *sobyrne@potteranderson.com; *bpalapura@potteranderson.com |
| **Cc:** | EXT Brian Farnan; EXT Michael Farnan; ALL NA Endo Vasopressin |
| **Subject:** | RE: Par v. Eagle - Document Production |
| **Date:** | Tuesday, January 19, 2021 11:08:25 AM |



**Dechert LLP**



**From:** Hildreth, Nancy <Nancy.Hildreth@dechert.com>
**Sent:** Tuesday, January 19, 2021 11:08 AM
**To:** #EagleVasopressinLitigation <EagleVasopressinLitigation@kirkland.com>; *dmoore@Potteranderson.com1 <dmoore@Potteranderson.com>; *sobyrne@potteranderson.com <sobyrne@potteranderson.com>; *bpalapura@potteranderson.com <bpalapura@potteranderson.com>
**Cc:** EXT Brian Farnan <bfarnan@farnanlaw.com>; EXT Michael Farnan <mfarnan@farnanlaw.com>; ALL NA Endo Vasopressin <NAEndoVasopressin@dechert.com>
**Subject:** Par v. Eagle - Document Production

**Nancy Hildreth**
Senior Paralegal

**Dechert LLP**



This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.