# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PAR PHARMACEUTICAL, INC., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>AMNEAL PHARMACEUTICALS OF NEW YORK, LLC, *et al.*,<br><br>*Defendants*. | C.A. No. 18-2032-CFC-CJB<br>(consolidated)<br><br>REDACTED - PUBLIC VERSION |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

*Of Counsel*:

MADDOX EDWARDS, PLLC
Steven A. Maddox
Jeremy J. Edwards
Kaveh V. Saba
1900 K Street NW, Suite 725
Washington, D.C. 20006
(202) 830-0707
smaddox@meiplaw.com
jedwards@meiplaw.com
ksaba@meiplaw.com

Dated: November 4, 2021

Redacted: November 12, 2021

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendants Amneal Pharmaceuticals of New York, LLC, Amneal Biosciences LLC, Amneal Pharmaceuticals Pvt. Ltd., and Amneal EU, Limited*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ....................................................1

STATEMENT OF FACTS ........................................................................................2

SUMMARY OF ARGUMENT ..................................................................................3

ARGUMENT ...........................................................................................................4

    A.  Amneal's Non-Infringement Case Is Ripe for Resolution, Especially in View of Amneal's Proposed Stipulated Order...................................................4

    B.  Under Federal Circuit Law and this Court's Conclusions of Law in the *Eagle* Case, The Court Should Enter Summary Judgment of Non-Infringement Based Upon Amneal's Undisputed ANDA pH Specifications ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

    C.  Summary Judgment Is the Most Efficient Vehicle to Resolve This Case. ....11

    D.  Amneal's Proposed Briefing Schedule............................................................13

CONCLUSION .......................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Sandoz Inc.*,
   923 F.3d 1023 (Fed. Cir. 2019) ..........................................................................6

*Apotex, Inc. v. Daiichi Sankyo, Inc.*,
   781 F.3d 1356 (Fed. Cir. 2015) ........................................................................12

*Bayer AG v. Elan Pharm. Res. Corp.*,
   212 F.3d 1241 (Fed. Cir. 2000) ..........................................................................9

*BioDelivery Sciences Int'l., Inc., et al. v. Chemo Research, S.L., et al.*,
   C.A. No. 19-444-CFC-CJB (D. Del. June 11, 2021. ) (Ex. 6) ........................5, 7

*BioDelivery Sciences Int'l., Inc., et al. v. Chemo Research, S.L., et al.*,
   C.A. No. 19-444-CFC-CJB (D. Del. Oct. 4, 2021) (Ex. 7) .............................5, 7

*Ferring B.V. v. Watson Labs., Inc.-Florida*,
   764 F.3d 1401 (Fed. Cir. 2014) ..........................................................................9

*Par Pharm., Inc. v. Eagle Pharm. Inc.*,
   C.A. No. 18-823-CFC-JLH, 2021 WL 3886418 (D. Del. Aug. 31,
   2021) ........................................................................................................*passim*

*Par Pharm., Inc. v. Luitpold Pharm., Inc.*,
   C.A. No. 16-cv-02290-WHW-CLW, 2017 WL 452003 (D.N.J.
   Feb. 2, 2017) ......................................................................................................5

**Statutes**

35 U.S.C § 271(e) ......................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 56 ......................................................................................................4

D. Del. LR 7.1.2 and 7.1.3 ......................................................................................13

The Amneal defendants (collectively, "Amneal") respectfully move for leave to file a motion for summary judgment of non-infringement.

## NATURE AND STAGE OF THE PROCEEDINGS

This case is one of two companion ANDA cases that the Court had scheduled to try jointly in July 2021. The other ANDA case was brought by the same plaintiff, alleging infringement of the same patents, against Amneal's competitor, Eagle Pharmaceuticals ("Eagle"). *See Par Pharmaceutical, Inc. v. Eagle Pharmaceuticals Inc.*, C.A. No. 18-823-CFC-JLH (D. Del.).

In both cases, the dispositive issue on infringement has been whether the proposed ANDA products literally infringed a single limitation calling for a pH range of "3.7-3.9," which the Court accepted to extend down to 3.65.[1] And in both cases, the defendants' ANDA release and stability specifications limited the acceptable upper pH of the proposed products to less than 3.65 pH.[2]

At a pre-trial conference in June 2021, however, the Court determined that it would not try infringement against Amneal, but that it would proceed with

---

[1] *Par Pharm., Inc. v. Eagle Pharm. Inc.*, C.A. No. 18-823-CFC-JLH, 2021 WL 3886418, at *3 (D. Del. Aug. 31, 2021) (hereinafter the "*Eagle* Opinion"); D.I. 278 at 2.

[2] *Eagle* Opinion at *3, 9; D.I. 278 at 2; D.I. 271 at Ex. D, p. 2; D.I. 271 at Ex. E, p. 2.

1

infringement with respect to Amneal's competitor, Eagle. (Ex. 1 at 12:11-14.[3])

The Court adjourned Amneal's infringement trial but invited Amneal to keep the Court apprised of further developments in the Food and Drug Administration ("FDA") approval process. (*Id.* at 14:23-25, 15:19-21.)

At the July trial, the Court tried both non-infringement and invalidity for Eagle, and limited Amneal's evidence to invalidity. (*Id*. at 15:7-9.) The Court subsequently issued the *Eagle* Opinion, finding for Eagle based solely on non-infringement without making any findings as to invalidity. *Eagle* Opinion at *1.

On November 2, 2021, Amneal produced to Par complete copies of Amneal's November 1, 2021 responses to the CRLs issued by the FDA.

## STATEMENT OF FACTS

The circumstances of Amneal's ANDA approval process have changed materially since the Court severed Amneal's non-infringement defense from trial. Amneal has now filed its full response to the FDA's Complete Response Letter ("CRL") in each ANDA. (Exs. 2a, 2b, 3a, 3b.)[4] Procedurally, therefore, Amneal now stands in the same position as Eagle stood at the time of Eagle's non-

---

[3] Unless otherwise indicated, all references herein to "Ex. __" refer to exhibits to the Declaration of Kaveh V. Saba, filed concurrently herewith.

[4] With the exception of the highlighting applied by counsel for Amneal to pages 35 and 38 of Exhibits 2a and 3a, respectively, the highlighting therein was present in the original documents.

infringement trial. Eagle, too, had received a CRL, but had submitted its response before the July trial date. (Ex. 4.)[5]

Amneal's response to the CRL did *not* change the upper limits of its ANDA pH release and stability specifications. Amneal's upper limits remain ███ ███ compared to the lowest claimed limitation of value of pH 3.65. (Ex. 2a at pp. 35, 38 of 192; Ex. 2b at p. 4 of 17; Ex. 3a at pp. 35, 38 of 192; Ex. 3b at p. 4 of 18; *Eagle* Opinion at *3.) Thus, Amneal's pH specifications preclude any overlap with the claimed range.

Amneal also has gone a step further to obtain a prompt adjudication. Amneal has stipulated that if the FDA ever did require Amneal's ANDA products to meet or exceed 3.65 pH, then Amneal's ANDA products would infringe the asserted patent claims in this case. (Ex. 5.)[6]

## SUMMARY OF ARGUMENT

Amneal's now-filed response to the CRL renders its non-infringement defense ripe for adjudication under the Hatch-Waxman Act. Amneal's filing of the response puts Amneal in the same procedural position at the FDA as was Eagle

---

[5] Business Wire reported on June 24, 2021, that Eagle's response to the CRL was submitted in June 2021. (Ex. 4 at 1.) The Court conducted Eagle's non-infringement trial the following month.

[6] Amneal shared a draft of this agreement with Par prior to filing its motion. To date, Par has not agreed to it.

3

when the Court tried Eagle's non-infringement case. As a matter of law, the Hatch-Waxman Act expressly contemplates adjudication of patent issues during the approval process.

Further, the Court's extensive analysis and application of Federal Circuit ANDA infringement law in the *Eagle* Opinion now renders Amneal's non-infringement defense appropriate for summary judgment. In finding no infringement against Eagle, the Court correctly concluded as a matter of Federal Circuit law that there can be no literal infringement of the claimed pH range of 3.7-3.9, where the pH specifications of the accused ANDAs are outside of that range. The Court has already done the hard jurisprudential work. Amneal simply asks the Court to apply the same law to Amneal's undisputed pH specifications that the Court applied to Eagle's undisputed pH specifications.

Accordingly, the Court should grant Amneal leave to file its motion for summary judgment of non-infringement.

## ARGUMENT

A.  **Amneal's Non-Infringement Case Is Ripe for Resolution, Especially in View of Amneal's Proposed Stipulated Order.**

In the FDA approval process, Amneal's ANDAs are now on comparable regulatory footing to where Eagle's ANDA was at the time of its non-infringement trial. Eagle had received a CRL, but had filed its responses before that trial. (Ex. 4 at 1.) Likewise, Amneal received a CRL and now has filed its responses. (Exs. 2a,

4

2b, 3a, and 3b.) It is uncertain exactly when the FDA will reply to Eagle's and Amneal's CRL responses, or what those replies will be. That, however, is precisely the type of regulatory uncertainty contemplated by the Hatch-Waxman Act's statutory scheme for patent adjudication prior to final approval—instead of after FDA approval.

If the FDA finds Amneal's responses sufficient to resolve the remaining deficiencies, then a delayed judgment of non-infringement would hold up the availability of the presumptive second FDA-approved generic alternative. As this Court recently acknowledged, ANDA cases can and should be adjudicated *before* the resolution of the FDA's regulatory review. (*See,* Ex. 6 ¶ 3 ("[T]here is some level of inherent uncertainty as to the nature of the final accused product in many Hatch-Waxman cases, since the relevant statute provides for pre-FDA approval adjudication of pharmaceutical patent disputes."); *see* Ex. 7 at 1.)

Indeed, this is not the first time that Par has proffered speculation to gain delay. A district court properly rejected Par's same arguments for delay as a brand plaintiff in a different case under similar circumstances, as follows:

> Par's argument against the entry of judgment for Luitpold at this stage is based entirely on speculation that the FDA will require Luitpold to adjust its product formulation in a way that will infringe the Patents-in-Suit. . . . Par claims that because the FDA has not approved Luitpold's ANDA, . . . it is more than speculative that the FDA will require the changes Par alleges. . . . This argument misses the mark because it is

5

> premised on the mistaken belief that the Court can and should determine patent infringement by looking to drug formulations and ANDAs not yet in existence.

*Par Pharm., Inc. v. Luitpold Pharm., Inc.*, C.A. No. 16-cv-02290-WHW-CLW, 2017 WL 452003, at *6 (D.N.J. Feb. 2, 2017).

The Federal Circuit also recently affirmed summary judgment of non-infringement as a matter of law, even where the FDA status remained in flux on appeal. In *Amgen Inc. v. Sandoz Inc.*, the plaintiff argued that the district court ruling on summary judgment was premature because the accused infringer undisputedly intended "at some point in the future" to modify its manufacturing process and its application before FDA. *Amgen Inc. v. Sandoz Inc.,* 923 F.3d 1023, 1025, 1029-30 (Fed. Cir. 2019). The Federal Circuit nonetheless affirmed, in view of the unique hypothetical inquiry of infringement under 35 U.S.C § 271(e) and the clear non-infringement of the current application. *Id.* The Federal Circuit further noted that the plaintiff was not "left without a remedy for possible future infringement if the facts change," upon approval and launch of the accused products. *Id.* This § 271(e) infringement case is no less ripe than the one in *Amgen*.

Moreover, in another Hatch-Waxman case, *BioDelivery Sciences Int'l., Inc., et al. v. Chemo Research, S.L., et al.,* C.A. No. 19-444-CFC-CJB (D. Del.) ("*BDSI*"), this Court denied objections to the Magistrate Judge's rejection of an

6

indefinite stay due to alleged uncertainty about the FDA approval status. (Ex. 6, *passim*, Ex. 7 at 1 (denying objections).) In *BDSI*, Magistrate Judge Burke found such a stay unwarranted despite "*a bit more* uncertainty than the average case, simply in light of the fact that the FDA has issued a CRL," and noted that the FDA had *not* rejected the portion of the original ANDA that set out the key pH ranges relevant to infringement. (Ex. 6 at ¶ 3.) Likewise here, Amneal has already submitted a full response to the CRL, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is time for this case to move forward.

Although the Court has recognized the inherently advisory nature of all Hatch-Waxman Act decisions, the Court nevertheless seemed concerned about wasting judicial resources should Amneal change its upper pH limits after trial. Accordingly, Amneal has stipulated that if it ever changes the release or stability pH specifications of its proposed ANDA products to meet or exceed 3.65 pH, then the proposed ANDA products would infringe the asserted claims. (Ex. 5.) Amneal has further stipulated that it will notify the FDA, the district court, and Par if Amneal ever attempts to change the upper pH release or stability specifications in the future. Amneal's stipulation is submitted herewith. (Ex. 5.)

Also, when it postponed Amneal's infringement trial, the Court appeared to have expressed concern with (a) Amneal's difficulty in predicting the submission date of its intended response to the CRL, and (b) Amneal's uncertainty as to

7

whether it could try the non-infringement case within the trial time allotted by the Court. (Ex. 1 at 8:22-10:13 and 15:1-9.) Amneal acknowledges the relevance of these facts to the exercise of the Court's broad discretion in managing its docket. Further, Amneal understands why these facts could have concerned the Court at the time, even though the product of Amneal's good faith efforts.

The Court should proceed to adjudicate Amneal's non-infringement defense. Further, as demonstrated below, summary adjudication is appropriate, based on the undisputed pH specifications of Amneal's ANDAs and this Court's conclusions of law regarding the same infringement issue in the *Eagle* Opinion.

**B.     Under Federal Circuit Law and this Court's Conclusions of Law in the *Eagle* Case, The Court Should Enter Summary Judgment of Non-Infringement Based Upon Amneal's Undisputed ANDA pH Specifications ▮.**

This Court already articulated the dispositive Federal Circuit law in the *Eagle* Opinion. There can be no infringement under the Hatch-Waxman Act where the accused ANDA specification excludes the claimed limitation. *Eagle* Opinion at *7-8. Further, this Court properly applied that law to Eagle's ANDA pH specifications, which excluded the same claimed pH range at issue for Amneal in this case. *Id.* at *8-11. The same result of non-infringement should follow here from applying that law to Amneal's ANDA pH specifications. To summarize for the Court the law and facts that support summary judgment in this case, Amneal

8

has attached as Exhibit 8 the opening brief in support of Amneal's proposed summary judgment motion.[7]

As this Court previously recognized, "[t]he infringement analysis in an ANDA case is most straightforward when the ANDA's specification directly addresses the elements of the asserted claims that are at issue." *Eagle* Opinion at *8. Properly articulating the law of *Ferring B.V. v. Watson Labs., Inc.-Florida*, 764 F.3d 1401 (Fed. Cir. 2014) and *Bayer AG v. Elan Pharm. Res. Corp.*, 212 F.3d 1241 (Fed. Cir. 2000), this Court held "if an ANDA specification describes a product that . . . necessarily does not infringe the patent, the specification dictates the outcome of the infringement analysis." (*Id.* (citing *Ferring*, 764 F.3d at 1409 and *Bayer*, 212 F.3d at 1249).)

Non-infringement *as a matter of law* is straightforward here, applying the same law to Amneal's undisputed ANDA pH specifications. Amneal's ANDA pH specifications are the only material facts under the law, and there can be no genuine issue as to what they are.

---

[7] Exhibit 8 refers and/or cites to declarations and exhibits that Amneal requests leave to file in conjunction with its proposed motion for summary judgment. Amneal is requesting that the Court grant it leave to file the brief enclosed as Exhibit 8, with revisions as needed to add, update, and/or clarify. *See infra* Argument, Section D, proposed order ¶ 2.

9

There is no dispute that the highest pH permitted by Amneal's pH specifications (which ▬▬▬▬) does not overlap with the claimed range (3.65-3.94). (Ex. 9 at 5 ("▬▬▬▬.").) As the Court has already explained, this alone "requires a judgment of noninfringement" under the law, notwithstanding any expert speculation to the contrary. *Eagle* Opinion at *9.

The controlling Amneal ANDA pH specifications under *Ferring* and *Bayer* (a) are not subject to any genuine dispute, and (b) are virtually identical to Eagle's ANDA pH specifications. Consider:

| The Dispositive Eagle Facts in the Court's Opinion | The Dispositive and Indisputable Amneal Facts |
|---|---|
| The parties agree that the pH limitation is met only "when the pH is greater than or equal to 3.65 and less than or equal to 3.94." (*Eagle* Op. at 7-8, ¶ 8.) | Amneal agrees to this fact for purposes of this motion and its proposed motion for summary judgment. |
| "Eagle represented in its ANDA that both the 'release [pH] specification' and the 'stability' [pH] specification' of its ANDA product are 3.4-3.6." (*Eagle* Op. at 8-9, ¶ 12.) | Amneal represents in its ANDAs that both the release pH specification and the stability pH specification of its ANDA products ▬▬▬▬. (Ex. 2a at pp. 35, 38 of 192; Ex. 2b at p. 4 of 17; Ex. 3a at pp. 35, 38 of 192; Ex. 3b at p. 4 of 18.) |

Par is likely to speculate as to "what if" Amneal subsequently changes its pH specifications. That contingency is beyond the scope of this Hatch-Waxman case, just as it was beyond the scope of Eagle's case. But to avoid any doubt that a

ruling of non-infringement on this single issue will dispose of this case in its entirety, Amneal has stipulated that any amendment to its upper pH limit specifications, to anything that overlaps with the claimed effective range of 3.65-3.9 pH, will necessarily infringe the asserted claims in this case. (Ex. 5.)

### C.     Summary Judgment Is the Most Efficient Vehicle to Resolve This Case.

The Court should not delay its ruling on non-infringement as a matter of law. There is no need for another bench trial. Any proffered expert testimony outside the controlling ANDA specifications would be legally irrelevant to non-infringement under the controlling Federal Circuit law, which this Court properly followed and applied in the *Eagle* case. *Eagle* Opinion at *9-10.

Allowing for summary judgment here comports with the expressed hope in the Court's Standing Order that an "effectively managed summary judgment practice can bring about efficiencies and cost savings," despite "the proliferation of meritless summary judgment motions in patent cases." Judge Connolly's Standing Order for Summary Judgment Practice at 2, 4. Surely, Amneal's proposed motion for summary judgment embodies the efficient and targeted summary judgment practice that the Court's Standing Order contemplates in patent cases. If Amneal's single dispositive legal issue—which has already been decided in favor of another defendant on parallel indisputable facts—does not fit the bill, it is unclear what would.

11

In addition to the efficiencies to be gained, the Court may wish to consider the potential public good in fighting Covid-19[8] that a timely resolution on summary judgment would provide, rather than a later decision after a trial yet to be scheduled. The drug (vasopressin) at issue here had been used long before Par's brand product Vasostrict® came along. (Ex. 10 at p. 4/7.) Upon approval of Par's Vasostrict® product in 2014, Par is reported to have increased the price of vasopressin by over 1000%, and further increased the price every year since. *Id.*[9]

While the introduction of a single generic competitor (Eagle, if and when approved by FDA) may help alleviate the ballooned pricing of vasopressin to some extent, the Federal Circuit recognizes that it is the *second* generic competitor that significantly drives down the cost. "On average, the first generic competitor prices its product only slightly lower than the brand-name manufacturer. However, the appearance of *a second generic manufacturer reduces the average generic price to nearly half the brand name price*." *Apotex, Inc. v. Daiichi Sankyo, Inc.*, 781 F.3d

---

[8] Vasopressin has apparently been "flagged as a Covid priority." (Ex. 4 at 1.)

[9] "Hospital executives are particularly vexed about the price hike for Vasostrict— formerly known as vasopressin and first developed in 1928—because that drug, used to increase a patient's blood pressure, has been widely used in intensive care units to treat covid-19 patients. . . . The price of the drug increased 1,644% after Par Pharmaceutical won FDA approval in 2014, according to Vizient. It received market exclusivity through 2035. And Par Pharmaceutical has hiked the price 7% to 10% each year, said Eric Tichy, vice chair of supply chain management at the Mayo Clinic." *Id.*

12

1356, 1363 n.2 (Fed. Cir. 2015) (quoting FDA, Center for Drug Evaluation and Research, *Generic Competition and Drug Prices*) (emphasis added).

Amneal's non-infringing ANDA products could provide an additional generic product here, leading to substantial further reduction of consumer prices. Thus, even the possibility that the FDA will approve Amneal's ANDAs, at any point prior to a ruling after a trial in the unknown future, is enough to warrant a more immediate ruling on summary judgment. This would ensure that the public can receive the significant cost benefits of multiple non-infringing generic alternatives to Vasostrict®, without unnecessary delay.

### D. Amneal's Proposed Briefing Schedule

As set forth in the enclosed proposed order, if leave is granted, Amneal has attached as Exhibit 8 to this motion its intended opening brief in support of summary judgment, which it is prepared to file along with all supporting submissions immediately upon receiving permission to do so from the Court. Amneal further proposes that the briefing on its motion for summary judgment of non-infringement proceed in accordance with this Court's Standing Orders and/or procedures, including for summary judgment submissions, except that the briefing limits and timing of subsequent submissions shall be governed by the Local Rules (*see* proposed order ¶ 3 & D. Del. LR 7.1.2 and 7.1.3).

13

## **CONCLUSION**

Accordingly, Amneal respectfully requests the Court enter an Order, substantially similar to the proposed order attached hereto, granting Amneal leave to file a motion for summary judgment under Fed. R. Civ. P. 56.

Dated: November 4, 2021

*Of Counsel*:

MADDOX EDWARDS, PLLC
Steven A. Maddox
Jeremy J. Edwards
Kaveh V. Saba
1900 K Street NW, Suite 725
Washington, D.C. 20006
(202) 830-0707
smaddox@meiplaw.com
jedwards@meiplaw.com
ksaba@meiplaw.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
_____
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendants Amneal Pharmaceuticals of New York, LLC, Amneal Biosciences LLC, Amneal Pharmaceuticals Pvt. Ltd., and Amneal EU, Limited*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the Court's type and word count limitations because it has been prepared in 14-point and Times New Roman font, and contains 3,159 words, including footnotes, as calculated by the "Word Count" feature of Microsoft Word.

Dated: November 4, 2021

*Of Counsel*:

MADDOX EDWARDS, PLLC
Steven A. Maddox
Jeremy J. Edwards
Kaveh V. Saba
1900 K Street NW, Suite 725
Washington, D.C. 20006
(202) 830-0707
smaddox@meiplaw.com
jedwards@meiplaw.com
ksaba@meiplaw.com

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*
_____
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Defendants Amneal Pharmaceuticals of New York, LLC, Amneal Biosciences LLC, Amneal Pharmaceuticals Pvt. Ltd., and Amneal EU, Limited*

# **CERTIFICATE OF SERVICE**

I, Anne Shea Gaza, Esquire, hereby certify that on November 12, 2021, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to all registered participants.

I further certify that on November 12, 2021, I caused the foregoing document to be served by e-mail on the following counsel of record:

>Brian E. Farnan
>Michael J. Farnan
>FARNAN LLP
>919 North Market Street, 12th Floor
>Wilmington, DE 19801
>bfarnan@farnanlaw.com
>mfarnan@farnanlaw.com
>
>Martin J. Black
>Brian M. Goldberg
>Sharon K. Gagliardi
>Daniel Roberts
>DECHERT LLP
>Cira Centre
>2929 Arch Street
>Philadelphia, PA 19104
>martin.black@dechert.com
>brian.goldberg@dechert.com
>sharon.gagliardi@dechert.com
>daniel.roberts@dechert.com
>
>Robert D. Rhoad
>DECHERT LLP
>100 Overlook Center, 2nd Floor
>Princeton, NJ 08540-7814
>robert.rhoad@dechert.com

Blake B. Greene
DECHERT LLP
300 W. 6th Street, Suite 2010
Austin, TX 78701
blake.greene@dechert.com

*Attorneys for Plaintiffs*

| | |
|---|---|
| Dated: November 12, 2021 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| | /s/ *Anne Shea Gaza* |
| | Anne Shea Gaza (No. 4093) |
| | Robert M. Vrana (No. 5666) |
| | Samantha G. Wilson (No. 5816) |
| | Rodney Square |
| | 1000 North King Street |
| | Wilmington, DE 19801 |
| | (302) 571-6600 |
| | agaza@ycst.com |
| | rvrana@ycst.com |
| | swilson@ycst.com |

*Attorneys for Defendants*

2